# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051 (RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | |
| | : | |
| **Defendant.** | : | |

## NOTICE OF FILING OF GOVERNMENT'S DETENTION MEMORANDUM AND SUPPORTING EXHIBITS

The United States of America, through its undersigned counsel, gives notice that it is filing the attached Government's Memorandum in Support of Detention and the accompanying Exhibits to Government's Memorandum in Support of Detention.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610

By:        /s/
Jay I. Bratt
Assistant United States Attorney
Illinois Bar No. 6187361
National Security Section
Room 11-437
555 Fourth Street, NW
Washington, D.C. 20530
(202) 353-3602
Jay.Bratt@usdoj.gov

**<u>Certificate of Service</u>**

I, Jay I. Bratt, certify that I served a copy of the foregoing Notice of Filing of

Government's Detention Memorandum and Supporting Exhibits on Joseph W. Clark, counsel for

the defendant, by e-mail to <u>jwclark@jonesday.com</u> this 5th day of April, 2007.


_____/s/_____
Jay I. Bratt

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051 (RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION

### Introduction

The defendant, Parthasarathy Sudarshan, has been charged in a 15-count indictment with trafficking in ballistic missile components, trafficking in a key component for the navigation and weapons guidance systems of an advanced fighter jet, and being the illegal agent of a foreign government. These are extremely serious charges that implicate both the national security and the foreign policy of the United States. Several of the counts involve violations of export controls that the United States has in place pursuant to treaties to combat the proliferation of nuclear weapons and the missile delivery systems for those weapons. And, as described below, the government's case against Sudarshan is exceptionally strong.

Sudarshan is a significant flight risk. As the ringleader of the conspiracy charged in the indictment, he faces the potential of a very lengthy prison sentence. There are countries to which he can flee and from which the United States would be unable to secure his return. In particular, Sudarshan is a citizen of Singapore and has funds and property there. Although the United States has an extradition treaty with Singapore, the offenses here are not extraditable under that treaty. Sudarshan also has ties with India (and money there), and extradition from India is similarly

unlikely.  Sudarshan's closest tie to the United States is his immediate family.  However, his two sons are now residing in Singapore, and his wife will have to leave the United States after July 15, 2007, when her (and Sudarshan's) visa expires.  Last, as an illegal agent of the Government of India, Sudarshan poses the added risk that those within that government whom he aided in acquiring restricted technology could assist him in obtaining the means to leave the United States and travel internationally to Singapore or India.

Sudarshan's incentive to flee is great.  Even the loss of a substantial money bond would be a small price for him to pay to avoid a lengthy separation from his family and conviction and imprisonment in the United States.  The Court should grant the government's motion to detain Sudarshan pending trial.

## Principles Governing Requests for Detention

When the government seeks to detain a defendant on the ground that he is a risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A), the government must demonstrate the defendant's flight risk by a preponderance of the evidence.  United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996).  Moreover, at a detention hearing the government may present evidence by way of a proffer.  United States v. Smith, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

Section 3142(g) lists four factors that guide a court's detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  See 18 U.S.C. § 3142(g).

**Factual Proffer of the Evidence Supporting the Charges against Sudarshan**

I.    **The Law Governing Sudarshan's Conduct**

    A.    **The IEEPA and EAR Violations**

The indictment charges Sudarshan with conspiring to violate and violating two separate export control regimes. The first nine counts pertain to restrictions that the Department of Commerce has in place under the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774. The Department of Commerce originally promulgated the EAR under the authority granted it by the Export Administration Act ("EAA"), 50 U.S.C. App. §§ 2101-2420. However, in August 2001, the EAA lapsed and the EAR have remained in force pursuant to Executive Order 13222 and successive presidential notices. The president issued Executive Order 13222 under the broad powers that Congress had granted him in the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1705. By virtue of Executive Order 13222, willful violations of the EAR are thus also criminal violations of IEEPA. See 50 U.S.C. § §1702 and 1705(b).

Through the EAR, the Department of Commerce restricts the export of U.S. origin commodities to various foreign countries and for certain end-uses such as in ballistic missiles. The Department of Commerce authorizes the exportation of goods and technology to these restricted countries and foreign end-users through the issuance of a license. Any export of goods from the United States to a restricted country or foreign end-user without such a license is a violation of the EAR.

One set of restrictions in the EAR involves the Entity List. See 15 C.F.R. Part 744, Supplement 4. The Entity List consists of governmental, quasi-governmental, and private

-3-

entities in India, Pakistan, Russia, China, and Israel that the United States has determined to be involved in those nations' nuclear weapons and missile delivery systems programs. The Entity List is in place because of obligations that the United States has undertaken as part of the Enhanced Proliferation Control Initiative. In general, if an organization is on the Entity List, it is unlawful to export U.S. origin commodities to that organization unless the Department of Commerce has granted licenses for the exports.

Among the various Indian state enterprises on the Entity List are the Vikram Sarabhai Space Centre ("VSSC") and Bharat Dynamics Ltd. ("BDL). VSSC is within the Government of India's Department of Space. It is responsible for developing rockets and space launch vehicles. Some of VSSC's activities relate to India's civilian space and satellite programs; however, VSSC is also involved in the development of ballistic missiles. BDL is within the Government of India's Ministry of Defence. Unlike VSSC, BDL's activities relate solely to the development of ballistic missiles. It does not produce rockets for use in the civilian space program. The conduct charged in counts one through nine of the indictment involves illegal exports to VSSC and BDL.

In September 2004, the Department of Commerce eased the sanctions as to VSSC and permitted the export of non-restricted goods – which are known under the regulations as EAR 99 commodities – and a small category of controlled commodities to VSSC without a license, so long as the items would not be used in a restricted end-use such as in a missile or nuclear weapon. As described more fully below, all of the goods that Sudarshan exported to VSSC required a license, both before and after the easing of the sanctions. Moreover, there is overwhelming evidence that Sudarshan knew that, at all times, all of the commodities described in the indictment that he sent to VSSC needed a license.

As for BDL, the Department of Commerce always has required a license for the export of any U.S. origin commodities to that entity. It has never eased the sanctions.

### B.     The AECA and ITAR Violations

Counts ten through fourteen of the indictment charge Sudarshan with conspiring to violate and violating the Arms Export Control Act ("AECA", 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130. The export of certain items and services, known as defense articles and services, is governed by AECA and the ITAR.[1] These items or services are set forth in and constitute the United States Munitions List ("Munitions List"), which is codified at 22 C.F.R. § 121.1. Pursuant to Section 2778(b)(2) of the AECA, no defense article and services designated by the President of the United States under the statute and regulations cited above can be exported without a license issued in accordance with AECA and the ITAR. The United States Department of State, Directorate of Defense Trade Controls ("DDTC"), has responsibility for issuing licenses for the export of defense items and services. In addition, exporters in the United States of defense items and services are required to register with the DDTC.

Aside from its arsenal of nuclear weapons and ballistic missiles, India has, in recent years, emphasized developing a domestic industry for conventional weapons. Among other projects, the Ministry of Defence, through the Aeronautical Development Establishment ("ADE"), has sought to manufacture fighter jets. One such aircraft is the Tejas Light Combat

---

[1] AECA states that the purpose of the Act is as follows: "In furtherance of world peace and the security and foreign policy of the United States, the President is authorized to control the import and the export of defense articles and defense services and to provide foreign policy guidance to persons of the United States involved in the export and import of such services." 22 U.S.C. § 2778(a)(1).

Aircraft. In acquiring sophisticated parts and technology for the Tejas, an obstacle that ADE has encountered is the restrictions that the United States places on the export of defense articles under AECA and the ITAR. The DDTC gives special scrutiny to exports of such items to India. Thus, ADE has faced delays in acquiring key components for the Tejas, as well as the denial of licenses.

One such component that ADE needs in the manufacture of the Tejas is a microprocessor (a type of onboard computer) that can operate the navigation and weapons guidance systems of the fighter aircraft. The particular model of microprocessor that ADE requires for the Tejas is the Intel i960. The i960 is on the Munitions List. Intel no longer manufactures the i960, but a firm in Newburyport, Massachusetts, Rochester Electronics, Inc. ("REI") continues to produce the microprocessor under license from Intel. The indictment charges Sudarshan with obtaining 500 i960 microprocessors for ADE and causing REI to ship them on two different occasions to Singapore, after which the goods were immediately transshipped to ADE in India. There were no licenses for these exports to India. In addition, the indictment charges that, in 2006, Sudarshan caused the export of Munitions List commodities to VSSC.[2] These shipments went through Singapore and, again, there were no accompanying licenses from the DDTC.

## C.    **Elements of an Export Offense**

The elements of any export offense are as follows:

1.     The defendant exported a commodity;
2.     The export required a license;
3.     The defendant failed to obtain a license for the export; and
4.     The defendant acted willfully.

---

[2] The particular ITAR-controlled items that went to VSSC were capacitors. Capacitors store and discharge electrical current and have applications in missile guidance and firing systems.

E.g., United States v. Murphy, 852 F.2d 1, 6-7 (1st Cir. 1988) (AECA prosecution); United States v. Gregg, 829 F.2d 1430, 1437 (8th Cir. 1987) (AECA and EAA prosecution); United States v. Beck, 615 F.2d 441, 449-50 (7th Cir. 1980) (AECA prosecution).  In defining willfulness for purposes of the export statutes, courts have held that the government must show that a defendant knew that his conduct was unlawful, but that the government need not show that a defendant knew the precise details of the regulatory scheme or even that a license was required.  E.g., United States v. Quinn, 403 F. Supp.2d 57, 60-64 (D. D.C. 2005) (Bates, J.) ("To [require that a defendant knew all of the details of the regulations] would produce an absurd result: A defendant could readily admit that he knew his conduct was illegal, but he could nonetheless avoid criminal liability by convincing a jury that he did not know precisely *why* the conduct was illegal because he was unfamiliar with the specific licensing requirement.  Surely, neither Congress . . . nor the Executive Branch . . . intended to foreclose prosecution of persons who knew the gist, but not the exact details of the law they are accused of violating.) (emphasis in the original); United States v. Tsai, 954 F.2d 155, 162 (3d Cir. 1992) ("If the defendant knew that the export was in violation of the law, we are hard pressed to say that it matters what the basis of that knowledge was."); Murphy, 852 F.2d at 7 ("[I]t is sufficient that the government prove that [the defendant] knew he had a legal duty not to export the weapons . . . .").  See also Bryan v. United States, 524 U.S. 184 (1998) (in prosecution for sale of firearms without a license, general knowledge of illegality is sufficient; government is not required to prove that the defendant had particular knowledge of the licensing requirement).

### D.    Illegal Agent of a Foreign Power

Title 18 U.S.C. § 951(a)  requires individuals in the United States, other than a diplomatic

or consular officer or attaché, who act under the direction or control of a foreign government, to notify the Attorney General. Here, count fifteen of the indictment charges Sudarshan with being an illegal agent of the Government of India. Both in count fifteen, and in the two conspiracy counts (counts one and ten), the indictment sets forth how, in acquiring restricted technology for VSSC, BDL, and ADE, Sudarshan acted at the direction of government agency officials in India and at the direction of a Government of India official in the United States.

## II.    **The Conspirators**

Sudarshan was born and educated in India. For several years after finishing his schooling, he worked as an engineer for Hindustan Aeronautics Ltd. ("HAL"). HAL manufactures military aircraft for the Government of India. Certain divisions of HAL were once on the Entity List.

Sometime around 1997, Sudarshan emigrated to Singapore and founded Cirrus Pte Ltd. ("Cirrus Singapore").[3] Cirrus' internet site, www.cirruselectronics.com, contains photographs of rocket launchers and combat aircraft. The internet site states that "Cirrus not only specializes in sourcing MIL [military] components that are marked discontinued by the original manufacturer but also acts as one stop vendors for all generic and military grade electronic and electro mechanical components from world wide sources."

The location of Cirrus in Singapore is significant. It is typical for nations, companies, and individuals seeking to evade U.S. export control laws to find third countries to which exports of U.S. origin commodities do not require licenses or are subject to less demanding scrutiny. The

---

[3] Sudarshan eventually became a naturalized citizen of Singapore and he holds a Singaporean passport.

export control violators will send the goods that they acquire in the United State to these third countries and then immediately re-export the items to the restricted destinations or end-users. Sudarshan took advantage of Cirrus' presence in Singapore to route exports to India that required licenses through Singapore without obtaining the necessary licenses.

As Cirrus' business grew, Sudarshan found it necessary to establish an office in the United States. Mythili Gopal, Sudarshan's co-defendant and sister-in-law, had previously moved to the Greenville, South Carolina, area with her husband, who is employed as an engineer with a software firm near Greenville.[4] On November, 19, 2003, Gopal incorporated Cirrus Electronics LLC ("Cirrus U.S.A.") in the State of South Carolina. The incorporation papers list Cirrus U.S.A.'s address as 22 Redglobe Court, Simpsonville, South Carolina, which was and is Gopal's address. Gopal conducted Cirrus U.S.A.'s business out of her home. The South Carolina location provided an additional means of evading U.S. exports restrictions. Unless a vendor asked about the final destination of products sold to Cirrus U.S.A., the company could make its purchases in the U.S. appear to be purely domestic transactions and have the items shipped to South Carolina. Upon arrival of the goods in South Carolina, Gopal would re-package them and ship them to Cirrus Singapore, which would then re-export the products to India.

In August 2004, Sudarshan hired co-defendant AKN Prasad, another former engineer with HAL, to run the Cirrus branch in Bangalore, India, which operated as Cirrus Electronics Marketing (P) Ltd ("Cirrus India").[5] Because of the large volume of business that Cirrus U.S.A. was generating, Sudarshan relocated to South Carolina in December 2004. He originally stayed

---

[4] Gopal is a permanent resident alien.

[5] Prasad is currently in India.

at Gopal's home, but moved to 201 Huddersfield Drive, Simpsonville, South Carolina, where he

also maintained an office.  When Sudarshan moved to the United States, his co-defendant

Sampath Sundar, who also is Sudarshan's brother-in-law, took over the operations of Cirrus

Singapore.

Sudarshan entered the United States on an L-1 visa.[6]  His wife and younger son

accompanied him and have resided in South Carolina as Sudarshan's dependents under L-2

visas.[7]  All of their visas are set to expire on July 15, 2007.  On December 7, 2005, U.S. Citizen

and Immigration Services ("CIS") denied Cirrus' petition to extend Sudarshan's visa.  See

Exhibit 1 to this memorandum.  Cirrus appealed the denial, and, on March 30, 2007, CIS denied

the appeal.[8]  See Exhibit 2.

### III.    Evidence of Sudarshan's Willful Violations of the Export Laws

The evidence against Sudarshan is overwhelming.[9]  The government has substantial proof

---

[6] An L-1 visa is designed to permit executives and managers of foreign corporations to come to the United States to work at the U.S. facilities of those companies.  The L-1 visa is obtained by the employer rather than the individual.  Dependents of L-1 visa holders enter the U.S. on L-2 visas.

[7] On March 23, 2007, the day of Sudarshan's arrest, his younger son returned to Singapore to perform his compulsory military service.

[8] Although the Pretrial Services report states that Sudarshan "is pending permanent residency," the government has since confirmed with Immigration and Customs Enforcement ("ICE") that the only application that Sudarshan had pending with CIS was the L-1 visa petition that CIS has now denied.

[9] The government obtained a significant amount of the proof in this prosecution through surveillance authorized pursuant to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801-1811.  In compliance with 50 U.S.C. § 1806(c), the government gave both Sudarshan and Gopal notice at their initial appearances in Greenville, South Carolina, that, in proceedings in this matter, the government intends to introduce against them evidence derived from surveillance conducted pursuant to FISA.

that Sudarshan and his co-conspirators made exports to restricted end-users in India both with general knowledge that their activities were unlawful and even with knowledge of the specific licensing requirements that they were violating. The case against Sudarshan is particularly compelling.

**A.    Evidence of Willful Violations of IEEPA and the EAR**

**1.    The Acquisition of SRAMs for VSSC**

Some of the strongest proof of Sudarshan's willfulness surrounds Cirrus' exports to VSSC.[10]  In the fall of 2002, Sudarshan and Sundar contacted White Electronic Designs Corporation ("White") in Phoenix, Arizona, about purchasing a variety of electronic components. Among the products that the company sells are Static Random Access Memory (SRAM) chips. These particular SRAMs are designed to withstand extreme changes in temperature (such as a missile would endure both in storage and during launch and flight), and they have applications in missile guidance systems. The White SRAMs appear on the Commerce Control List, and the Department of Commerce restricts their export for national security reasons. See 15 C.F.R. Supplement 1 to Part 774, Category 3, 3A001.

Cory Jaimes, White's International Sales Manager responded to the inquiry from Cirrus with an e-mail on October 9, 2002, in which he stated:

> P. Sudarshan,
>
> I received your quote request today.  I have told you in the past I cannot and will not ever give pricing and availability without knowing who the end user is and what country they are located in. [White] is the manufacturer of these parts and there are several laws that

---

[10]  The unlawful exports to VSSC underlie counts two, three, seven, and nine of the indictment.  Events surrounding these transactions also underlie numerous of the overt acts in count one.

we must follow regarding military product.  I will not quote without knowing these answers from the beginning.

<u>See</u> Exhibit 3.  Sundar responded to Jaimes' e-mail and stated that the end-user of the items would be HAL in India.  <u>Id</u>.  No sale resulted from this inquiry.

On December 2, 2002, Sundar sent an e-mail to Jaimes requesting a price quotation for 10 model WS512K32N-17H1QA SRAMs.  <u>See</u> Exhibit 4.  Jaimes again demanded an end-user statement, and, on May 7, 2003, Sundar finally provided White with an end-user statement that purported to be from the "Naval Physical & Oceanographic Laboratory" ("NPOL") in Kochi, India, and that claimed that the SRAMs were "to be used for the development of electronic hardware for oceanographic instrument measuring the ocean parameters for our own use."  <u>See</u> Exhibit 5 at p. 2.  The end-user statement was signed by a Mr. T. Sreeprakash.  <u>Id</u>.  After receiving the statement, White shipped the SRAMs to Cirrus on May 23, 2003.  Cirrus' records show that the real customer for the product was VSSC and that Cirrus Singapore re-exported the SRAMs to VSSC upon their arrival in Singapore.  There was no license for this export.

In August 2003, Sudarshan and Sundar contacted Jaimes about purchasing a different model of SRAM.  On this occasion, they disclosed that VSSC would be the end-user.  Jaimes replied by e-mail dated August 15, 2003:

Sudarshan,

You have requested pricing for VSSC (Vikram Sarabhai Space Center) and they are listed on the [Department of Commerce] Entity list.  Before an order can be place [sic] we will need US Department of Commerce approval prior to commitment.  I cannot accept an order for product that is being shipped to them without a valid export license and for this reason I will not quote.

<u>See</u> Exhibit 6 at p. 3.  Later the same day, Jaimes sent an e-mail to Sundar in which he advised

-12-

Sundar:

> I have yet to see the U.S. government release a license for any company listed on the entity list. This is not a license that you apply for it is one that I must receive before we can accept an order for VSSC. It takes months to get one of the licenses, and I repeat I cannot officially accept the order until I have the license.

Id. at p. 2.[11]  In response to Jaimes' e-mail concerning the need for Department of Commerce approval, Sudarshan informed him as follows:

> We will also inform and impose the same condition to our customers. If the license is not approved, neither you nor cirrus will have any bearing on the order. This condition is also imposed as the part of the quote.
>
> Mostly customers like VSSC are fully aware of the licensing situation.
>
> You may send us your bid and repeat . . . the order from us can be accepted only upon the license. The delivery from your end start only from the license.

Id. at p. 1. Cirrus never followed through with the order.

However, despite Jaimes' warnings about VSSC in his August 15, 2003, e-mails, three days later, on August 18, 2003, Sundar faxed White a purchase order for an additional 10 WS512K32N-17H1QA SRAMs. See Exhibit 7. Once again, Sundar included an end-user statement that purported to be from NPOL and that claimed that NPOL would use the SRAMs "for the development of electronic hardware for oceanographic instrument measuring the ocean parameters for our own use." Id. at p. 3. White shipped the SRAMs to Cirrus Singapore on September 27, 2003. As with the previous shipment, Cirrus' records show that the true recipient of the SRAMs was VSSC. And, again, there was no license for this export.

In May 2004, Sundar and Gopal sent White requests for quotation for 30 WS512K32N-

---

[11] Unless otherwise noted, FBI agents have found all of the e-mails addressed to Sundar on Sudarshan's laptop.

17H1IA SRAMs, which is another controlled model of SRAM that White produces. <u>See</u> Exhibit 8. As before, Jaimes asked for an end-user statement. <u>Id</u>. at p.4. Sundar responded in a May 20, 2004, e-mail that:

> The End use is NPOL and the application of use is for the development of electronic hardware for oceanographic instrument measuring the ocean parameters of their own use. We can get you the End user certificate at the time of the order.
>
>           * * *
>
> We hope that we have cleared your doubts and we also understand your concern with commerce dept of USA.

<u>Id</u>. at p. 3. On September 22, 2004, Sundar faxed Jaimes the end-user statement, which was identical to the NPOL certificates that Cirrus had provided for the two previous shipments. <u>See</u> Exhibit 9.

In September 2004, Sundar also sent White an order for some additional WS512K32N-17H1QA SRAMs. On this occasion, Sundar disclosed that the products were for VSSC. Although it may seem at odds with the purpose of the conspiracy for Cirrus to have told White that the SRAMs were for VSSC, Cirrus' conduct is understandable in light of the fact that the Department of Commerce had recently proposed easing the sanctions as to VSSC, and a change in the regulations was imminent. Notwithstanding any possible change in the rules, Jaimes, in an e-mail dated September 20, 2004, advised Sundar that:

> I have reviewed the End Use statement with management and it has come to our attention that Vikram Sarabhai Space Centre (VSSC) in on the Bureau of Industry and Security's (BIS) Entity List. This means I cannot accept this order without a valid export license. A valid export license from BIS must [sic] in place before I can accept this order.

<u>See</u> Exhibit 10.

Sundar replied to Jaimes with an e-mail dated September 28, 2004, in which he stated,

"We are now sending you the relaxation of the export ruling of the US Gov't for your reference .

. . Hence may we request you to process the order and send us your confirmation and order

acknowledgment." See Exhibit 11.  Sundar also attached to the e-mail a pdf version of the

September 22, 2004, Federal Register notice announcing the change in the sanctions as to

VSSC.[12] Id.

Jaimes noticed that the SRAMs that Cirrus now was seeking to acquire on behalf of

VSSC were identical to those that Cirrus had previously represented, through end-user

statements, were going to NPOL.  Acting on his suspicion, Jaimes contacted a White

representative in India and requested her to inquire with NPOL about the end-user certificates.

The representative soon reported back that she had spoken with both Mr. Sreeprakash, who

purportedly had signed the certificates, and with another official at NPOL.  They advised her that

the end-user certificates that Cirrus had supplied White were forgeries and that NPOL had never

purchased SRAMs from Cirrus.

On September 29, 2004, Jaimes sent an e-mail to Sundar.  He first informed Sundar that

the change in the regulations as to VSSC did not affect the requirement for a license approving

---

[12]  The fact that Sundar had available to him the Federal Register notice – which agents also found on Sudarshan's laptop – demonstrates that Cirrus kept careful track of the regulations governing their Indian customers.  In addition, the text of the amended regulation made it clear that VSSC remained on the Entity List and that all items subject to the EAR continued to require a license for export to VSSC except for those having a classification of "(1) EAR 99 or (2) a classification where the third through fifth digits of the ECCN [Export Commerce Control Number] are '999', e.g. XX999."  See India: Removal of Indian Entity and Revision in License Review Policy for Certain Indian Entities; and a Clarification, 69 Fed. Reg. 56,693, 56,695 (to be codified at 15 C.F.R. Part 744).  The ECCN for the White SRAMs, as described on the invoices to Cirrus (see, e.g., Exhibit 12) was 3A001 and thus did not fall within the change in the regulation.  As noted above, Jaimes also told Sundar that the change in the regulations did not apply to the products that White was selling to Cirrus.

-15-

the export of the company's SRAMs to VSSC.

> [We] cannot sell you product to VSSC without the proper licensing, the change [in the regulations] that has been does not apply to [our] product. I cannot accept an order from VSSC at this time.

See Exhibit 13 at p.3.[13]  He then told Sundar what he had learned from NPOL.

> I recently received PO CIR/1930 from your office with an end use statement from Naval Physical & Oceanographic Laboratory (NPOL). I asked my representative in India to contact NPOL to verify that this is a valid end use statement. They contacted T Sreeprakash, which is the name listed on the end use statement provided. Mr. Sreeprakash was very upset with the misuse of the end use certificate which may have been provided earlier for some other product/component. Again Mr. Sreeprakash has confirmed that he has not issued any end use certificate to Cirrus Electronics.

> [White] has come to the conclusion that we no longer want to do business with Cirrus Electronics. I feel it is my duty to report Cirrus Electronics to the Bureau of Industry and Security department (U.S. Dept. of Commerce).

Id.  Sudarshan responded to Jaimes' e-mail the next day, September 30, 2004, stating:

> I take moral responsibility, without shrinking and without passing on to any of my past or present members. May I seek with you to grant us 15 days time to find out the fact on this case and revert to you.

Id. at pp. 2-3.

Although Sudarshan claimed to Jaimes that he wanted to ferret out any wrongdoing, the

instructions he gave his co-conspirators that same day were much different and were highly

incriminating:

> 1) On reading the emails from Jaimes, do not get panic. At the end of the game, it is I . . . who need to face the music;

> MG: You are not the owner of Cirrus LLC; Members will not be affected . . . Besides, I am moving over to USA to take control on such crisis. . Hence, do not fear about anything. . It is all business Games and come what may be the results,,, Detach ourselves from the results.. We concentrate on actions only.

---

[13]  The chain of e-mails that comprise Exhibit 12 was found on Sudarshan's laptop.

2) TO AKN:

New Head ache for New CEO . . . .  Do not worry, if we apply our thoughts in professional way..

The actions are as follows:

a) Please call [co-conspirator S.K.]; You and SK may go to VSSC and explain them that our intention is not to make profit on this order but to service VSSC. .

b) Ascertain if VSSC has got some clout over NPOL....  We need not indulge full details to them..

* * *

d) We meet NPOL also and explain them so that we do not dent our business with them also....

* * *

It is veil threat of [White to go to the Department of Commerce]; There are 1000 such companies and 100,000 complaints..

As mentioned to you earlier, [the Department of Commerce] came to Simal [another Singapore company] to many other distributors in Singapore and just cautioned them only.  In our case, it is not that..

See Exhibit 14.

On January 10, 2005, Sudarshan sent another e-mail to Jaimes in which he admitted that the NPOL end-user certificates were false and blamed the incidents on overeager employees in India who, in the future, would be better supervised.  See Exhibit 15.  Sudarshan also proposed going forward with the SRAM orders with accurate end-user certificates from VSSC.  Neither Jaimes nor anyone else at White responded to Sudarshan's e-mail, and White had no further dealings with Cirrus.[14]

---

[14]  Jaimes never reported Cirrus to the Department of Commerce.

Cirrus still had an outstanding order for SRAMs with VSSC.  In January 2005, Prasad and Shankar Kulkarni, Cirrus India's Director of Marketing, visited VSSC and made a proposal to substitute SRAMs manufactured by a company known as Austin Semiconductor, Inc. ("Austin"), for the White SRAMs.  The two companies' products were equivalent.  On February 1, 2005, Kulkarni sent an e-mail to Sudarshan and Prasad, informing them, "Good news. [Austin] part offered to VSSC are [sic] acceptable."  See Exhibit 16 at pp. 2-3. And, on April 5, 2005, VSSC formally amended its purchase order with Cirrus to permit Cirrus to supply the Austin parts in place of the White SRAMs.[15]  Id. at p.6.  In November 2005, VSSC gave Cirrus purchase orders to obtain 90 additional 5962-9461110HTA SRAMS and 150 5962-9560004MXA SRAMS.[16]

Cirrus was able to acquire the Austin SRAMs from All Tech Electronics, which is located in Elmsford, New York.  Unlike Jaimes at White, the sales representative at All Tech did not ask any questions about whether Cirrus was purchasing the products for export.  Accordingly, All Tech shipped the items to Cirrus U.S.A. in South Carolina.  From there, Cirrus sent them to Cirrus Singapore, which in turn transshipped the SRAMs to VSSC in India.  The exports occurred on March 24, 2006, and April 17, 2006.  Cirrus did not obtain an export license for either of the shipments.

---

[15]  The Austin model of SRAM that was equivalent to the White SRAMs was the 5962-9461110HTA.  Like the White SRAMs, it needed a license for export to VSSC.

[16]  The 5962-9560004MXA was another type of SRAM manufactured by Austin that was subject to Department of Commerce control.  Exports of this model of SRAM to VSSC required a license at all times.

## 2.    Cirrus' Dealings with Interpoint

Sudarshan's and Cirrus' interactions with a company in Redmond, Washington, known as Interpoint  provide additional evidence that the defendants knew about the restrictions on VSSC and that restrictions on exports to VSSC remained in place even after the Department of Commerce eased the sanctions on that entity.

Beginning in 2002, Cirrus began purchasing AC/DC converters and electronic filters from Interpoint.  The Department of Commerce classified these items as EAR 99.  Cirrus had Interpoint ship the products it purchased to Singapore.  In one instance in 2003, Interpoint requested an end-user statement for a shipment of converters and filters, and Sudarshan provided one that stated that the end-user was "IRIS-India" and that the end-use was "data acquision [sic] for [Advance Light Helicopter]."  See Exhibit 17.  Interpoint did not apply for a license for this order.  There was nothing that indicated to Interpoint that either this order or any of the other exports to Cirrus up to this point required a license.

At the end of August 2004, approximately a month before the Department of Commerce eased the sanctions as to VSSC, Cirrus placed an order – one that was similar to the 2003 order described in the preceding paragraph – for additional filters and convertors, and Sudarshan provided an end-user statement that disclosed that VSSC was the customer for the products.  See Exhibit 18.  This was the first time that Cirrus indicated to Interpoint that VSSC was a customer. The end-user statement also stated that the goods were to be used "[f]or instrumentation and telemetry systems of the Indian National Satellite programme for telecommunication, weather forecasting, disaster warning, etc."  Id.  Despite the imminent relaxation of the regulations to permit exports of EAR 99 commodities to VSSC, Interpoint insisted on filing for an export

-19-

license with the Department of Commerce.  On December 7, 2004, the Department of Commerce

denied the application because of the end-use of the goods.  Interpoint notified Cirrus of the

denial.

Cirrus continued to place orders with Interpoint on behalf of VSSC.  On receipt of these

orders, Interpoint filed license applications with the Department of Commerce.  When

Sudarshan, in December 2005, expressed annoyance about the delays the licensing process

created, Maddie McNelley, International Inside Sales Manager for Interpoint, responded to him

as follows:

> [Cirrus' orders] will also require export licenses based on the information we received
> from you as to the application and end customer.  Per Export Administration Regulations,
> part 744.3:
>
> "Restrictions on certain rocket systems (including ballistic missile systems and space
> launch vehicles and sounding rockets) and unmanned air vehicles (including cruise
> missile systems, target drones and reconnaissance drones) end-uses."
>
> I hope that this explains further the need for DOC licenses.

See Exhibit 19 at p. 1.  The Department of Commerce again denied the new license applications

because of the end-use of the products.[17]

---

[17] A search of records at the Department of Commerce has revealed that there never has been
a license issued for any Cirrus export to VSSC.  Notwithstanding the restrictions on exports to VSSC
and the difficulties Cirrus encountered when Interpoint tried to get licenses for the company's
exports to that entity, Prasad wrote to Sudarshan in an e-mail dated November 30, 2005:

> VSSC is now our A+ Customer – All Enq/Orders are received at our office – Avg VSSC Enq
> 15 to 20 per month – Need to look at increasing this mamoth [sic] opportunity to orders –
> Current booking $260K – Another $100K should come by Dec – should aim at min $500K
> to $750K for 2006.

See Exhibit 20.

-20-

### 3. Additional Evidence of Sudarshan's Knowledge of the Entity List and the Restrictions on VSSC and BDL

Additional proof that Sudarshan acted willfully in violating IEEPA and the EAR includes the following:

- On July 14 and 15, 2005, Ghirish Shastri, Cirrus Singapore's Marketing Manager, attended a seminar in Bangalore, India, that the Department of Commerce presented under the title "Strategic Trade Controls." The course covered the entire range of export restrictions, including those found both in the EAR and in the ITAR. Course participants received a large three-ring binder of materials. On May 9, 2006, FBI agents searched Sudarshan's belongings when he re-entered the country at Detroit Metropolitan Airport. In one of Sudarshan's bags, agents found the three-ring binder from the Strategic Trade Controls course. There was a section of the notebook devoted to the Entity List. In addition, a pocket of the notebook contained notes that Shastri had taken during the course. The notes included references to State Department controls. They also contained the ECCN for most of the types of electrical components that Cirrus was acquiring for its customers in India – that is, ECCN 3A001. Again, it is clear from the Entity List that items falling within the ECCN 3A001 classification need a license for exports to VSSC. When FBI agents searched Suddarshan's home on March 23, 2007, they found the same three-ring binder.

- On September 16, 2005, Sudarshan, at the request of Avnet, Inc., a vendor in Hauppage, New York, signed a "Statement of Assurance," which provided:

  > We acknowledge that products (or technical data) to be purchased from **Avnet, Inc.**, include or may include products which are subject to export control laws and regulations of the United States.

  > We hereby certify that all sale, transfer, consignment, loan or donation of products and/or technology acquired from Avnet, Inc., made directly or indirectly outside the United States are made in full compliance with all applicable export control laws and regulations.

