UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-051 (RMU) |
| | : | |
| v. | : | |
| | : | |
| PARTHASARATHY SUDARSHAN, and | : | |
| MYTHILI GOPAL, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S MOTION TO EXCLUDE
TIME FROM SPEEDY TRIAL ACT COMPUTATION**

The United States of America, through its undersigned counsel, moves pursuant to 18 U.S.C. § 3161(h)(9) to exclude up to four months from the Speedy Trial Act computation in this case in order to permit the United States to gather evidence from the Republic of Singapore in response to an official request from the United States to the Republic of Singapore for such evidence. In support of this motion, the government states as follows:

**Background**

1.   The defendants have been charged in a 15-count indictment. Counts 1 through 9 charge the defendants with conspiring to violate and violating the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705, and the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774. In particular, the IEEPA and EAR counts involve the defendants' activities in supplying electrical components to two government entities in India that are restricted from receiving exports of U.S. origin commodities because of their roles in India's ballistic missile and nuclear weapons delivery programs. The two entities in question are the Vikram Sarabhai Space Centre ("VSSC") and Bharat Dynamics Ltd. ("BDL"). All of the

electrical components that the defendants sent them have applications in the guidance and firing systems of ballistic missiles.

2.  Counts 10 through 14 of the indictment charge the defendants with conspiring to violate and violating the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130. The focus of the AECA and ITAR charges is on the defendants' unlawful exports to the Government of India of microprocessors for use in the navigation and weapons guidance systems of the Tejas Light Combat Aircraft. The Tejas is an advanced fighter jet that the Government of India is developing.

3.  Count 15 of the indictment charges the defendants with being illegal agents of the Government of India in violation of 18 U.S.C. § 951(a).

4.  The defendants did business as Cirrus Electronics ("Cirrus"). Cirrus maintained offices in Simpsonville, South Carolina, Singapore, and Bangalore, India. The location of a Cirrus office in Singapore was crucial to the success of the defendants' export diversion schemes. Because there are far fewer U.S. controls on exports to Singapore, the defendants were able to make it appear as if the commodities they were purchasing here were going to Singapore and thereby not raise suspicions among vendors in the United States and U.S. Customs inspectors. However, once the goods arrived in Singapore, Cirrus immediately re-exported them to the restricted end-users in India.

5.  On March 23, 2007, FBI agents arrested the defendants in their homes in

Simpsonville, South Carolina.[1]  See Declaration of Jay I. Bratt ("Bratt Decl."), which accompanies this motion, at ¶ 2.  The agents also conducted searches at those locations.  Id.  On March 26, 2007, Singapore Customs searched the offices of Cirrus in Singapore.  Id. at ¶ 3.  The Singapore Customs agents conducted the search as part of their own investigation into whether the defendants' conduct in this matter also violated Singapore's export laws.  Id.  Representatives from Singapore Customs have informed the FBI's Legal Attaché in Singapore and the Attaché in Singapore for U.S. Immigration and Customs Enforcement ("ICE") that numerous records were seized during the search as well as a computer.  Id.  In addition, Singapore Customs has obtained records from Dan Air Freight ("Dan Air"), a freight forwarder in Singapore that Cirrus used (often at the direction of the Indian government) to make its unlawful transshipments of U.S. origin commodities to restricted entities in India.  Id.

      6.      After Singapore Customs searched Cirrus' offices in Singapore, government counsel prepared a formal request for evidence to the Attorney General of Singapore pursuant to amended section 16(2) of Singapore's Mutual Assistance in Criminal Matters Act (Chapter 190A).  Id. at ¶ 4.  In this request, the government sought copies of the evidence that Singapore Customs seized during its search of Cirrus, along with a mirror image of the hard drive of the computer that Singapore Customs took from Cirrus' offices.  Id.  The government's request further sought copies of records from Dan Air.  Id.  Because the FBI has identified bank accounts in Singapore that the defendants used, the request also sought bank records.  Id.  On April 26, 2007, the Office of International Affairs ("OIA") of the U.S. Department of Justice, informed

---

[1] Both defendant Sudarshan and defendant Gopal conducted Cirrus' business from their respective residences in Simpsonville, South Carolina.