  See Exhibit 21. Within two weeks of Sudarshan's signing the "Statement of Assurance," on September 30, 2005, Cirrus exported capacitors that it had purchased from Avnet to BDL.[18]

---

[18] Shipments to BDL underlie counts four, five, six, and eight of the indictment. The components that Cirrus sent BDL – resistors, capacitors, rectifiers, and semi-conductors – all had applications in missile guidance and firing systems.

- On February 10, 2006, Sudarshan had a telephone conversation with a representative of Bharat Electronics, Ltd. ("BEL").  Sudarshan was trying to solicit business from BEL, which previously had been on the Entity List.  During the conversation, Sudarshan observed to the BEL official that, during the sanctions period, Cirrus supported BEL "very heavily" and that the "orders, like, flew, like, you know, like, as though – it was flowing like water."  See Exhibit 22 at p. 10.  Sudarshan also commented that, "[W]e supported Bharat Electronics or Bharat Electronics supported us in a very-very strong way . . .  I mean, because of the embargo and other issues, we were able to get most of the orders from Si – uh – from, uh, Singapore office."  Id. at p. 6.

### B.    Evidence of Willful Violations of AECA and the ITAR

#### 1.    The Wamco Transaction

Sudarshan's dealings with a company in Fountain Valley, California, known as Wamco provide good proof not only of his knowledge that electrical components for military aircraft are subject to the ITAR, but also of his intent to evade the ITAR's controls.  In addition, Wamco put Sudarshan and his co-defendants on notice that the State Department considers India a sensitive country and that exports of defense articles to India receive special scrutiny during the licensing process.

Wamco is the largest manufacturer and seller in the United States of lighting for cockpit control panels.  It also makes filters that block out the light rays that interfere with night vision goggles.  Use of the filters permits a pilot wearing night vision goggles to operate a plane.

In September 2003, Cirrus placed an order with Wamco for 200 night vision filters.  Cirrus had yet to open its South Carolina office, so the items were to be shipped to Singapore.  Wamco, through its Vice President of Operations, Nancy Louie, responded by informing Sudarshan that Wamco needed to get a license from the State Department before it could export the parts and that Cirrus had to supply an end-user statement.  See Exhibit 23.

A short time later, after Gopal had opened the South Carolina office, Cirrus approached a company in Hudson, Florida, called Milco and had Milco place the identical order with Wamco. The problem for Cirrus was that, on its purchase order form to Wamco, Milco crossed out its address and wrote in Cirrus' name and address.  See Exhibit 24  It also added a notation that Cirrus' FedEx account was to be billed for the shipping.  Wamco refused to fill the Milco order, and Louie informed Sudarshan that Wamco would make no sale of the filters until the State Department had approved the license.  Sudarshan, both in e-mail messages and in phone calls, complained to Louie about how the delay was interfering with production at Cirrus' customer.[19] He suggested that Wamco send 50 to 100 parts immediately and then provide the remaining portion of the order after the license was approved.  See Exhibit 25.  Louie again refused to make any export in the absence of a license.  Id.

The license application process took several months.  Both Sudarshan and Gopal continued to complain to Wamco.  On April 8, 2004, Teri Ruddle, Wamco's Compliance Officer, sent Sudarshan and Gopal the following e-mail:

> I apologize but I did not receive your message earlier in the week; however, I did receive a call from the State Department Licensing Agent this afternoon.  Due to the fact that the end user is in India, which is considered a sensitive country to conduct business with, our application will now have to go through an extensive approval process called "staffing".  In the past, this has added many weeks to the acceptance timeframe.  I know this is not the type of response your were hoping for, but our hands are tied.  We cannot move forward without authorization from the US Dept. of State.  I will let you know if I am informed of any progress.

See Exhibit 26 at p. 1.[20]

---

[19]  Cirrus claimed that HAL was the end-user of the filters.

[20]  This e-mail was found on Sudarshan's laptop.

On May 13, 2004, the State Department approved the license for the export of the night

vision filters.[21]  Sudarshan sent an e-mail to Ruddle thanking her for her efforts, but again he

complained about the delay.  Ruddle responded:

> First of all I would like to point out that this EXTREMELY LONG application approval
> was due to the end user location of India.  Common turnaround for non-sensitive country
> shipments are [sic] about 30 days.

See Exhibit 27 at p. 3.  After the State Department issued the license, Sundar and Gopal

contacted Wamco about having the items sent to South Carolina rather than to Singapore.

Ruddle informed them by e-mail as follows[22]:

> After discussing this shipping procedure with my supervisor, we have determined it is not
> possible to ship to your US location.  We are the named exporter on the license and are
> responsible for providing all proper documentation with the shipment.  Wamco provides
> very specific information regarding content of package, date of export, and port of export.
> If we were to send the package to you first, we would not have control that the licensed
> shipment conformed to the US Customs and State Department guidelines.
>
> If you are registered with the State Department as an exporter, we can ship product to you
> in the future.  At that point you would be responsible for obtaining the export license and
> forwarding the product internationally.  If you are not registered, we will have to continue
> to ship product directly from our location.

See Exhibit 28 at p. 1.  Although after the export of the night vision filters Cirrus sought price

quotations from Wamco, it made no further purchases from the company.  Nor did it ever register

with State Department as an exporter of defense articles.  Ruddle's last communication with the

company was to e-mail it the link to the DDTC homepage.  See Exhibit 29.  The export of the

---

[21]   Based on reviews of the files at both the State Department and the Department of
Commerce, the Wamco shipment is the only Cirrus export for which a license ever has been
obtained.

[22]   Agents also found this e-mail on Sudarshan's laptop, as well as all of Ruddle's other
communications with the various Cirrus employees.

night vision filters to Cirrus is the only export in which Cirrus was involved for which there is a license on file with either the Department of Commerce or the State Department.

## 2.    **Additional Evidence**

On February 10, 2006, Sudarshan had a telephone conversation with a sales representative at Avnet concerning a part manufactured by a company called Actel that Cirrus was trying to acquire for a customer in India. When the sales representative asked where the product was going, Sudarshan said that it would go to Cirrus' office in Singapore and then probably to India. See Exhibit 30 at p. 1. At that point, the sales representative told Sudarshan that the part was a military item and "very restricted" and that it would be a federal offense for Sudarshan to export it from the United States. Id. at 2-3. Sudarshan proposed that Cirrus U.S.A. could get a license to export it, but the sales representative declined to rely on Sudarshan's assurances that he would get a license. Id. at 2. The sales representative told Sudarshan that there would be "no exportation of this product." Id. at 3. He also said to Sudarshan, "I am not going to go to jail – for this . . . And I don't think you want to go to jail for this either." Id. at 4.

## 3.    **Evidence of Willfulness in the Export of the i960 Microprocessors to ADE**

In December 2002, Cirrus received a request for a price quotation from ADE for 500 Intel i960 microprocessors for use in the Tejas Light Combat Aircraft. In April 2003, ADE agreed to purchase the microprocessors from Cirrus for approximately $500,000. As noted above, Cirrus was to acquire the i960 microprocessors from REI and was to have REI perform a series of tests on the products. The application of the i960 microprocessor in the Tejas is as an onboard computer in the plane's navigation and weapons guidance systems. The i960 is thus classified as

a defense article on the Munitions List, and any export of the i960 requires a license from the

State Department.

Sudarshan was aware of the application of the i960 in the Tejas aircraft. On October 19,

2005, Prasad sent an e-mail to Sudarshan in which he discussed an opportunity to supply

microprocessors for another Government of India fighter jet program. Prasad wrote:

> [A Cirrus associate] received a good enquiry to develop WCS (Weapon control System)
> for Jaguar Aircraft.
>
> The WCS consists of a micro controller/micro processor based on logic system with
> relays to ensure outputs are generated to release various stores (armaments) based on
> inputs coming from NAVWASS [Navigation and Weapon-Aiming Sub System] and pilot
> settings.
>
> To start with we need to identify a Microcontroller/microprocessor cleared for Military
> Airborne use, like the Intel i960. i960 may be an overkill for this project.

See Exhibit 31.

.    In February 2004, Sudarshan and an official from the Government of India visited REI in

Massachusetts for the first round of tests of the i960 microprocessors. Sudarshan had previously

told REI that the items were going to Singapore. During the visit, REI's sales representatives for

the transaction – Judith Zima and Paul Gerrish – wanted to know from Sudarshan what Cirrus

would do with the parts once they arrived in Singapore. Sudarshan assured them that the

microprocessors would remain in Singapore. He claimed that they were for a joint project that

the Government of India was doing with Lockheed Martin in Singapore. That representation was

false. The FBI has spoken with representatives from Lockheed Martin. The company has no

such joint project with India in Singapore. Moreover, documents and communications obtained

during the investigation show that the microprocessors went to ADE in India. On February 7,

-26-

2004, REI shipped 377 of the i960 microprocessors to Singapore.  The company did not obtain a license from DDTC for this export.

The shipment of the remaining 123 microprocessors occurred on October 13, 2005.  With respect to this export, REI placed the responsibility for complying with any licensing requirements on Sudarshan and Cirrus.  Cirrus made no effort to get a license for the export and made no inquiries about the need for a license with either the Department of Commerce or the State Department.  It goes without saying that neither agency issued a license.

### IV.    Evidence of Acting as an Illegal Agent of a Foreign Government

In arranging for the testing, purchase, and export of the i960 microprocessors, Sudarshan was in frequent contact with an Indian government official in the United States concerning the details and the coordination of the transactions.  See Exhibit 32.  He had similar contacts with an ADE official who traveled to the United States to oversee the second round of testing at REI.

VSSC, BDL, and ADE are all parts of the Indian government.  In procuring electrical components for these entities, Sudarshan and the other co-conspirators were in frequent consultation with Indian government representatives and were constantly acting at their direction and behest.

Moreover, when FBI agents interviewed Sudarshan after his arrest, he admitted to them that he had been acting as an agent of the Government of India.  A check of records at the Department of Justice has revealed that Sudarshan never has notified the Attorney General that he is an agent of the Government of India.

## Argument

### Under the Factors Set Forth in 18 U.S.C. § 3142(g), the Government Has Demonstrated by Substantially More Than a Preponderance of the Evidence that Sudarshan Is a Flight Risk

### I.    Nature and Circumstances of the Offense Charged

Trafficking in ballistic missile components and Munitions List items is by definition extremely serious.  The Entity List exists as a nuclear non-proliferation control.  The unrestricted access to such goods by a nation like India that refuses to join non-proliferation agreements and put its nuclear and ballistic weapons programs under international oversight poses a national security threat and upsets regional stability.

The seriousness of Sudarshan's offenses is reflected in the fact that the base offense level under the advisory guidelines for both the IEEPA and the AECA counts is 26.[23]  See U.S.S.G. §§ 2M5.1(a)(1)(A) and 2M5.2(a)(1).  By the government's calculations, which also factors in a four-level leadership enhancement under § 3B1.1(a), Sudarshan's advisory sentencing range after conviction is 97-121 months.  The likelihood of a lengthy sentence, and the incentive it gives Sudarshan to flee, is one of many factors supporting detention here.

The crimes here are serious within the meaning of § 3142(g)(1) even though they are not crimes of violence or terrorism, narcotics offenses, or crimes involving a firearm or minor victim.  By its express terms, § 3142(g)(1) focuses on "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or

---

[23]    As further evidence of the seriousness of the IEEPA violations, on March 9, 2006, Congress amended the penalty provision of IEEPA (50 U.S.C. § 1705(b)) to change it from a 10 year felony to a 20 year felony.  Three of the IEEPA counts here – counts seven, eight, and nine – reflect conduct that occurred after the change in the penalty.

involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18

U.S.C. § 3142(g)(1) (emphasis added).  By its use of the word "including" in the language quoted

above, Congress intended that the question of whether a defendant's conduct falls into one of the

categories identified in the statute be simply one of the measures – but not the sole measure – of

the seriousness of the charged crime.

    In United States v. Khalid Mahmood, Cr. No. 04-365 (RCL) (D. D.C. October 19, 2004),

Judge Lamberth considered a defense argument that an export offense was not serious enough to

warrant detention.  See Mahmood slip opinion, attached as Exhibit 33, at p. 3, n.1.  Mahmood

had been charged with violating IEEPA and the Iranian Transactions Regulations, 30 C.F.R. Part

560, by transshipping parts for heavy equipment forklifts to Iran through the U.A.E.  Id. at 2.

Judge Lamberth rejected the argument that an export violation is not sufficiently serious a crime

to permit detention.  Id. at p. 3, n.1.  Although Mahmood's violations of the U.S. embargo

against Iran were serious, he dealt in purely civilian commodities.  Here, by contrast, Sudarshan

has unlawfully exported the brains of an airborne weapons guidance system and key components

for ballistic missiles.  In comparison to Mahmood, Sudarshan's crimes are more serious by a

magnitude of degrees.[24]

---

[24]  In United States v. Karni, 298 F. Supp.2d 129 (D. D.C. 2004), Chief Judge Hogan took
a different view of the seriousness of an export violation for purposes of applying § 3142(g)(1),
relying solely on the fact that such an offense is neither a crime of violence nor a crime involving
narcotics.  291 F. Supp.2d at 131. Like Sudarshan, Karni had been charged with violating nuclear
non-proliferation controls.  Id. at 130.  Nevertheless, there are several reasons why Karni should not
control here.  First, the government in Karni had filed a motion to reconsider the ruling and had
provided the Court with a textual analysis of § 3142(g)(1).  However,  Chief Judge Hogan never had
an opportunity to rule on the motion, because, upon his arrival in the District of Columbia, Karni
began cooperating with the government and agreed to remain detained as part of his cooperation.
Another significant difference between Karni and this case is that, in Karni, the defendant was, at
the time of his arrest, only charged by way of complaint.  Sudarshan, by contrast, has been charged

Of particular importance to Judge Lamberth's ruling was the Ninth Circuit's decision in

United States v. Townsend, 897 F.2d 989 (9th Cir. 1990), in which the court of appeals, in

upholding the denial of bail in a prosecution of EAA violations, stated:

> Although neither violence nor the distribution of drugs are charged, the accusations are of sophisticated criminal conduct, whose successful completion required the ability to travel internationally, to adapt easily to foreign countries, and to move assets and individuals quickly from one country to another.

897 F.2d at 994.

The Townsend court's description of the export conspiracy in that prosecution is equally

apt here.  As set forth in the government's detailed factual proffer, Sudarshan was the

mastermind behind a sophisticated scheme to evade the restrictions that the United States places

on exports to Entity List organizations in India and on exports of Munitions List items.  The

conspiracy involved the use of companies in the United States, Singapore, and India to conceal

the true destination of Cirrus' exports.  It involved the creation of forged end-user certificates and

false representations to vendors.  Sudarshan himself frequently travels for extended periods of

time among the United States, Singapore, and India.  In fact, approximately a week before his

arrest, Sudarshan returned to the United States after an extended trip to Asia.  He therefore has

great facility in functioning abroad.

---

in a detailed 15-count, 31-page indictment.  In addition, Sudarshan, unlike Karni, has been charged with being an illegal agent of a foreign government and has had close contact with Government of India officials both in the United States and in India.  There is the added risk here that those individuals could seek to aid Sudarshan in making good his escape.  Last, Karni's request for bail was accompanied by over forty letters attesting to his good character, including letters from prominent religious leaders in Israel and South Africa.  It is important to note that, even in releasing Karni, Chief Judge Hogan imposed significant conditions on him: Karni had to post $100,000 of his own funds in addition to $75,000 that a family friend had posted; he had to reside in a facility that had previously housed defendants for this Court and that had committed to keep him under 24-hour watch; and he had to submit to electronic monitoring.  Id. at 133.

-30-

Moreover, the government has identified the following accounts overseas to which Sudarshan has access and could use to finance, at least initially, being a fugitive:

| | |
|---|---|
| Indian Bank (an Indian bank with a branch in Singapore): | Account 7241-161-005-411 |
| DBS (an Indian bank with a branch in Singapore): | Account 082-227446-0 (and a credit card) |
| ICICI Bank (an Indian bank with a branch in Singapore): | Account 612 5011 50077 |
| United Overseas Bank (Singapore) | Account 977-342-857-0 |

Sudarshan also owns an apartment in Singapore.  According to his wife, who was interviewed on the day of Sudarshan's arrest, the apartment is in Sudarshan's name and the couple's elder son resides there.

Another circumstance unique to this case that supports the conclusion that Sudarshan is a flight risk is his ties to Singapore, where he is a citizen.  Singapore's extradition treaty with the United States dates back to 1935, when that nation was a British colony.  See Exhibit 34.  The treaty is what is known as a "list treaty."  The only offenses that are extraditable are those that appear on the list of offenses set forth in the body of the treaty itself.  Export offenses do not appear on that list.  See id. at Article 3, pp. 3-4.  Within the past year, the Department of Justice, through its Office of International Affairs ("OIA"), has requested extradition of a defendant from Singapore on export charges.  According to OIA, the Singapore Attorney General's Chambers notified it that the export crimes were not extraditable offenses and that Singapore could not extradite the defendant.  Thus, if Sudarshan were to be able to get to Singapore, he could avoid prosecution here.[25]

---

[25] At the initial appearance here, Sudarshan's counsel argued that, because the government has Sudarshan's passport, he would be unable to leave the country.  The government is averse to giving Sudarshan a roadmap on how to flee.  But it makes three observations.  First, according to ICE, although the government is generally good at tracking when people enter the country, it is more difficult to track departures, particularly at overland crossings.  Second, both Singapore and India

Sudarshan also would likely find a safe harbor in India, where he has access to bank accounts, business interests, and family.  India has a modern extradition treaty with the United States.  It makes an offense extraditable so long as "it is punishable under the laws in both Contracting States by deprivation of liberty, including imprisonment, for a period of more than one year . . . ."  Extradition Treaty between the Government of the United States of America and the Government of the Republic of India, art. 2, ¶ 1.  However, the offense for which either nation is seeking extradition must be a crime in both countries or, put differently, there must be dual criminality.  India is not subject to the same nuclear non-proliferation treaties that give rise to the obligation of the United States to maintain the export controls on Entity List organizations.  It is the opinion of OIA that there is an absence of dual criminality with India for the charges in this case and that India would decline to extradite Sudarshan.  In addition, according to OIA, even when India has agreed to extradite a defendant to the United States, the process is very time consuming.  The United States is currently awaiting the extradition of a homicide defendant whose extradition this country requested in 1999.  The government should not have to risk waiting a decade and risk being unable to go forward with the prosecution in the future when Sudarshan already is here.

## II.    <u>The Weight of the Evidence against Sudarshan</u>

Without belaboring the lengthy discussion above of the evidence against Sudarshan, it is sufficient to say that the case against him is extremely strong.

---

have consulates across the globe.  Last, Sudarshan, unlike the ordinary fugitive, has close ties to officials within the Government of India.

III.    **Sudarshan's History and Characteristics**

Section 3142(g)(3)(A) lists numerous personal characteristics of a defendant that bear on the question of detention. Several of these characteristics, when analyzed here, also argue strongly for Sudarshan's continued detention.

The defense is undoubtedly going to stress letters it has obtained from Sudarshan's family and friends claiming that he is a person of good character. In a case where the evidence is ambiguous or weak, such testimonials can make a difference in assessing a defendant. But not here, where the evidence of Sudarshan's criminal conduct is so strong. One thing that the evidence the government has presented makes certain – there is a side to Sudarshan of which his friends and certain family members are ignorant. As with many white collar defendants, Sudarshan's public and private personas are not the same. Underlying the offenses in the indictment is web of cunning and deceit. There also is a callous indifference to the world community's controls on ballistic missile components and arms trafficking. Sudarshan's conduct here demonstrates that he is not a person to be trusted.

Contrary to the claims of Sudarshan's counsel at the initial appearance, if Sudarshan were to be released, he would be unemployed. The notion that he simply could go back to running Cirrus is ludicrous. Cirrus was the vehicle of his crimes. In any event, when agents executed search warrants in South Carolina on March 23, 2007, they seized approximately sixty boxes of records from the offices that Cirrus maintained at Sudarshan's and Gopal's residences. They also seized the company's computers. On March 26, 2007, Singapore Customs raided Cirrus' offices there. According to the FBI's Legal Attaché in Singapore, the Customs agents took a voluminous amount of records during the raid. Cirrus is effectively shut down. Moreover, the

-33-

Department of Commerce is in the process of issuing a temporary denial order against

Sudarshan, his co-defendants, and the Cirrus entities pursuant to §§ 764.6(c) and 766.24 of the

EAR.  The temporary denial order, which, according to the Department of Commerce, should be

issued within a matter of days, will strip Sudarshan, his co-defendants, and Cirrus of their export

privileges.  It also will make it unlawful for any other person or company to do business with

them in connection with any exports.[26]  Finally, when Sudarshan's L-1 visa expires on July 15,

2007, it will be illegal for him to work in the United States.

Another characteristic of Sudarshan that favors detention is that he appears to be a person

of means.  As his counsel conceded at the initial appearance, Cirrus has been a very successful

business.  In his conversation with the representative from BEL on February 10, 2006, Sudarshan

stated that Cirrus, a small company with low overhead, was doing "something around 3 million

dollars as our turnover."  See Exhibit 22 at p. 5.  Sudarshan drives a luxury car and lives in a big

house.  On December 1, 2006, he withdrew $205,251.81 from an account at Wachovia Bank.[27]

See Exhibit 35.  When FBI agents searched Sudarshan's belongings in May 2006, they found that

he was in possession of multiple credit cards.  During the search on March 23, 2007, agents

seized the most recent statements for four of Sudarshan's credit cards.  They showed that he had

following lines of credit available to him:

    Bank of America:      $4,848.86 (Exhibit 36)
    Bank of America:      $10,330.99 (Exhibit 37)
    Bank of America:      $3,509 (Exhibit 38)

---

[26]  Notwithstanding the temporary denial order, the government would seek as a condition of any release order a prohibition against Sudarshan engaging in any export activities.

[27]  The government does not yet have the documentation to determine the disposition of these funds.

-34-

American Express:    $13,407.41 (Exhibit 39)[28]

It is clear that Sudarshan has the means to finance his flight.  It is also significant that, in

Mahmood, Judge Lamberth rejected Mahmood's offer to post some property worth $160,00 as

security for his release.  See slip op. at 3.  When a defendant, like Sudarshan, has strong ties to

another country from which he cannot be extradited, even the loss of a large bond amount is a

small price to pay to secure his freedom from prosecution.  Id.  See also United States v. Epstein,

155 F. Supp.2d 323, 326 ("[A defendant's] forfeiture of $1 million worth of assets in the United

States would not deter him from flight when in Brazil he has significant wealth, a lucrative job,

the presence of his family, and insulation from ever being forced to stand trial.").

Although for a period of time, Sudarshan had ties to the United States, those ties are

rapidly vanishing.  His older son lives in Singapore and his younger son just joined his brother

there while he completes his compulsory military service.  Sudarshan's wife's visa will expire on

July 15, 2007, and she will have to return to Singapore.[29]  His immediate family members are

what bound him the most to the United States.  They soon will all be half a world away.

The government admits that, like most white collar defendants, Sudarshan has no prior

record.  However, that factor, standing alone, should not tip the scales in favor of release.[30]

---

[28]  Although this card is in Gopal's name, it was found at Sudarshan's home and bears his
address.

[29]  When Sudarshan's visa expires, ICE will parole him into the United States for purposes
of this prosecution and lodge a detainer against him.  When these proceedings conclude, ICE will
remove him from the country.

[30]  At the initial appearance, Sudarshan's counsel argued that Gopal's release conditions
should be a factor in ordering his release.  The treatment of a co-defendant is nowhere listed in
§ 3142(g) as a relevant factor in weighing detention.  Nor is the government aware of any case that
so holds.  The government notes that it did not acquiesce in the conditions that the Magistrate Judge

IV.    **Danger to the Community**

Sudarshan does not pose a danger to any member of the community in the United States. However, his unrestricted export activities would continue to pose a destabilizing threat to the world community at large.

---

in South Carolina imposed on Gopal.  It is filing a motion with Judge Urbina to modify her conditions of release to make them more stringent.  There are, however, certain important differences between Gopal and Sudarshan.  She is a lawful permanent resident and has a child in school in the Greenville area.  Her husband played no role in Cirrus, and he has a legitimate job in the software industry.  Moreover, although she is as equally culpable as Sudarshan, Gopal held a position in the Cirrus business that was entirely different from his.

## <u>Conclusion</u>

Sudarshan has been charged with very serious offenses, and the case against him is exceedingly strong.  Sudarshan has a strong motive to flee; he has the means to flee; and he has a place overseas (Singapore) where his closest family members will be, where he has property and bank accounts, and where he will find a safe haven from extradition.  Sudarshan also has been charged with being an unlawful agent of a foreign government (India) and he has strong contacts with representatives of that government.  The risk that he poses of fleeing is great.  The Court should grant the government's request to detain him pending trial.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610


By:     _____/s/_____
Jay I. Bratt
Assistant United States Attorney
Illinois Bar No. 6187361
National Security Section
Room 11-437
555 Fourth Street, NW
Washington, D.C.  20530
(202) 353-3602
Jay.Bratt@usdoj.gov

**<u>Certificate of Service</u>**

I, Jay I. Bratt, certify that I served a copy of the foregoing Government's Memorandum in

Support of Detention on Joseph W. Clark, counsel for the defendant, by e-mail to

jwclark@jonesday.com this 5th day of April, 2007.


_____/s/_____
Jay I. Bratt

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051 (RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | |
| | : | |
| **Defendant.** | : | |

**EXHIBITS TO GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

# EXHIBIT 1

U.S. Department of Homeland Security
P.O       850965
Mesq....e, TX 75185-0965

December 7, 2005



U.S. Citizenship
and Immigration
Services

Haynsworth Sinkler Boyd, P.A.
75 Beattie Place, 11th Floor
Greenville, SC. 29601

Petitioner: Cirrus Electronics
Beneficiary: Parthasarathy Sudarshan



File Number: SRC 05-225-53707 A98 868 135
Form: I-140 (first preference)

## NOTICE OF DECISION

The record indicates that you, the petitioner, are seeking classification of the beneficiary as a preference immigrant "multinational executive or manager" under Section 203(b)(1)(C) of the Immigration and Nationality Act (INA).

This Center has thoroughly reviewed your response to our intent to deny requesting evidence in support of your petition. Upon careful consideration, it is determined that the statutory criteria for the classification you are seeking do not match the qualifications presented in the evidence. Consequently, we are unable to approve your petition.

Upon initial review of the petition, it was determined that additional supporting evidence was required. On October 24, 2005, we asked you for W-2's for all employees for the years of 2002, 2003, and 2004. Also the Service requested copies of Form 941, Quarterly Tax Report, for each quarter in 2003, and 2004.

Counsel submitted a letter stating, "U.S. Company was not incorporated until December 2003, consequently there are no W-2 forms available for 2002 or 2003".

Counsel also submitted Form 941 for the first three quarters of 2005, the Forms submitted showed no payroll for these quarters.

When a company has a limited number of employees, it becomes questionable as to whether the beneficiary is acting primarily in a managerial or executive function. The Service may reasonably conclude in such a case that a wide range of daily functions associated with running a business will be performed and that these duties are unrelated to the definitions of manager or executive. Moreover, it is apparent that the actual time devoted to these functions would exceed that which is spent in purely managerial or executive duties for the company. Based on the evidence provided it cannot be assumed that the beneficiary is acting primarily in a managerial or executive function. Please not that this is the case when there is a limited number of employees, the case of Cirrus is even more apparent since they have no employees.

The record is not persuasive in demonstrating that the beneficiary has been or will be employed in a primarily managerial or executive capacity. It must be noted that the petitioner has not demonstrated that the beneficiary's primary assignment has been directing the management of the organization nor that the beneficiary has been directing or supervising a subordinate staff of professional, or supervisory personnel, who relieve him from performing nonqualifying duties.

www.uscis.gov

The Service is not compelled to dee.    .e beneficiary to be an executive or manag    .imply because he/she possesses an executive or managerial title.

You may appeal this decision to the Administrative Appeals Office, if you wish, by completing the enclosed Form I-290B with the correct fee. Your notice of Appeal must be filed within 30 days of this notice.

Thank you.

*Evelyn M. Upchurch*

Evelyn M. Upchurch, Director
Texas Service Center

EMU #0118

# EXHIBIT 2



**U.S. Department of Homeland Security**
20 Mass. Ave., N.W., Rm. 3000
Washington, DC 20529

**U.S. Citizenship
and Immigration
Services**

CIRRUS ELECTRONICS, LLC
ATTENTION: MYTHILI GOPAL
33 MARKET POINT DR.
GREENVILLE, SC 29607

FILE:         A98 868 135          Office: TEXAS SERVICE CENTER    Date:    MAR 3 0 2007
              SRC 05 255 53707

IN RE:        Petitioner:    CIRRUS ELECTRONICS, LLC
              Beneficiary:   PARTHASARATHY SUDARSHAN

PETITION:     Immigrant Petition for Alien Worker as a Multinational Executive or Manager Pursuant to
              Section 203(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(1)(C)

ON BEHALF OF PETITIONER:

KNOX H. WHITE
75 BEATTIE PLACE, 11TH FL.
GREENVILLE, SC 29601

INSTRUCTIONS:

This is the decision of the Administrative Appeals Office in your case. All documents have been returned to
the office that originally decided your case. Any further inquiry must be made to that office.

Robert P. Wiemann, Chief
Administrative Appeals Office

A98 868 135
Page 2

**DISCUSSION:** The preference visa petition was denied by the Director, Texas Service Center. The matter is now before the Administrative Appeals Office (AAO) on appeal. The appeal will be dismissed.

The petitioner is a limited liability company organized in South Carolina on November 19, 2003. It claims to be engaged in the business of selling electronic components worldwide and seeks to employ the beneficiary as its president and chief executive officer (CEO). Accordingly, the petitioner endeavors to classify the beneficiary as an employment-based immigrant pursuant to section 203(b)(1)(C) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1153(b)(1)(C), as a multinational executive or manager. The director determined that the petitioner failed to establish that the beneficiary would be employed in the United States in a managerial or executive capacity and denied the petition.

On appeal, counsel disputes the director's conclusion and submits a brief in support of his arguments.

Section 203(b) of the Act states in pertinent part:

> (1) Priority Workers. -- Visas shall first be made available . . . to qualified immigrants who are aliens described in any of the following subparagraphs (A) through (C):

> \*     \*     \*

>> (C) Certain Multinational Executives and Managers. -- An alien is described in this subparagraph if the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States in order to continue to render services to the same employer or to a subsidiary or affiliate thereof in a capacity that is managerial or executive.

The language of the statute is specific in limiting this provision to only those executives and managers who have previously worked for a firm, corporation or other legal entity, or an affiliate or subsidiary of that entity, and who are coming to the United States to work for the same entity, or its affiliate or subsidiary.

A United States employer may file a petition on Form I-140 for classification of an alien under section 203(b)(1)(C) of the Act as a multinational executive or manager. No labor certification is required for this classification. The prospective employer in the United States must furnish a job offer in the form of a statement which indicates that the alien is to be employed in the United States in a managerial or executive capacity. Such a statement must clearly describe the duties to be performed by the alien.

The primary issue in this proceeding is whether the beneficiary would be employed in a managerial or executive capacity.

Section 101(a)(44)(A) of the Act, 8 U.S.C. § 1101(a)(44)(A), provides:

A98 868 135
Page 3

The term "managerial capacity" means an assignment within an organization in which the employee primarily--

(i)     manages the organization, or a department, subdivision, function, or component of the organization;

(ii)    supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

(iii)   if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(iv)    exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.  A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

Section 101(a)(44)(B) of the Act, 8 U.S.C. § 1101(a)(44)(B), provides:

The term "executive capacity" means an assignment within an organization in which the employee primarily--

(i)     directs the management of the organization or a major component or function of the organization;

(ii)    establishes the goals and policies of the organization, component, or function;

(iii)   exercises wide latitude in discretionary decision-making; and

(iv)    receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

In support of the Form I-140, the petitioner provided a letter dated December 14, 2004, which contained the following information regarding the beneficiary's proposed employment in the United States:

[The beneficiary] oversees all financial, management and administrative duties within the new U.S. facility.  He exercises substantial discretionary decision-making authority for all corporate operating policy and strategy.   Additionally, he has full responsibility for determining and approving corporate operation proposals, marketing and corporate financing. [The beneficiary] analyzes and forms business plans for short-term and long-term corporate operating strategy.  Finally, he appoints managers for each department and oversees all executive meetings.

A98 868 135
Page 4

On October 24, 2005, the director issued a notice of her intent to deny (NOID) the petition and suggested that additional evidence may assist in establishing the petitioner's eligibility for the benefit sought. The director's notice included a request for the W-2 wage and tax statements issued by the petitioner as well as a number of the petitioner's quarterly tax returns.

In response, the petitioner provided a 2004 W-2 wage and tax statement for Mythili Gopal, the international sales manager, as well as four of its quarterly tax returns—the last quarterly return of 2004 and the first three quarterly returns of 2005. It is noted that all three of the quarterly returns from 2005 indicate that the petitioner had no payroll expenses.

On December 7, 2005, the director denied the petition concluding that the documentation submitted in response to the NOID suggests that the petitioner lacked a sufficient support staff in the United States to relieve the beneficiary from having to primarily perform the petitioner's non-qualifying operational tasks. The director specifically noted the petitioner's quarterly tax returns for 2005, all of which indicated that the petitioner had no payroll expenses.