Simpsonville, South Carolina.[1]  See Declaration of Jay I. Bratt ("Bratt Decl."), which accompanies this motion, at ¶ 2.  The agents also conducted searches at those locations.  Id.  On March 26, 2007, Singapore Customs searched the offices of Cirrus in Singapore.  Id. at ¶ 3.  The Singapore Customs agents conducted the search as part of their own investigation into whether the defendants' conduct in this matter also violated Singapore's export laws.  Id.  Representatives from Singapore Customs have informed the FBI's Legal Attaché in Singapore and the Attaché in Singapore for U.S. Immigration and Customs Enforcement ("ICE") that numerous records were seized during the search as well as a computer.  Id.  In addition, Singapore Customs has obtained records from Dan Air Freight ("Dan Air"), a freight forwarder in Singapore that Cirrus used (often at the direction of the Indian government) to make its unlawful transshipments of U.S. origin commodities to restricted entities in India.  Id.

    6.    After Singapore Customs searched Cirrus' offices in Singapore, government counsel prepared a formal request for evidence to the Attorney General of Singapore pursuant to amended section 16(2) of Singapore's Mutual Assistance in Criminal Matters Act (Chapter 190A).  Id. at ¶ 4.  In this request, the government sought copies of the evidence that Singapore Customs seized during its search of Cirrus, along with a mirror image of the hard drive of the computer that Singapore Customs took from Cirrus' offices.  Id.  The government's request further sought copies of records from Dan Air.  Id.  Because the FBI has identified bank accounts in Singapore that the defendants used, the request also sought bank records.  Id.  On April 26, 2007, the Office of International Affairs ("OIA") of the U.S. Department of Justice, informed

---

[1] Both defendant Sudarshan and defendant Gopal conducted Cirrus' business from their respective residences in Simpsonville, South Carolina.

government counsel that the formal request for evidence in this matter had been transmitted to the office of Singapore's Attorney General.  Id. at ¶ 5.

## Argument

7.     The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), requires that a defendant be tried within seventy days of the filing of an indictment or his appearance before a judicial officer, whichever occurs later.  However, certain periods of delay "shall be excluded . . . in computing the time within which the trial . . . must commence."  18 U.S.C. § 3161(h) (emphasis added).

8.     The Speedy Trial Act requires the exclusion of up to one year from the statutory period in which a case must be tried for the gathering of evidence from a foreign country upon an official request to that foreign country.  Section 3161(h)(9) provides for the exclusion of "[a]ny period of delay, not to exceed one year, ordered by a district court upon an application of a party and a finding by a preponderance of the evidence that an official request, as defined in section 3292 of this title, has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country."

9.     Section 3292 defines the term "official request" for Speedy Trial Act purposes to include "any . . . request for evidence made by . . . an authority of the United States having criminal law enforcement responsibility, to . . . [an] other authority of a foreign country."

10.    Pursuant to 18 U.S.C. § 3161(h)(9), federal courts have excluded from the Speedy Trial Act calculation the time necessary for the gathering of evidence from a foreign country upon an official request to that foreign country.  See, e.g., United States v. Schlei, 122 F.3d 944, 986 (11th Cir. 1997) (upholding exclusion of time for taking of depositions in Japan); United

States v. Serna, 630 F. Supp. 779, 783-84 (S.D.N.Y. 1986) (diligent and good faith effort to secure wiretap evidence from Spain entitled United States to an exclusion of up to one year).

11. Here, the government has established by more than a preponderance of the evidence the two prerequisites for an exclusion of time under 18 U.S.C. § 3161(h)(9). First, as set forth above and in the Bratt declaration, the Department of Justice ("an authority of the United States having criminal law enforcement responsibility") has made an official request to the Republic of Singapore for evidence related to the offenses in the indictment. Second, based on information that Singapore Customs has provided to the FBI and ICE attachés, it reasonably appears that such evidence is in Singapore.

12. The government notes that § 3161(h)(9) permits exclusion of up to a year of Speedy Trial Act time. However, in deference to the fact that defendant Sudarshan is detained, the government is only seeking to exclude up to four months from the Speedy Trial Act calculation here. Moreover, under the government's proposed order, the government is to notify the Court immediately upon satisfaction of its request to Singapore and any tolling of the Speedy Trial Act shall cease, unless the Act is being tolled at the time for some other reason. The government also notes that, given the complexity of this case, the defense likely will need at least four months to review the government's discovery and prepare motions.