On appeal, counsel for the petitioner submitted a letter dated February 2, 2006 in which he explained that the petitioner has 15 employees who are primarily based in Singapore and India. Counsel further stated that 80% of the products sold by the petitioner and its foreign affiliate are supplied by U.S. vendors. Counsel provided the following statements with regard to the beneficiary's role within the petitioning entity:

> [The beneficiary] directs the myriad [of] sourcing activities which are carried out by the company's workforce; additionally, he directs and manages design, manufacturing and sales teams who produce electronic parts that are custom-designed for critical government accounts in India and Singapore. He exercises wide latitude in discretionary decision[-]making by directing all of the operations and management functions of the company. He founded the company in 1997 and is a pioneer in sourcing obsolete products in the electronics industry.

Counsel's assertions are not persuasive. In examining the executive or managerial capacity of the beneficiary, Citizenship and Immigration Services (CIS) will look first to the petitioner's description of the job duties. *See* 8 C.F.R. § 204.5(j)(5).

In the instant matter, the various statements that address the petitioner's business transactions indicate that the beneficiary's presence in the United States has been and would be extremely limited by the continued need for his direct involvement with the business activity taking place abroad within the foreign entities. Although the petitioner indicated in Part 5, Item 2 of the Form I-140 that it had three employees at the time of filing, the record lacks any evidence to corroborate this claim. To the contrary, the petitioner's third quarterly tax return for 2005, which includes the time period the Form I-140 was filed, indicates that the petitioner had no employees during the relevant time period.[1] If the petitioner continued to engage in business transactions as

---

[1] Although the petitioner claimed one employee on the Form I-140, no salaries or wages were paid and the alleged employee was not identified. Moreover, the employees the petitioner claims it employs in India and Singapore have not been shown to be employed by the U.S. entity. Contrary to the petitioner's claims, the evidence indicates that these employees were employed by a separate legal entity abroad, not by the petitioner.

A98 868 135
Page 5

claimed, the AAO is entirely unclear, based on the lack of evidence, how the business activity was conducted without a U.S.-based support staff. It is incumbent upon the petitioner to resolve any inconsistencies in the record by independent objective evidence. Any attempt to explain or reconcile such inconsistencies will not suffice unless the petitioner submits competent objective evidence pointing to where the truth lies. *Matter of Ho*, 19 I&N Dec. 582, 591-92 (BIA 1988).

Furthermore, while the petitioner's broad statements regarding the beneficiary's proposed employment in the United States indicate that the beneficiary would have the discretionary authority of someone employed in a qualifying managerial or executive capacity, the statements lack a detailed description of the beneficiary's proposed daily activities. Specifics are clearly an important indication of whether a beneficiary's duties are primarily executive or managerial in nature; otherwise meeting the definitions would simply be a matter of reiterating the regulations. *Fedin Bros. Co., Ltd. v. Sava*, 724 F. Supp. 1103 (E.D.N.Y. 1989), *aff'd*, 905 F.2d 41 (2d. Cir. 1990). Reciting the beneficiary's vague job responsibilities or broadly-cast business objectives is not sufficient. As stated above, the regulations require a detailed description of the beneficiary's daily job duties. *See* 8 C.F.R. § 204.5(j)(5). Where, as in the instant case, the petitioner fails to provide CIS with a specific list of duties, the AAO cannot affirmatively conclude that the beneficiary would primarily perform tasks of a qualifying nature.

Finally, the AAO must question, as the director did in her prior decision, how the petitioner would enable the beneficiary to primarily focus on performing qualifying tasks in light of the lack of a support staff to relieve him from having to directly engage in the performance the petitioner's daily operational tasks which would be a necessary part of the petitioner's daily business operation. The record does not indicate who performs the petitioner's daily administrative, bookkeeping, and sales-related tasks. Despite the indication that the petitioner employs an international sales manager, the record does not establish that this individual was employed in the United States at the time of or subsequent to the petitioner's established priority date. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *Matter of Soffici*, 22 I&N Dec. 158, 165 (Comm. 1998) (citing *Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972)).

While the AAO acknowledges that the petitioner's eligibility cannot hinge entirely on the issue of the petitioner's staffing structure, the relevant statute and regulations state that the petitioner must establish that the beneficiary's proposed employment in the United States would primarily consist of qualifying tasks. Without evidence establishing that the petitioner is able to relieve the beneficiary from having to directly engage in non-qualifying tasks despite the apparent lack of a support staff, the AAO cannot conclude that the beneficiary would primarily perform tasks of a qualifying nature.

Consequently, a review of the record indicates that the petitioner's ambiguous organizational structure, the lack of corroborating evidence regarding its staff, and its failure to submit a detailed description of the beneficiary's proposed list of duties support the director's decision to deny the petition. The petitioner fails to establish that it has reached the point where it can support a primarily managerial or executive capacity position. As such, the petition may not be approved for this reason.

Furthermore, the record supports a finding of ineligibility based on additional grounds that were not previously addressed in the director's decision.

A98 868 135
Page 6

First, 8 C.F.R. § 204.5(j)(3)(i)(C) states that the petitioner must establish that it has a qualifying relationship with the beneficiary's foreign employer. The regulation at 8 C.F.R. § 204.5(j)(2) states in pertinent part:

> *Affiliate* means:
>
> (A)    One of two subsidiaries both of which are owned and controlled by the same parent or individual;
>
> (B)    One of two legal entities owned and controlled by the same group of individuals, each individual owning and controlling approximately the same share or proportion of each entity;
>
> * * *
>
> *Multinational* means that the qualifying entity, or its affiliate, or subsidiary, conducts business in two or more countries, one of which is the United States.
>
> *Subsidiary* means a firm, corporation, or other legal entity of which a parent owns, directly or indirectly, more than half of the entity and controls the entity; or owns, directly or indirectly, half of the entity and controls the entity; or owns, directly or indirectly, 50 percent of a 50-50 joint venture and has equal control and veto power over the entity; or owns, directly or indirectly, less than half of the entity, but in fact controls the entity.

In the instant matter, the petitioner claims that it is a subsidiary of the beneficiary's foreign employer, Cirrus Electronics PTE Ltd., a Singapore company. In support of this claim, the petitioner provides its operating agreement. Article I, Section L of the agreement identifies the beneficiary's foreign employer as the petitioner's only member. Article IV, Section 4.1 further indicates that Exhibit A (which is found at the end of the operating agreement) will address the issue of the capital contribution purportedly made by the petitioner's only member. However, the only information contained in Exhibit A is the name of the foreign entity that was named in Article I, Section L of the operating agreement. There is no indication as to the amount of capital purportedly contributed in exchange for the foreign entity's membership.

Furthermore, the petitioner provided a U.S. Income Tax Return for an S Corporation (Form 1120S), which was purportedly filed to declare the petitioner's earnings in 2004. To qualify as a subchapter S corporation, a corporation's shareholders must be individuals, estates, certain trusts, or certain tax-exempt organizations, and the corporation may not have any foreign corporate shareholders. *See* Internal Revenue Code, § 1361(b)(1999). A corporation is not eligible to elect S corporation status if a *foreign corporation* owns it in any part. In the present matter, the petitioner claims that a qualifying organization exists because it is wholly-owned by the Singapore parent company. If true, the petitioner would be ineligible to file as a subchapter S corporation.

Accordingly, since the petitioner would not be eligible to elect S-corporation status with a foreign parent corporation, it appears that the U.S. entity is owned by one or more individuals residing within the United States rather than by a foreign entity. Confirming this fact, Schedule K-1 of the Form 1120S identifies Mythili Gopal, the petitioner's alleged international sales manger, as the petitioner's sole shareholder rather than the Singapore parent company. This significant inconsistency has neither been resolved nor even

A98 868 135
Page 7

acknowledged by the petitioner. It is incumbent upon the petitioner to resolve any inconsistencies in the record by independent objective evidence. Any attempt to explain or reconcile such inconsistencies will not suffice unless the petitioner submits competent objective evidence pointing to where the truth lies. *Matter of Ho*, 19 I&N Dec. 582, 591-92 (BIA 1988).

Contrary to 8 C.F.R. § 204.5(j)(3)(i)(C), the petitioner has not established that it has a qualifying relationship with the beneficiary's foreign employer. For this additional reason, the petition may not be approved.

Second, 8 C.F.R. § 204.5(j)(3)(i)(D) states that the petitioner must establish that it has been doing business for at least one year prior to filing the Form I-140. The regulation at 8 C.F.R. § 204.5(j)(2) states that doing business means "the regular, systematic, and continuous provision of goods and/or services by a firm, corporation, or other entity and does not include the mere presence of an agent or office."

In the instant matter, the petitioner provided a number of invoices documenting the expenses incurred as a result of maintaining office space in the United States. However, as suggested by the definition of doing business, "the mere presence of an agent or office" is not sufficient to establish that the petitioner has been actively providing its products and/or services on a "regular, systematic, and continuous" basis. *See id.* Although the petitioner has submitted lists of U.S. vendors that supply the foreign entity's products, the petitioner has submitted insufficient evidence to establish that it had been doing business prior to or since the filing the Form I-140. Again, the petition may not be approved for this additional reason.

Finally, the AAO notes that the beneficiary was previously granted L-1A nonimmigrant classification based on the same purported qualifying relationship and managerial or executive duties. This nonimmigrant petition (SRC 05 137 50428) has been incorporated into the record of proceeding. Upon review, the petitioner again claims that it is wholly owned by the purported Singapore parent company and yet again submitted its 2004 IRS Form 1120S S-Corporation tax returns. As previously noted, the corresponding Schedule K-1 states that the sole shareholder is Mythili Gopal and not Cirrus Electronics PTE Ltd., the Singapore company. Accordingly, the petitioner has not established that a qualifying relationship exists for purposes of the L-1A nonimmigrant petition. Additionally, the petitioner has submitted the same vague and broadly cast description of the beneficiary's duties. The AAO concludes that the statement of facts in the petition were not true and correct and that approval of the nonimmigrant petition involved gross error.

Because the petitioner failed to establish eligibility for the nonimmigrant visa classification and the director approved the petition in gross error, the director shall review the approved nonimmigrant petition and initiate revocation proceedings. *See* 8 C.F.R. § 214.2(l)(9).

An application or petition that fails to comply with the technical requirements of the law may be denied by the AAO even if the Service Center does not identify all of the grounds for denial in the initial decision. *See Spencer Enterprises, Inc. v. United States*, 229 F. Supp. 2d 1025, 1043 (E.D. Cal. 2001), *aff'd*, 345 F.3d 683 (9th Cir. 2003); *see also Dor v. INS*, 891 F.2d 997, 1002 n. 9 (2d Cir. 1989)(noting that the AAO reviews appeals on a *de novo* basis). Therefore, based on the additional grounds of ineligibility discussed above, this petition cannot be approved.

The petition will be denied for the above stated reasons, with each considered as an independent and alternative basis for denial. In visa petition proceedings, the burden of proving eligibility for the benefit

A98 868 135
Page 8

sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. The petitioner has not sustained that burden.

**ORDER**:  The appeal is dismissed.

**FURTHER ORDERED**:    The director shall review the approved nonimmigrant petition (SRC 05 137 50428) for revocation pursuant to 8 C.F.R. § 214.2(l)(9).

# EXHIBIT 3

**Hopeman, Kate**

| | |
|---|---|
| **From:** | Cirrus Electronics Pte Ltd [cirrus@cirruselectronics.com] |
| **Sent:** | Thursday, October 10, 2002 8:01 PM |
| **To:** | Jaimes,Cory |
| **Subject:** | RE: RFQ/2956 |

Dear Mr Jaimes,
Thanks for your reply.

We are pleased to give the following infomation what you have asked for.

The End user is : Hindustan Aeronautics Ltd, India.

Hope this information is fulfilled to send us your quotation by today.

Expecting your Quotation.

Thanks with regards
S.Sundar
Cirrus Electronics Pte Ltd

Tel: +65-6481-2444
Fax: +65-6481-3444
Email: cirrus@cirruselectronics.com
Level 3, ECON Building, Street 64,
Ang Mo Kio Industrial Park 3,
Singapore 569 084.


-----Original Message-----
**From:** Jaimes,Cory [mailto:cjaimes@whiteedc.com]
**Sent:** 09-Oct-2002 4:33 am
**To:** cirrus@cirruselectronics.com
**Subject:** RFQ/2956

P. Sudarshan,
        I received your quote request today.  I have told you in the past I cannot and will not ever give pricing and availability without knowing who the end user is and what country they are located in.  WEDC is the manufacturer of these parts and there are several laws that we must follow regarding military product.  I will not quote without knowing these answers from the beginning.
Regards,
Cory

8/23/2005

# EXHIBIT 4

COPY

# Cirrus Electronics Pte Ltd

Level 3, ECON Building, No 2, Ang Mo Kio Street 64,

Ang Mo Kio Industrial Park 3

Singapore 569 084

TEL: (65) 6481 2444   FAX: (65) 6481 3444 / 6234 0671

E-mail: cirrus@cirruselectronics.com

## Request For Quotation

From the desk of

| P.Sudarshan | Our RFQ No & Date | RFQ/3168 | Dec 3, 2002 |

To the desk of

| Cory Jaimes | Your Ref No & Date | Your support to us |

Dear,

### Lead Time is Acceptable

| No | Part No | Description | Qty | Dely | Unit Price in USD |
|----|---------|-------------|-----|------|-------------------|
| 1 | 5962- 9411016TA WS5123K32N-017H1QA | White, EDI; 512K X 8, SRAM MODULE-17 NS MIL 883B | 10 | | $504.67 |
| . | EDI88512CA20CB | EDI; 512K X 8 S RAM | 25 | | $75.62 |

Should you need any information from us, please feel free to contact us.

Thanks and regards.

DEAR SIR,

WE WILL GET YOU THE END USER CERTIFICATE AT THE TIME OF THE ORDER.

MAY WE REQUEST YOU TO SEND US YOUR QUOTATION ?

14-16 weeks After payment

BCC: swapna

REGARDS

SUNDAR

# EXHIBIT 5

## Lucente, Richard

| | |
|---|---|
| **From:** | Cirrus Electronics Pte Ltd [cirrus@cirruselectronics.com] |
| **Sent:** | Wednesday, May 07, 2003 11:19 PM |
| **To:** | Jaimes,Cory |
| **Subject:** | RE: PO CIR/1419 |
| **Attachments:** | End user certificate.pdf |

Dear Mr Jaimes,

We hope you would have received the End user statement.

However we are attaching the same for your reference.

May we requet you to send us the PI to send you the TT.

Thanks with regards

**S.Sundar**
**Cirrus Electronics Pte Ltd**

**Tel: +65-6481-2444**
**Fax: +65-6481-3444**
**Email: cirrus@cirruselectronics.com**
**Level 3, ECON Building, Street 64,**
**Ang Mo Kio Industrial Park 3,**
**Singapore 569 084.**
------------------------------------------------------------------------------------------------------------------
--------------------------------------------------------------
**This e-mail is strictly confidential and intended solely for the addressee. It may contain**
**privileged and confidential information belonging to Cirrus Electronics Pte Ltd. It must**
**not be read, copied, disclosed, distributed or used by any person other than the**
**addressee. Unauthorised use, disclosure or copying is strictly prohibited and may be**
**unlawful. If you have received this message in error, you should destroy this message**
**and kindly notify the sender by e-mail.**
------------------------------------------------------------------------------------------------------------------
--------------------------------------------------------------

-----Original Message-----
**From:** Jaimes,Cory [mailto:cjaimes@whiteedc.com]
**Sent:** 29-Apr-2003 6:19 am
**To:** Cirrus Electronics
**Cc:** Jaimes,Cory
**Subject:** PO CIR/1419

Sundar,
      I want the End Use Statement before I will send a pro-forma invoice.  This order will be
placed on a Letter of Credit basis after receipt of payment we can confirm shipment.  This is no
change from the past.

Thank you,
Cory Jaimes
International Sales WEDC
Cjaimes@whiteedc.com

8/19/2005



भारत सरकार - रक्षा मंत्रालय
रक्षा अनुसंधान तथा विकास संगठन
नौसेना भौतिक तथा समुद्रविज्ञान प्रयोगशाला
तृक्काक्करा। डा.घ., कोच्चि - 682 021, भारत

**NAVAL PHYSICAL & OCEANOGRAPHIC LABORATORY**
Thrikkakara P.O. , Kochi – 682 021, India

S/o 10965

### END USER CERTIFICATE

I, T Sreeprakash, Sc E, NPOL certify that the goods shown below have been ordered by me from Cirrus Electronics Pvt. Ltd, Singapore - 569084.

WS 512K 32N-017H1QA

10PCS

The goods to be supplied are consumable integrated circuit devices and are to be used for the development of electronic hardware for oceanographic instrument measuring the ocean parameters for our own use.

(i) I also certify that the goods above are for my own use and will not be re-exported or sold for export.

And

(ii) I also certify that the goods will/will not (delete as appropriate) be used for military purposes.

And

I certify that the goods above will not be used for purposes associated with chemical, biological or nuclear weapons, or missiles capable of delivering such weapons, nor will they be re-exported or otherwise resold or transferred if I know or suspect that they are intended or likely to be used for such a purpose, and that the goods, or any replica of them, will not be used in any nuclear explosive activity or un safeguarded nuclear fuel cycle activity.

Signed

Dear Mr Jaimes,

We are now sending you the certificate from the end user for our order Cir/1419.

May we request you to send us your PI so as to send you the TT?

We also request you to confirm the exact delivery schedule.

Thanks

Sundar

Cirrus Electronics Pte Ltd

# EXHIBIT 6

## Lucente, Richard

**From:** Jaimes,Cory

**Sent:** Friday, August 15, 2003 2:39 PM

**To:** 'cirrus@cirruselectronics.com'

**Cc:** Jaimes,Cory

**Subject:** RE: RFQ/5549

Sundar,

Ref: FRQ/5549 (end customer is VSSC)

I have spoken to management regarding this opportunity and here is what they want:

An Export License is required before WEDC can accept an order. I must have an End Use Statement (ultimate consignee), it must come from the end customer not Cirrus. WEDC will not accept an order from Cirrus until you can prove that you have a valid license from the US Department of Commerce, at which point a copy will be given to WEDC to accompany an order.

Ref: RFQ/5549
EDI88128CS25CB qty 100
The End User is VSSC
The minimum order value must be $7500.00.

I apologize for the complexity, but the US Government is particular about selling product to companies on the entity list.

Let me know if you have questions.

Best regards,
Cory Jaimes
International Sales
602 437 1520x171
602 437 9120 fax
cjaimes@whiteedc.com

-----Original Message-----
**From:** Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
**Sent:** Friday, August 15, 2003 8:44 AM
**To:** Jaimes,Cory
**Subject:** RE: RFQ/5549

Dear,

We fully agree to your views. Most of our vendors/ Manufacturers will start their sales /manufacturing activities only upon the license. Hence they will send us a bid with a condition that 8 to 12 weeks etc., will start from the date of license.

We will also inform and impose the same condition to our customers. If the license is not approved, neither you nor cirrus will have any bearing on the order. This condition is also imposed as the part of the quote.

Mostly customers like VSSC are fully aware of the licensing situation.

You may send us your bid and repeat,,, the order from us can be accepted only upon the license. The delivery from your end start only from the license.

Regards.

-----Original Message-----
**From:** Jaimes,Cory [mailto:cjaimes@whiteedc.com]
**Sent:** Friday, August 15, 2003 10:06 PM
**To:** Cirrus Electronics
**Subject:** RE: RFQ/5549

Sundar,
        I have yet to see the U.S. government release a license for any company listed on the entity list.  This is not a license that you apply for it is one that I must receive before we can accept an order for VSSC.  It takes months to get one of the licenses, and I repeat I cannot officially accept the order until I have the license.
Regards,
Cory

-----Original Message-----
**From:** Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
**Sent:** Thursday, August 14, 2003 7:02 PM
**To:** Jaimes,Cory
**Subject:** RE: RFQ/5549

Dear Jaimes,

Thanks for your reply.

We can assure you that we can get you the End user certificate and the Export licence at the time of the order.

Since the customer will give the particulars at the time of the order only.

Hence may we request you to send us your quotation for the part EDI88128CS25CB qty 100  ?
Your reply is arrreciated.
Thanks with regards

S.Sundar
**Cirrus Electronics Pte Ltd**

Tel: +65-6481-2444
Fax: +65-6481-3444
Email: cirrus@cirruselectronics.com
Level 3, ECON Building, Street 64,
Ang Mo Kio Industrial Park 3,
Singapore 569 084.
-------------------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------

This e-mail is strictly confidential and intended solely for the addressee. It may contain privileged and confidential information belonging to Cirrus Electronics Pte Ltd. It must not be read, copied,

**disclosed, distributed or used by any person other than the addressee. Unauthorised use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this message in error, you should destroy this message and kindly notify the sender by e-mail.**

-----------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------

-----Original Message-----
**From:** Jaimes,Cory [mailto:cjaimes@whiteedc.com]
**Sent:** 15-Aug-2003 12:29 am
**To:** Cirrus Electronics
**Cc:** 'Jaimes,Cory'
**Subject:** RFQ/5549

Sudarshan,
        **You have requested pricing for VSSC (Vikram Sarabai Space Center) and they are listed on the BXA Entity list. Before an order can be place we will need US Department of Commerce approval prior to commitment. I cannot accept an order for product that is being shipped to them without a valid export license and for this reason I will not quote.**

**Ref: RFQ/5549**
**EDI88128CS25CB qty 100**
**The End User is VSSC**

**Regards,**
**Cory Jaimes**
**International Sales WEDC**
cjaimes@whiteedc.com
**602 437 1520 x171**
**602 437 9120 fax**

# EXHIBIT 7

# CIRRUS ELECTRONICS PTE LTD

Level 3, Econ Building No 2, Ang Mo Kio Street 64, Ang Mo Kio Industrial Park 3 Singapore 569084
Tel: (65) 6819 2444  Fax: (65) 6481 3444 / 6234 0671
E-mail: cirrus@cirruselectronics.com
Website: www.cirruselectronics.com

COPY

Company Registration No. 199907791W
GST Registration No. 199907791W

## Purchase Order

SO# 11405 qb

| DATE | P.O. NO. |
|------|----------|
| 18-Aug-03 | Cir/1530 |

| Vendor | SHIP TO  7363 |
|--------|--------|
| **White Electronics**<br>**3601, East University Drive,**<br>**Phonix, AZ 85034**<br>**USA**<br>**Attn : Mr Cory Jalmes** | Cirrus Electronics Pte Ltd,<br>Level 3, ECON Building,<br>No2, Ang Mo Kio St 64,<br>Ang Mo Kio Indl Park 3,<br>Singapore 569084 |

| Incoterms | Payment Terms | Dely. Req. Dt.(Before) | Ship Via | Your Ref |
|-----------|---------------|------------------------|----------|----------|
| FOB USA | TT | 31-Oct-03 | Fed-ex | Your Quote |

| Sl no | ITEM | DESCRIPTION | QTY | Unit Price (USD) | Total Amount |
|-------|------|-------------|-----|------------------|--------------|
| 1 | WS 512K 32N-017H1QA | White; 512K X 32, SRAM MODULE-17 ns<br><br>Terms and conditions:<br>=================<br>1) Kindly send us the order acknowledgement with your firm delivey schedule.<br><br>2) The COC is to be sent along with the shipment and the date code is to be within 12 Months at the time of shipment. | 10 | 504.67 | 5,046.70 |

Fed-ex A/C NO: 2191-2537-2 (Int'l Priority)

| | Total |
|--|-------|

You can send us the goods at the earliest. But no partial shipment is permitted, unless approved by us.

We thank you very much for

# CIRRUS ELECTRONICS PTE LTD

Level 3, Econ Building No 2, Ang Mo Kio Street 64, Ang Mo Kio Industrial Park 3 Singapore 569084
Tel: (65) 6481 2444  Fax: (65) 6481 3444 / 6234 0671
E-mail: cirrus@cirruselectronics.com
Website: www.cirruselectronics.com

Company Registration No. 199907791W
GST Registration No. 199907791W

## Purchase Order

| DATE | P.O. NO. |
|------|----------|
| 18-Aug-03 | Cir/1530 |

| Vendor |
|--------|
| **White Electronics**<br>**3601, East University Drive,**<br>**Phonix, AZ 85034**<br>**USA**<br>**Attn : Mr Cory Jalmes** |

| SHIP TO |
|---------|
| Cirrus Electronics Pte Ltd,<br>Level 3, ECON Building,<br>No2, Ang Mo Kio St 64,<br>Ang Mo Kio Indl Park 3,<br>Singapore 569084 |

| Incoterms | Payment Terms | Dely. Req. Dt.(Before) | Ship Via | Your Ref |
|-----------|---------------|------------------------|----------|----------|
| FOB USA | TT | 31-Oct-03 | Fed-ex | Your Quote |

| Sl no | ITEM | DESCRIPTION | QTY | Unit Price (USD) | Total Amount |
|-------|------|-------------|-----|------------------|--------------|
| | | 3)The End user certificate is faxed along with this order. | | | |

Fed-ex A/C NO: 2191-2537-2 (Int'l Priority)

| Total | $5,046.70 |
|-------|-----------|

You can send us the goods at the earliest. But no partial shipment is permitted, unless approved by us.

We thank you very much for your support



भारत सरकार - रक्षा मंत्रालय
रक्षा अनुसंधान तथा विकास संगठन
नौसेना भौतिक तथा समुद्रविज्ञान प्रयोगशाला
तृक्काक्करा डा.घ., कोच्चि - 682 021, भारत

NAVAL PHYSICAL & OCEANOGRAPHIC LABORATORY
Thrikkakara P.O. , Kochi – 682 021, India

## END USER CERTIFICATE

I, T Sreeprakash, Sc E, NPOL certify that the goods shown below have been ordered by me from Cirrus Electronics Pvt. Ltd, Singapore - 569084.

### WS 512K 32N-017H1QA

The goods to be supplied are consumable integrated circuit devices and are to be used for the development of electronic hardware for oceanographic instrument measuring the ocean parameters for our own use.

    (i)    I also certify that the goods above are for my own use and will not be re-exported or sold for export.

And

    (ii)    I also certify that the goods will/will not (delete as appropriate) be used for military purposes.

And

    I certify that the goods above will not be used for purposes associated with chemical, biological or nuclear weapons, or missiles capable of delivering such weapons, nor will they be re-exported or otherwise resold or transferred if I know or suspect that they are intended or likely to be used for such a purpose, and that the goods, or any replica of them, will not be used in any nuclear explosive activity or un safeguarded nuclear fuel cycle activity.

Signed

Dear Mr Jaimes,
We are now sending you the End user certificate
from the customer for your reference.
Please acknowledge the receipt of the same and
send us the PI so as to send you the TT
Thanks with regards
Sundar
Cirrus Electronics Pte Ltd.

# EXHIBIT 8

### Message0313

**Subject: RE: NPOL**

**From:** Jaimes,Cory

**Date:** 5/25/2004 4:14:04 PM

**To:** cirrus@cirruselectronics.com

**CC:** Mythili Gopal. Ms.; Jaimes,Cory

**Message Body**

Sundar,

I apologize for the delay I have been out of the office.

Ref: NPOL, Program oceanographic instrument

Ref: RFQ/8047

WS512K32N-17H11A qty 30 $460.71

Standard lead-time 14-16 weeks after receipt of payment

End Use Statement Required.

Notes:

WEDC is certified to ISO9001

Terms: Cash in advance

Valid: 30 days

Shipment: F.C.A. Phoenix, Arizona. (Incoterms 2000)

Delivery subject to change without notice until confirmation of purchase order.

All sales are subject to Seller's (WEDC) General Conditions of Sale.

This quote is in U.S. currency and all U.S. export laws apply.


Submitted by:

Cory Jaimes

International Sales WEDC

cjaimes@wedc.com <mailto:cjaimes@wedc.com>

602 437 1520 x171

602 437 9120 fax




The information contained in this electronic mail message is
confidential information intended for the use of the individual or
entity named above, and may be privileged, and protected by law from
disclosure. If the reader of this message is not the intended recipient
or the employee or agent responsible to deliver it to the intended
recipient, you are hereby notified that any dissemination, distribution,
copying, or reading of this communication is strictly prohibited. If you
have received this communication in error, please immediately notify us
by telephone (602 437 1520), and delete the original message. Thank you.




———

From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Thursday, May 20, 2004 8:36 PM

To: Jaimes,Cory
Cc: Mythili Gopal. Ms.
Subject: RE: NPOL

Dear Mr Jaimes,

The End user is NPOL and the application of use is for the development
of electronic hardware for oceanographic instrument measuring the ocean
parameters of their own use.We can get you the End user certificate at
the time of the order.

We have also have our offices at Hyderabad , Bangalore and Trichy in
India besides in US and this request is from one of the Sales Managers
in India.

We wish to point out that Active devices is one of the Traders / Brokers
in India .

We are also pleased to inform you that we are directly dealing with our
OEM customers in India ( Not with Brokers /Traders) mostly Govt of India
companies like HAL , Dare , Bharat Electronics Ltd ,NPOL and so on.

We hope that we have cleared your doubts and we also understand your
concern with commerce dept of USA.

May we seek your quotation now?

Thanks with regards

Sundar

-----Original Message-----
From: Cirrus Electronics, LLC [mailto:us@cirruselectronics.com]
Sent: Friday, May 21, 2004 5:18 AM
To: cirrus@cirruselectronics.com
Subject: FW: NPOL

——————   .

From: Jaimes,Cory [mailto:cjaimes@wedc.com]
Sent: Thursday, May 20, 2004 4:02 PM
To: us@cirruselectronics.com
Subject: NPOL

Mythili,

This requests mentions that the end user is NPOL and I've been
told that the end user for this part is Active Devices. Can you please
confirm who the end user is and what program/project it is for? Once I
have that info I will quote.


RFQ/8047

                    .

WS512K32N-17H1IA qty 30


Thank you,

Cory Jaimes

International Sales WEDC

CJaimes@wedc.com

602 437 1520 x171

602 437 9120 fax

## Outlook Header Information

Conversation Topic: NPOL
Sender Name: Jaimes,Cory
Received By: Cirrus Electronics, LLC
Delivery Time: 5/25/2004 4:14:04 PM
Creation Time: 5/25/2004 9:36:19 PM
Modification Time: 5/25/2004 9:36:19 PM
Submit Time: 5/25/2004 4:18:49 PM
Flags: 3 = Read, Unmodified
Size: 30370

## Standard Header Information

Received: from cor-exg-01.whiteedc.com ([208.25.229.146]) by
cirruselectronics.com ; Wed, 26 May 2004 04:14:04 +0800 SGT
X-MimeOLE: Produced By Microsoft Exchange V6.0.6487.1
Content-Class: urn:content-classes:message
MIME-Version: 1.0
Content-Type: multipart/alternative;
 boundary="----_=_NextPart_001_01C44295.7D4FAB37"
Subject: RE: NPOL
Date: Tue, 25 May 2004 13:18:49 -0700
Message-ID: <A119B0922D073641B89526F8D1677451062496B3@cor-exg-
01.whiteedc.com>
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
Thread-Topic: NPOL
thread-index: AcQ+5dq9Kp856QWiQ62qI2RNKtCdOwDrxCZQ
From: "Jaimes,Cory" <cjaimes@wedc.com>
To: <cirrus@cirruselectronics.com>
Cc: "Mythili Gopal. Ms." <us@cirruselectronics.com>,
 "Jaimes,Cory" <cjaimes@wedc.com>
Return-Path: <cjaimes@wedc.com>
X-Rcpt-To: <us@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1085535208.19328
Status: U

# EXHIBIT 9

cc/Sep/2004 02:15 PT FROM:    Cirrus Electronics TO: Cory Jaines                    PAGE: 002



भारत सरकार - रक्षा मंत्रालय
रक्षा अनुसंधान तथा विकास संगठन
नौसेना भौतिक तथा समुद्रविज्ञान प्रयोगशाला
तृक्काक्करा डा.घ., कोच्चि - 682 021, भारत
Government of India, Ministry of Defence
Defence Research & Development Organisation
NAVAL PHYSICAL & OCEANOGRAPHIC LABORATORY
Thrikkakara P.O. , Kochi – 682 021, India

ne : 424911-20
.x  : 0484-424858
e-mail :tsonpol@vsnl.com

## END USER CERTIFICATE

I, T Sreeprakash, Sc E, NPOL certify that the goods shown below have been ordered by me from Cirrus Electronics Pvt. Ltd, Singapore - 569084.

The goods to be supplied are consumable integrated circuit devices and are to be used for the development of electronic hardware for oceanographic instrument measuring the ocean parameters for our own use.

(i)     I also certify that the goods above are for my own use and will not be re-exported or sold for export.

And

(ii)    I also certify that the goods will/will not (delete as appropriate) be used for military purposes.

And

I certify that the goods above will not be used for purposes associated with chemical, biological or nuclear weapons, or missiles capable of delivering such weapons, nor will they be re-exported or otherwise resold or transferred if I know or suspect that they are intended or likely to be used for such a purpose, and that the goods, or any replica of them, will not be used in any nuclear explosive activity or un safeguarded nuclear fuel cycle activity.

Signed        Name : T SREEPRAKASH        Status : Scientist 'E'    Date :  2/9/04



# EXHIBIT 10

**Message0417**

**Subject: PO CIR/1926**

**From:** Jaimes,Cory

**Date:** 9/20/2004 4:31:52 PM

**To:** cirrus@cirruselectronics.com; us@cirruselectronics.com

**CC:** Jaimes,Cory

**Message Body**

Sundar,


Ref: PO CIR/1926


I have reviewed the End Use statement with management and it has come to
our attention that Vikram Sarabhai Space Centre (VSSC) is on the Bureau
of Industry and Security's (BIS) Entity List. This means I cannot
accept this order without a valid export license. A valid export
license from BIS must in place before I can accept this order. WEDC
needs to know if you are going to apply for this license or if you want
WEDC to apply for the license. If Cirrus Electronics applies for the
license WEDC will need a valid copy of the license before we will enter
the order. If WEDC applies for the license there will be a $2500.00
processing fee. WEDC cannot guarantee if a license will be approved nor
can we guarantee when BIS will tell us when we are or are not approved.
Again this order will not be enter without a valid export license.