**Conclusion**

For the foregoing reasons, the Court should grant the government's motion to exclude Speedy Trial Act time.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610

By:          /s/
     Jay I. Bratt
     Assistant United States Attorney
     Illinois Bar No. 6187361
     National Security Section
     Room 11-437
     555 Fourth Street, NW
     Washington, D.C.  20530
     (202) 353-3602
     Jay.Bratt@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-051 (RMU) |
| v. | : | |
| PARTHASARATHY SUDARSHAN, and MYTHILI GOPAL, | : | |
| Defendants. | : | |

### ORDER

Before the Court is the government's motion to exclude time from the Speedy Trial Act computation pursuant to 18 U.S.C. § 3161(h)(9) because of the government's request for evidence to the Republic of Singapore. Upon consideration of the government's motion, the Court finds by a preponderance of the evidence that the United States Department of Justice, an authority of the United States having criminal law enforcement responsibility, has made a request to the Attorney General of the Republic of Singapore for evidence relevant to the offenses charged in the indictment in this matter. The Court further finds by a preponderance of the evidence that it reasonably appears that such evidence is in the Republic of Singapore. Accordingly, the Court **GRANTS** the government's motion. The computation of time under the Speedy Trial Act is hereby excluded for up to four (4) months from the date of this Order to permit the government to obtain the evidence that it has requested from the Republic of Singapore.

It is further **ORDERED** that the government shall immediately inform the Court upon satisfaction by the Republic of Singapore of its request for evidence. Upon such notification, the

tolling of the Speedy Trial Act time shall cease, unless such time is being tolled for some other reason.

      **DONE AND ORDERED** this _____ day of May, 2007.

                                                                   _____
                                                                    Honorable Ricardo M. Urbina
                                                                    United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-051 (RMU) |
| | : | |
| v. | : | |
| | : | |
| PARTHASARATHY SUDARSHAN, and | : | |
| MYTHILI GOPAL, | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF JAY I. BRATT

1. I am an Assistant United States Attorney for the District of Columbia. I am the lead prosecutor for this matter.

2. On March 23, 2007, FBI agents arrested Parthasarathy Sudarshan and Mythili Gopal at their homes in Simpsonville, South Carolina. After the arrests, agents searched their residences. Sudarashan and Gopal were doing business in the United States as Cirrus Electronics LLC ("Cirrus"), and they conducted Cirrus' affairs out of their houses. Cirrus also has offices in Singapore and in Bangalore, India.

3. On March 26, 2007, Singapore Customs conducted a search of the Cirrus office in Singapore. The purpose of the search was to determine whether the activities of Cirrus in this case also constitute violations of Singapore's export laws. Representatives of Singapore Customs have informed the FBI's Legal Attaché in Singapore and the Attaché for U.S. Immigration and Customs Enforcement ("ICE") that the search of Cirrus resulted in the seizure of numerous records and of a computer. Singapore Customs also informed the FBI and ICE Attachés that it had obtained records from Dan Air Freight ("Dan Air"), a local freight forwarder,

concerning Cirrus' shipments from Singapore to India. The government's investigation here revealed that the Cirrus used Dan Air to transship U.S. origin commodities through Singapore to restricted end-users in India. Cirrus often used Dan Air at the direction of the Indian government.

4. After learning of the results of Singapore Customs' search of Cirrus, I prepared a formal request under amended section 16(2) of Singapore's Mutual Assistance in Criminal Matters Act (Chapter 190A). The Mutual Assistance in Criminal Matters Act authorizes the Government of Singapore to provide assistance to foreign governments seeking evidence as part of the requesting nations' investigations and prosecutions of violations of their laws. The request sought, among other things, copies of the records that Singapore Customs seized from Cirrus on March 26, 2007, as well as a mirror image of the hard drive of the computer that Singapore Customs took. The request further sought records from Dan Air, as well as records from banks that the government's investigation has identified as holding accounts that the defendants used.

5. On April 26, 2007, the Office of International Affairs ("OIA") of the U.S. Department of Justice informed me that the formal request for evidence in this case had been transmitted that day to the Attorney General for Singapore.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Jay I. Bratt