Best regards,

Cory Jaimes

International Sales WEDC

CJaimes@wedc.com

602 437 1520 x171

602 437 9120 fax

## Outlook Header Information

Conversation Topic: PO CIR/1926
Sender Name: Jaimes,Cory
Received By: Cirrus Electronics, LLC
Delivery Time: 9/20/2004 4:31:52 PM
Creation Time: 9/20/2004 10:01:11 PM
Modification Time: 9/20/2004 10:01:11 PM
Submit Time: 9/20/2004 4:31:41 PM
Flags: 3 = Read, Unmodified
Size: 10800

## Standard Header Information

Received: from cor-ex-01.whiteedc.com ([208.25.229.146]) by cirruselectronics.com
; Tue, 21 Sep 2004 04:31:52 +0800 SGT
X-MimeOLE: Produced By Microsoft Exchange V6.5.7226.0
Content-class: urn:content-classes:message
MIME-Version: 1.0
Content-Type: multipart/alternative;
 boundary="----_=_NextPart_001_01C49F50.D63AB400"
Subject: PO CIR/1926
Date: Mon, 20 Sep 2004 13:31:41 -0700
Message-ID: <DA575141EB1E5543B917F3948005FC0198A941@cor-ex-
01.whiteedc.com>
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
Thread-Topic: PO CIR/1926
Thread-Index: AcSfUNuDjSaBOdxeSaGDAvJ4dFojww==
From: "Jaimes,Cory" <cjaimes@wedc.com>
To: <cirrus@cirruselectronics.com>,
 <us@cirruselectronics.com>
Cc: "Jaimes,Cory" <cjaimes@wedc.com>
Return-Path: <cjaimes@wedc.com>
X-Rcpt-To: <us@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1095732064.493390
Status: U

# EXHIBIT 11

| **Message0440** |
| :--- |

| **Subject:** | Exports from USA eased- Our Order -Cir/1926-WS 512K 32N-017H1QA |
| :--- | :--- |
| **From:** | Cirrus Electronics Pte Ltd |
| **Date:** | 9/28/2004 9:19:34 PM |
| **To:** | 'Jaimes,Cory' |
| **CC:** | us@cirruselectronics.com |

| **Message Body** |
| :--- |

Dear Ms Jaimes,
We are now sending you the relaxation of the export ruling of the US Govt
for your reference.
As such our order Cir/1926 is for VSSC for which we sent you the End user
certificate and VSSC is the subsidy of ISRO organisation .If need we can get
you the details for it.
Hence may we request you to process the order and send us your confirmation
and order acknowledgement .

IF you need any other details from us please do not hesitate to write to us.

Also please send us your order acknowledgement for our order Cir/1930.

Thanks with regards

S.Sundar
Cirrus Electronics Pte Ltd

Tel: +65-6481-2444
Fax: +65-6481-3444
Email: cirrus@cirruselectronics.com
Level 3, ECON Building, Street 64,
Ang Mo Kio Industrial Park 3,
Singapore 569 084.

------------------------------------------------------------------------
------------------------------------------------------------------------
--------------------------------------
This e-mail is strictly confidential and intended solely for the addressee.
It may contain privileged and confidential information belonging to Cirrus
Electronics Pte Ltd. It must not be read, copied, disclosed, distributed or
used by any person other than the addressee. Unauthorised use, disclosure or
copying is strictly prohibited and may be unlawful. If you have received
this message in error, you should destroy this message and kindly notify the
sender by e-mail.
------------------------------------------------------------------------
------------------------------------------------------------------------
--------------------------------------

| Attachment |
|---|
| 04-21303.pdf |

| Attachment |
|---|
| Announcement.doc |

| Outlook Header Information |
|---|
| Conversation Topic: Exports from USA eased- Our Order -Cir/1926-WS 512K 32N-017H1QA
Sender Name: Cirrus Electronics Pte Ltd
Received By: Cirrus Electronics, LLC
Delivery Time: 9/28/2004 9:19:34 PM
Creation Time: 9/28/2004 10:05:51 PM
Modification Time: 9/28/2004 10:05:51 PM
Submit Time: 9/28/2004 9:15:37 PM
Flags: 19 = Read, Unmodified, Has Attachment
Size: 97346 |

| Standard Header Information |
|---|
| Received: from sundar ([202.166.100.39]) by cirruselectronics.com ; Wed, 29 Sep 2004 09:19:34 +0800 SGT
Reply-To: <cirrus@cirruselectronics.com>
From: "Cirrus Electronics Pte Ltd" <cirrus@cirruselectronics.com>
To: "'Jaimes,Cory'" <cjaimes@wedc.com>
Cc: <us@cirruselectronics.com>
Subject: Exports from USA eased- Our Order -Cir/1926-WS 512K 32N-017H1QA
Date: Wed, 29 Sep 2004 09:15:37 +0800
Organization: Cirrus Electronics Pte Ltd
MIME-Version: 1.0
Content-Type: multipart/mixed;
 boundary="----=_NextPart_000_00C6_01C4A604.E1F8DE80"
X-Mailer: Microsoft Office Outlook, Build 11.0.5510
X-MIMEOLE: Produced By Microsoft MimeOLE V6.00.2742.200
thread-index: AcSlVyjksyJ6+url T8uGtnyL5g3EUQAaW2iA
Message-ID: <109642078301@202.157.164.2>
Return-Path: <cirrus@cirruselectronics.com>
X-Rcpt-To: <us@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1096423548.692989
Status: U |

## III. Regulatory Impact Statement

*Executive Order 12866*

This final rule has been evaluated in accordance with the existing policies and procedures and is considered not significant under both Executive Order 12866 and DOT Regulatory Policies and Procedures. The rule is exempt from review by the Office of Management and Budget (OMB) in accordance with the provisions of Executive Order 12866, because its provisions are required by current regulatory language, without interpretation.

*Regulatory Flexibility Act*

The Regulatory Flexibility Act of 1980 (5 U.S.C. 601–612) requires an assessment of the impact of the proposed and final rule on small entities unless the agency certifies that the proposed regulation will have no significant economic impact on small entities. This revision of 14 CFR part 254 provides for a minimal increase in the amount of the minimum baggage liability limit that air carriers may incur in cases of lost or damaged baggage. It will pose minor additional costs only in those instances in which carriers lose or damage baggage, or delay delivering baggage to the traveler, and it affects only carriers operating large aircraft or those small carriers interlining with such carriers. As a result, many operations of small entities, such as air taxis and commuter air carriers, are not covered by the rule. Accordingly, we certify that this action will not have a significant economic impact on a substantial number of small entities.

*Paperwork Reduction Act*

This final rule imposes no new reporting or recordkeeping requirements necessitating clearance by OMB.

## List of Subjects in 14 CFR Part 254

Administrative practice and procedure, Air carriers, Consumer protection, Department of Transportation.

■ Accordingly, the Department of Transportation revises 14 CFR part 254, *Domestic Baggage Liability*, to read as follows:

■ 1. The authority citation continues to read as follows:

**Authority:** 49 U.S.C. 40113, 41501, 41501, 41504, 41510, 41702 and 41707.

■ 2. Section 254.4 is revised to read as follows:

**§ 254.4   Carrier liability.**

On any flight segment using large aircraft, or on any flight segment that is included on the same ticket as another flight segment that uses large aircraft, an

air carrier shall not limit its liability for provable direct or consequential damages resulting from the disappearance of, damage to, or delay in delivery of a passenger's personal property, including baggage, in its custody to an amount less than $2,800 for each passenger.

■ 3. Section 254.5 is revised to read as follows:

**§ 254.5   Notice requirement.**

In any flight segment using large aircraft, or on any flight segment that is included on the same ticket as another flight segment that uses large aircraft, an air carrier shall provide to passengers, by conspicuous written material included on or with its ticket, either:

(a) Notice of any monetary limitation on its baggage liability to passengers; or

(b) The following notice: "Federal rules require any limit on an airline's baggage liability to be at least $2,800 per passenger."

Issued in Washington, DC on September 8, 2004.

**Norman Y. Mineta,**

*Secretary of Transportation.*

[FR Doc. 04–21247 Filed 9–21–04; 8:45 am]

**BILLING CODE 4910–62–P**

---

## DEPARTMENT OF COMMERCE

**Bureau of Industry and Security**

**15 CFR Part 744**

**[Docket No. 040713207–4207–01]**

**RIN 0694–AD13**

## India: Removal of Indian Entity and Revision in License Review Policy for Certain Indian Entities; and a Clarification

**AGENCY:** Bureau of Industry and Security, Commerce.

**ACTION:** Final rule.

**SUMMARY:** On January 12, 2004, President George W. Bush announced the Next Steps in Strategic Partnership (NSSP) with India. The proposed cooperation outlined in the NSSP will progress through a series of reciprocal steps that build on each other, including steps related to enhancing cooperation in peaceful uses of space technology and steps to create the appropriate environment for successful high technology commerce. This rule implements three initial steps the United States has agreed to take under the NSSP. These steps are: To remove the Indian Space Research Organization (ISRO) Headquarters, Bangalore from the Department of Commerce Entity

List; to remove the export license requirements for items subject to the Export Administration Regulations (EAR) having a classification of EAR99 or a classification where the third through fifth digits of the Export Commodity Classification Number (ECCN) are "999", *e.g.* XX999, for the seven (7) ISRO subsidiaries listed on the Entity List; and establish a presumption of approval for all items *not* controlled for nuclear proliferation reasons going to the "balance of plant" portion of Indian nuclear facilities subject to International Atomic Energy Agency safeguards (Rajasthan 1 & 2 and Tarapur 1 & 2).

This rule also makes one clarification in order to make clear the longstanding interpretation that information regarding the Entity List published in the **Federal Register** is intended to inform the public, not simply to inform exporters.

**DATES:** This rule is effective September 22, 2004.

**ADDRESSES:** Although this is a final rule, comments are welcome and should be addressed to Sharron Cook, Office of Exporter Services, Bureau of Industry and Security, Department of Commerce, PO Box 273, Washington, DC 20044, e-mailed to: *scook@bis.doc.gov* or faxed to (202) 482–3355.

Comments regarding the collections of information associated with this rule, including suggestions for reducing the burden, should be sent to OMB Desk Officer, New Executive Office Building, Washington, DC 20503—Attention: David Rostker; and to the Office of Administration, Bureau of Industry and Security, Department of Commerce, 14th and Pennsylvania Avenue, NW., Room 6883, Washington, DC 20230.

**FOR FURTHER INFORMATION CONTACT:** Eileen M. Albanese, Office of Exporter Services, Bureau of Industry and Security, Telephone: (202) 482–0436.

**SUPPLEMENTARY INFORMATION:**

## Background

In November 2001, Indian Prime Minister Vajpayee and President Bush committed India and the United States to a strategic partnership. Since then, the two countries have strengthened bilateral cooperation significantly in several areas. On January 12, 2004, the two leaders announced the next steps in implementing a shared vision to expand cooperation, deepen the ties of commerce and friendship between the two nations, and increase stability in Asia and beyond.

The proposed cooperation will progress through a series of reciprocal steps that will build on each other. It

**56694**    **Federal Register** / Vol. 69, No. 183 / Wednesday, September 22, 2004 / Rules and Regulations

will include expanded engagement on nuclear regulatory and safety issues and missile defense, ways to enhance cooperation in peaceful uses of space technology, and steps to create the appropriate environment for successful high technology commerce.

This rule implements three initial steps in transforming the relationship between the United States and India by: (1) Removing the Indian Space Research Organization (ISRO) Headquarters in Bangalore from the Department of Commerce Entity List contained in Supplement No. 4 to Part 744 of the Export Administration Regulations (EAR); (2) removing the license requirement for the seven (7) ISRO subsidiaries listed on the Entity List for all items subject to the Export Administration Regulations (EAR) having a classification of EAR99 or a classification where the third through fifth digits of the Export Commodity Classification Number (ECCN) are "999", *e.g.*, XX999.; and (3) establishing a presumption of approval for all items *not* controlled for nuclear proliferation reasons going to the "balance of plant" portion of Indian nuclear facilities subject to International Atomic Energy Agency safeguards (Rajasthan 1 & 2 and Tarapur 1 & 2). Balance of plant" refers to the part of a nuclear power plant used for power generation (*e.g.*, turbines, controllers, or power distribution) to distinguish it from the nuclear reactor. This explanation of "balance of plant" is added as a footnote to the Entity List.

The removal of ISRO Headquarters, Bangalore from the Entity List eliminates the existing license requirements in Supplement No. 4 to Part 744 for exports to this entity. The removal of entities from the Entity List does not relieve exporters or reexporters of their obligations under Part 744. Neither the removal of entities from the Entity List or the removal of license requirements for entities on the Entity List relieves exporters or reexporters of their obligations under General Prohibition 5 in § 736.2(b)(5) of the EAR which provides that, "you may not, without a license, knowingly export or reexport any item subject to the EAR to an end-user or end-use that is prohibited by part 744 of the EAR." BIS strongly urges the use of Supplement No. 3 to part 732 of the EAR, "BIS's "Know Your Customer" Guidance and Red Flags" when exporting or reexporting to India.

This rule also amends section 744.1 by revising the phrase "Exporters are" to read "The public is" in the second sentence of paragraph (c). BIS is revising

this phrase in order to clarify the longstanding interpretation that when information regarding the Entity List was published in the **Federal Register**, BIS was informing the public. Therefore, this rule clarifies that BIS's intent has always been to notify all persons that entities listed in Supplement No. 4 are ineligible to receive any items subject to the EAR without a license to the extent specified in the supplement. The word "Exporter" should not be read to limit the scope of the notice.

Although the Export Administration Act expired on August 20, 2001, Executive Order 13222 of August 17, 2001 (3 CFR, 2001 Comp., p. 783 (2002)) as extended by the Notice of August 7, 2003 (3 CFR, 2003 Comp. 328 (2004)), continues the Regulations in effect under the International Emergency Economic Powers Act.

**Rulemaking Requirements**

1. This final rule has been determined to be not significant for purposes of E.O. 12866.

2. Notwithstanding any other provision of law, no person is required to respond to, nor shall any person be subject to a penalty for failure to comply with a collection of information, subject to the requirements of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*) (PRA), unless that collection of information displays a currently valid Office of Management and Budget (OMB) Control Number. This rule involves a collection of information subject to the PRA. This collection has been approved by OMB under control number 0694–0088, "Multi-Purpose Application," which carries a burden hour estimate of 58 minutes for a manual or electronic submission. Send comments regarding these burden estimates or any other aspect of these collections of information, including suggestions for reducing the burden, to OMB Desk Officer, New Executive Office Building, Washington, DC 20503; and to the Office of Administration, Bureau of Industry and Security, Department of Commerce, 14th and Pennsylvania Avenue, NW., Room 6883, Washington, DC 20230.

3. This rule does not contain policies with Federalism implications as that term is defined under E.O. 13132.

4. The provisions of the Administrative Procedure Act (5 U.S.C. 553) requiring notice of proposed rulemaking, the opportunity for public participation, and a delay in effective date, are inapplicable because this regulation involves a military and foreign affairs function of the United

States (5 U.S.C. 553(a)(1)). Further, no other law requires that a notice of proposed rulemaking and an opportunity for public comment be given for this final rule. Because a notice of proposed rulemaking and an opportunity for public comment are not required to be given for this rule under the Administrative Procedure Act or by any other law, the analytical requirements of the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*) are not applicable. Therefore, this regulation is issued in final form. Although there is no formal comment period, public comments on this regulation are welcome on a continuing basis. Comments should be submitted to Sharron Cook, Office of Exporter Services, Bureau of Industry and Security, Department of Commerce, PO Box 273, Washington, DC 20044.

**List of Subjects in 15 CFR Part 744**

Exports, Foreign trade, Reporting and recordkeeping requirements.

■ Accordingly, part 744 of the Export Administration Regulations (15 CFR parts 730–799) is amended as follows:

**PART 744—[AMENDED]**

■ 1. The authority citation for 15 CFR part 744 is revised to read as follows:

**Authority:** 50 U.S.C. app. 2401 *et seq.*; 50 U.S.C. 1701 *et seq.*; 22 U.S.C. 3201 *et seq.*; 42 U.S.C. 2139a; Sec. 901–911, Pub. L. 106–387; Sec. 221, Pub. L. 107–56; E.O. 12058, 43 FR 20947, 3 CFR, 1978 Comp., p. 179; E.O. 12851, 58 FR 33181, 3 CFR, 1993 Comp., p. 608; E.O. 12938, 59 FR 59099, 3 CFR, 1994 Comp., p. 950; E.O. 12947, 60 FR 5079, 3 CFR, 1995 Comp., p. 356; E.O. 13026, 61 FR 58767, 3 CFR, 1996 Comp., p. 228; E.O. 13099, 63 FR 45167, 3 CFR, 1998 Comp., p. 208; E.O. 13222, 66 FR 44025, 3 CFR, 2001 Comp., p. 783; E.O. 13224, 66 FR 49079, 3 CFR, 2001 Comp., p. 786; Notice of October 29, 2003, 68 FR 62209, 3 CFR, 2003 Comp., p. 347; Notice of August 6, 2004, 69 FR 48763 (August 10, 2004).

**§ 744.1   [Amended]**

■ 2. Section 744.1 is amended by revising the phrase "Exporters are" to read "The public is" in the second sentence of paragraph (c).

■ 3. In Supplement No. 4 to part 744, under the country of "India", the entities "Indian Space Research Organization (ISRO) headquarters in Bangalore" and "Department of Atomic Energy Agency entities" are revised to read as set forth below:

**Supplement No. 4 to Part 744—Entity List**

*    *    *    *    *

| Country | Entity | License requirement | License review policy | Federal Register citation |
|---|---|---|---|---|
| . | . . | . | . | . |
| INDIA ........................... | The following Indian Space Research Organization (ISRO) subordinate entities: ISRO Telemetry, Tracking and Command Network (ISTRAC); ISRO Inertial Systems Unit (IISU), Thiruvananthapuram; Liquid Propulsion Systems Center; Solid Propellant Space Booster Plant (SPROB); Space Applications Center (SAC), Ahmadabad; Sriharikota Space Center (SHAR); Vikram Sarabhai Space Center (VSSC), Thiruvananthapuram. | For all items subject to the EAR having a classification other than (1) EAR99 or (2) a classification where the third through fifth digits of the ECCN are "999", e.g. XX999. | Case-by-case review for all items on the CCL. | 63 FR 64322, 11/19/98; 65 FR 14444, 03/17/00; 66 FR 50090, 10/01/01; [Insert Federal Register citation 09/22/04. |
| | The following Department of Atomic Energy entities: Bhabha Atomic Research Center (BARC); Indira Gandhi Atomic Research Center (IGCAR); Indian Rare Earths; Nuclear reactors (including power plants) not under International Atomic Energy Agency (IAEA) safeguards, fuel reprocessing and enrichment facilities, heavy water production facilities and their collocated ammonia plants. | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. | 63 FR 64322, 11/19/98; 65 FR 14444, 03/17/00; 66 FR 50090, 10/01/01; [Insert Federal Register citation 09/22/04. |
| | The following Department of Atomic Energy entities: Nuclear reactors (including power plants) subject to International Atomic Energy (IAEA) safeguards: Tarapur (TAPS 1 & 2); Rajasthan (RAPS 1 & 2). | For all items subject to the EAR. | Case-by-case for all items listed on the CCL. Presumption of approval for EAR99 items. Presumption of approval for EAR99 items not controlled for Nuclear Proliferation (NP) reasons for use in the "balance of plant" (non-reactor-related end uses) [1] activities at nuclear facilities subject to International Atomic. | 63 FR 64322, 11/19/98; 65 FR 14444, 03/17/00; 66 FR 50090, 10/01/01; [Insert Federal Register citation 09/22/04. |

[1] "Balance of Plant" refers to the part of a nuclear power plant used for power generation (e.g., turbines, controllers, or power distribution) to distinguish it from the nuclear reactor.

Dated: September 17, 2004.

**Peter Lichtenbaum,**

*Assistant Secretary for Export Administration.*

[FR Doc. 04–21303 Filed 9–21–04; 8:45 am]

**BILLING CODE 3510–33–P**

---

## DEPARTMENT OF HOMELAND SECURITY

**Coast Guard**

**33 CFR Part 165**

**[CGD05–04–047]**

**RIN 1625–AA00**

**Security Zone; Atlantic Ocean, Chesapeake & Delaware Canal, Delaware Bay, Delaware River and Its Tributaries**

**AGENCY:** Coast Guard, DHS.

**ACTION:** Final rule.

**SUMMARY:** The Coast Guard is establishing a security zone that will require all vessels in a 500-yard radius around escorted passenger vessels to operate at the minimum speed necessary to navigate safely and prohibit any vessels from entering within 100 yards of escorted passenger vessels in the Captain of the Port (COTP) Philadelphia. This security zone is needed to ensure public safety and enhance maritime security. The zone will ensure the security of the vessels during transit in the COTP Philadelphia zone.

**DATES:** This rule is effective September 10, 2004.

**ADDRESSES:** Comments and related material received from the public, as well as documents indicated in this preamble as being available in the docket, are part of docket CGD05–04–047 and are available for inspection or copying at Coast Guard Marine Safety Office Philadelphia, One Washington Avenue, Philadelphia, Pennsylvania 19147 between 8 a.m. and 4 p.m., Monday through Friday, except Federal holidays.

**FOR FURTHER INFORMATION CONTACT:** Lieutenant Junior Grade Kevin Sligh or Ensign Jill Munsch, Coast Guard Marine Safety Office/Group Philadelphia, at (215) 271–4889.

**SUPPLEMENTARY INFORMATION:**

### Regulatory History

On June 28, 2004 we published a notice of proposed rulemaking (NPRM) in the **Federal Register** entitled "Security Zone; Atlantic Ocean, Chesapeake & Delaware Canal, Delaware Bay, Delaware River and its tributaries" in the **Federal Register** (69 FR 36032). We received no letters commenting on the proposed rule.

In addition, a temporary final rule with the same title was published in the **Federal Register** on April 13, 2004 (69 FR 19326). That temporary final rule

# EXHIBIT 12



WHITE ELECTRONIC DESIGNS
3601 E . UNIVERSITY DRIVE
Phoenix , AZ 85034
Phone : 602-437-1520  . Fax : 602-437-9120
http://www.whiteedc.com

**Invoice**            Page -    1

Sold To :  CIRRUS ELECTRONICS PTE. LTD.
7363       LEVEL 3, ECON BUILDING, NO 2
           ANG MO KIO STREET 64
           ANG MO KIO INDUSTRIAL PARK 3
                      569-084
           Singapore

Invoice :   61439
Invoice Date : 5/23/2003
Customer :   7363
Brn/Plt :        PHXMIL
Order Nbr :  10965        SO

Ship To :  CIRRUS ELECTRONICS PTE. LTD.
7363       LEVEL 3, ECON BUILDING, NO 2
           ANG MO KIO STREET 64
           ANG MO KIO INDUSTRIAL PARK 3
                      569-084
           Singapore

WIRE PAYMENTS TO :
BANK ONE
ACCOUNT  SB # 450-1822
ROUTING # 122100024

Customer P.O :  CIR/1419

F.O.B :   Freight Collect

Ship Instruct :   FED EX INTERNATIONAL PRIORITY
Deliv Instruct :  Account # 2191-2537-2

| Line | Description / Item No. | Ship Date | Qty Ship | UM | Unit Price | Extended Price |
|---|---|---|---|---|---|---|

CONTACT:  S. SUNDAR
PHONE: 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-2444
FAX: 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-3444
COMPLIANT CERTIFICATE OF COMPLIANCE
HOT SOLDER DIP
CCR
ECCN: 3A001-GBS
SCHEDULE B: 8542.60.0095
THESE COMMODITIES, TECHNOLOGY OR SOFTWARE WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT
ADMINISTRATION REGULATIONS.  DIVERSION CONTRARY TO U.S. LAW PROHIBITED.
(SRAM MODULE)
PAYMENT RECEIVED 14 MAY, 2003.
PARTIAL PAYMENTS NOT PERMITTED UNLESS APPROVED BY BUYER.
D/C IS TO BE WITHIN 12 MONTHS AT TIME OF SHIPMENT.

| 2.000 | S3D2B31-Q17A | 5/23/2003 | 10 | EA | 504.67 | 5,046.70 |
|  | WS512K32N-17H1QA | 512Kx32 BIT 5V CMOS SRAM |  |  |  |  |
| 3.000 | DATE CODE CONTROL | 5/23/2003 | 1 | EA | .00 | .00 |
|  | WITHIN 12 MONTHS OF SHIPPING |  |  |  |  |  |

090A0598

# EXHIBIT 13

| Message0447 | |
|---|---|
| **Subject:** | **RE: Holding Moral Responsiblity...** |
| **From:** | Cirrus Electronics Pte Ltd |
| **Date:** | 10/1/2004 6:07:59 AM |
| **To:** | 'Jaimes,Cory'; cirrus@cirruselectronics.com |
| **CC:** | us@cirruselectronics.com; 'Prasad. AKN. Mr.-CEO- Cirrus' |
| **Message Body** | |

Dear,

We understand your business sentiments and anguish. We will definitely instruct our sales forces not to seek quotes from you, till we clear our names with you or till you are satisfied with us. It is our bound responsiblity to honor your feelings and we abide by it.

So far, we did a business of USD 138,000.00 with you, out of USD 8.2 Million Dollar purchases from various manufacturers to Distributors from USA. We are one of the long standing members in ERAI (Electronics Resellers Association International) (www.erai.com).

For the sake of 1.6 % of the sales turnover (USD 138K/USD 8.2M), Cirrus would not mislead you. Hwéver,as requested in our previous email, upon review, we will revert to you soon.

We sincerely thank you for the support you have extended to us.

Regards.

——

From: Jaimes,Cory [mailto:cjaimes@wedc.com]
Sent: Friday, October 01, 2004 6:17
To: Cirrus Electronics Pte Ltd<cirrus@cirruselectronics.com>
Cc: us@cirruselectronics.com; Prasad. AKN. Mr.-CEO- Cirrus
Subject: RE: Holding Moral Responsiblity...

P. Sudarshan,

At the request of WEDC management as well as NPOL, I will no longer be quoting or accepting orders from Cirrus Electronics. I respectfully ask that you no longer entertain any quote requests for our product. Please do not try to contact our distributors or representatives for our product, they

have been instructed not to sell any parts to Cirrus.

Regards,

Cory Jaimes

International Sales WEDC

CJaimes@wedc.com

602 437 1520 x171

602 437 9120 fax

———

From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Thursday, September 30, 2004 4:48 AM
To: Jaimes,Cory
Cc: us@cirruselectronics.com; Prasad. AKN. Mr.-CEO- Cirrus
Subject: Holding Moral Responsiblity...

Dear Mr. Cory Jaimes,

I am pleased to reintroduce myself as P. Sudarshan, Managing Director for
Cirrus Global operations, spanning between 3 countries, 2 Continents, 5
Different offices. I just returned today from India, after appointing Mr.
AKN. Prasad as CEO for Cirrus. He is having 35 years Electronics Industry
Experience and he is restructing the entire Indian set up, Sales Forces
etc.,

I take the moral responsiblity, without shrinking and without passing on to
any of my past or present members. May I seek with you to grant us 15 days
time to find out the fact on this case and revert to you.

Till we clear off the case, you are well justified on your conclusion not to
do business with Cirrus Electronics. We appreciate your forthwith.


Regards.


P. Sudarshan

Managing Director.

For Cirrus Electronics, Singapore, USA and India Operations.


-----Original Message-----
From: Jaimes,Cory [mailto:cjaimes@wedc.com]
Sent: Wednesday, September 29, 2004 10:42 PM
To: Cirrus Electronics Pte Ltd<cirrus@cirruselectronics.com>
Cc: us@cirruselectronics.com; Jaimes,Cory
Subject: RE: Exports from USA eased- Our Order -Cir/1926-WS 512K 32N-017H1QA
Importance: High

Mr. Sundar,

    WEDC cannot sell you product to VSSC without the proper licensing, the
change that has been does not apply to WEDC product. I cannot accept an
order from VSSC at this time.


    I recently received PO CIR/1930 from your office with an end use
statement from Naval Physical & Oceanographic Laboratory (NPOL). I asked my
representative in India to contact NPOL to verify that this is a valid end
use statement. They contacted T Sreeprakash, which is the name listed on
the end use statement provided. Mr. Sreeprakash was very upset with the
misuse of the end use certificate which may have been provided earlier for
some other product/component. Again Mr. Sreeprakash has confirmed that he
has not issued any end use certificate to Cirrus Electronics.


WEDC has come to the conclusion that we no longer want to do business with
Cirrus Electronics. I feel it is my duty to report Cirrus Electronics to
the Bureau of Industry and Security department (U.S. Dept. of Commerce).

Regards,

Cory Jaimes

International Sales WEDC

CJaimes@wedc.com

602 437 1520 x171

602 437 9120 fax

-----Original Message-----
From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Tuesday, September 28, 2004 6:16 PM
To: Jaimes,Cory
Cc: us@cirruselectronics.com
Subject: Exports from USA eased- Our Order -Cir/1926-WS 512K 32N-017H1QA

Dear Ms Jaimes,

We are now sending you the relaxation of the export ruling of the US Govt

for your reference.

As such our order Cir/1926 is for VSSC for which we sent you the End user

certificate and VSSC is the subsidy of ISRO organisation .If need we can get

you the details for it.

Hence may we request you to process the order and send us your confirmation

and order acknowledgement .

IF you need any other details from us please do not hesitate to write to us.

Also please send us your order acknowledgement for our order Cir/1930.

Thanks with regards

S.Sundar

Cirrus Electronics Pte Ltd

Tel: +65-6481-2444

Fax: +65-6481-3444

Email: cirrus@cirruselectronics.com

Level 3, ECON Building, Street 64,

Ang Mo Kio Industrial Park 3,

Singapore 569 084.

---

### Outlook Header Information

Conversation Topic; Holding Moral Responsiblity...
Sender Name: Cirrus Electronics Pte Ltd
Received By: Cirrus Electronics, LLC
Delivery Time: 10/1/2004 6:07:59 AM
Creation Time: 10/1/2004 9:27:11 AM
Modification Time: 10/1/2004 9:27:11 AM
Submit Time: 10/1/2004 6:03:56 AM
Flags: 3 = Read, Unmodified
Size: 41280

### Standard Header Information

Received: from perumal ([202.166.100.5]) by cirruselectronics.com ; Fri, 01 Oct 2004 18:07:59
+0800 SGT
Reply-To: <cirrus@cirruselectronics.com>
From: "Cirrus Electronics Pte Ltd" <cirrus@cirruselectronics.com>
To: "'Jaimes,Cory'" <cjaimes@wedc.com>,
 <cirrus@cirruselectronics.com>
Cc: <us@cirruselectronics.com>,

"'Prasad. AKN. Mr.-CEO- Cirrus'" <akn@cirruselectronics.com>
Subject: RE: Holding Moral Responsiblity...
Date: Fri, 1 Oct 2004 18:03:56 +0800
Organization: Cirrus Electronics Pte Ltd
MIME-Version: 1.0'
Content-Type: multipart/alternative;
 boundary="----=_NextPart_000_002D_01C4A7E1.07925FD0"
X-Mailer: Microsoft Office Outlook, Build 11.0.5510
X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2742.200
Thread-Index: AcSm41NX99rYC2THRVCfzz122jeLSAAVYDWQABfOZbA=
In-Reply-To: <63154CBE889BA247BD6489CFB3355A951872EA@server.cirrus>
Message-ID: <109662528001@202.157.164.2>
Return-Path: <cirrus@cirruselectronics.com>
X-Rcpt-To: <us@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1096637222.771325
Status: U

# EXHIBIT 14

| Message0443 |
| --- |

| Subject: | On WEDC.. Do Not worry... |
| --- | --- |
| From: | Cirrus Electronics Pte Ltd |
| Date: | 9/30/2004 8:07:35 AM |
| To: | 'AKN Prasad' |
| CC: | us@cirruselectronics.com |

| Message Body |
| --- |

Dear Prasad and Mythili,

1) On reading the emails from Jaimes, do not get panic; At the end of
the game, it is I.... who need to face any music;

MG: You are not the owner of Cirrus LLC; Members will not be affected...
Besides, I am moving over to USA to take control on such crisis.. Hence,
do not fear about anything.. It is all business Games and come what may
be the results,,, Detach ourselves from the results.. We concentrate on
actions only.

2) TO AKN :        .

New Head ache for New CEO.... Do not worry, if we apply our thoughts in
professional way..

The actions are as follows:

a) Please call Shankar; You and SK may go to VSSC and explain them that
our intention is not to make profit on this order but to service VSSC..

b) Ascertain if VSSC has got some clout over NPOL....We need not indulge
full details to them..

c) You may see white electronics website and find out; WEDC has got
office at Bangalore also.. You may meet them on a friendly note.. Let
them be anybody..

d) We meet NPOL also and explain them so that we do not dent our
business with them also....


Since we have requested 15 days time, hope the time could be good enough
to solve the problem.

It is veil threat of WEDC on BIS; There are 1000 such companies and
100,000 such complaints..

As mentioned to you earlier, BIS came to Simal to many other
distributors in Singapore and just cautioned them only. In our case, it
is not that..

Besides, Hail the good News on Sep 24th... that the Ban on VSSC is
lifted off; + We also declared VSSC to white earlier;

Regards.

---

### Outlook Header Information

Conversation Topic: On WEDC.. Do Not worry...
Sender Name: Cirrus Electronics Pte Ltd
Received By: Cirrus Electronics, LLC
Delivery Time: 9/30/2004 8:07:35 AM
Creation Time: 9/30/2004 9:22:27 AM
Modification Time: 9/30/2004 9:22:27 AM
Submit Time: 9/30/2004 8:07:35 AM
Importance: Normal
Flags: 3 = Read, Unmodified
Size: 12589

### Standard Header Information

Received: from citrix ([202.166.100.39]) by cirruselectronics.com ; Thu, 30 Sep 2004 20:07:35
+0800 SGT
Reply-To: <cirrus@cirruselectronics.com>
From: "Cirrus Electronics Pte Ltd" <cirrus@cirruselectronics.com>
To: "'AKN Prasad'" <akn@cirruselectronics.com>
Cc: <us@cirruselectronics.com>
Subject: On WEDC.. Do Not worry...
Date: Thu, 30 Sep 2004 20:07:35 +0800
Organization: Cirrus Electronics Pte Ltd
Message-ID: <63154CBE889BA247BD6489CFB3355A95151DB8@server.cirrus>
MIME-Version: 1.0
Content-Type: multipart/alternative;
 boundary="----=_NextPart_000_0000_01C4A729.208FA8C0"
X-Priority: 3 (Normal)
X-MSMail-Priority: Normal
X-Mailer: Microsoft Outlook, Build 10.0.2627
Importance: Normal
X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2800.1441
Return-Path: <cirrus@cirruselectronics.com>
X-Rcpt-To: <us@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1096550538.743870
Status: U

# EXHIBIT 15

| Message0069 | |
|---|---|
| **Subject:** | **To forgive is not to forget** |
| **From:** | Sudarshan |
| **Date:** | 1/10/2005 8:32:54 AM |
| **To:** | CJaimes@wedc.com |
| **CC:** | akn@cirruselectronics.com; usa@cirruselectronics.com |
| **Message Body** | |

To: The Management of White Electronics / Mr. Cory Jaimes,

From : P. Sudarhan.. Co founder of Cirrus Electronics, USA, Singapore and India.

Dear Sirs/ Mr. Cory Jaimes,

Sub I: Apology

1) As one of the co-founders of Cirrus USA, Singapore & India & as President of Cirrus Global operations, I extend our sincere apology over the wrong information given by one of our Organisations, under me.

2) I went personally to NPOL and met Mr. Unnikrishnan. T and extended to him the same apology.

3) May we request you to forgive us about this incident, though should not be forgotten?

" To forgive is not to forget ".. A quote from Gandhi.

4) May we request for a one - to- one meeting with your management and with you to foster a better relationship and understanding?

Sub II: Corrective path

a) The Cirrus India was going through management changes at the time this event occured. This is not an excuse to cover the mistake but we state a fact.

b) Now, Cirrus India team is being headed by a strong Defense Scientist with management experiences spanning 35 years of career experience (Techo entreprenuer) to guide the team. Hence, we promise that such events won't occur at all.

Sub III: why such events

1) On Cir/1926: The sales team rightfully declared the end user. When they came to know about the export processing fee of USD 2500.00, at the time of order processing, they were unduly concerned on how to answer Cirrus management on this new fee as OEM would object to it.

Hence, they compounded the problem on Cir/1930, without any forethoughts.

2) But should an organisation, which is beyond the individual, be punished with non support for White parts for ever?

May we seek your merit in spite of the vivid knowledge that the one that must be loved is not a friend.? (A quote)

Sub IV: Today

1) One of the DRDO organisations is requesting us to honour our bid for White Electronics parts worth of USD 60,000.00; Similarly, the present orders worth of USD 25 K, the organisation is asking us to execute the orders. They knew the problems well and are ready to give us the end user certificate.

2) We can dream of executing this USD 85 K Order, if you and your management could see a friend in us who may be given an additional opportunity?

3) Even if we deserve to be censured at the very first instant without corrective paths, may we request you if Indian OEMs also need to be punished?

It is too difficult/complicated for some Indian Government OEM to change

the orders, even if they want to as some of the bids given to them were prior to this event.

After this incident, to honour your email, we never issued a single quote to any OEMs, never sought any quotes from any one else for White parts.

4) May we request you to try us for this USD 85 K and if you find a new Cirrus at the end, we will start with a new begining?

With warmth regards.

P. Sudarshan
Cirrus Electronics Pte Ltd
Tel: (65) 6481-2444
Fax: (65) 6481-3444
Email: <mailto:cirrus@cirruselectronics.com> cirrus@cirruselectronics.com
Website: www.cirruselectronics.com

Email CC to:

Ms. Mythili Gopal
Cirrus Electronics LLC, USA.
Tel: +1 (864) 286 3030
Fax: +1 (864) 286 1144
Email: <mailto:usa@cirruselectronics.com> usa@cirruselectronics.com
Website: <http://www.cirruselectronics.com/> www.cirruselectronics.com

AKN Prasad, CEO,
Cirrus Electronics Marketing (P) Ltd, India
Tel: (91)-80-5131-2100
Fax: (91)-80-5131-2111
Email: <mailto:sales@cirruselectronics.com> sales@cirruselectronics.com
Web: <http://www.cirruselectronics.com> www.cirruselectronics.com

To forgive is not to forget.

The merit lies in loving in spite of the vivid knowledge that the one that must be loved is not a friend.

There is no merit in loving an enemy when you forget him for a friend.

<http://www.brainyquote.com/quotes/authors/m/mohandas_gandhi.html> Mahatma Gandhi,

| Attachment |
|---|
| Daisies.jpg |

| Attachment |
|---|
| trans.gif |

| **Outlook Header Information** |
|---|
| Conversation Topic: To forgive is not to forget |
| Sender Name: Sudarshan |
| Received By: Cirrus Electronics LLC |
| Delivery Time: 1/10/2005 8:32:54 AM |
| Creation Time: 1/10/2005 4:40:32 PM |
| Modification Time: 1/10/2005 4:40:32 PM |
| Submit Time: 1/10/2005 8:32:47 AM |
| Flags: 18 = Unread, Unmodified, Has Attachment |
| Size: 48442 |

| **Standard Header Information** |
|---|
| Received: from perumal ([202.166.100.24]) by cirruselectronics.com ; Mon, 10 Jan 2005 21:32:54 +0800 SGT |
| From: "Sudarshan" <ps@cirruselectronics.com> |
| To: <CJaimes@wedc.com> |
| Cc: <akn@cirruselectronics.com>, <usa@cirruselectronics.com> |
| Subject: To forgive is not to forget |
| Date: Mon, 10 Jan 2005 21:32:47 +0800 |
| MIME-Version: 1.0 |
| Content-Type: multipart/related; boundary="----=_NextPart_000_005C_01C4F75B.EF910600" |
| X-Mailer: Microsoft Office Outlook, Build 11.0.5510 |
| Thread-Index: AcT3C9ZDbTa6llgeRsiePLmzV7Fthg== |
| X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2900.2180 |

Message-ID: <110536398003@202.157.164.2>
Return-Path: <ps@cirruselectronics.com>
X-Rcpt-To: <usa@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1105393229.74376
Status: U

# EXHIBIT 16

EDMS EMail Viewer

Delivered-To: cirruselectronics@gmail.com
Received: by 10.38.104.69 with SMTP id b69cs8244rnc;
    Sun, 24 Apr 2005 22:13:22 -0700 (PDT)
Received: by 10.54.16.52 with SMTP id 52mr1724194wrp;
    Sun, 24 Apr 2005 22:13:22 -0700 (PDT)
Return-Path: <cirrus@blr.vsnl.net.in>
Received: from juno.webvis.net (juno.webvis.net [202.157.164.2])
    by mx.gmail.com with ESMTP id 16si82315wrl.2005.04.24.22.13.19;
    Sun, 24 Apr 2005 22:13:22 -0700 (PDT)
Received-SPF: neutral (gmail.com: 202.157.164.2 is neither permitted nor denied by best guess
record for domain of cirrus@blr.vsnl.net.in)
Received: from mail.icenetworld.com ([202.122.22.1]) by juno.webvis.net ; Mon, 25 Apr 2005
13:13:17 +0800 SGT
Received: (qmail 18902 invoked by uid 7797); 25 Apr 2005 05:31:30 -0000
Received: by simscan 1.1.0 ppid: 18896, pid: 18897, t: 5.8736s
    scanners: regex: 1.1.0 attach: 1.1.0 clamav: 0.83/m:30/d:761 spam: 3.0.2
Received: from unknown (HELO user) (10.0.28.127)
  by saturn.icenetworld.com with SMTP; 25 Apr 2005 05:31:24 -0000
Message-ID: <003101c54955$0a14a4a0$7f1c000a@user>
Reply-To: "Shankar Kulkarni" <cirrus@blr.vsnl.net.in>
From: "Shankar Kulkarni" <cirrus@blr.vsnl.net.in>
To: "akn" <akn@cirruselectronics.com>
References: <110724986406@juno.webvis.net>
Subject: Re: White micro-Data sheets and alternate parts.
Date: Mon, 25 Apr 2005 10:40:02 +0530
Organization: Cirrus Electronics
MIME-Version: 1.0
Content-Type: multipart/alternative;
boundary="----=_NextPart_000_002E_01C54983.22DA4340"
X-Priority: 3
X-MSMail-Priority: Normal
X-Mailer: Microsoft Outlook Express 5.00.2615.200
X-MIMEOLE: Produced By Microsoft MimeOLE V5.00.2615.200
X-Spam-Checker-Version: SpamAssassin 3.0.2 (2004-11-16) on
saturn.icenetworld.com
X-Spam-Level:
X-Spam-Status: No, score=-0.9 required=5.0 tests=ALL_TRUSTED,AWL,
DEAR_SOMETHING,HTML_60_70,HTML_MESSAGE autolearn=ham version=3.0.2

37735125

Dear AKN

Kindly send the copy of the letter in which we requested for amendment for white micro part.

Regards
sk

----- Original Message -----
**From:** akn
**To:** 'AUM Technology - Shankar Kulkarni'
**Cc:** 'Cirrus Electronics Pte ltd'
**Sent:** Tuesday, February 01, 2005 2:54 PM
**Subject:** RE: White micro-Data sheets and alternate parts.

SK
Excellent !!
let us discuss today evening and draft a suitable letter to VSSC


Thanks and Regards,
AKN Prasad, CEO,
Cirrus Electronics Marketing (P) Ltd
Tel: (91)-80-5131-2100
Fax: (91)-80-5131-2111
Email: sales@cirruselectronics.com
Web: www.cirruselectronics.com

------------------------------------------------------------------------------------
This e-mail is strictly confidential and intended solely for the addressee. It may contain privileged and confidential information belonging to Cirrus Electronics Marketing (P) Ltd. It must not be read, copied, disclosed, distributed or used by any person other than the addressee. Unauthorised use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this message in error, you should destroy this message and kindly notify the sender by e-mail.
------------------------------------------------------------------------------------


------------------------------------------------------------------------------------
**From:** AUM Technology - Shankar Kulkarni [mailto:cirrus@blr.vsnl.net.in]
**Sent:** Tuesday, February 01, 2005 2:33 PM
**To:** akn
**Cc:** Cirrus Electronics Pte ltd
**Subject:** Re: White micro-Data sheets and alternate parts.

**Dear AKN/PS**

**Good news.  DSCC part offered to VSSC are aceptable.**

**1. We have to send an official communication to purchase department requesting for amendment.**

**2. Amendment will take almost 20-25 days.**
**3. However in principle equivallant part is acceptable to enduser.**
**4. Hence you may go ahead and procure the parts. ( Surendra has confirmed Go ahead)**

**Regards**
**sk**

----- Original Message -----
**From:** akn
**To:** 'AUM Technology - Shankar Kulkarni'
**Sent:** Tuesday, February 01, 2005 11:56 AM
**Subject:** RE: White micro-Data sheets and alternate parts.

yes I have received it.
We will discuss it today evening.


Thanks and Regards,
AKN Prasad, CEO,
Cirrus Electronics Marketing (P) Ltd
Tel: (91)-80-5131-2100
Fax: (91)-80-5131-2111
Email: sales@cirruselectronics.com
Web: www.cirruselectronics.com

------------------------------------------------------------------------------------

This e-mail is strictly confidential and intended solely for the addressee. It may
contain privileged and confidential information belonging to Cirrus Electronics
Marketing (P) Ltd. It must not be read, copied, disclosed, distributed or used by any
person other than the addressee. Unauthorised use, disclosure or copying is strictly
prohibited and may be unlawful. If you have received this message in error, you should
destroy this message and kindly notify the sender by e-mail.

------------------------------------------------------------------------------------


**From:** AUM Technology - Shankar Kulkarni [mailto:cirrus@blr.vsnl.net.in]
**Sent:** Tuesday, February 01, 2005 11:40 AM
**To:** Surendra.H
**Cc:** AKN Prasad
**Subject:** Re: White micro-Data sheets and alternate parts.

Dear Sir,

Hope you have got the attachments sent to you on 28 th Jan. regarding White micro partes.

Kindly confirm

Regards
shankar Kulkarni
98440-36195


----- Original Message -----

**From:** AUM Technology - Shankar Kulkarni
**To:** Surendra.H
**Cc:** AKN Prasad
**Sent:** Friday, January 28, 2005 7:25 PM
**Subject:** Fw: White micro-Data sheets and alternate parts.



Dear Sir

Ref our telecon. I am forwarding the details again.

Please reply to cirrus@blr.vsnl.net.in

Regards
shankar Kulkarni

AKn prasads msg is as below:

**From:** akn [mailto:akn@cirruselectronics.com]
**Sent:** Friday, January 28, 2005 1:20 PM
**To:** 'h_surendra@vssc.org'
**Cc:** 'AUM Technology - Shankar Kulkarni'; 'Cirrus Electronics Pte Ltd'
**Subject:** IMP - Reg White Electronics Part

Dear Mr. Surendra
It was a real pleasure meeting you during our visit to VSSC along with my collegue
Shankar Kulkarni.
1. We have resolved the issue concerning the part 24LC01B-I/OT
3000 Nos of this part should be shipped in next 10 days time.
2. The LC for the other major order is under process at VSSC and once received at
our office, will ship most of the pending items.

3. As regards the White Electronics Part WS 512K 32N 017 H1QA  (Mil version)
and  WS 512K 32N 017 H1IA (Ind version)

This, as you are aware, is a 512K, 32 Bit Memory Module with 17 Nano second speed
We have identified an exact equivalent to this part from Austin Semiconductors.
Part NO: 5962-9461110HTA.

For your information, both Austin and White electronics manufacturers components to DSCC Standard.
DSCC, as you may be aware, stands for Defense Supply Center Columbia.
Both part Nos, one given by White as well as the one given by Austin has a common DSCC equivalent Part NO. **5962-9461110HTA**

Hence compatability of Austin Part with White electronics part in terms of one to one replacement (Form, Fit and Function) is fully cleared.
Austin Semiconductors will ship the part marked with both DSCC P/N and their own P/N and COC will conform to DSCC supply standard.

We can now confirm shipment of Austin Part 5962-9461110HTA which is MIL equivalent for both Ind version and MIL version sought.

I have attached herewith the Austin Semiconductor data sheet and corresponding DSCC data sheets can also be provided if needed.

We look forward to your response to take this further.


Thanks and Regards,
AKN Prasad,
CEO,
Cirrus Electronics Marketing (P) Ltd
Tel: (91)-80-5131-2100
Fax: (91)-80-5131-2111
Email: sales@cirruselectronics.com
Web: www.cirruselectronics.com

Page: 1

**GOVERNMENT OF INDIA**
**DEPARTMENT OF SPACE**
**VIKRAM SARABHAI SPACE CENTRE**
**PURCHASE UNIT-II,VRC MSB 7th FLOOR**
**ISRO POST,THIRUVANANTHAPURAM 695022**
**KERALA, INDIA**
**PURCHASE ORDER AMENDMENT**

Ph No 0471-2565141,5149
Fax: 0471-2564174
EMAIL: spo_avn@vssc.org

Date: 05/04/2005

To:
  M/S CIRRUS ELECTRONICS PTE. LTD.,

  LEVEL 3, ECON BUILDING NO.2, ANG MO KIO
  STREET 64, ANG MO KIO INDUSTRIAL PARK 3,

  SINGAPORE 569 084
  SINGAPORE

Sub:    **Purchase Order No:**  4024- 20040027980101    **Dated: 23/08/2004**
        **Your References:**    QTF/1561  dtd.18-09-2003.
                We hereby amend the subject order as above to the extent indicated below.

| AmndNo | In place of | To be read as | |
|---|---|---|---|
| 001 | Sl. No.1  Part No:WS512K32N-017H1QA | Sl. No.1  Part No:5962-9461110HTA | R |
| 002 | DELIVERY DATE : 15/12/04 | DELIVERY DATE : 30/04/2005 | R |

LINEITEMCODEDETAILS
        5201GJ011D01

All other entries in the order remain unaltered.Please acknowledge receipt of this amendment and its acceptance.This
is issued without prejudice to the terms and conditions of the order

**Indentor Name:**  ESSY SAMUEL
**Division:**        BASE BAND SYSTEMS ELECTRONICS

R. INDENTOR COPY

JOY TK
HEAD PURCHASE & STORES
For and on behalf of the President of India
The Purchaser

# EXHIBIT 17

# Cirrus Electronics Pte Ltd

Level 3, ECON Building, No 2, Ang Mo Kio Street 64,
Ang Mo Kio Industrial Park 3

Singapore 569 084
TEL: (65) 6481 2444   FAX: (65) 6481 3444 / 6234 0671
E-mail: cirrus@cirruselectronics.com

## End use Certificate

From the desk of
P.Sudarshan

Our Ref No and Date   CIR/PO/1511   10-Aug-03

To the desk of
IRIS - INDIA

Your Ref No
Date

Dear Sir,

## END USE CERTIFICATE FOR THE PURCHASE ORDER NO: CIR/1511

**Programme: DATA AQUISION SYSTEM FOR ALH**

**DESCRIPTION OF PROGRAMME: We re developing a sub System for Advance Light Helicopter (ALH). This sub System is a data acquisition system for ALH. The ordered parts will be used to supply the power to this sub system**

*S Lee
8/28/03*

1. GOODS WILL NOT BE RE - EXPORTED WITHOUT PRIOR US GOVERNMENT AUTHORISATION.

2. GOODS WILL NOT BE USED FOR CHEMICAL, BIOLOGICAL OR NUCLEAR WEAPONS OR WARFARE

3. GOODS WILL NOT BE USED IN A BALLISTIC OR LONG RANGE CRUISE MISSILE OR SPACE LAUNCH VEHICLE DEVELOPMENT PROGRAM.

Thank you. We look forward to being of service to you again.

With Our Best Regards

*P. Sudarshan*

# EXHIBIT 18

भारत के
अन्तरिक्ष विभाग
**विक्रम साराभाई अन्तरिक्ष केन्द्र**
क्रय यूनिट - II
कमरा सं - 709, एम एस बी, वि एस एस सी
तिरुवनन्तपुरम - 695 022, भारत
दूरभाष : 0471-2565141/2565719/2565859
फैक्स : 0471-2564174
इ-मेल : spo_svm@vssc.org

Government of India
Department of Space
**Vikram Sarabhai Space Centre**
Purchase Unit - II
Room No. 709, MSB, VRC
Thiruvananthapuram - 695 022, India
Telephone: 0471-2565141/2565719/2565859
Fax: 0471-2564174
e-mail: spo_svm@vssc.org

Ref: PII/IDF/2181/03/12009                          23rd August, 2004

### END USE STATEMENT

| 1. | End User of Consignee | | The Senior Purchase & Stores Officer, Unit No. II, VSSC, ISRO P.O., Thiruvananthapuram - 695 022 |
|----|----|----|----|
| 2. | Item Description | | DC DC Convertors & Filters: MHF + 2805SF /883B      - 28 Nos. MHF + 2815DF /883B      - 41 Nos. MHF + 2851S TF /883B      - 28 Nos. MTR2805SF /883B      - 15 Nos. FM704A/883B      - 100 Nos. |
| 3. | To be used for | | For Instrumentation & Telemetry Systems of launch vehicles meant for launching satellites of the Indian National Satellite programme, for telecommunication, weather forecasting, disaster warning etc. |
| 4. | The goods are for our own use at Vikram Sarabhai Space Centre, Thiruvananthapuram – 695 022, India and will not be directed, transsshipped or re-exported. | | |
| 5. | The above goods will not be used for any purpose connected with chemical, biological or nuclear weapons or missiles capable of delivering such weapons nor will they be re-sold if we know or suspect that they are intended or likely to be used for such purpose | | |
| 6. | The goods will not be used for military purpose | | |

Signed                          :

Name [ in block capitals ]     : V NARAYANA DAS

Status                          : SENIOR PURCHASE & STORES OFFICER

Date                            : 24—08—2004

भारतीय अन्तरिक्ष अनुसन्धान संगठन इसरो ISRO Indian Space Research Organisation

Intpt 0016

# EXHIBIT 19

| Message0036 |
| --- |
| **Subject:** RE: Is it Only for future ?? Or Past!!! |
| **From:** McNelley, Maddie |
| **Date:** 12/20/2005 7:15:59 PM |
| **To:** Cirrus Electronics LLC |
| **CC:** Cirrus Electronics Pte Ltd |
| **Message Body** |

Mr. Sudarshan,

For the other 2 orders that you have placed recently which we have not yet accepted,
#Cir/2349 & Cir/2361 will also require export licenses based on the information we received from you as to the application and end customer.
Per Export Administration Regulations, part 744.3:

"Restrictions on certain rocket systems (including ballistic missile systems and space launch vehicles and sounding rockets) and unmanned air vehicles(including cruise missile systems, target drones and reconnaissance drones) end-uses."

I hope that this explains further the need for DOC licenses.

Rgds,
Maddie

Maddie McNelley
International Inside Sales Administrator
maddie.mcnelley@craneae.com <mailto:maddie.mcnelley@craneae.com>
PH: 425-895-3018
FX: 425-882-1990

_____

From: McNelley, Maddie
Sent: Tuesday, December 20, 2005 2:45 PM
To: 'Cirrus Electronics LLC'
Cc: 'Cirrus Electronics Pte Ltd'
Subject: RE: Is it Only for future ?? Or Past!!!

Dear Mr. Sudarshan,

This covers any order going to VSSC based on the previous end use that you have provided.

Rgds,
Maddie

Maddie McNelley
International Inside Sales Administrator
maddie.mcnelley@craneae.com <mailto:maddie.mcnelley@craneae.com>
PH: 425-895-3018
FX: 425-882-1990

_____

From: Cirrus Electronics LLC [mailto:usa@cirruselectronics.com]
Sent: Tuesday, December 20, 2005 2:35 PM
To: McNelley, Maddie
Cc: 'Cirrus Electronics Pte Ltd'
Subject: Is it Only for future ?? Or Past!!!

Dear Ms. Maddie,

Thank you for your quote QMM122005-28. You had mentioned the
requirement of approved license from US Dept of commerce for this quote.

Here couple of questions: The verbatim from your old email dated
3/Aug/05 is enclosed:

=======================================================================
===================================
3A) PO # CIR/2235, our SO # 71917: Happy to note that items are getting
ready for shipment. Does it indicate that you have already obtained the
Export License from US Dept of Commerce? As per last emails, you had
indicated that it would take 8 Weeks.

*This order does not require an Export License, but we do need a
completed enduse statement from you before we can ship product.
=======================================================================
===================================

1) We think that US dept of commerce moved these items for License
between Aug to Dec? Am I right?

b) More Critical is: What will be impact on the existing items on PO
Cir/2235 or 2349 and Cir/2361??
SNo

Part No

Description

TR Qty

Dely

UnitCost

TR Cost

1

MHF +2805SF/883B

Interpoint; DC DC CONVERTOR

28

6-8 wks

569.00

15,932.00

3

MHF + 28515 TF/883B

Interpoint; DC DC CONVERTOR

28

4-8 wks

735.00

20,580.00

4

MTR2805SF/883B

Interpoint; DC DC CONVERTOR

15

18-20 wks

708.00

10,620.00

SNo

Part No

Description

TR Qty

PO No

PO Date

Supplier

Dely

UnitCost

1

MHF+2805DF/883

Interpoint, 5V DC-DC CONVERTER, 28V INPUT, 15 WATT

5

CIR/2349

06-Oct-05

Interpoint

20-22 wks

740.00

SNo

Part No

Description

TR Qty

PO No

PO Date

Supplier

Dely

UnitCost

2

FM704A/883

Interpoint, EMI FILTER

4

CIR/2349

06-Oct-05

Interpoint

6-8 wks

866.00

1

FM704A

Interpoint, EMI FILTER

4

CIR/2361

12-Oct-05

Interpoint

4 Wks

513.00

We appreciate your feed back. We need to send you USD 47 K plus and we expect your confirmation before we do the wachovia to wachovia fund transfer.

With warmth regards.

P. Sudarshan
Cirrus Electronics LLC, USA.
Tel: +1 (864) 286 3030
Fax: +1 (864) 286 1144
Email: usa@cirruselectronics.com <mailto:usa@cirruselectronics.com>
Website: www.cirruselectronics.com <http://www.cirruselectronics.com/>

Attention:
The information contained in this email message may be privileged and is
confidential information intended only for the use of the recipient, or
any employee or agent responsible to deliver it to the intended
recipient. Any unauthorized use, distribution or copying of this
information is strictly prohibited and may be unlawful.

If you have received this communication in error, please notify the
sender immediately and destroy the original message and all attachments
from your electronic files.

This e-mail message has been scanned and cleared by the Crane Aerospace
mail server.

| Attachment |
| --- |
| tech.gif |

| Attachment |
| --- |
| McNelley, Maddie.vcf |

| Outlook Header Information |
| --- |
| Conversation Topic: Is it Only for future ?? Or Past!!! <br> Sender Name: McNelley, Maddie <br> Received By: Cirrus Electronics LLC <br> Delivery Time: 12/20/2005 7:15:59 PM <br> Creation Time: 12/20/2005 7:36:31 PM <br> Modification Time: 12/20/2005 8:51:09 PM <br> Submit Time: 12/20/2005 7:15:52 PM <br> Flags: 17 = Read, Has Attachment <br> Size: 39009 |

| Standard Header Information |
| --- |
| Received: from crossfire.lynweb.dmz ([12.46.32.202]) by cirruselectronics.com ; Wed, 21 Dec 2005 08:15:59 +0800 SGT <br> Received: from venus.cranecrm.com (Not Verified[10.107.15.107]) by CROSSFIRE.lynweb.dmz |

with NetIQ MailMarshal (v5.5.6.6)
 id <B000b3e5a8>; Tue, 20 Dec 2005 16:19:04 -0800
X-MimeOLE: Produced By Microsoft Exchange V6.5.7226.0
Content-class: urn:content-classes:message
MIME-Version: 1.0
Content-Type: multipart/mixed;
 boundary="----_=_NextPart_001_01C605C3.B7527DD3"
Subject: RE: Is it Only for future ?? Or Past!!!
Date: Tue, 20 Dec 2005 16:15:52 -0800
Message-ID: <140D6D6E7D02FB4C9948C604D2F55A7A01302421@venus.cranecrm.com>
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
Thread-Topic: Is it Only for future ?? Or Past!!!
thread-index: AcYFtZmFtkk99wWNTfSech4rx8H+XQAAThDAAAL4XUA=
From: "McNelley, Maddie" <maddie.mcnelley@craneae.com>
To: "Cirrus Electronics LLC" <usa@cirruselectronics.com>
Cc: "Cirrus Electronics Pte Ltd" <cirrus@cirruselectronics.com>
Return-Path: <maddie.mcnelley@craneae.com>
X-Rcpt-To: <usa@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1135125389.223268
Status: U

# EXHIBIT 20

Dear Sir,

---

**From:** akn [mailto:akn@cirruselectronics.com]
**Sent:** Wednesday, November 30, 2005 1:22 AM
**To:** 'Cirrus Electronics LLC'
**Cc:** 'Cirrus Electronics Pte Ltd'
**Subject:** RE: One year of registration !

PS

Well spoken thoughts.

True many + and - during this one year and many a lesson learnt.

We should certainly do better on the firm consolidation we have now established, to cite a few:

1. VSSC is now our A+ Customer - All Enq / Orders are received at our office - Avg VSSC Enq 15 to 20 per month - Need to look at increasing this mamoth opportunity to orders. - Current booking $ 260K - Another $ 100K should come by Dec - should aim at min $ 500K to $ 750K for 2006

If I do not drain my precison time in Virus kind, admin Kind // Fully focusing into Sales side, yes.. we can convert every white into 5962-- and get most out of VSSC, HAL to others.. But, long way to go...

2. BEL - Massive enq via email - we are working at improving our relations with concerned personnel - girish will move a meeting on his return from SAC. New account aded which has generated overall $ 87K Orders - Should look at $ 200K + for 2006.

Good

3. BDL, new stable customer aded - $ 38K total till date - Look for $ 75K for 2006

Good.. See BDL issues on my next email.

4. BHEL - now a stable customer for all parts - Current booking till date $ 289K. Should target $ 400K for 2006. ..Will face tough calls, unless we develop another MKN there.

5. HAL - MRP Enq have started again - relations on the improve - SK is looking at establishing special relations during his visit this time. - current booking till date $ 265k - look to increase to $ 400K for 2006.

Please you may continue to visit to garner good will..

6. SLRDC - Same status - Current booking $ 147K - Target $ 300K for 2006. ..Good

7. Others $ 150K till date - Target $ 300K. .. Good

Current order booking till date for 2005 (Jan Nov) is $ 1.4M. By end of Dec we may just cross $ 1.5M to $ 1.6M.
Let us work towards min target of $ 3M for 2006. .. Excellent..

I will plan and set incentive targets for everyone accordingly. ..>G ood/

I am very positive and hopeful we should achieve this. .. GOod.

With best wishes to everyone
AKN

---

**From:** Cirrus Electronics LLC [mailto:usa@cirruselectronics.com]
**Sent:** Wednesday, November 30, 2005 8:07 AM
**To:** 'akn'
**Cc:** 'Cirrus Electronics Pte Ltd'; akhila@cirruselectronics.com; girish@cirruselectronics.com; saraswathisimha@yahoo.co.in
**Subject:** RE: One year of registration !

Dear,

Congratulations to you and our team members. One year rolled as though they were yesterdays. Many plus & minus, challenges, rough rides, tensions.. at the end, everything is a new lesson that we all learned. To cite examples which are green in our memories down our time lanes:

1) Feb Odds: At Singapore: BBS subsidiary, DMS opened up its account, with a real bang!! Sundar & I kept changing the roles of Shock absorber to each other, when hammer & tongs were thrown at us in bits.

2) March Surprise: BHEL-Micron; 3 times enquiries floated. Cirrus USA, esp Ms. Mythili did wonderful job of getting a quote of Micron. I am still under surprise about how did she manage it!!

3) Mid year Crisis: I kept parroting many times to many people. Every information is power, however small & silly it may look. We could floodgate even a tiny information. A small leak from Now Electronics that he sent out his quotes to our competitors also. We thanked & condemned him equally. But for that leaky information, with our high complacency, we do not think we could have moved our ground forces strongly, taking help of DARE to fight against Now on NWC. I shuddered to dream how much catatrophic or Katrina it could have been for us, had not we not reacted!! See y'day new enquiry on NWC..

4) Every action would cost us a lot.. but every inaction would cost more than action's cost. Here, Kudos to Sundar for his wonderful guess work on negative price on C70B24R70 part. AKN's yesteryear subordinate's refusal.. Cancellation note from Veerakumar... Again a leak of data sheet from Lion's den itself.. Vectron itself. Price Hijacking by Aarjay to kill Cirrus.. Roller-coaster rides.. At the end.. Bumpy rides to bumper crops... Congrats to AKN & everyone in the team to etch a Cirrus part C70.

5) November Chill Winter: MQ80960: "Nayami": ie: God's pull: No meeting point between ADE to Rochester. We were dwarfs between odd giants. As noted in "Footprint postures", we saw only 2 leg prints on sand of times. Upon requests, God answered that he carried that man on his shoulder.

I thank everyone in our team for their association with cirrus. I thank Ms. Saraswathi, Ms. Akhila for ground support.  I thank Girish for his Field work. I thank AKN for his work towards stability & image building, when chips were down. I thank Sundar for shouldering my burden on Singapore Office. I welcome new comer Mr. Murali..

We have Miles to go... We need to be more agile; We need to coordinate a lot to make Cirrus a successful company. Automatically, success of individual is established. Hope to see you all soon. Hope to see our members' happiness in working with Cirrus.

With warmth regards.
P. Sudarshan
Cirrus Electronics LLC, USA.
Tel: +1 (864) 286 3030
Fax: +1 (864) 286 1144
Email: usa@cirruselectronics.com
Website:  www.cirruselectronics.com

---

**From:** akn [mailto:akn@cirruselectronics.com]
**Sent:** Tuesday, November 29, 2005 12:41 AM
**To:** 'Cirrus Electronics LLC'; 'Cirrus Electronics Pte Ltd'; akhila@cirruselectronics.com; 'Girish G Shastri (Cirrus)'; saraswathisimha@yahoo.co.in; 'vlv'; vlvrajan@vsnl.com; enkayblr@vsnl.net; 'rameshbhat'
**Subject:** One year of registration !

Hi All
Greetings to all on the eve of completing one year of CEMPL registration as a Pvt Ltd Co. It was on this day, 29th Nov 2004, that CEMPL registration was done.
We started our operations on 3rd December 2004 and this time, 3rd being a Saturday, we will celebrate our Anniversary in the office on 5th December by cutting a Cake!.
Congratulations to all CEMPL staff for an year successfully completed.
We have ambitious plans ahead and look forward to continued support from everyone with renewed vigor, motivation and zeal to move forward and scale new heights.

ALL THE BEST

AKN Prasad, CEO,
Cirrus Electronics Marketing (P) Ltd
Tel: (91)-80-5131-2100
Fax: (91)-80-5131-2111
Email: akn@cirruselectronics.com
Web: www.cirruselectronics.com

------------------------------------------------------------------------------------

This e-mail is strictly confidential and intended solely for the addressee. It may contain
privileged and confidential information belonging to Cirrus Electronics Marketing (P) Ltd.
It must not be read, copied, disclosed, distributed or used by any person other than the
addressee. Unauthorised use, disclosure or copying is strictly prohibited and may be
unlawful. If you have received this message in error, you should destroy this message and
kindly notify the sender by e-mail.

------------------------------------------------------------------------------------

# EXHIBIT 21

# Cirrus Electronics Pte Ltd

Level 3, ECON Building, No 2, Ang Mo Kio Street 64,

Ang Mo Kio Industrial Park 3,

Singapore. 569-084.

TEL: (65) 6481-2444 FAX: (65) 6481-3444 / 6234-0671

Email: cirrus@cirruselectronics.com

## STATEMENT OF ASSURANCE

We acknowledge that products (or technical data) to be purchased from **Avnet Inc,** include or may include products which are subject to export control laws and regulations of the United States.

We hereby certify that all sale, transfer, consignment, loan or donation of products and /or technology acquired from Avnet, Inc made directly or indirectly outside the United States are made in full compliance with all applicable export control laws and regulations.

This statement  will be valid for 2 years starting with the date of issue.

### PURCHASER

Name:        **Cirrus Electronics Pte Ltd**
Address      level 3, ECON Building 2, Ang Mo Kio Street 64
             Singapore - 569-084

**FOREIGN CONSIGNEE** (If not the same as Purchaser)

Name:        Hindustan Aeronautics Ltd
Address      HAL PO
             Hyderabad – 500042, INDIA

### PURCHASER

Signature of Authorized Company representative
Name: *P. Sudarshan* Title: *Managing Director*

Issue Date: *September 16. 2005*

# EXHIBIT 22

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION



601 Fourth Street, N.W.
Washington, D.C. 20535

| | |
|---|---|
| Case No: | 310Q-WF-229966 |
| Line ID: | 8642863030 |
| Date of Recording: | 2/10/2006 |
| Time: | 09:45:45 EDT |
| Language(s): | English and Tamil |
| Transcriber: | Vasanthaleela Chellappa |
| Date of Transcription: | January 20, 2007 |
| Job #: | 12350 |

**Participants**

| | |
|---|---|
| Parthasarathy Sudarshan | PS |
| Unknown Female | UF |
| LNU, Ramarao | RR |

**Abbreviations**

| | |
|---|---|
| Standard font | English |
| *Italics* | *Tamil* |
| | |
| UI | Unintelligible |
| IA | Inaudible |
| PH | Phonetic |
| [] | Background conversation |
| SC | Simultaneous conversation |
| OV | Overlapping voices |

File#: 310Q-WF-229966                          Page 2 of 13
Job #: 12350

## VERBATIM TRANSLATION OF CONVERSATION OF SID:7462550

## DATE OF RECORDING: 02/10/2006    TIME: 09:45:45 EDT

## LENGTH: 09 min 32 sec

[Dial tone]

[Background noise]

[Dials numbers]

[Phone rings]

[Background noise continues]

UF:    Good Morning. Bharat [PH] Electronics!

PS:    Yes.  Can I speak to Mr. Ramarao please?

UF:    Ah, yes.  Can you hold just a moment?

PS:    Yes, please.

UF:    Thank you.

[Noise]

[Phone rings]

[Background noise continues]

RR:    Hello.

PS:    Am I speaking with Mr. Ramarao please?

[Background noise continues]

RR:    Ah.  Speaking.

File#: 310Q-WF-229966                                      Page 3 of 13
Job #: 12350

PS:    [Sighs] Sir, Good morning to you. My name is Sudarshan. [Noise] I am calling you from the company called Cirrus Electronics, LLC from United States, from Greenville or Simpsonville, Sir. [Sighs]

RR:    From?

PS:    Uh, from Greenville. That is, from South Carolina.

RR:    South Carolina?

PS:    Yes, please.

RR:    Okay.

PS:    And, uh, we have been doing business with Bharat Electronics, Bangalore as well as Bharat Electronics, Singapore [Sighs] --

RR:    Mm-hmm.

PS:    -- for the last six, seven years.

RR:    Mm-hmm.

PS:    And, uh, we thought, we-we, uh, we should able to talk to you and then, uh, seek [PH] if-whether you could help us in getting the enquiries and, uh [noise], we should able to serve with Bharat Electronics in a most professional way, Sir [sighs] -- as one of your vendors.

RR:    You are very far away from New York, huh [PH]?

PS:    Yes, Sir.

RR:    Mm.

PS:    Um, uh, because we opened up this, uh, U.S. branch to cater to some of our Indian customers--especially with Washington, D.C. -- with our AD [PH] kind of a

defense office-defense counselor office [sighs] and uh, mainly we are

concentrating mostly on the Indian, uh, business only -- Indian customers. [Sighs]

RR:    [SC] Mm.

PS:    And, uh-uh, m-more like a c-customers like ADE [PH] or DARE and, uh-uh,

Bharat Electronics, BHEL . . . this type of Government customers, we are

handling, Sir.

RR:    [SC] Mm.

PS:    [Sighs] So, we wanted to make an introduction to you or seek your appointment

in case you could uh-uh, give us some --

RR:    [SC] Mm.

PS:    -- appointment so that we could come to New York and [SC] meet you.

RR:    We are in, uh . . . We are in New York.

PS:    Yes, Sir.

RR:    Uhh . . .

PS:    *You . . . whenever you get the* time . . .

RR:    [Interrupts] You are, uh . . . You have a line card?

PS:    Yeah. I-I . . . We don't have a--any kind of a strong representation. But we are a

general traders. And we did . . .

RR:    Oh. Actually, what we do is . . . You are general [SC] [UI] --

PS:    [SC] Okay.

RR:    -- but generally, what we do is, you know --

PS:    Okay.

RR:    -- we generally go to the franchisers.

PS:    Okay--okay.

RR:    So, we get most of the item from the--franchised distributor --

PS:    Yes, sir.

RR:    -- uhh, who get the -- totally, the new items basically --

PS:    Mm-hmm.

RR:    -- from the original--uh, supplier.

PS:    [SC] Okay.

RR:    [UI] supplier.

PS:    Mm-hmm.

       [Background noise continues]

RR:    So, only for some obsolete items and things like that only we go to other people.

PS:    Yes, sir.  We are quite strong because eve-even with DARE, we have developed a

       new product which is again being used with Bharat Electronics as well as HAL.

       [Sighs] And uh-uh-uh, this is a small company of course; It's . . .  We are doing

       something around 3 million dollars as our [PH] turnover --

RR:    Hm.

PS:    -- as a group turnover.  And our main focus is looking at the hard to find part,

       obsolete part and, uh, very tough parts. [Noise]  In case the parts are no longer

       available, in case we-we are able to get the dye, you know, we remanufacture the

       item. [Sighs] Even the DARE has approved us as a . . . Cirrus Electronics as one

       of the designers cum manufacturers for, uh, DP RAM -- Dual Port RAM model.

       That's going into the -- one of the R-R-RC computers and other items.

RR:    Hm.

PS:    [Sighs] And, even we, uh, doing almost like every day we get one order from
       Bharat Electronics, Siro [PH] offi-uh, from Singapore office. [SC] [Sighs]

RR:    Singapore office?

PS:    Yes. Almost daily we see one order or other.  It could be value . . . It could be
       value of 30 dollars.  Sometimes, it goes even upto 300,000 dollars orders also.

RR:    Hm.

PS:    [Sighs] So, during . . . Mr. Prakash - when he was working uh-uh, in Siro [PH]
       office . . . during that time, we supported Bharat Electronics or Bharat Electronics
       supported us in a very-very strong way. [Sighs] Because that time, you know,
       Nyro [PH] office was, uh, not . . . I mean, because of the embargo and other
       issues, we are able to get most of the orders from Si-uh--from, uh, Singapore
       office.

RR:    Hm.

PS:    [Sighs] [Noise] And m-many of the recommendations that we should start an [PH]
       office to cater to the Nyro [PH] office because we are unable to penetrate Nyro
       [PH] office from Singapore end. [Sighs] So, *let me know if you get some* time;
       So . . . we like to come and meet you and present ourselves and . . .

RR:    *Come; Come any time.* --

PS:    [SC] [Sighs]

RR:    -- You are welcome.

PS:    Uh-huh.

RR:    [SC] Come [PH].

PS:    Sir, Can I take down your email, sir? So, I will send you a formal introduction of

our . . .

RR:    [Interrupts] Uh . . . my email . . .

PS:    Yes, sir.

RR:    Uh . . . ramaraosr . . .

PS:    Rama-rao--sr.

RR:    R-a-m-a-r-a-o.

PS:    R-a-m-a-r-a-o.

RR:    [SC] R-a-o-s-r.

PS:    s-r. Okay.

RR:    s-r@yahoo.com

PS:    @Yahoo.com. Yes, sir. [Sighs] [SC] So . . .

RR:    So [PH] . . . But [PH], *send it in.*

PS:    Mm.

RR:    We will see where . . . which are the lines [PH] strong and everything --

PS:    [SC] Mm-hm-Mm.

RR:    -- and . . .

PS:    [Interrupts] [Sighs] Look. I can send you a couple of orders we have received

even as I told you, Sir. *We -- a* . . . Even, uh, from Bangalore, some, uh . . .

Bharat Electronics, Bangalore unit, uh, [UI] last week or fortnight ago even [PH]

we got orders from Bharat Electronics, Hyderabad unit [Sighs] and with

Singapore, as I told you, almost like . . .

RR:     [Interrupts] Okay.  Whatever orders you are getting *from* BEL, Bangalore, you . . .

        but, not Bangalore . . .

PS:     Okay.

RR:     If BEL units in India, you know . . .

PS:     Okay.

RR:     Uh--uh-uh, if you are getting some orders, uh, this one, just--uh, fax the--copies of

        that, for [PH] those things alone.

PS:     Okay.

RR:     Huh?

PS:     Okay.

RR:     *Send it.*

PS:     *I will send it,* Sir.

RR:     *Then* [PH]*, we will see.*

PS:     *Yes* sir.  Uh-uh, *we are* . . .

RR:     [Interrupts] Line card or your, m-m-uh, your, uh, this one -- business . . . where

        [PH], which way it goes - *see all that* [UI] *and send it*

PS:     Definite*ly*, sir.

RR:     And, uh . . . Okay, you send it.  Then we will see.

PS:     [Sighs] And, probably you-you might've heard our company, sir.  Because, uh --

        uh, *from* Bangalore, *you* . . .  Girish Shastri and A.K.N. Prasad . . . actually A.K.N.

        Prasad who is heading the CEO [PH], he was one [PH] ex-BEL only. [Sighs]

RR:     A.K.N. Prasad?

PS:     Yes, sir.

File#: 310Q-WF-229966                                    Page 9 of 13
Job #: 12350

RR:    *Which . . . A.K.N.Prasad?*

PS:    He is A.K.N.Prasad . . . Now he is working as a CEO for, uh, Cirrus Electronics,

       uh, India unit. [Sighs] Yeah [PH], we are located in Jayanagar in Bangalore.

RR:    *Say it. Your's . . . s-y . . . s-i . . .*

PS:    Uh-uh, c-i-double r -

RR:    S [PH]-C-I-

PS:    Uh, C for cat, I for India

RR:    Huh.

PS:    R for Robert, one more time R for Robert.

RR:    Huh.

PS:    U for United, S for . . .

RR:    [Interrupts] Oh. Cirrus?

PS:    Yes, sir.

RR:    S [PH]-i-r-r-u-s.

PS:    [SC] Yes, sir.

RR:    I've [PH] heard of it.

PS:    Oh [PH]. [Sighs]

RR:    Mm-hmm. Okay. Right. *You send it.*

PS:    Huh [PH].

RR:    You send the--this one . . . uh --*your* line card and some purchase orders; what . . .

PS:    [Interrupts] Uh, definite*ly*, sir. Definite*ly*, sir.

RR:    [SC] [UI]

File#: 310Q-WF-229966                                    Page 10 of 13
Job #: 12350

PS:   Because, as I told you sir, *from* Bharat Electronics, *we* -- at one point of time, in a
      year, we crossed more than 1.5 million dollars.

RR:   Mm-mm-mm-mm.

PS:   [SC] [Sighs]

RR:   May be . . . *that would have been the* sanction time.

PS:   Yes. *During that* time, we supported very heavily and orders, like, flew [PH] like,
      you know, like, as though -- *it was flowing like* water. [Sighs]          06:51
                                                                                   to
                                                                                 06:52
RR:   [SC] Mm.  Okay.

PS:   So, right now, of course, we have to understand that, you know, uh --this, uh, you
      can go directly to the manufacturers or [PH] the authorized distributors.

RR:   [SC] Mm.

PS:   Sometimes, uh, some of the authorized distributors -- they are able to give us
      some special prices. [Sighs]

RR:   Hm.

PS:   And, *because of that,* we, in case give [PH] an opportunity, we should be able to
      gi-uh, give a competitive prices.

RR:   [SC] HM.

PS:   [Sighs] And, more than anything else, our specific domain is . . . we are quite
      strong in getting obsolete items, sir.

RR:   Okay.

PS:   [Sighs] And, w-we can give you the t-tracebilities and other issues.  Because,
      recently we won, even from HAL, something like half million dollars orders --

RR:   Hm.

PS:     -- [sighs] for an obsolete item for which we have given them 18 months banker's [PH] guarantees.

RR:     Mm.

PS:     And, uh-uh, no rejection, nothing and it went smoothly and we are able to get a repeat order also. [Sighs] So, we are able to establish a such a kind of a relationship because we have been in business for last eight years and I self-myself is a, uh, designer in HAL; Ex-HAL, sir.

RR:     Oh, you are HAL?

PS:     *Yes.* Because I was working for the Jaguar and Kiran and these kind of a, uh, military aircrafts --

RR:     [SC] Mm.

PS:     -- [Sighs] as one of the Communications Engineers in HAL. And later on, after the design experience, uh, and then I thought let us just . . . I went out and then went to Singapore to start my own company. [Sighs]

RR:     [SC] Mm.

PS:     From there I started establishing the company to, say, USA also. This is my own company with, uh, some of our partners also, sir. [SC] [Sighs]

RR:     Okay-okay.

PS:     So, we should able to definitely, uh, you know, serve Bharat Electronics in a most-more [PH] professional way because I myself being a professional engineer . . . [Sighs] And, A.K.N.Prasad with 35 years of industry experience from ex, uh, Bharat Electronics only. [SC] [Sighs]

RR:     [SC] Mm.

PS:     So, he has also told that we should be able to contact Bharat Electronics,

        Singapore and, uh, New York unit to develop our business, sir.

RR:     Okay.

PS:     *I will send that to you, sir.*

RR:     *You send that.*

PS:     [SC] Huh.

RR:     Y-you know our fax number?

PS:     Ah, fax number *is* . . . I do have it as 741-5894.

RR:     Ah. 516. Area code [SC] *is* 516.

PS:     Ah, 516. After that, 8-triple 7-7907.

RR:     Both are true.

PS:     [SC] Ah.

RR:     Both are there.

PS:     Okay, sir. [Sighs] Sir, can I know your direct number or . . .

RR:     [Interrupts] *Send it to* 741. That is my--uh, room fax number.

PS:     [SC] Okay. Fine, Sir.

RR:     [UI] series -

PS:     [SC] Okay.

RR:     - [UI].

PS:     Sir, is there any other direct number you have, sir for the phone or is that number,

        sir . . . ?

RR:     Phone is, uh, common only. But, you can, uh, [stammers] . . . whenever you give

        a ring ask, uh, my name, they will [SC] connect [PH].

File#: 310Q-WF-229966                          Page 13 of 13
Job #: 12350

PS:    [Interrupts] Uh-huh.  Sir, any extension you have, sir or . . . ?

RR:    No. Er . . . no-no.  This is a, uh, combined one only.

PS:    Combined one.  Okay.

RR:    But, anytime you give a ring, they will, uh, . . . just tell my name, they will

       connect.

PS:    [SC] Fine, sir.

RR:    Whoever it is.

PS:    Definitely, sir.

RR:    No problem.

PS:    Yes, sir.

RR:    Right [PH].

PS:    Thank you so much sir for the time you have given to me --

RR:    [SC] All right [PH].

PS:    -- to discuss with you, sir.

RR:    [SC] All right [PH].

PS:    Thank you, sir.  Bye.

       [Sound of receiver being placed down]

       [End of Conversation]

# EXHIBIT 23

## FACSIMILE COVER PAGE

| To : | **Sales Director** | **From :** | SS |
| **Sent :** | 08-Dec-03 at 6:42:38 PM | **Pages :** | 1 (including Cover) |
| **Subject :** | Our Pending order -1419-2G-30702-S reg | | |

Dear Sir ,

May we request you to let us know the status of the order Cir/1564 for 1419-2G-30702-S ?

It is due on 16/12/03.

Please send us your reply by return.

Thanks with regards

From: P. Sudarshan

Cirrus Electronics Pte Ltd
E-Mail: mailto:cirrus@cirruselectronics.com
Phone: +65-6481-2444
Fax: +65-6481-3444

*Please see attached letter.*

*Parts are in stock at Wamco.*

*Regards,*
*Cindy Manus*

*CMANUS@WAMCOINC.COM*

*page 1 of 2*

WAMC 0027



*Aerospace and automotive lighting*

Due to stricter post 9/11 security measures, Wamco is applying for export licenses for your orders. We need the following information typed on your letterhead for all open purchase orders with Wamco as soon as possible.

- State the Purchase Order/Contract number.
- State the specific end-user's name and address. The end-user is the entity that will take **final** possession of the commodity. The address needs to be specific, do not use post office boxes or other general addresses, and must include the country.
- State all foreign intermediate consignees, their address and their role in the transaction (whether or not they are in the same country as you).. The address needs to be specific, do not use post office boxes or other general addresses.
- State all freight forwarders and their addresses that will be handling this shipment. Please keep in mind that we cannot use a freight forwarder if they are not specified.
- State the specific purpose for which the material is required, including specific program/end item. Stating "for use in production of military aircraft" or "for resale" is inadequate. Acceptable examples are:
  - "Filters will be used in conjunction with an illuminated instrument for night vision compatibility on the (type of aircraft/ground support) by the (name of the country/branch of service)."
  - "For test and evaluation by the foreign consignee for use on the TR tank, in support of NATO contract EC-0023-1A, see AG-999-01".

Attached is a list of your open orders for which this information is needed.

If you have any questions, please let me know.

Thank you for your assistance.

Regards,
Nancy Louie
V.P. of Operations

/NSL

Enc.

*2 of 2*

---

*11555 Coley River Circle  .*     *714.545.5560*          *www.wamcoinc.com*
*Fountain Valley, CA 92708*       *Fax: 714.545.6093*      *info@wamcoinc.com*

WAMC 0028

# EXHIBIT 24

72C

# MILCO ELECTRONICS CO.

12121 LITTLE ROAD #297
HUDSON, FLORIDA 34667
USA

TEL.  727 859 9990
FAX. 727 815 0750
E MAIL.  milcoelectronics@hotmail.com

**P.O. NUMBER**

JS / 30331

# NOTE SHIP TO BELOW

~~9438 US HIGHWAY 19N~~
~~SUITE 105~~
~~PORT RICHEY,~~
~~FLORIDA 34668~~
~~USA~~

Wamco Inc
California
USA

CIRRUS ELECTRONICS LLC
22 REDGLOBE COURT SIMPSONVILLE
SC 29681

The purchase order number must appear on all related correspondence, shipping papers, and invoices.

| P.O. DATE | REQUISITIONER | SHIP VIA | F.O.B. POINT | TERMS |
|-----------|---------------|----------|--------------|-------|
| 2 16 04 | Clark | Fed Ex | USA | Wire Transfer |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 200 | | 1419-2G-30702-S | $15.75 | |
| | | | | $3150.00 |

NOTES: Charge Freight to Fed Ex #
2191-2537-2  Cirrus Electronics
Please Confirm

| | |
|---|---|
| SUBTOTAL | |
| SHIPPING AND HANDLING | |
| OTHER | |
| **TOTAL** | |

WAMC 0052

# EXHIBIT 25

## Nancy Louie

**From:**   Nancy Louie
**Sent:**   Thursday, February 26, 2004 4:37 PM
**To:**   'cirrus@cirruselectronics.com'
**Cc:**   Teri Ruddle
**Subject:** RE: Opeation successful but patient is dead

Dear P.S.,

The product that you have ordered from Wamco requires a State Department Export License.
F1419-2G-30702-S is an NVIS filter with an embedded lamp.

We inquired with the State Department in Washington D.C. today and found that the license application is still under review.  We hope to get an answer in a week or so.  We will update you as soon as we hear something.

Regards,
Nancy Louie

> -----Original Message-----
> **From:** Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
> **Sent:** Thursday, February 26, 2004 12:33 PM
> **To:** Nancy Louie
> **Subject:** Opeation successful but patient is dead
>
> Dear,
>
> Kindly recall to our teleconversation on our order Cir/1564 for 1419-2G-30702-S. The production for our OEM has come to a grinding Halt and hence I was forced to undertake a mission to meet you to diffuse the crisis created for this part.
>
> Had we informed the customer, way back in Sep 2003, at the time of our ordering.. still further in July 2003 at the time of your quote to us, we could have averted this crisis.
>
> Still OEM went ahead with his order, he knew his long.....est wait for Export Clearance. Now, he is at loss.
>
> II) We appreciate if you could  help us with at least some 50-100 nos of this item so that everyone is out of woods. If not, if your shipment is further delayed, it may smack the proverb of " Operation success; but Patient died".

2/26/2004

WAMC 0050

If OEM is unable to complete his production on time, he is dead by then.

III) On our conversation, you had referred to me that this filter item is under export control. Is it a filter? or a Lamp?

IV) Besides, our OEM has been using this item since ages, (may be 10 years plus) and he used to get it from Specialtiy bulbs without any problem. If needed, you may hand over the same to your distributor Speciality bulbs and if needed, we pay them at extra price so that we could solve the production crisis.

Anyway, please give us call and let us know the status.

**With warmth regards.**
**P. Sudarshan**
**Cirrus Electronics LLC, USA.**
**Tel: +1 (864) 286 3030**
**Mobile no: +1 (864) 201-4813**
**Fax: +1 (864) 286 1144**
**Email: cirrus@cirruselectronics.com**

*[handwritten margin notes:]*
*2/26/04*
*Called Elie -*
*he will see if*
*they are registered*
*with State Dept*
*+ will call back Monday*

2/26/2004

# EXHIBIT 26

| **Message0193** | |
|---|---|
| **Subject:** | RE: Wamco - Urgent Request For Info |
| **From:** | Teri Ruddle |
| **Date:** | 4/8/2004 6:28:18 PM |
| **To:** | us@cirruselectronics.com |
| **Message Body** | |

Hello,

I apologize but I did not receive your message earlier in the week; however, I did receive a call from the State Department Licensing Agent this afternoon. Due to the fact that the end user is in India, which is considered a sensitive country to conduct business with, our application will now have to go through an extensive approval process called "staffing". In the past, this has added many weeks to the acceptance timeframe. I know this is not the type of response you were hoping for, but our hands are tied. We cannot move forward without authorization from the US Dept. of State. I will let you know if I am informed of any progress.

Regards,

Teri Ruddle


-----Original Message-----
From: Cirrus Electronics, LLC [mailto:us@cirruselectronics.com]
Sent: Thursday, April 08, 2004 2:41 PM
To: Teri Ruddle
Subject: RE: Wamco - Urgent Request For Info



Hai Ms.Terri,

My name is Mythili and I take care of CIRRUS US operations.I left a message for you with Ms.Bobby on Monday and hope you got it.

I would like to know about the status of our order and I hope you understand our situation.Can you please try to resolve this ASAP as its hard for us face our customer?. We are being penalized by our customer for not delivering the item on time.Hope you can understand our situation.

Expecting a positive response from you.



Mythili
Cirrus Electronics LLC.,
22 Redglobe Court
Simpsonville, SC 29681
USA

Tel : (864) 286-3030
Fax: (864) 286-1144

Email : <mailto:us@cirruselectronics.com> us@cirruselectronics.com

-----Original Message-----
From: Teri Ruddle [mailto:truddle@wamcoinc.com]
Sent: Wednesday, March 24, 2004 11:05 PM
To: cirrus@cirruselectronics.com
Subject: RE: Wamco - Urgent Request For Info

Thank you very much for your quick response. I have already forwarded this information to the appropriate party in the State Department. I cannot state a specific date I will have the export license in hand, but I will notify you and ship product immediately upon receipt.

Regards,
Teri Ruddle

-----Original Message-----
From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Wednesday, March 24, 2004 5:51 AM
To: Teri Ruddle
Subject: RE: Wamco - Urgent Request For Info

Dear,

Thank you very much for handling our case.

What type of avionic communication equipment?: Transreceiver Communication Equipment.

Specific model of plane/vessels the filtered equipment will be installed:

It is used in both Ground Communication and Trainer Air Craft communication.

The final User: Government of India.

You may please confirm the receipt of this email and approximate processing time you may need further. As there is a production committment from our OEM, we need these goods on top priority.

Had we imposed such conditions at the time of our order in Sep' 2003, we could have escaped from the wrath of our Government of India OEM. This hold-up of small order and small item is derating us. You are requested to understand the production hold up....It goes with a maxim of: "War is lost for want of a Nail".

Regards.

With warmth regards.

P. Sudarshan
Cirrus Electronics Pte Ltd
Tel: (65) 6481-2444
Fax: (65) 6481-3444
Email: <mailto:cirrus@cirruselectronics.com> cirrus@cirruselectronics.com

-----Original Message-----
From: Teri Ruddle [ mailto:truddle@wamcoinc.com]
Sent: Wednesday, March 24, 2004 5:48
To: cirrus@cirruselectronics.com
Cc: Nancy Louie
Subject: Wamco - Urgent Request For Info

Hello,
I am handling the export license application for your filter order from Wamco, Inc. I have just received a call requesting additional information regarding the end use of this filter.
Please provide this specific information and we can move forward with the export license.

What type of avionic communication equipment?
Specific model of plane/vessels the filtered equipment will be installed
Who will be the final owner of this plane/vessels?

As soon as I receive this specific information from you, the US State Department can move forward in approving our application.

Thank you in advance for your expedient response. Please either email or fax to 714-545-6093.

Regards,
Teri Ruddle
Wamco, Inc.
714-545-5560

---

**Outlook Header Information**

Conversation Topic: Wamco - Urgent Request For Info
Sender Name: Teri Ruddle

Received By: Cirrus Electronics, LLC
Delivery Time: 4/8/2004 6:28:18 PM
Creation Time: 4/8/2004 10:32:57 PM
Modification Time: 4/22/2004 2:56:19 PM
Submit Time: 4/8/2004 6:30:11 PM
Flags: 1 = Read
Size: 24603

## Standard Header Information

Received: from wamco-1.wamco ([66.166.213.172]) by cirruselectronics.com ; Fri, 09 Apr 2004
06:28:18 +0800 SGT
Content-class: urn:content-classes:message
MIME-Version: 1.0
Content-Type: multipart/alternative;
 boundary="----_=_NextPart_001_01C41DB9.0E0B66C0"
Subject: RE: Wamco - Urgent Request For Info
X-MimeOLE: Produced By Microsoft Exchange V6.0.6249.0
Date: Thu, 8 Apr 2004 15:30:11 -0700
Message-ID: <9E6119A07DD3DE4A8D262E4BBF02EE3A9FFED4@wamco-1.WAMCO>
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
Thread-Topic: Wamco - Urgent Request For Info
Thread-Index: AcQdGg0jck/cKsdKQCi7xZx4Ti0seAAl8AEgAAB4jVA=
From: "Teri Ruddle" <truddle@wamcoinc.com>
To: <us@cirruselectronics.com>
X-Rcpt-To: <us@cirruselectronics.com>
Return-Path: <truddle@wamcoinc.com>
X-DPOP: Version number supressed
X-UIDL: 1081477857.380336
Status: U

# EXHIBIT 27

| Message0302 |
| --- |
| **Subject:** RE: VERY URGENT REQUEST!! |
| **From:** Cirrus Electronics Pte Ltd |
| **Date:** 5/21/2004 11:09:49 PM |
| **To:** us@cirruselectronics.com |
| **Message Body** |

Dear Mythili,
Thak you.
Regards
Sundar

-----Original Message-----
From: Cirrus Electronics, LLC [mailto:us@cirruselectronics.com]
Sent: Saturday, May 22, 2004 10:19 AM
To: Administrator
Subject: FW: VERY URGENT REQUEST!!


Dear Athims,
They din't accept AMEX so I gave my personal card and charged it. She
must have shipped it to you today.

Have sent the shipment today by fedex and the tracking number is 8445
5733 8083.

Mythili
Cirrus Electronics LLC.,
22 Redglobe Court
Simpsonville, SC 29681
USA

Tel : (864) 286-3030
Fax: (864) 286-1144

Email : us@cirruselectronics.com


-----Original Message-----
From: Teri Ruddle [mailto:truddle@wamcoinc.com]
Sent: Friday, May 21, 2004 6:11 PM
To: cirrus@cirruselectronics.com
Cc: us@cirruselectronics.com
Subject: VERY URGENT REQUEST!!

The credit card we have on file has been rejected. My superiors will
not allow the shipment to go out the door until we receive a valid
credit card payment. Please respond immediately!! Thank you, Teri

Ruddle

-----Original Message-----
From: Teri Ruddle
Sent: Friday, May 21, 2004 12:51 PM
To: 'cirrus@cirruselectronics.com'
Subject: RE: PO CIR1564 Export license status


I received the export license!! I will ship 200 pcs today!


-----Original Message-----
From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Sunday, May 16, 2004 6:07 PM
To: Teri Ruddle
Subject: RE: PO CIR1564 Export license status


Dear ,
OK. Please ship the goods to Singapore .
Regards
Sundar

-----Original Message-----
From: Teri Ruddle [mailto:truddle@wamcoinc.com]
Sent: Friday, May 14, 2004 10:26 PM
To: cirrus@cirruselectronics.com
Subject: RE: PO CIR1564 Export license status


Dear Sundar,
We have determined we cannot ship to Cirrus USA office. Parts must ship
to port of export directly from our facility. Parts will be sent Fed Ex
International Express to Singapore upon receipt of export license.
Regards,
Teri Ruddle
Wamco, Inc.
714-545-5560

-----Original Message-----
From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Thursday, May 13, 2004 6:52 PM
To: Teri Ruddle
Subject: RE: PO CIR1564 Export license status


Dear Ms Rerry,
We thank you for your valuable input.

Please let us know after shipping the item to our Cirrus USA office.

Also note the UPS A/C NO:Y316R6 and ship it by UPS (Ground)

Thanks with regards
Sundar

-----Original Message-----
From: Teri Ruddle [mailto:truddle@wamcoinc.com]
Sent: Thursday, May 13, 2004 10:27 PM
To: cirrus@cirruselectronics.com
Subject: RE: PO CIR1564 Export license status


Hello,
First of all I would like to point out that this EXTREMELY LONG
application approval was due to the end user location of India. Common
turnaround for non-sensitive country shipments are about 30 days. With
that being said:

1) A State Department export license is required for each NVIS filter
order with an international destination. If a company orders product
from us that will be sold to multiple end users, an individual export
license will have to be obtained for each end user location/country.

2) This approval was for this order only. No other order/supplier can
be shipped under this license.

Again, the time it will take for approval is directly related to the
destination country.

Thank you and regards,
Teri


-----Original Message-----
From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Wednesday, May 12, 2004 8:39 PM
To: Teri Ruddle
Cc: Mythili Gopal. Ms.
Subject: RE: PO CIR1564 Export license status


Dear Ms Terry,

We thank you for information.

Thank GOD for the approval by the State Dept though it is late " Better
Late than Never".

At this juncture may we request you to let us know the following feed back from you?

1) Is this approval from the State Dept can be used for all the future orders ( with you ) or we have to get the approval every time when we place the order.

2) To protect our self we wish to know whether this approval can be used and be utilised by our-competitors.?

Your reply is appreciated.

=============================================================================
=====================================

Please note the change in ship to address :

Shipment address:
CIRRUS ELECTRONICS LLC,
22, Redglobe Court,Simpsonville, SC 29681.USA
Attn : Ms Mythili Gopal, Tel No : (864) 286- 3030

Please use UPS A/C NO:Y316R6 and ship it by UPS (Ground)

Thanks with regards
Sundar
Cirrus Electronics Pte LTd.
Singapore

Post Note: Mythili Plz call her and confirm the shipment address ..

-----Original Message-----
From: Teri Ruddle [mailto:truddle@wamcoinc.com]
Sent: Thursday, May 13, 2004 3:35 AM
To: cirrus@cirruselectronics.com
Subject: PO CIR1564 Export license status

Good afternoon,
I just received a call from the State Department responding to the voice mails I have left. He confirms all 3 branches approved the application. He will now forward it to his supervisor to be signed off. He anticipates we should have the license in hand within a week. Your parts are in stock at Wamco. As soon as I receive the document, I will ship parts immediately.
Kindest regards,
Teri

## Outlook Header Information

Conversation Topic: VERY URGENT REQUEST!!
Sender Name: Cirrus Electronics Pte Ltd
Received By: Cirrus Electronics, LLC
Delivery Time: 5/21/2004 11:09:49 PM
Creation Time: 5/22/2004 10:53:24 AM
Modification Time: 5/22/2004 10:53:24 AM
Submit Time: 5/21/2004 11:06:20 PM
Importance: Normal
Flags: 3 = Read, Unmodified
Size: 21180

## Standard Header Information

Received: from smtp23.singnet.com.sg ([165.21.101.203]) by cirruselectronics.com ; Sat, 22 May 2004 11:09:49 +0800 SGT
Received: from sundar (ad202.166.100.55.magix.com.sg [202.166.100.55])
 by smtp23.singnet.com.sg (8.12.11/8.12.11) with ESMTP id i4M3C2ND026259
 for <us@cirruselectronics.com>; Sat, 22 May 2004 11:12:25 +0800
Reply-To: <cirrus@cirruselectronics.com>
From: "Cirrus Electronics Pte Ltd" <cirrus@cirruselectronics.com>
To: <us@cirruselectronics.com>
Subject: RE: VERY URGENT REQUEST!!
Date: Sat, 22 May 2004 11:06:20 +0800
Organization: Cirrus Electronics Pte Ltd
Message-ID: <63154CBE889BA247BD6489CFB3355A950CAD92@server.cirrus>
MIME-Version: 1.0
Content-Type: text/plain;
 charset="us-ascii"
Content-Transfer-Encoding: 7bit
X-Priority: 3 (Normal)
X-MSMail-Priority: Normal
X-Mailer: Microsoft Outlook, Build 10.0.2627
Importance: Normal
In-Reply-To: <5F2129B5744BC442A148B5B5A2BE7B2D7CB242@server.cirrus>
X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2739.300
X-Rcpt-To: <us@cirruselectronics.com>
Return-Path: <cirrus@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1085237433.489664
Status: U

# EXHIBIT 28

| **Message0280** |
|---|
| **Subject:** RE: Shipment address |
| **From:** Teri Ruddle |
| **Date:** 5/14/2004 10:19:06 AM |
| **To:** us@cirruselectronics.com |
| **CC:** cirrus@cirruselectronics.com |
| **Message Body** |

Good morning,

After discussing this shipping procedure with my supervisor, we have determined it is not possible to ship to your US location. We are the named exporter on the license and are responsible for providing all proper documentation with the shipment. Wamco provides very specific information regarding content of package, date of export, and port of export. If we were to send the package to you first, we would not have control that the licensed shipment conformed to the US Customs and State Department guidelines.

If you are registered with the State Department as an exporter, we can ship product to you in the future. At that point you would be responsible for obtaining the export license and forwarding the product internationally. If you are not registered, we will have to continue to ship product directly from our location.

I apologize for initially telling you this transaction would be possible. If you have any questions, please feel free to contact me.

Kindest regards,
Teri Ruddle
Wamco, Inc.
714-545-5560


[Teri Ruddle]
-----Original Message-----
From: Cirrus Electronics, LLC [mailto:us@cirruselectronics.com]
Sent: Thursday, May 13, 2004 6:14 PM
To: Teri Ruddle
Cc: cirrus@cirruselectronics.com
Subject: Shipment address




Dear Ms.Tery,

How are you?As I told you over phone,can you please send the shipment to my address?

My address:

Mythili Gopal
Cirrus Electronics LLC.,
22 Redglobe Court
Simpsonville, SC 29681
USA

Tel : (864) 286-3030
Fax: (864) 286-1144

Email : <mailto:us@cirruselectronics.com> us@cirruselectronics.com

Thank you very much.

mythili.

_____

Send email with style!
Get FREE designer stationery <http://www.CrystalGraphics.com/weblink.stationery.main.asp?
p=pps00501007> with backgrounds, photos, animation & more!

| **Attachment** |
| --- |
| CloudsLft.jpg |

| **Attachment** |
| --- |
| CloudsRgt.gif |

| **Outlook Header Information** |
| --- |
| Conversation Topic: Shipment address |
| Sender Name: Teri Ruddle |
| Received By: Cirrus Electronics, LLC |
| Delivery Time: 5/14/2004 10:19:06 AM |
| Creation Time: 5/14/2004 4:26:26 PM |
| Modification Time: 5/14/2004 4:26:26 PM |
| Submit Time: 5/14/2004 10:21:57 AM |
| Flags: 19 = Read, Unmodified, Has Attachment |
| Size: 30341 |

| **Standard Header Information** |
| --- |

Received: from wamco-1.wamco ([66.166.213.172]) by cirruselectronics.com ; Fri, 14 May 2004
22:19:06 +0800 SGT
Content-class: urn:content-classes:message
MIME-Version: 1.0

Content-Type: multipart/related;
 type="multipart/alternative";
 boundary="----_=_NextPart_001_01C439BE.D03A81E2"
X-MimeOLE: Produced By Microsoft Exchange V6.0.6249.0
Subject: RE: Shipment address
Date: Fri, 14 May 2004 07:21:57 -0700
Message-ID: <9E6119A07DD3DE4A8D262E4BBF02EE3A0125C341@wamco-1.WAMCO>
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
Thread-Topic: Shipment address
Thread-Index: AcQ5UMxhcIxbn7XyQMGtZ8A+eOEINwAaVeQg
From: "Teri Ruddle" <truddle@wamcoinc.com>
To: <us@cirruselectronics.com>
Cc: <cirrus@cirruselectronics.com>
Return-Path: <truddle@wamcoinc.com>
X-Rcpt-To: <us@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1084566226.337915
Status: U

# EXHIBIT 29

| Message0438 |
| --- |
| **Subject:** US State Department - Policy -Office of Defense Trade Controls.htm |
| **From:** Teri Ruddle |
| **Date:** 9/24/2004 4:00:08 PM |
| **To:** us@cirruselectronics.com |
| **Message Body** |
| <<US State Department - Policy -Office of Defense Trade Controls.htm>>  <br><br>Teri Ruddle<br>Wamco, Inc.<br>11555 Coley River Circle<br>Fountain Valley, CA 92708<br>(714) 545-5560<br>(714) 545-6093 fax |
| **Attachment** |
| US State Department - Policy -Office of Defense Trade Controls.htm |

| Outlook Header Information |
| --- |
| Conversation Topic: US State Department - Policy -Office of Defense Trade Controls.htm<br>Sender Name: Teri Ruddle<br>Received By: Cirrus Electronics, LLC<br>Delivery Time: 9/24/2004 4:00:08 PM<br>Creation Time: 9/24/2004 10:05:35 PM<br>Modification Time: 9/24/2004 10:06:22 PM<br>Submit Time: 9/24/2004 4:01:52 PM<br>Flags: 17 = Read, Has Attachment<br>Size: 23410 |

| Standard Header Information |
| --- |
| Received: from wamco-1.wamco ([66.166.213.172]) by cirruselectronics.com ; Sat, 25 Sep 2004 04:00:08 +0800 SGT<br>content-class: urn:content-classes:message<br>MIME-Version: 1.0<br>Content-Type: multipart/mixed;<br> boundary="----_=_NextPart_001_01C4A271.558E0E16"<br>X-MimeOLE: Produced By Microsoft Exchange V6.0.6249.0<br>Subject: US State Department - Policy -Office of Defense Trade Controls.htm<br>Date: Fri, 24 Sep 2004 13:01:52 -0700<br>Message-ID: <9E6119A07DD3DE4A8D262E4BBF02EE3A0125C71E@wamco-1.WAMCO><br>X-MS-Has-Attach: yes<br>X-MS-TNEF-Correlator:<br>Thread-Topic: US State Department - Policy -Office of Defense Trade Controls.htm<br>Thread-Index: AcSicVV3echa6yjbTJGKIZMdaACHSA==<br>From: "Teri Ruddle" <truddle@wamcoinc.com><br>To: <us@cirruselectronics.com><br>Return-Path: <truddle@wamcoinc.com><br>X-Rcpt-To: <us@cirruselectronics.com> |

X-DPOP: Version number supressed
X-UIDL: 1096077930.610886
Status: U

| ☒ Skip Navigation Links | | ☒ U.S. Department of State |
| ☒ globe | | |

Defense Trade Controls - Applying for a License

On this page:

□ Register Your Company
□ Licensing
□ D-Trade Info Center
□ Compliance
□ Who We Are
□ Contact Us
□ Corresponding With Us
□ Reference Library
□ Learning Center
□ Links to Other Websites
□ Site Map
□ Home

- Sample copies of forms for familiarization and training.
- License applications for on-line electronic license submissions.
- Sign up for ELLIE.
- Order official forms.
- Download Form DSP-83 for official use.
- Guidelines for preparing agreements.

Generally, any person or company who intends to export or to temporarily import a defense article must obtain the approval of DDTC prior to the export or temporary import. The appropriate license form must be submitted for the purpose of seeking approval.

In most cases, in order for a license to be considered, you first must be registered with DDTC.

Sample copies of the forms listed below are available to assist you in becoming familiar with their content or to use in your training manual or courses (these samples are not to be used to submit a request to DDTC).

Following is a listing of license applications for on-line electronic license submissions. You must be a member of the Electronic Licensing Entry System (ELLIE) in order to participate. In addition to electronic submissions, official forms may be submitted, and are available from our

☐ Information

**ATTENTION NEW USERS**

In order to submit license applications electronically you must:

1. Be Registered
2. Obtain a PIN From DTC
3. ELLIE NET: License Status Check

Call 202-663-2838 if you need computer assistance

☐ Quick Links

- AECA Debarments
- COMSAT
- D-Trade Login
- DCI
- EADS
- E-Licensing Presentation to SIA Conference
- Multiple Destination Marketing Licenses
- Operation Enduring Freedom Guidelines
- Satellite Insurance TAA Notice
- US Arms Embargoes in     Effect
- USML by Categories

on-line ordering system or by calling
the DDTC receptionist [(202) 663-
2980] and identifying which form(s)
and what quantity you would like sent
to you. (For any other assistance, please
call the Response Team at (202) 663-
1282.)

Forms:

- DSP-5: Application for
  Permanent Export of Defense
  Articles

  > Guidelines for Preparing
  > the DSP-5

  > Special Instructions for
  > Firearms

- DSP-61: Application for
  Temporary Import of Defense
  Articles

- DSP-73: Application for
  Temporary Export of Defense
  Articles

- DSP-119: Application for
  Amendment to a License

- License Application Continuation
  Sheet

For those who are members of ELLIE,
click here to view the status of a
previously submitted export license
application.

The DSP-85: Application for
Permanent/Temporary Export or
Temporary Import of Classified
Defense Articles and Related Classified
Technical Data can only be submitted
in hardcopy; the offical form is
available from the on-line and fax
contact points provided above.

The DSP-83: Nontransfer and Use

Case 1:07-cr-00051-RMU    Document 8-3    Filed 04/05/2007    Page 132 of 177

Certificate may be downloaded for
official use.

The Guidelines for Preparing
Agreements may be found here. Click
here for the Word version.

**As of June 23, 2004:** New Information
Requirement For Export Applications.

# EXHIBIT 30

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION



601 Fourth Street, N.W.
Washington, D.C. 20535

| | |
|---|---|
| Case No: | 310Q-WF-229966 |
| Line ID: | 8642863030 |
| Date of Recording: | 2/10/2006 |
| Time: | 14:07:15 EDT |
| Language: | English |
| Transcriber: | Vasanthaleela Chellappa |
| Date of Transcription: | January 16, 2007 |
| WFO Job #: | 12350 |

## Participants

| | |
|---|---|
| Parthasarathy Sudarshan | PS |
| LNU, Rich | Rich |

## Abbreviations

| | |
|---|---|
| Standard font | English |
| UI | Unintelligible |
| IA | Inaudible |
| PH | Phonetic |
| SC | Simultaneous conversation |
| [] | Background conversation |

## VERBATIM TRANSLATION OF CONVERSATION OF SID:7474135

## DATE OF RECORDING: 02/10/2006   TIME: 14:07:15 EDT

## DURATION: 03 min 46 sec

[Background noise]

PS:    Hi, Good afternoon to you.

Rich:  Yes. Good afternoon. This is Rich from Avnet.

PS:    Yes. How are you, Sir?

Rich:  Good. How are you doing today?

PS:    Yeah. We are doing [Background noise] fine, sir. Very nice of you to give a call
       to us. [Sighs]

Rich:  I'm sorry. What?

PS:    Yeah. Very nice of you.

Rich:  Yeah, yeah. Listen, uhm, uh-uh, a colleague of mine, uhm, gave me an, uh, quote
       that you have -- you submitted for some Actel parts?

PS:    Yes. Okay.

Rich:  Okay? And uhm, this is going to you and you are a reseller, right?

PS:    Yes, please.

Rich:  And, can I ask you where these parts are going?

PS:    Yeah. This parts are likely to go to Singapore office-to my Singapore office
       [sighs] and my Singapore office may in turn give it to . . . the end customer must
       be from India.

       [Noise]

Rich:  Okay. Well, I can't sell these parts to you.

PS:    [SC] Okay.

Rich:  [UI] Actel is restricted.

PS:    Okay.

Rich:  So, I can't [Noise] sell them to you so you can ship 'em out of the country. You know that that's a federal offense, right?    $00:42 - 00:48$

PS:    Uh-huh. Uh-huh. [SC] This --

Rich:  You know that, right?

PS:    -- this part is a controlled part?

Rich:  Yeah. Yeah. Very restricted.

PS:    Yeah, very restricted. But --

Rich:  [SC] Anything . . .

PS:    - we can apply for a license in case, uh, we could go ahead and apply the license for this particular part with . . . submitting the end user and, uh, other information. [Sighs]

Rich:  I don't know. I can't do it. I was told I can't do it. I can't sell it to you, guy [PH]. I want to sell it to you; I can't. [SC] [UI]

PS:    Yeah. Even, if-if you get a license, uh . . .

Rich:  Well, then, if that's correct and that--person in Singapore can buy it from Avnet in Singapore. [SC] I certainly --

PS:    [UI]

Rich:  -- I certainly, can't sell it.

PS:    [Interrupts] Yeah, but, in case if I get the end user directly from my customer
       [Noise] [sighs] and submit to you . . .

       [Background noise]

Rich:  No. You [PH] . . . Here's the-Here's the thing. I can't sell it to you -    01:25

PS:    [SC] Okay.

       [Background noise continues]

Rich:  - because [PH] you are exporting it.

PS:    You are exporting it; you [SC] can't sell it to us [PH].

       [Background noise continues]

Rich:  No exportation of this product.

PS:    O--kay.

Rich:  It's all military stuff. This is all military.

PS:    Y-es.

       [Background noise continues]

Rich:  Now, if-if your Singapore office gets the registration then they can buy it from
       Avnet in Singapore.

PS:    [SC] O--kay.

Rich:  You can't buy it from Avnet in the U.S. because we are not going to ship it.

PS:    You are not going to ship it. Okay.

Rich:  No. It's . . . [Noise] We can't. It's-it's [Noise] restricted.      01:54
       [Noise]

PS:    Yeah. But, since . . . I do not know how my customer is, in that case, uh,
       designed this part, has been using this particular part. [Sighs]

Rich:   Uh-huh.

PS:     Either he must be taking this particular part --

Rich:   [SC] I-I . . .

PS:     -- from . . .

Rich:   Yeah.  Lemme [sic] ask you to hold a minute.

PS:     Okay.

        [Background music]

        [Slight pause]

        [Noise]

Rich:   I-I understand your frustration, sir.

PS:     No.  I'm not-I'm not looking at this thing.  Because -

Rich:   [SC] Right.

PS:     - in business, there is nothing to get frustration about it. [Sighs]

Rich:   [SC] Right.

PS:     But, my customer has been getting this particular part.  [Noise]

Rich:   But, he hasn't been getting it from me.

PS:     Y-y-yes.

Rich:   [SC] Where is he --

PS:     [SC] It may not be from . . .

Rich:   -- where is he buying it from?

PS:     I am not sure. [SC] But . . .

Rich:   All right then.  Tell him to go back--and buy it from them.  I can't sell it to you.

PS:     Okay.

Rich:   I can't ship it out of the country.

PS:   [SC] Okay.

Rich:   I can't do it. [SC] And --   02:30

PS:   [SC] Is it because of the . . . ?

Rich:   -- I'm not-I'm not going to go to jail--for this.

PS:   Yeah, I understand, sir -- because . . .

Rich:   [SC] Do you know what I mean?

PS:   [Chuckles softly] yeah-yeah [PH]. [Sighs]

Rich:   [UI] You know what I mean? And, I don't think you want to go to jail for this
        either.   02:40

PS:   [SC] That's true.

Rich:   Not for a couple of hundred bucks. [SC] Uh-uh. Do you know what I mean?

PS:   [SC] Yes. Definitely.

Rich:   So, I mean, I-I want to help you. But, I can't because you are exporting this and
        this particular Actel part . . . all Actel parts are n-are restricted.

PS:   Are restricted?

Rich:   Yeah. And, if they . . . what they're going to do to me? If I book the order,
        they'll say, "Who is the end customer?" I'll tell them, "you" and they'll say, "no
        way"-- anyway. So, it won't go anywhere. So, instead of going through all the
        motions and get denied at the end, I'm going to deny right up front so then we
        don't have to spend a whole lot of time on [SC] that [PH].

PS:   [SC] That's true. That's true, sir. That's true.

Rich:   See what I mean? So, I'm just going to help you out, guy [PH].

PS:    Yes.  Excellent, sir.

Rich:  Okay?

PS:    But, can we-can we really look at it?  In the sense is, [sighs] uh, if it is restricted,

       how exactly the Actel is selling?  In that case, Actel can allow to sell it to India?

       [Sighs]

Rich:  Yeah [PH].  They might be able to.  But, I can't --

PS:    [SC] Okay.

Rich:  -- as a distributor.

PS:    As a distributor.  Okay.

Rich:  Okay?

PS:    F-Fine, sir.

Rich:  All right.  I'm sorry.

PS:    No problem, sir.  No problem.

Rich:  If it is anything else, you know, le-feel free to give me a call.

PS:    Yes.  Can I take down your number, [SC] sir?

Rich:  Sure.  1-800 -

PS:    Okay.

UM;    - 672 -

PS:    672

Rich:  - 8638.

PS:    8638.

Rich:  You could talk to anyone here.  Yeah.

PS:    Okay.

Rich:   All right, buddy.

PS:     Sir [PH], thank you.  Bye.

        [Sound of receiver being placed down]

        [End of conversation]

# EXHIBIT 31

## Message0491

**Subject: IMP - NEW OPPORTUNITY**

**From:** akn

**Date:** 10/19/2005 7:25:37 AM

**To:** 'Cirrus Electronics LLC'

**CC:** 'Cirrus Electronics Pte Ltd'

### Message Body

PS

1. Radel has received a good enquiry to develop WCS(Weapon control System) for Jaguar Aircraft.
The WCS consists of a micro controller / micro processor based logic system with relays to ensure outputs are generated to release various stores ( armaments) based on inputs coming from NAVWASS and pilot settings.

To start with we need to identify a Microcontroller / microprocessor cleared for Military Airborne use, like the Intel i960.i960 may be an overkill for this project.
Check with Austin or other sources and suggest a suitable option.
Radel will then base their design on this device.
There is a very good chance, Radel will get this order which may come to 100 systems over a 10 yr period but at high cost

2. Reg Hitachi LCD Display for Vinay Deshpande - Any progress

Thanks and Regards,
AKN Prasad, CEO,
Cirrus Electronics Marketing (P) Ltd
Tel: (91)-80-5131-2100
Fax: (91)-80-5131-2111
Email: akn@cirruselectronics.com
Web: www.cirruselectronics.com <http://www.cirruselectronics.com/>

-----------------------------------------------------------------------
-----------------

This e-mail is strictly confidential and intended solely for the addressee. It may contain privileged and confidential information belonging to Cirrus Electronics Marketing (P) Ltd. It must not be read, copied, disclosed, distributed or used by any person other than the addressee. Unauthorised use, disclosure or copying is strictly prohibited and may be unlawful. If you have received this message in error, you should destroy this message and kindly notify the sender by

# EXHIBIT 32

## Message0017

**Subject: 01-16 Feb 04 Test Dates**

**From:** Cirrus Electronics Pte Ltd

**Date:** 1/28/2004 10:13:36 AM

**To:** 'Manik Mukherjee, Counsellor(Defence Technology), USA';
'Mythili Gopal. Ms.'; fpd@ade.ernet.in

**CC:** 'Janarthanan. S.Mr.- Sc "G", Head of AP'; 'Shankar.B.Kulkarni'

### Message Body

Dear Sir,

I am pleased to introduce myself as P. Sudarshan, Director of Cirrus
Electronics Pte Ltd. We are attaching our presentation & profiles in a *.ppt
file.

We are happy to interact with you to carry out the testing of
5962-90946-03-MYA devices. The verbatim of the Rochester email is enclosed
for your reference.

As far as timing of the testing, the Trillium tester to be used is being
serviced this week and has a current backlog for the next two weeks. I can
try to get this testing done on 2/9/04 if needed, but the following week
would be safer.

Rochester Electronics, Inc.
Attn: Judi Zima
10 Malcolm Hoyt Drive
Newburyport, MA 01950
USA

On our next email/ fax, we will fax you the direction to this place. The
nearby airport could be Boston and it is 45 mts-1 hour drive to this
Newburyport.

I stayed in a Hotel called "Garrison Inn" which was very close to this
Rochester Office; This is the Hotel Rochester Electronics also recommends
for his guests. We will send further details about it.

ON testing time frame:As per Rochester, they said that they would take 2-3
days to complete this automatic testing. Tentatively, we could plan for a
week's stay over there, as we need to do the solderability test after Group
A test.

Should you need any information, please feel free to contact us. You may
contact our USA office also.

Once again, we look forward for a good meeting and good time with you at Newburyport.


With warmth regards.


P. Sudarshan
Cirrus Electronics Pte Ltd
Tel: (65) 6481-2444
Fax: (65) 6481-3444
Email: <mailto:cirrus@cirruselectronics.com> cirrus@cirruselectronics.com


⎯⎯⎯

From: Cirrus Electronics Pte Ltd [mailto:cirrus@cirruselectronics.com]
Sent: Tuesday, January 20, 2004 9:22
To: 'fpd@ade.ernet.in'; 'Manik Mukherjee, Counsellor(Defence Technology), USA'; Mythili Gopal. Ms. (us@cirruselectronics.com)
Cc: 'Janarthanan. S.Mr.- Sc "G", Head of AP (jana@ade.ernet.in)';
'Shankar.B.Kulkarni'
Subject: RE: PROCUREMENT OF OBSOLETE COMPONENTS (i960)


Dear Sir,

We are pleased to receive your email and this is to acknowledge the receipt of it. We are happy that we are moving to the next stage on the execution of this order. We will send our introduction letter also to Mr. Manik Mukherjee, Counselor.

We are in touch with Rochester on the testing dates and will revert to you soon. We have opened up our USA office recently to coordinate with Rochester for smooth execution of this project. Self will be going to USA upon the confirmation from Rochester and LC from your side.


The address of our USA Office is also mentioned for your records:


Full Name: Ms. Mythili Gopal

First Name: Mythili Gopal

Company: 05 CIRRUS ELECTRONICS LLC.,

Business Address: CIRRUS ELECTRONICS LLC.,

22, Redglobe Court,

Simpsonville, SC 29681.

USA

Business: +1 (864) 286- 3030

Business Fax: +1 (864) 286-1144

E-mail: us@cirruselectronics.com

E-mail Display As: Mythili Gopal. Ms. (us@cirruselectronics.com)

In the meantime, we have requested ADE's Purchase department also to open
Letter of Credit so that we could expedite it further.

On the balance 120 nos: We will revert to you, upon the first shipment of
380 nos.

With warmth regards.

P. Sudarshan
Cirrus Electronics Pte Ltd
Tel: (65) 6481-2444
Fax: (65) 6481-3444
Email: <mailto:cirrus@cirruselectronics.com> cirrus@cirruselectronics.com

-----Original Message-----
From: FPD [ <mailto:fpd@ade.ernet.in> mailto:fpd@ade.ernet.in]
Sent: Monday, January 19, 2004 10:26
To: 'Manik Mukherjee, Counsellor(Defence Technology), USA'
Cc: Administrator; Janarthanan, S; 'Cirrus Electronics, Bangalore'; Off_fpd
Subject: PROCUREMENT OF OBSOLETE COMPONENTS (i960)
Importance: High

Dear Sri. Manik Mukherjee,

Received your fax.

The address of the vendor is:-

Cirrus Electronics, Singapore .
Level 3, Econ Building,
No. 2, Ang Mo Kio Street 64,
Ang Mo Kio Industrial Park 3,
Singapore 569 084
TEL (65)6481-2444 Fax (65)6481-3444/6234-0671 Email :
cirrus@cirruselectronics.com Managing Director: Mr. P.Sudarsan.

The original letter along with the enclosures referred in my letter of 16
January 2003 is being sent through courier. Testing activities for 380 Nos
can start as soon as vendor contacts you. The delivery date is 30 June 2004
for Qty. 500 Nos. The firm is being endorsed a copy of this mail to
contact you directly and inform you the programme well in advance. Please
fee free to contact the undersigned for any clarifications.


S.Janarthanan, Sc G
Aeronautical Development Establishment,
DRDO, Bangalore-560 075.
Email jana@ade.ernet.in


## Attachment

Cirrus profile.ppt

## Outlook Header Information

Conversation Topic: 01-16 Feb 04 Test Dates
Sender Name: Cirrus Electronics Pte Ltd
Received By: Cirrus Electronics Pte Ltd
Delivery Time: 1/28/2004 10:13:36 AM
Creation Time: 1/29/2004 1:42:11 PM
Modification Time: 1/29/2004 1:42:11 PM
Submit Time: 1/28/2004 10:12:36 AM
Flags: 19 = Read, Unmodified, Has Attachment
Size: 355890

### Standard Header Information

Return-Path: <cirrus@cirruselectronics.com>
Received: from smtp29.singnet.com.sg (165.21.101.249) by
mta6.wss.scd.yahoo.com (7.0.016)
      id 4015746900164DEA for us@cirruselectronics.com; Wed, 28 Jan 2004
07:13:36 -0800
Received: from Perumal (ad202.166.100.44.magix.com.sg [202.166.100.44])
 by smtp29.singnet.com.sg (8.12.11/8.12.11) with ESMTP id i0SFCWAK005651;
 Wed, 28 Jan 2004 23:12:41 +0800
Message-Id: <200401281512.i0SFCWAK005651@smtp29.singnet.com.sg>
Reply-To: <cirrus@cirruselectronics.com>
From: "Cirrus Electronics Pte Ltd" <cirrus@cirruselectronics.com>
To: "'Manik Mukherjee, Counsellor\(Defence Technology\), USA'"
<mmukherjee@indiagov.org>,
      "'Mythili Gopal. Ms.'" <us@cirruselectronics.com>, <fpd@ade.ernet.in>
Cc: "'Janarthanan. S.Mr.- Sc \"G\", Head of AP'" <jana@ade.ernet.in>,
      "'Shankar.B.Kulkarni'" <cirrus@blr.vsnl.net.in>
Subject: 01-16 Feb 04 Test Dates
Date: Wed, 28 Jan 2004 23:12:36 +0800
Organization: Cirrus Electronics Pte Ltd
MIME-Version: 1.0
Content-Type: multipart/mixed;
 boundary="----=_NextPart_000_004A_01C3E5F4.37CFC4D0"
X-Mailer: Microsoft Office Outlook, Build 11.0.5510
Thread-Index: AcPfT3gXiK/28z6rRv2ahQqp0xV1MQGXJm7g
X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2727.1300
In-reply-to:

# EXHIBIT 33

*Ingerson*

OCT 2 5 2004

United States
for the Distri...

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
    v.                       )
                             )
KHALID MAHMOOD,              )
also known as                )    **Criminal No. 04-365-01 (RCL)**
Khalid Mahmood Chaudhry,     )
                             )
                             )    **FILED**
        Defendant.           )
_____)    OCT 1 9 2004

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM AND ORDER

The defendant, currently detained without bond pending trial, seeks review of his bond status.

Upon consideration of defendant's written motion, the response and reply thereto, and the proffers of

counsel made at an oral hearing on October 19, 2004, the Court denies defendant's motion.


BACKGROUND

On August 13, 2004, this Court found that the defendant presented a risk of flight and ordered

that defendant be held without bond pending trial. In that order, the Court made the following factual

findings:

> Khalid Mahmood is a Pakistani national who by his own account has resided in the United
> Arab Emirates ("U.A.E.") for more than 25 years. The defendant currently resides in the
> U.A.E. with his wife and children, and has never lived in the United States, although he is
> admitted to the United States as a permanent resident alien, and is currently in the United States
> lawfully.

1

Until 2001, defendant was employed in the U.A.E. by a Middle East trading firm, Boodai Trading Company. In 2001, defendant became associated with a trading venture in Dubai, U.A.E., called Sharp Line Trading. It is through this entity that the defendant allegedly committed the crimes of which he stands accused.

On August 10, 2004, a grand jury in the District of Columbia returned an indictment charging this defendant Khalid Mahmood ("Mahmood") and a codefendant in one count with conspiracy and in a second count with a violation of export control laws. The grand jury indictment contains the following allegations. On or about June, 2004, the government received information that the Iranian company, Sepahan Lifter Company ("Sepahan Lifter") had been in direct contact with a United States company ("radiator company"). Defendant was a principal officer of Sepahan Lifter, a company whose products included forklift trucks having a 5-ton rated capacity. Such forklifts were used for moving large and heavy items such as boats and other vehicles, industrial machinery, and heavy military equipment. The defendant had been in contact with the radiator company, through Sepahan Lifter, to purchase radiators and send them to a manufacturing facility in Iran. The defendant used Sharp Line Trading to provide Sepahan Lifter with United States origin radiators, to cause the appearance that Sharp Line Trading purchased the radiators. The government obtained recorded conversations in which defendant persuaded the radiator company to engage in this activity in evasion of applicable United States law. The defendant made assertions to establish that he has long standing relations with Sepahan Lifter of a minimum of fifteen (15) years, involving \$250,000 of annual transactions for this company alone. The government tracked the progression of this particular transaction and learned that the defendant visited the radiator company and signed a contract ratifying the following email promises: (1) that upon returning to Dubai, defendant would send a 10% down payment for the products, (2) that defendant was willing to buy 280 radiators and have them shipped to Iran, and (3) that there would be additional transactions in the future, commenting that Sepahan Lifter "produce about seven hundred to one thousand machines per year." Indictment P 29.

After finding these facts, the Court concluded that no conditions of release could reasonably assure the defendant's appearance as required, taking into account the relevant statutory factors set forth in 18 U.S.C. § 3142(g): "(1) the nature and circumstances of the offense charged. . . , (2) the weight of the evidence against the person; [and] (3) the history and characteristics of the person, including (A) the person's character, . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct ."

Defendant has made, at the Court's invitation and through its motion for review of bond status,

2

a further proffer concerning defendant's financial assets.[1]  Defendant proffers that first, he has real

property, an Atlanta, Georgia home owned by his Wife appraised at $160,000,  that could be posted as

sufficient bond; and second, besides this home, defendant's financial assets are so limited that they

would not enable him to flee successfully.  In support of this second proffer, defendant submitted

information about two of defendant's bank accounts.  One account, with number ending in 978, held in

the defendant's name, and maintained by the Dubai, United Arab Emirates branch of the Habib Bank

AG Zurich ("Habib"), had a balance of over $76,000 as of August 21, 2004.  Another account, with

number ending 377, held in the name of Sharp Line Trading, and also maintained by Habib, kept a

daily closing balance of $272 because the defendant had a standing order to transfer funds from 377 to

his personal account at the end of each day.  Defendant additionally disclosed, in his Second

Supplemental Memorandum, that the defendant has a Wachovia account in Atlanta with about $1000, a

Standard Chartered Bank account with about $1400, a life insurance policy with Zurich International in

the U.A.E. valued at $27,000, and a U.S.-based investment with Vanguard worth about $12,000.


## ANALYSIS

The Court finds that the defendant's proffer does not warrant a change in his bond status.  The

---

[1] While the only new factual information before the Court is information concerning
defendant's financial assets, defendant also argued at the October 19, 2004 hearing that the
nature of the offense, violation of export laws, was not serious enough to warrant detention in
this case.  The Court rests on it's initial discussion of the matter on August 13, 2004, and
additionally notes that detention in such situations is not at all without precedent.  See United
States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990) (allowing detention based on violation of
export laws) ("Although neither violence nor the distribution of drugs are charged, the
accusations are of sophisticated criminal conduct, whose successful completion required the
ability to travel internationally, to adapt easily to foreign countries, and to move assets and
individuals quickly from one country to another.").

3

value of the wife's home, $160,000, and the concomitant financial loss that defendant would face if he

fled, is too slight given that defendant resides and has family in the U.A.E., a country that does not

have an extradition treaty with the United States. See United States v. Epstein, 155 F. Supp. 2d 323,

325 (E.D. Pa. 2003) (finding that defendant with about $1 million of seizeable U.S. assets could be

detained without bound when he, his wife, and children all were residents of Brazil, which had no

extradition treaty with the United States). Defendant's assets, apart from his wife's home, total over

$100,000 and are located both here in the United States and in the U.A.E.. The defendant has offered

no evidence to support his claim that flight would require some greater amount. Even if these assets

were posted as bond in addition to the home, the Court is still concerned that the defendant would

return to the U.A.E, his and his family's longtime residence, rather than face serious charges and

possible incarceration here in the United States.

CONCLUSION

After consideration, the Court declines the opportunity to modify defendant's bond status and

therefore denies defendant's motion.

SO ORDERED.

October 19, 2004

UNITED STATES DISTRICT JUDGE

4

# EXHIBIT 34



**United States Extradition Treaty With the United Kingdom**
**Includes:**
**Burma, Fiji, Gambia, Ghana, Guyana, Grenada, Kenya, Lesotho, Malawi, Malta,**
**Mauritius, Nauru, Nigeria, Pakistan, Papua New Guinea, Seychelles, Sierra Leone,**
**Singapore, Sri Lanka (Ceylon), Swaziland, Tanzania, Tonga, Zambia**
**12 Bevans 482**
December 22, 1931

---

## UNITED KINGDOM

## EXTRADITION

Treaty Series 849

12 Bevans 482

December 22, 1931, Date-Signed

June 24, 1935, Date-In-Force

STATUS:
[*1] Treaty and exchanges of notes signed at London December 22, 1931
Senate advice and consent to ratification February 19, 1932
Ratified by the President of the United States March 3, 1932
Ratified by the United Kingdom July 29, 1932
Ratifications exchanged at London August 4, 1932
Proclaimed by the President of the United States August 9, 1932
Entered into force June 24, 1935

[NO LONG-TITLE IN ORIGINAL]

TEXT:
TREATY

The President of the United States of America,

And His Majesty the King of Great Britain, Ireland and the British Dominions beyond the Seas,
Emperor of India;

Desiring to make more adequate provision for the reciprocal extradition of criminals,

Have resolved to conclude a Treaty for that purpose, and to that end have appointed as their plenipotentiaries:

The President of the United States of America:

General Charles G. Dawes, Ambassador Extraordinary and Plenipotentiary of the United States of America at
the Court of St. James;

And His Majesty the King of Great Britain, Ireland and the British Dominions beyond the Seas, Emperor of India:

for Great Britain and Northern Ireland:

The Right Honourable Sir John Simon, G.C.S.I., M.P., His Principal Secretary of State for Foreign Affairs;
[*2]
who, having communicated their full powers, found in good and due form, have agreed as follows:

## ARTICLE 1

The High Contracting Parties engage to deliver up to each other, under certain circumstances and conditions
stated in the present Treaty, those persons who, being accused or convicted of any of the crimes or offences
enumerated in Article 3, committed within the jurisdiction of the one Party, shall be found within the territory
of the other Party.

## ARTICLE 2

For the purposes of the present Treaty the territory of His Britannic Majesty shall be deemed to be Great Britain and Northern Ireland, the Channel Islands and the Isle of Man, and all parts of His Britannic Majesty's
dominions overseas other than those enumerated in Article 14, together with the territories enumerated in
Article 16 and any territories to which it may be extended under Article 17. It is understood that in respect of
all territory of His Britannic Majesty as above defined other than Great Britain and Northern Ireland, the Channel Islands, and the Isle of Man, the present Treaty shall be applied so far as the laws permit.

For the purposes of the present Treaty the territory of the United States shall be deemed [*3] to be all territory wherever situated belonging to the United States, including its dependencies and all other territories
under its exclusive administration or control.

## ARTICLE 3

Extradition shall be reciprocally granted for the following crimes or offences:

1. Murder (including assassination, parricide, infanticide, poisoning), or attempt or conspiracy to murder.

2. Manslaughter.

3. Administering drugs or using instruments with intent to procure the miscarriage of women.

4. Rape.

5. Unlawful carnal knowledge, or any attempt to have unlawful carnal knowledge, of a girl under 16 years of
age.

6. Indecent assault if such crime or offence be indictable in the place where the accused or convicted person
is apprehended.

7. Kidnapping or false imprisonment.

8. Child stealing, including abandoning, exposing or unlawfully detaining.

9. Abduction.

10. Procuration: that is to say the procuring or transporting of a woman or girl under age, even with her consent, for immoral purposes, or of a woman or girl over age, by fraud, threats, or compulsion, for such purposes with a view in either case to gratifying the passions of another person provided that such crime
or
offence is punishable by imprisonment [*4] for at least one year or by more severe punishment.

11. Bigamy.

12. Maliciously wounding or inflicting grievous bodily harm.

13. Threats, by letter or otherwise, with intent to extort money or other things of value.

14. Perjury, or subornation of perjury.

15. Arson.

16. Burglary or housebreaking, robbery with violence, larceny or embezzlement.

17. Fraud by a bailee, banker, agent, factor, trustee, director, member, or public officer of any company,
or
fraudulent conversion.

18. Obtaining money, valuable security, or goods, by false pretences; receiving any money, valuable

security,
or other property, knowing the same to have been stolen or unlawfully obtained.

19. (a) Counterfeiting or altering money, or bringing into circulation counterfeited or altered money.

(b) Knowingly and without lawful authority making or having in possession any instrument, tool, or engine
adapted and intended for the counterfeiting of coin.

20. Forgery, or uttering what is forged.

21. Crimes or offences against bankruptcy law.

22. Bribery, defined to be the offering, giving or receiving of bribes.

23. Any malicious act done with intent to endanger the safety of any persons travelling or being upon [*5] a
railway.

24. Crimes or offences or attempted crimes or offences in connection with the traffic in dangerous drugs.

25. Malicious injury to property, if such crime or offence be indictable.

26. (a) Piracy by the law of nations.

(b) Revolt, or conspiracy to revolt, by two or more persons on board a ship on the high seas against the
authority of the master; wrongfully sinking or destroying a vessel at sea, or attempting to do so; assaults on
board a ship on the high seas, with intent to do grievous bodily harm.

27. Dealing in slaves.

Extradition is also to be granted for participation in any of the aforesaid crimes or offences, provided that
such participation be punishable by the laws of both High Contracting Parties.

ARTICLE 4

The extradition shall not take place if the person claimed has already been tried and discharged or punished,
or is still under trial in the territories of the High Contracting Party applied to, for the crime or offence for
which his extradition is demanded.

If the person claimed should be under examination or under punishment in the territories of the High
Contracting Party applied to for any other crime or offence, his extradition shall be deferred [*6] until the
conclusion of the trial and the full execution of any punishment awarded to him.

ARTICLE 5

The extradition shall not take place if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has

been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.

## ARTICLE 6

A fugitive criminal shall not be surrendered if the crime or offence in respect of which his surrender is demanded is one of a political character, or if he proves that the requisition for his surrender has, in fact, been

made with a view to try or punish him for a crime or offence of a political character.

## ARTICLE 7

A person surrendered can in no case be kept in custody or be brought to trial in the territories of the High

Contracting Party to whom the surrender has been made for any other crime or offence, or on account of any

other matters, than those for which the extradition shall have taken place, until he has been restored, or has

had an opportunity of returning, to the territories of the High Contracting Party by whom he has been surrendered.

This stipulation [*7] does not apply to crimes or offences committed after the extradition.

## ARTICLE 8

The extradition of fugitive criminals under the provisions of this Treaty shall be carried out in the United States and in the territory of His Britannic Majesty respectively, in conformity with the laws regulating extradition for the time being in force in the territory from which the surrender of the fugitive criminal is claimed.

## ARTICLE 9

The extradition shall take place only if the evidence be found sufficient, according to the laws of the High

Contracting Party applied to, either to justify the committal of the prisoner for trial, in case the crime or offence had been committed in the territory of such High Contracting Party, or to prove that the prisoner is

the identical person convicted by the courts of the High Contracting Party who makes the requisition, and that

the crime or offence of which he has been convicted is one in respect of which extradition could, at the time

of such conviction, have been granted by the High Contracting Party applied to.

## ARTICLE 10

If the individual claimed by one of the High Contracting Parties in pursuance of the present Treaty should be

also claimed by one or several [*8] other Powers on account of other crimes or offences committed within
their respective jurisdictions, his extradition shall be granted to the Power whose claim is earliest in date,
unless such claim is waived.

## ARTICLE 11

If sufficient evidence for the extradition be not produced within two months from the date of the apprehension of the fugitive, or within such further time as the High Contracting Party applied to, or the proper tribunal of such High Contracting Party, shall direct, the fugitive shall be set at liberty.

## ARTICLE 12

All articles seized which were in the possession of the person to be surrendered at the time of his apprehension, and any articles that may serve as a proof of the crime or offence shall be given up when the
extradition takes place, in so far as this may be permitted by the law of the High Contracting Party granting
the extradition.

## ARTICLE 13

All expenses connected with the extradition shall be borne by the High Contracting Party making the application.

## ARTICLE 14

His Britannic Majesty may accede to the present Treaty on behalf of any of his Dominions hereafter named--that is to say, the Dominion of Canada, the Commonwealth of Australia (including for this [*9] purpose Papua and Norfolk Island), the Dominion of New Zealand, the Union of South Africa, the Irish Free
State, and Newfoundland--and India. Such accession shall be effected by a notice to that effect given by the
appropriate diplomatic representative of His Majesty at Washington which shall specify the authority to which
the requisition for the surrender of a fugitive criminal who has taken refuge in the Dominion concerned, or
India, as the case may be, shall be addressed. From the date when such notice comes into effect the territory
of the Dominion concerned or of India shall be deemed to be territory of His Britannic Majesty for the purposes
of the present Treaty. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The treaty was made applicable from Aug. 30, 1935, to Australia (including Papua, Norfolk Island, and
mandated territories of New Guinea and Nauru) and Newfoundland. (It ceased to apply to Newfoundland,

however, when Newfoundland entered the Confederation of Canada on Mar. 31, 1949.) It was also made applicable to Burma from Nov. 1, 1941, and to India from Mar. 9, 1942.

- - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - - [*10]

The requisition for the surrender of a fugitive criminal who has taken refuge in any of the above-mentioned
Dominions or India, on behalf of which His Britannic Majesty has acceded, shall be made by the appropriate
diplomatic or consular officer of the United States of America.

Either High Contracting Party may terminate this Treaty separately in respect of any of the above-mentioned
Dominions or India. Such termination shall be effected by a notice given in accordance with the provisions of
Article 18.

Any notice given under the first paragraph of this Article in respect of one of His Britannic Majesty's Dominions
may include any territory in respect of which a mandate on behalf of the League of Nations has been accepted
by His Britannic Majesty, and which is being administered by the Government of the Dominion concerned; such
territory shall, if so included, be deemed to be territory of His Britannic Majesty for the purposes of the present Treaty. Any notice given under the third paragraph of this Article shall be applicable to such mandated
territory.

## ARTICLE 15

The requisition for the surrender of a fugitive criminal who has taken refuge in any territory of His Britannic
Majesty [*11] other than Great Britain and Northern Ireland, the Channel Islands, or the Isle of Man, or the
Dominions or India mentioned in Article 14, shall be made to the Governor, or chief authority, of such territory
by the appropriate consular officer of the United States of America.

Such requisition shall be dealt with by the competent authorities of such territory: provided, nevertheless,
that if an order for the committal of the fugitive criminal to prison to await surrender shall be made, the said
Governor or chief authority may, instead of issuing a warrant for the surrender of such fugitive, refer the matter to His Majesty's Government in the United Kingdom of Great Britain and Northern Ireland.

## ARTICLE 16

This Treaty shall apply in the same manner as if they were Possessions of His Britannic Majesty to the following British Protectorates, that is to say, the Bechuanaland Protectorate, Gambia Protectorate, Kenya

Protectorate, Nigeria Protectorate, Northern Rhodesia, Northern Territories of the Gold Coast, Nyasaland,
Sierra Leone Protectorate, Solomon Islands Protectorate, Somaliland Protectorate, Swaziland, Uganda
Protectorate and Zanzibar, and to the following territories in respect [*12] of which a mandate on behalf of
the League of Nations has been accepted by His Britannic Majesty, that is to say, Cameroons under British
mandate, Togoland under British mandate, and the Tanganyika Territory.

## ARTICLE 17

If after the signature of the present Treaty it is considered advisable to extend its provisions to any British
Protectorates other than those mentioned in the preceding Article or to any British-protected State, or to any
territory in respect of which a mandate on behalf of the League of Nations has been accepted by His Britannic
Majesty, other than those mandated territories mentioned in Articles 14 and 16, the stipulations of Articles 14
and 15 shall be deemed to apply to such Protectorates or States or mandated territories from the date and in
the manner prescribed in the notes to be exchanged for the purpose of effecting such extension. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 The treaty was made applicable from June 24, 1935, to Palestine and Transjordan (see exchanges of notes,
below); from July 31, 1939, to the Federated Malay States (Negri, Sembilan, Pahang, Perak and Selangor), to
the Unfederated Malay States (Johore, Kedah, Kelantan, Perlis and Trengganu), Brunei, and North Borneo; and
from Aug. 1, 1966, to Tonga.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*13]

## ARTICLE 18

The present Treaty shall come into force ten days after its publication, in conformity with the forms prescribed
by the laws of the High Contracting Parties. It may be terminated by either of the High Contracting Parties by
a notice not exceeding one year and not less than six months.

In the absence of an express provision to that effect, a notice given under the first paragraph of this Article
shall not affect the operation of the Treaty as between the United States of America and any territory in
respect of which notice of accession has been given under Article 14.

The present Treaty shall be ratified, and the ratifications shall be exchanged at London as soon as possible.

On the coming into force of the present treaty the provisions of Article 10 [X] of the treaty of the 9th August,
1842, n3 of the Convention of the 12th July, 1889, n4 of the supplementary Convention of the 13th December,
1900, n5 and of the supplementary Convention of the 12th April, 1905, n6 relative to extradition, shall cease
to have effect, save that in the case of each of the Dominions and India, mentioned in Article 14, those provisions shall remain in force until such Dominion or India shall [*14] have acceded to the present treaty in
accordance with Article 14 or until replaced by other treaty arrangements.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 TS 119, ante, p. 88.

n4 TS 139, ante, p. 211.

n5 TS 391, ante, p. 256.

n6 TS 458, ante, p. 272.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

In faith whereof the above-named plenipotentiaries have signed the present Treaty and have affixed thereto
their seals.

Done in duplicate at London this twenty-second day of December, 1931.

## EXCHANGES OF NOTES

The Secretary of State for Foreign Affairs to the American Ambassador

FOREIGN OFFICE, S.W. 1.

No. T 15523/46/374

22nd December, 1931

YOUR EXCELLENCY,

With reference to Article 17 of the Extradition Treaty between His Majesty The King of Great Britain, Ireland
and the British Dominions beyond the Seas and the President of the United States of America, signed this day
at London, I have the honour to inform Your Excellency that His Majesty's Government in the United Kingdom
desire that the provisions of the above mentioned Treaty shall, as from the date of its entry into [*15]
force, be applicable to Palestine (excluding Transjordan).

2. I have accordingly the honour to enquire whether the United States Government agree with this proposal.

In this event the present note and Your Excellency's reply to that effect will be regarded as placing on record

the agreement arrived at in the matter.

I have the honour to be, with the highest consideration,

Your Excellency's obedient Servant,

The American Ambassador to the Secretary of State for Foreign Affairs

EMBASSY OF THE

UNITED STATES OF AMERICA

LONDON, December 22, 1931

No. 1582

SIR:

With reference to Article 17 of the Extradition Treaty between the President of the United States of America

and His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas, signed this day

at London, I have the honor to inform you that the Government of the United States of America is agreeable

to the proposal of His Majesty's Government in the United Kingdom that the provisions of the above mentioned

Treaty shall, as from the date of its entry into force, be applicable to Palestine (excluding Transjordan).

I have the honor to be, with the highest consideration, Sir,

Your most obedient, humble [*16] Servant,

The Secretary of State for Foreign Affairs to the American Ambassador

FOREIGN OFFICE, S.W. 1.

No. T 15523/46/374

22nd December, 1931

YOUR EXCELLENCY,

With reference to Article 17 of the Extradition Treaty between His Majesty The King of Great Britain, Ireland

and the British Dominions beyond the Seas and the President of the United States of America, signed this day

at London, I have the honour to inform Your Excellency that His Majesty's Government in the United Kingdom

desire that the provisions of the above mentioned Treaty shall, as from the date of its entry into force, be applicable to Transjordan.

2. I have accordingly the honour to enquire whether the United States Government agree with this proposal.

In this event the present note and Your Excellency's reply to that effect will be regarded as placing on record

the agreement arrived at in the matter.

I have the honour to be, with the highest consideration,

Your Excellency's obedient Servant,

The American Ambassador to the Secretary of State for Foreign Affairs

EMBASSY OF THE

UNITED STATES OF AMERICA

LONDON, December 22, 1931

No. 1583

SIR:

With reference to Article 17 of the Extradition Treaty [*17] between the President of the United States of

America and His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas, signed

this day at London, I have the honor to inform you that the Government of the United States of America is

agreeable to the proposal of His Majesty's Government in the United Kingdom that the provisions of the above

mentioned Treaty shall, as from the date of its entry into force, be applicable to Transjordan.

I have the honor to be, with the highest consideration, Sir,

Your most obedient, humble Servant,

SIGNATORIES:
CHARLES G. DAWES

[SEAL]

JOHN SIMON

[SEAL]

JOHN SIMON
His Excellency

General CHARLES G. DAWES, C.B.,

etc., etc., etc.

CHARLES G. DAWES
The Right Hon<ble>

Sir JOHN SIMON, G.C.S.I., etc., etc., etc., Foreign Office, S.W. 1.

---

*The Office of International Affairs\* Department of Justice \* 1301 New York Ave., NW \* Suite 900 \* Washington, D.C. 20005*

---

*Last updated by usdoj-crm/mis*
*January 10, 2001*

# EXHIBIT 35

# WACHOVIA

## Deposit Account Close Confirmation (Debit)
WACHOVIA BANK, N.A.

Date

12/01/2006

Customer Name(s) and Address

CIRRUS ELECTRONICS LLC

Taxpayer ID Number

T841630834

22 REDGLOBE CT
SIMPSONVILLE SC 29681

ACCOUNT NUMBER:     2000027787252

Available     Balance     :     $205,251.81

+ Accrued Int : $0.00

- Fed W/Hd Due : $0.00

- Admin Fee : $0.00

- Outstanding Db : $0.00

- Transfer Total : $205,251.81

- Closing Fee : $0.00

Paid To Customer : $0.00

Org/Serv/Acct: 004 / DDA / 2000742364756

SC Amount: $205,251.81

Name1 : CIRRUS ELECTRONICS LLC

WACHOVIA DIRECT ACCESS
Automated Voice Service

To: Mr. Sudarshan
From: Marty Fox
#/pgs: 1

*Just talk, we're listening*

# EXHIBIT 36

**Bank of America**

Prepared for: **PARTHASARATHY SUDARSHAN**

4024 1120 2046 **7301**

**February 2007 Statement**
Credit Line: **$5,000.00**
Cash or Credit Available: **$4,848.86**

**Customer Service**
For Information on Your Account Visit:
www.bankofamerica.com
Mail Payments to:
BANK OF AMERICA
P.O. BOX 37291
BALTIMORE, MD 21297-3291
Mail Billing Inquiries to:
BANK OF AMERICA
P.O. BOX 15026
WILMINGTON, DE 19850-5026
Call toll-free 1-800-626-2556
TDD hearing-impaired 1-800-346-3178

**Account Information**

**Summary of Transactions**

| | |
|---|---|
| Previous Balance | $1,010.30 |
| Payments and Credits − | $1,010.30 |
| Cash Advances + | $0.00 |
| Purchases and Adjustments + | $151.14 |
| Periodic Rate **Finance Charges** + | $0.00 |
| Transaction Fee **Finance Charges** + | $0.00 |
| New Balance Total | $151.14 |

**Billing Cycle and Payment Information**

| | |
|---|---|
| Days in Billing Cycle | 29 |
| Closing Date | 02/06/07 |
| Payment Due Date | 02/26/07 |
| Current Payment Due | $15.00 |
| Past Due Amount + | $0.00 |
| **Total Minimum Payment Due** | **$15.00** |

**Transactions**

| | Posting Date | Transaction Date | Reference Number | Account Number | Category | Amount |
|---|---|---|---|---|---|---|
| **Payments and Credits** | | | | | | |
| PAYMENT DIRECT DEBIT - THANK YOU | 01/27 | | 9491 | | | 1,010.30 CR |
| **Purchases and Adjustments** | | | | | | |
| #DUNKIN #343761    Q3 ELIZABETH   NJ | 01/24 | 01/22 | 1128 | 7301 | C | 2.88 |
| MP SHOPPER 46501269    8005264848US | 01/24 | 01/23 | 1269 | 5829 | C | 99.99 |
| #AUTOPAY/DISH NTWK    800-333-3474 CO | 01/30 | 01/28 | 7909 | 7301 | C | 48.27 |
| P0128E0044019 | | | | | | |

**Finance Charge Schedule**

| Category | Periodic Rate | Corresponding Annual Percentage Rate | Balance Subject to Finance Charge |
|---|---|---|---|
| **Cash Advances** | | | |
| A. Balance Transfers, Checks | 0.052712% DLY * | 19.24% | $0.00 |
| B. ATM, Bank | 0.066410% DLY * | 24.24% | $0.00 |
| C. Purchases | 0.052712% DLY * | 19.24% | $0.00 |
| ual Percentage Rate for this Billing Period: | | | See Corresponding Annual Percentage Rate Above |

.des Periodic Rate Finance Charges and Transaction Fee Finance Charges.)

* Periodic Rate May Vary

**Important Information About Your Account**

AUTO PAY ACTIVE-Your payment of $151.14
will be automatically deducted on 02/26/2007.

DON'T LET UNEXPECTED EVENTS AFFECT YOUR HARD EARNED CREDIT.
TO PROTECT YOUR ACCOUNT, CALL 1-888-668-6938 TODAY.

PAY YOUR BILL QUICKLY WITH THE PAY BY PHONE SERVICE. CALL 1-866-297-9258.

07      0001511400001500001010300004800113176685829

BANK OF AMERICA
P.O. BOX 37291
BALTIMORE, MD 21297-3291
ldmldalldaldaldalllallall

1 0024481 19903 0506090002 USE111    00002-09
PARTHASARATHY SUDARSHAN
201 HUDDERSFIELD DR
SIMPSONVILLE SC   29681-3703

☐ Check here for a change of mailing address or phone number(s).
Please provide all corrections on the reverse side.

**Payment Information**

| | |
|---|---|
| **ACCOUNT NUMBER:** | 4024 1120 2046 **7301** |
| **NEW BALANCE TOTAL:** | $151.14 |
| **PAYMENT DUE DATE:** | 02/26/07 |

**TOTAL MINIMUM PAYMENT DUE**
**$15.00**

Enter Payment Amount Enclosed:
$

Mail this payment coupon along with a
check or money order payable to: **BANK OF AMERICA**



⑆5240 22250⑆   ⑈25631766858 29⑉

# EXHIBIT 37

**Bank of America**

Prepared for: **PARTHASARATHY SUDARSHAN**

4888 6035 2306 **0465**

**February 2007 Statement**
Credit Line:              **$10,500.00**
Cash or Credit Available:  **$10,330.99**

### Customer Service

For Information on Your Account Visit:
www.bankofamerica.com
Mail Payments to:
BANK OF AMERICA
P.O. BOX 37291
BALTIMORE, MD 21297-3291
Mail Billing Inquiries to:
BANK OF AMERICA
P.O. BOX 15026
WILMINGTON, DE 19850-5026
Call toll-free 1-800-789-6685
TDD hearing-impaired 1-800-346-3178

### Account Information

**Summary of Transactions**

| | | |
|---|---|---|
| Previous Balance | | $0.00 |
| Payments and Credits | - | $0.00 |
| Cash Advances | + | $0.00 |
| Purchases and Adjustments | + | $169.01 |
| Periodic Rate **Finance Charges** | + | $0.00 |
| Transaction Fee **Finance Charges** | + | $0.00 |
| **New Balance Total** | | **$169.01** |

**Billing Cycle and Payment Information**

| | |
|---|---|
| Days in Billing Cycle | 29 |
| Closing Date | 02/08/07 |
| Payment Due Date | 02/28/07 |
| Current Payment Due | $15.00 |
| Past Due Amount   + | $0.00 |
| **Total Minimum Payment Due** | **$15.00** |

### Transactions

**Purchases and Adjustments**

| | Posting Date | Transaction Date | Reference Number | Account Number | Category | Amount |
|---|---|---|---|---|---|---|
| #WAL MART      FAIRFAX W  VA | 01/12 | 01/10 | 6760 | 0465 | C | 49.49 |
| #GEORGETOWN IMPORTS   WASHINGTON  DC | 01/16 | 01/13 | 0052 | 0465 | C | 32.76 |
| #MACY S WEST #0052   SANTA ANA   CA | 01/19 | 01/17 | 8934 | 0465 | C | 76.71 |
| #CHARLEYS GRILLED # Q2 DETROIT     MI | 01/19 | 01/18 | 1418 | 0465 | C | 4.71 |
| #CARIBOU COFFEE      DETROIT   MI | 01/22 | 01/18 | 8502 | 0465 | C | 5.34 |

### Finance Charge Schedule

| Category | Periodic Rate | Corresponding Annual Percentage Rate | Balance Subject to Finance Charge |
|---|---|---|---|
| **Cash Advances** | | | |
| A. Balance Transfers, Checks | 0.010931% DLY * | 3.99% | $0.00 |
| B. ATM, Bank | 0.066410% DLY * | 24.24% | $0.00 |
| C. Purchases | 0.052712% DLY * | 19.24% | $0.00 |

**Annual Percentage Rate for this Billing Period:**
(Includes Periodic Rate Finance Charges and Transaction Fee Finance Charges.)

See Corresponding
Annual Percentage
Rate Above

* Periodic Rate May Vary

### Important Information About Your Account

AUTO PAY ACTIVE-Your payment of $169.01
will be automatically deducted on 02/28/2007.

PLEASE ENSURE THAT YOUR PAYMENT IS RECEIVED BY THE PAYMENT DUE DATE
TO AVOID LATE FEES OR OTHER IMPACTS TO YOUR ACCOUNT.
IF PAYING BY MAIL, ALLOW AT LEAST 5 BUSINESS DAYS MAIL TIME.
IF YOU USE A BILL-PAYMENT SERVICE, NOTIFY THE SERVICE OF YOUR DUE DATE.

09    0001690100001500000386220004888932020730779

BANK OF AMERICA
P.O. BOX 37291
BALTIMORE, MD 21297-3291
ԼԱԼԼատԼԱԼԼԼատԼատԼԼԼատԼԼԼատԼԼ

1 0002843 01720 0507080002 USE111    00002-11
PARTHASARATHY SUDARSHAN
201 HUDDERSFIELD DR
SIMPSONVILLE SC   29681-3703

☐ Check here for a change of mailing address or phone number(s).
Please provide all corrections on the reverse side.

**Payment Information**

**ACCOUNT NUMBER:**     4888 6035 2306 **0465**

**NEW BALANCE TOTAL:** $169.01
**PAYMENT DUE DATE:** 02/28/07

**TOTAL MINIMUM PAYMENT DUE**
**$15.00**

Enter Payment Amount Enclosed:
**$**

Mail this payment coupon along with a
check or money order payable to: **BANK OF AMERICA**

⑆524022250⑆   ⑈287202073077⑈



# EXHIBIT 38

**Bank of America** 

## Platinum
## Visa Business Card
## Company Statement

| | | | |
|---|---|---|---|
| Credit Limit | $7,000 | Billing Date | 01-26-07 |
| Cash Limit | $7,000 | Days in Billing Cycle | 31 |
| Cash Advance Balance | $0.00 | Payment Due Date | 02-20-07 |
| Available Credit | $3,509 | Minimum Payment Due | $34.91 |

| | |
|---|---|
| **New Balance** | **$3,490.75** |

CIRRUS ELECTRONICS LLC
201 HUDDERSFIELD DR

**Company Account Number:**
4339 9300 0945 4887

**Platinum Visa Business Card News**
IMPORTANT NOTICE. WE ARE AMENDING YOUR CARD AGREEMENT.
PLEASE READ THE ENCLOSED AMENDED TERMS CAREFULLY AND
RETAIN THEM WITH YOUR RECORDS.

Page 1 of 4

### COMPANY SUMMARY

| CIRRUS ELECTRONICS L. 4339 9300 0945 4887 | Previous Balance | - Payments - | Credits + | Purchases/Other Debits/Fees + | Cash Advances + | Finance Charges = | New Balance |
|---|---|---|---|---|---|---|---|
| Company Total | $3,040.21 | $3,040.21 | $0.00 | $3,490.75 | $0.00 | $0.00 | $3,490.75 |

### CARDHOLDER NEW ACTIVITY SUMMARY

| | Credits | Purchases and Other Debits | Cash Advances | Total Activity |
|---|---|---|---|---|
| **PARTHASARATHY SUDARS** 4339 9300 0945 4895 | | | | |
| Credit Limit $7,000 | $0.00 | $3,490.75 | $0.00 | $3,490.75 |

**Customer Service**
888.449.2273, 24 hours

**Outside the U.S.**
509.353.6656, 24 hours

**For Lost or Stolen Card:**
888.449.2273, 24 hours

**Send Billing Inquiries to:**
BANK OF AMERICA
PO BOX 2463
SPOKANE WA 99210-2463

| Finance Charges | Total Annual Percentage Rate | | | 0.00% |
|---|---|---|---|---|
| | Average Daily Balance | Daily Periodic Rate | Annual Percentage Rate | Periodic Finance Charge |
| PURCHASES | $0.00 | 0.04998% | 18.24% | $0.00 |
| CASH | $0.00 | 0.06641% | 24.24% | $0.00 |

| Company Account Summary | | |
|---|---|---|
| Previous Balance | | $3,040.21 |
| Payments | - | $3,040.21 |
| Credits | - | $0.00 |
| Purchases/Other Debits/Other Fees | + | $3,490.75 |
| Cash Advances | + | $0.00 |
| Overlimit Fees | + | $0.00 |
| Late Payment Fees | + | $0.00 |
| Finance Charge | + | $0.00 |
| New Balance | = | $3,490.75 |

Please see the reverse side for information about your account.

--- --- ---

Please return coupon with your payment.

## Business Card Payment Coupon

**Bank of America** 

☐ Check box and indicate address change on reverse.

| | |
|---|---|
| Company Account No. | 4339 9300 0945 4887 |
| Payment Due Date | 02-20-07 |
| Minimum Payment Due | $34.91 |
| New Balance | $3,490.75 |

Please
Enter
Amount
Enclosed  $ _____ . __

Make check or money order payable to:
BANK OF AMERICA
Mail payment to address below.

CIRRUS ELECTRONICS LLC
201 HUDDERSFIELD DR
SIMPSONVILLE SC 29681-3703

M009167

BANK OF AMERICA
PO BOX 60073
CITY OF INDUSTRY CA 91716-0073

433993000945488700034910349075

⑆ 5499900 1 ⑆ :000 3000 9454 88 7 ⑈

# EXHIBIT 39

**AMERICAN EXPRESS** **Blue for Business™**

**OPEN** SM

**Total Savings to Date for this Account**
**$612.59**
For details, please see your OPEN Saving Summary

Prepared For
MYTHILI GOPAL
CIRRUS ELECTRONICS

Account Number
3715-461532-91003

Closing Date
02/21/07

Page 1 of 8

| Previous Balance $ | Payment Activity $ | New Activity $ inc. Adjustments and Finance Charges if any | New Balance $ | Minimum Amount Due $ |
|---|---|---|---|---|
| 17,449.82 | -17,449.82 | +10,792.59 | =10,792.59 | 540.00 |

**Payment Due Date**
**03/18/07**
Please refer to page 2 for important information regarding your account

| Credit Line Summary on 02/21/07 | Total Credit Line $ | Available Credit Line $ | Cash Advance Limit $ | Available Cash Limit $ |
|---|---|---|---|---|
| | 24,200.00 | 13,407.41 | 4,840.00 | 4,840.00 |

To manage your Account, visit us online at open.americanexpress.com or call Customer Service at 1-877-258-3254.

## Activity   * Indicates posting date

| | | Amount $ |
|---|---|---|
| 02/09/07* | Payment Received - Thank You | -17,449.82 |

**New Activity for MYTHILI GOPAL**
Card XXXX-XXXXX2-91003

| | | Amount $ |
|---|---|---|
| 01/31/07* | 5% OPEN Savings at FedEx | -25.13 Credit |
| | FEDEX #791623941094 $502.66 01/26/07 | |
| 02/15/07* | 5% OPEN Savings at FedEx | -15.28 Credit |
| | FEDEX #791632504564 $305.56 02/09/07 | |
| 01/26/07 | FEDEX #791623941094 SIMPSONVILLE    SC CIR/USA/078 56908 TO: CIRRUS ELECTRONICS PTE LTD SG FROM: PARTHASARATHY SUDARSHAN 29681 003 PRIORITY 1 81LB AWB791623941094 YOUR FEDEX CUSTOM DISCOUNT IS $108.17 ROC No. 1623941094 | 502.66 |
| 02/08/07 | FIRST SOURCE INC FIRPOST FALLS    ID 2087734275 | 82.00 |

*Sch on 03/1/07*
*Pay on 03/13/07*
*Conf no: 68RGN - R4V45*

↓ Please fold on the perforation below, detach and return with your payment ↓

*Continued on Page 3*

*Continued on Page 3*

**Payment Coupon**

Account Number
3715-461532-91003

**Payment Due Date:**
**03/18/07**

Please enter account number on all checks and correspondence.

MYTHILI GOPAL
CIRRUS ELECTRONICS
201 HUDDERSFIELD DR
SIMPSONVILLE SC 29681-3703

**Total New Balance**
**$ 10,792.59**

**Minimum Amount Due**
**$540.00**

Make check payable to American Express.

See Finance Charges section on reverse side for a description of when additional Finance Charges are not assessed on Purchases.

$ _____
•
Amount enclosed

Check here if your address or telephone number has changed. Please note changes on reverse side.

Mail Payment to:

AMERICAN EXPRESS
P.O. BOX 650448
DALLAS TX 75265-0448

0000371546153291003 0010792590000054000 18 H