**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051(RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| **Defendant.** | : | |

**DEFENDANT'S MOTION FOR REVOCATION**
**OR AMENDMENT OF DETENTION ORDER.**

Pursuant to Fed. R. Cr. P. 47(a), Defendant Pathasarathy Sudarshan, through his undersigned counsel, hereby moves to revoke or amend the detention order of April 13, 2007 for the reasons provided in the attached Memorandum in Support of Motion for Revocation or Amendment of Detention Order.  As explained more fully in the attached Memorandum, the Government has failed to demonstrate that "no combination of conditions" could reasonably assure Mr. Sudarshan's appearance at trial.  This case involved no violent offenses, Mr. Sudarshan poses no threat to the community and has no criminal history, and the weight of the evidence does not warrant detention.

Respectfully submitted,

_____/S_____
Beattie B. Ashmore, (Admitted Pro Hac Vice)
Price, Ashmore, & Beasley, P.A.
644 East Washington Street
Greenville, South Carolina  29601
(864) 467-1001
bashmore@sctriallawyers.com

_____/S_____
Joseph W. Clark, (DC Bar #468782)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
(202) 879-3697
jwclark@jonesday.com

**<u>Certificate of Service</u>**

I, Joseph W. Clark, certify that I served a copy of the foregoing Motion for Revocation or Amendment of Detention Order on Jay I. Bratt, counsel for the United States of America, by email to jay.bratt@usdoj.gov and via ECF on this 30th day of April, 2007.

_____/s/_____
 Joseph W. Clark

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051(RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| **Defendant.** | : | |

## NOTICE OF FILING OF DEFENDANT'S MOTION FOR REVOCATION OR AMENDMENT OF DETENTION ORDER AND SUPPORTING EXHIBITS.

The defendant, Pathasarathy Sudarshan, through his undersigned counsel, gives notice that counsel has filed the attached Defendant's Memorandum in Support of Motion for Revocation or Amendment of Detention Order.

Respectfully submitted,


_____/S_____
Beattie B. Ashmore, (Admitted Pro Hac Vice)
Price, Ashmore, & Beasley, P.A.
644 East Washington Street
Greenville, South Carolina  29601
(864) 467-1001
bashmore@sctriallawyers.com


_____/S_____
Joseph W. Clark, (DC Bar #468782)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
(202) 879-3697
jwclark@jonesday.com

**<u>Certificate of Service</u>**

I, Joseph W. Clark, certify that I served a copy of the foregoing Notice of Motion for

Revocation or Amendment of Detention Order on Jay I. Bratt, counsel for the United States of

America, by email to jay.bratt@usdoj.gov and via ECF on this 30th day of April, 2007.


_____/s/_____
Joseph W. Clark

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051(RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR REVOCATION OR**
**AMENDMENT OF DETENTION ORDER AND SUPPORTING EXHIBITS.**

## Introduction

The Government has failed to demonstrate that "no combination of conditions" could reasonably assure Mr. Sudarshan's appearance at trial. This case involved no violent offenses. Mr. Sudarshan poses no threat to the community and has no criminal history. Contrary to the Detention Order, the weight of the evidence does not warrant detention. He and his family's immigration status is pending, and, regardless of that outcome, under D.C. Circuit law the risk of future deportation does not justify detention. Any remaining risk of flight is alleviated by his family's extensive professional and social ties to South Carolina, his personal background and good character. Finally, Mr. Sudarshan will abide by all conditions of release, including electronic monitoring, posting a bond, and any others the Court finds necessary to ensure his appearance.

## Statement Of Facts And Procedural History

Mr. Sudarshan was arrested on March 23, 2007 at his home in Greenville, South Carolina. He appeared before Magistrate Judge William Catoe in the District of South Carolina who stated "I respectfully don't think it's a detention case, but that's not my decision to make." *See* Exhibit

1, 3/23/07 Transcript 4:22-24.  The court in South Carolina ordered Mr. Sudarshan to be transported to the District of Columbia for a detention hearing.  *Id.*

On April 3, 2007, Mr. Sudarshan made an initial appearance before Magistrate Judge Robinson in the District of Columbia.  After Mr. Sudarshan was arraigned, the Government requested that Mr. Sudarshan be held under 18 U.S.C. § 3142(f)(2)(A) as a risk of flight. The Pretrial Services Report had recommended Mr. Sudarshan be released on personal recognizance.  The court ruled that Mr. Sudarshan would be held pending a detention hearing set for April 5, 2007.

During the subsequent detention hearing, the government stated, "we are seeking only a risk of flight hold."  *See* 4/5/2007 Transcript 31:20-21.  The government proceeded by proffer and moved into evidence the exhibits attached to its Memorandum in Support of Detention filed the morning of the detention hearing.  *See* 4/5/2007 Government's Memorandum in Support of Detention ("Govt. Memorandum").  After the court heard the argument and proffers from counsel for Mr. Sudarshan, the court found that the government had shown, by a preponderance of the evidence, that no condition or combination of conditions would reasonably assure Mr. Sudarshan's appearance.

On April 13, 2007, Magistrate Judge Robinson ordered Mr. Sudarshan held without bond pursuant to 18 U.S.C. § 3142(e).  *See* Memorandum of Findings of Fact and Statement of Reasons In Support of Order of Detention ("Detention Order").  Based on the government's proffer, Magistrate Judge Robinson found that the defendant was involved in a "conspiracy to sell weapon parts to foreign entities without permission the appropriate federal agencies." Detention Order at 4.  The court also found that the weight of the evidence against Mr. Sudarshan was compelling and that Mr. Sudarshan's "history and characteristics militate against

pretrial release." *Id*. Specifically, the court noted that Mr. Sudarshan is a citizen of Singapore. The court also surmised that the L-1 visa issued to him by the United States would expire in July 2007 and could not be renewed. *Id*. Finally, Magistrate Judge Robinson held that "the toll which the activities alleged in this action have on the safety of this country is well documented and need not be repeated here." *Id.* The court concluded that Mr. Sudarshan was not amenable to community supervision.

## Standard of Review

This Court reviews *de novo* the findings of fact and statement of reasons in support of an order of detention. *See United States v. Bess*, 678 F.Supp. 929, 934 n.3 (D.D.C. 1988). This Court is free to rest its ruling on evidence and a rationale different than what the Magistrate relied upon. *See id*. (citing *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985)). For the reasons stated below, Mr. Sudarshan urges this Court to reject the findings of the Magistrate.

## Argument

**A.    The Government Failed To Show That Mr. Sudarshan Is A Flight Risk And That No Combination Of Conditions Would Reasonably Ensure His Appearance For Trial.**

The Government must satisfy a preponderance of the evidence standard when it seeks pretrial detention of an individual on the ground that he poses risk of flight. *United States v. Xulam*, 84 F. 3d 441 (D.C. Cir. 1996). "That preponderance must, of course, go to the ultimate issue: that **no combination of conditions** – either those set out in the Bail Reform Act itself or any others that the judge or magistrate or judge might find useful – can 'reasonably' ensure that the defendant will appear for trial." *Id*. (citing 18 U.S.C. § 3142(c)) (emphasis added).[1]  Section

---

[1]  The Act sets out a number of conditions that may be used to ensure appearance, including *inter alia*: remaining in custody of a designated person who agrees to assume supervision and to report any violation of a release condition; maintaining employment;

3142(g) of the Act sets out the factors to be considered by the magistrate or judge in deciding whether available conditions will reasonably ensure the defendant's appearance: the nature and circumstances of the offense (particularly its non-violent nature); the weight of the evidence; the history and characteristics of the person; and the danger the defendant poses to the community if released.

**1.    Mr. Sudarshan Has Been Charged With Non-Violent Offenses And Poses No Danger To The Community.**

Two of the Section 3142(g) factors unequivocally argue for release:  (1) Mr. Sudarshan has not been charged with any violent offenses.  *See United States v. Karni*, 298 F. Supp. 2d 129, 130-131 (D.D.C. 2004) (alleged violations of Export Administration Act and International Economic Emergency Powers Act are not crimes of violence); (2) Mr. Sudarshan has no criminal record or violent history and he poses no danger to the community.  Indeed, the Government sought detention solely on grounds of risk of flight.  *See* 4/5/07 Transcript 31:20-21.

**2.    The Weight Of The Evidence Does Not Favor Detention.**

A careful review of the proffered evidence supports release from detention.  Many of the items purportedly shipped to India had conventional uses and could be acquired on the open market.  For example, the government alleges that Mr. Sudarshan facilitated the exportation of i960 Intel processors.  Indictment at 19-29.  The government claims that the processors were delivered to India's Ministry of Defence for use in an aircraft.  Yet, these processors have a wide range of applications consistent with general conventional use such as "local and wide-area

_____

(continued…)

combining by restrictions on place of abode or travel; reporting on a regular basis to a designated law enforcement agency; complying with a curfew; executing a bail bond; and a final catch-all for any condition that the magistrate or judge deems "reasonably necessary to assure appearance."  18 U.S.C. § 3142(c).  Mr. Sudarshan stands ready to comply with any such conditions the Court deems appropriate.

networking, telecom and imaging applications." *See* http://www.intel.com/design/i960/family.htm.[2] The weight of the government's purported evidence that Mr. Sudarshan exported certain capacitors and semi-conductors is equally lacking. Although the government refers to these capacitors and semi-conductors as "sensitive commodities," *see* 04/05/2007 Transcript at 6, they are widely available on the open market.[3] Further, there is no evidence that the capacitors and semi-conductors allegedly exported to organizations on the US Department of Commerce, Entity List were actually designed or configured for military use. Combined, these factors undermine the weight of the government's evidence.

Also, contrary to the government's assertion, the weight of the evidence does not favor a conclusion that Mr. Sudarshan "acted with knowledge that he was violating the law." *See* 04/05/2007 Transcript at 5. For example, the government proffered evidence that Mr. Sudarshan carried a course book on export controls. Even if the allegation were true, it is a fact consistent with innocence as it demonstrates Mr. Sudarshan's efforts to understand the complex regulations that governed his profession. Moreover, the defense proffers that in January 2007, Mr. Sudarshan attended a conference sponsored by the U.S. Bureau of Industry on complying with export controls. Again, this evidence is consistent with Mr. Sudarshan's innocence and his efforts to understand the regulatory regime, not circumvent it.

---

[2] The i960 is also commonly used in slot machines. *See* http://en.wikipedia.org/wiki/Intel_i960.

[3] To acquire a basic M39014/01-1284, see http://www.partminer.com/pagedetail/5467/14. The M39014/01-1299, or M39014/01-1317 may be ordered via the Internet at http://www.nowcomponents.com. Similarly, the M39014/01-1535 can be obtained at http://www.impactcomponents.com/inquiry/Catalog1494.html, as can the M39014/01-1553. In fact, it appears that most if not all five of these capacitors can be ordered at any of these websites: http://www.partminer.com; http://www.nowcomponents.com; and http://www.impactcomponents.com.

The government can be expected to highlight purported conversations Mr. Sudarshan had with vendors in the United States regarding the importance of complying with applicable regulations. Yet, at best, this proffered evidence reveals a difference of opinion on the scope and application of regulations. And, as discussed above, the defense proffers that Mr. Sudarshan attended a U.S. Bureau of Industry conference in an effort to learn more about the regulatory regime and its application to his business.

Similar to the allegations above, the government's evidence that Mr. Sudarshan is an agent of a foreign government is lacking. To be an agent of a foreign government, an individual must "agree[] to operate within the United States subject to the direction or control of a foreign government or official[.]" 18 U.S.C. § 951(d). The government failed to proffer evidence that Mr. Sudarshan agreed to be directed or controlled by a foreign government. The government claims that Mr. Sudarshan admitted that he was an agent for a foreign government in a statement Mr. Sudarshan provided to the Federal Bureau of Investigation after his arrest.[4] The statement, summarized in the FBI Report of Interview reads as follows:

> Sudarshan admitted that he acted as an "agent" of the government of India and assisted India's military and defense communities in acquiring restricted technology from US companies. However, Sudarshan insisted that he did so as a business man and not as a professional intelligence officer. Sudarshan claimed that his underlying motivation was to personally profit financially from his efforts. Sudarshan has never been in the formal employ of an Indian intelligence agency and he has never received any money or gifts from the Indian intelligence community.

FBI Report of Interview, March 23, 2007, (quotation marks in original). The purported statement is clear; Mr. Sudarshan has not received compensation of any kind from the

---

[4] Mr. Sudarshan does not concede the admissibility of this statement and continues to assert his constitutional rights.

government of India's intelligence community.  At best, the government's proffered evidence indicates that Mr. Sudarshan acted as a broker between two independent and separate organizations in an effort to secure a profit for his business.  Under the government's theory, each time a broker facilitates a transaction between a customer and a supplier, that broker has become an agent of one of the two parties; rather than an independent business professional seeking to earn a commission.  This novel theory has no application to the facts of this case as proffered by the government.

**3.      Mr. Sudarshan's Immigration Status Does Not Justify Detaining Him.**

The Detention Order eschewed an analysis of the Section 3142(g) factors, instead focusing on the facts that Mr. Sudarshan is a Singapore citizen and that he and his family's L-1 visas allegedly "expire in July 2007, and…cannot be renewed."  Detention Order at 4.  But a defendant's citizenship is not an enumerated factor in Section 3142(g), and Mr. Sudarshan and his family's immigration proceedings are not closed.  On March 30, 2007 the Administrative Appeals Office of the U.S. Citizenship and Immigration Services ordered that the "director shall review the approved nonimmigrant petition…for revocation pursuant to 8 C.F.R. § 214.2(l)(9)."  *See* Page 8, Exhibit 2 to Govt. Memorandum.  There is no evidence that his petition has been revoked or that he could not avail himself of any available appeals.  Furthermore, his wife is a medical doctor, a "specialty occupation" meeting the threshold qualifications for a category H-1B visa.  She plans to apply for an H-1B visa, which if granted would entitle her to remain in the United States.  So the government's assertion that Mr. Sudarshan will have no family remaining in the United States after July 2007 is, at best, premature.  The magistrate judge erroneously relied on this premature assertion in the Detention Order.

More importantly, under D.C. Circuit law the possibility that Mr. Sudarshan someday might be required to leave the country does not justify detaining him now. In *Xulam*, for example, the district court had denied release based in part on testimony that the appellant "might be facing deportation" to Turkey. 84 F.3d at 442-43. The D.C. Circuit revoked the detention order. *Id*. It reasoned that INS already had addressed immigration concerns by lodging a detainer against the appellant and could later opt to take him into custody. *Id*. at 443. This situation is no different. Immigration authorities can take similar action with Mr. Sudarshan after this case has been resolved. Regardless, under *Xulam* the prospect of a future deportation is not a valid reason to detain an otherwise releasable defendant like Mr. Sudarshan.

Moreover, the *Xulam* court revoked detention even though the appellant's alleged crime was using a false identity to obtain a passport, so there was an inherent a risk he could do so again. *Id*. at 442-43. Nonetheless, "on a more practical level, the government has taken away all his passports and travel documents, so it is unlikely that he could go far, even if he wished to." *Id*. at 443. Mr. Sudarshan's case for release is even more compelling because he voluntarily surrendered his passport at the April 5, 2007 detention hearing. Detention Order at 3. And, unlike *Xulam*, this case does not involve charges relating to fraudulently-obtained passports. Thus, Mr. Sudarshan's immigration status, or that of his family, does not indicate he is a risk of flight.

**4.     Mr. Sudarshan's History And Characteristics Demonstrate That He Is Not A Flight Risk.**

As discussed above, the Bail Reform Act specifies that a defendant's "history and characteristics" are to be considered in deciding whether bail conditions will "reasonably assure" appearance. 18 U.S.C. § 3142(g)(3)(A). This includes, *inter alia*, a defendant's character, family ties, employment, length of residence in the community, community ties, past conduct,

criminal history, and record of court appearances. *Id.* Mr. Sudarshan's familial, professional

and social ties to the community, gainful employment in South Carolina, lack of criminal history

and attested good character all favor release from custody.

First, Mr. Sudarshan and his family are deeply rooted in the Simpsonville, South Carolina

community. They have lived there since 2004. They own a home. They are well-regarded

members of the community and connected both professionally and socially. Mr. Sudarshan's

wife and youngest son currently reside in South Carolina. His youngest son Srivatsan Sudarshan

is currently enrolled and attending classes at Southside High School in Simpsonville, South

Carolina. *See* Ex. 2 (report card of Srivatsan Sudarshan). As evidenced by Srivatsan

Sudarshan's grades and teacher comments, he is doing quite well. His oldest son previously

lived with the family in South Carolina, but recently returned to Singapore to fulfill his

compulsory military service.[5] Mr. Sudarshan has other relatives residing in upstate South

Carolina, so he has a support and accountability network beyond his nuclear family. In short, Mr.

Sudarshan has strong ties to the area and he is supported by family members who will take

responsibility for his appearance at trial.

Second, Mr. Sudarshan is a highly-educated engineer and businessman. He maintains

gainful employment as the CEO and President of a successful electronics company that is a

member of the Electronics Resellers Association International, Inc. If released, Mr. Sudarshan

would continue to run Cirrus' business affairs in the United States. The government's assertion

that Cirrus Electronics is "shut down" because agents took boxes of records and computers

assumes that Cirrus has no business activity outside of exporting restricted items, which has not

---

[5] The Government's Memorandum erroneously represented that both of Mr. Sudarshan's
sons "are now residing in Singapore."

been proven.  *See* Govt. Memorandum at 33.  If released Mr. Sudarshan can re-supply his offices and reconstitute his business operations.

Third, Mr. Sudarshan has no criminal record and has fully complied with the authorities throughout these proceedings.

Fourth, numerous letters to the Court attest to Mr. Sudarshan's integrity, character and law-abiding history.  These include, among others: a letter from a retired Indian Army Officer and Rotary Club member who has known Mr. Sudarshan for 15 years and described him as "very well known for his moral conduct and character" and having a "high ethical standard [of] behavior;" letters explaining that Mr. Sudarshan is a devout Hindu; a letter from Mr. Sudarshan's brother-in-law, a Master Mariner/Captain in the United Kingdom, relating that Mr. Sudarshan takes pride in charitable work and has donated to "old age homes and eye camps."  *See* Ex. 3. He also has made significant donations to the Hindu temples in Atlanta, Georgia and Greenville, South Carolina.

In *Xulam*, the D.C. Circuit revoked a detention order on facts similar to those presented here.  The Court called appellant Xulam a "prime candidate for release" based in part on his lack of criminal record or record of failure to appear, his employment and his "wide circle of respected acquaintances and close friends in the community who testified as to his 'spiritual' and 'intellectual' integrity."  84 F.3d 441, 442 (D.C. Cir. 1996).  Mr. Sudarshan has similar characteristics.  He lacks a criminal record, enjoys gainful employment, and is supported by a "wide circle" of friends and family who attest to his integrity.  *Id*.  As in *Xulam*, Mr. Sudarshan should be released with appropriate conditions.

Finally, another judge of this court has affirmed the release of a defendant facing similar export charges in the District of Columbia, despite that defendant having no connections to the

United States whatsoever.  In *United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2004),

defendant Karni was accused of exporting nuclear weapon triggers to Pakistan and charged

under the Export Administration Act and the International Economic Emergency Powers Act.  *Id.*

at 130.  Karni was arrested on his way through Denver International Airport for a ski trip to

Colorado.  *Id*. at 130.  He was an Israeli national residing and working in South Africa, who had

no ties to the United States.  *Id*. at 132.  Despite recognizing that these facts posed "a risk that

Defendant will flee this Court's jurisdiction," the *Karni* court affirmed his release on bond with

modified conditions.  *Id*. at 132-133.  If a foreign resident with no home or business in the

United States, accused of selling nuclear triggers to Pakistan and arrested while passing through

the U.S. on a ski trip, nevertheless qualifies for release – Mr. Sudarshan certainly does.[6]


### Conclusion

For the foregoing reasons, Mr. Sudarshan respectfully requests that this Honorable Court

grant an order setting his release with an unsecured bond of $25,000.

---

[6] In an attempt to evade *Karni*, the Government's Memorandum points to three red herring distinctions.  *See* Govt. Memorandum at 29, n. 24.  First is that Chief Judge Hogan never ruled on the government's motion to reconsider his opinion.  But this does not diminish the force of the opinion and any implication that Chief Judge Hogan would have agreed with the government on reconsideration is conjecture.  Second, the government emphasizes Karni was only charged by complaint, not by indictment.  The method of charging simply is not relevant to risk of flight, and the government has no authority to the contrary.  Either method apprises the defendant of the criminal charges against him and exposes him to criminal liability and possible punishment.  Finally, the government argues that, unlike Karni, Mr. Sudarshan has been charged with being an illegal agent of a foreign government and insinuates that Mr. Sundarshan could use contacts in the Indian government to plan escape.  This is rank speculation and forms no basis for detaining Mr. Sudarshan.

Respectfully submitted,


_____/S_____
Beattie B. Ashmore, (Admitted Pro Hac Vice)
Price, Ashmore, & Beasley, P.A.
644 East Washington Street
Greenville, South Carolina  29601
(864) 467-1001
bashmore@sctriallawyers.com


_____/S_____
Joseph W. Clark, (DC Bar #468782)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
(202) 879-3697
jwclark@jonesday.com

**<u>Certificate of Service</u>**

I, Joseph W. Clark, certify that I served a copy of the foregoing Memorandum in Support of Motion for Revocation or Amendment of Detention Order on Jay I. Bratt, counsel for the United States of America, by email to jay.bratt@usdoj.gov and via ECF on this 30th day of April, 2007.

_____/s/_____

Joseph W. Clark

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA     :     CRIMINAL NO. 07-051(RMU)

                     : 

          v.            : 

                     : 

PARTHASARATHY SUDARSHAN,     : 

                     : 

      Defendant.       : 

EXHIBITS TO DEFENDANT'S MOTION FOR
REVOCATION OR AMENDMENT OF DETENTION ORDER

# EXHIBIT 1

1

```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF SOUTH CAROLINA
2                     GREENVILLE DIVISION

3

4    UNITED STATES OF AMERICA        )
                                     )
5           -versus-                 )
                                     )
6    PARTHASARATHY SUDARSHAN         )  6:07-335
                                     )
7                 Defendant          )  3/23/07
                                     )
8    _____ )  Greenville, SC
                                     )
9

10                    INITIAL APPEARANCE

11

            BEFORE THE HONORABLE WILLIAM M. CATOE
12          UNITED STATES MAGISTRATE JUDGE, presiding

13

14

     A P P E A R A N C E S:
15
     For the Government:        MAXWELL B. CAUTHEN, III, AUSA
16                              United States Attorney's Office
                                PO Box 10067
17                              Greenville, SC   29603

18

19

20

21

22   Transcriber:              Jean L. Cole, RMR
                                PO Box 10732
23                              Greenville, SC   29603

24

     The proceedings were taken by electronic digital recording and
25   the transcript produced by a court reporter.
```

2

1          THE COURT:  All right.  Somebody got a copy of the

2    warrant?

3          MR. CAUTHEN:  Yes, sir, I'm getting it your Honor.

4          THE COURT:  Okay.

5          MR. CAUTHEN:  May it please the court, Judge, this is

6    an initial appearance on an arrest warrant Number 7051 out of

7    the District of Columbia, that being Washington.

8          THE COURT:  Okay.  Will you pronounce your name for

9    me please.

10          THE DEFENDANT:  My name is Parthasarathy Sudarshan.

11          THE COURT:  All right.  And you're a citizen of

12    India; is that correct?

13          THE DEFENDANT:  Pardon, sir?

14          THE COURT:  You're a citizen of India?

15          THE DEFENDANT:  No, citizen of Singapore.

16          THE COURT:  Singapore.  Okay.  All right.  All right.

17    You understand if you think that you're being mistreated here

18    in the United States you have a right to contact the Singapore

19    embassy or consulate and register a complaint.  Do you

20    understand that?  Do you understand you have that right?  Do

21    you understand what I'm saying?

22          THE DEFENDANT:  Perhaps could you speak it again,

23    sir.

24          THE COURT:  You have a right if you think you've been

25    improperly treated here in the United States you have a right

3

1   to contact your embassy, the Singapore embassy or your

2   consulate.  Do you understand that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Okay.  Charge against this gentleman?

5            MR. CAUTHEN:  Your Honor, there's a variety of them

6   consisting of conspiracy and aiding and abetting and being an

7   illegal agent of a foreign government.  Essentially what they

8   surround -- I'll read a synopsis, your Honor, is the dealing

9   with export violations of restricted materials being sent

10   ultimately to India.

11            THE COURT:  All right.

12            MR. CAUTHEN:  For example, your Honor, the illegal

13   agent of a foreign government, Title 18, United States Code,

14   Section 951 carries if convicted a maximum term of imprisonment

15   of ten years.

16            THE COURT:  All right.  You have a right to retain a

17   lawyer.  If you can't afford a lawyer I'll appoint you a

18   lawyer.  Do you want me to appoint you a lawyer or not?

19            THE DEFENDANT:  I already have a lawyer, sir.

20            THE COURT:  You have a lawyer?

21            THE DEFENDANT:  (Unintelligible) consult my

22   immigration attorney to help me out on this case.

23            THE COURT:  Okay.  All right.  Well, this is a

24   criminal case now, not an immigration case.

25            THE DEFENDANT:  (Unintelligible) I will take it up

4

1   with him to see whether he can --

2                THE COURT:  All right.

3                THE DEFENDANT:  (Unintelligible) to help us.

4                THE COURT:  All right.  You understand you have a

5   right to confer with your lawyer before you make any

6   statements.  You understand that?  Do you understand that you

7   have a right to talk to a lawyer before you make any statement

8   to law enforcement and anything you say can be used against

9   you.  Do you understand that.

10               THE DEFENDANT:  Yes, sir.

11               THE COURT:  All right.  What's the government's

12  position on bond as to this gentlemen?

13               MR. CAUTHEN:  Your Honor, with regard to bond on Mr.

14  Sudarshan the government would respectfully request detention

15  at this time and let the court in the District of Columbia take

16  up the matter of bond when he arrives there.

17               THE COURT:  All right.  What's the basis of the

18  detention?

19               MR. CAUTHEN:  Your Honor, being a flight risk and the

20  nature of the charges here and I would think that notification

21  of other individuals.

22               THE COURT:  All right.  Well, I respectfully don't

23  think it's a detention case, but that's not my decision to

24  make.  All right.  You'll be sent up to Washington, D.C.  See

25  if we can do it pretty quick.  How quick can we get him to

5

1   Washington?

2           MARSHAL:  I can only check into it.  I'll look into

3   it today and try to schedule it through our regular means and

4   if that's not fast enough, then we may do it ourself if

5   necessary.  We're trying to get him as soon as possible.

6           THE COURT:  All right.  Set it for Tuesday.  If he's

7   still here we'll have it here.  If he's on his way to

8   Washington, they can have it.

9           MARSHAL:  May be able to get him around the first of

10  next week, your Honor.

11          THE COURT:  All right.  I'm trying to get you to

12  Washington as quick as possible.  All right.  Do you understand

13  what I'm saying?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  The quicker you get up there the

16  quicker they can get your issue of bond resolved.  Okay.  The

17  government has moved to detain and by law I have to detain you.

18  I would not detain you but this is for a court in D.C. to

19  decide.  Appoint -- appoint Mr. MacKinnon to represent him if

20  we have a hearing here for the time being until he retains a

21  lawyer.

22          All right.  Do you have any medical problems at all?

23  Do you have any medical problems.

24          THE DEFENDANT:  I don't have any, sir.

25          THE COURT:  Do you take any medicine every day?  Do

6

1   you take any medicine?  All right.

2           THE DEFENDANT:  (Unintelligible), sir, if you can at

3   the detention I wanted to see if they permit me to take some

4   books, some philosophical book that my interest --

5           THE COURT:  You mean to read?

6           THE DEFENDANT:  Yeah, I want to read like the Bible

7   like they have some books so some small (unintelligible) so

8   that I can read.

9           THE COURT:  Government have any objection to him

10  reading?

11          MR. CAUTHEN:  No, sir, your Honor.

12          THE COURT:  All right.  See what you can do.

13          MARSHAL:  Yes, sir.

14          THE COURT:  Where is he going to be housed?

15          MARSHAL:  More than likely in Spartanburg.

16          THE COURT:  All right.  All right.  Carry him on

17  back.

18          MR. CAUTHEN:  Judge, I've got one final thing for the

19  record.

20          THE COURT:  Go ahead.

21          MR. CAUTHEN:  I'm going to serve upon Mr. Sudarshan a

22  notice of intent to use Foreign Intelligence Surveillance Act)

23  information.  The U.S. Attorney that's handling this case out

24  of the District of Columbia will discuss that with your

25  attorney.  That's all, your Honor.  Thank you.

7

1          THE COURT:  All right.

2          MR. CAUTHEN:  Thank you, Judge.

3                          * * *

4    I certify that the foregoing is a true and correct transcript,

5    to the best of my ability, of the above pages, of the

6    electronic digital tapes provided to me by U.S. District Court,

7    of the proceedings taken on the date and time previously stated

8    in the above matter.  I further certify that I am neither

9    counsel for, related to, nor employed by any of the parties to

10   the action in which this hearing was taken, and further that I

11   am not financially nor otherwise interested in the outcome of

12   the action.

13          S/Jean L. Cole, RMR

14

15

16

17                                                    4-16-07

18   Transcriber:  Jean L. Cole, RMR            Date

19

20

21

22

23

24

25

# EXHIBIT 2

# REPORT CARD
#250-29

GREENVILLE COUNTY
# SCHOOLS

**STUDENT** Sudarshan, Srivatsan    **GRADE** 09

Southside Academy
6630 Frontage at White Horse Road480010057041
Greenville, SC 29605

**REPORT PERIOD**  **FROM** 01/12/07  **TO** 03/22/07

Third Grading Period
## ACADEMIC MARKS

| COURSE TITLE | TEACHER | 1st Qtr | 2nd Qtr | 1st Exm | 1st Sem | 3rd Qtr | 4th Qtr | 2nd Exm | 2nd Sem | EOC Exm | Fin Grd | ABS | YTD ABS | CUR CREDITS EARND | TEACHER COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8H9 | O'Connell | | | | | | | | | | | | | | |
| APWHISY | Paddenburg, | 93 | 88 | 95 | 91 | 100 | | | | | | | 1 | | Is an excellent student |
| | | | | | | | | | | | | | 2 | | Is a pleasure to have in class |
| BIO1KY | Vissage, L | 95 | 96 | 90 | 94 | 94 | | | | | | | 1 | | Is a joy to teach |
| ALG2HY | Nolen, K W | 99 | 98 | 96 | 98 | 99 | | | | | | | 1 | | Is an excellent student |
| FREN1Y | Wall, M A | 97 | 98 | 95 | 97 | 99 | | | | | | | 1 | | |
| GEOMHY | Ezenekwe, R | 97 | 100 | 100 | 97 | 99 | | | | | | | 1 | | Is a pleasure to have in class |
| ENG1IH | Owens, K N | 96 | 95 | 95 | 95 | 95 | | | | | | | 1 | | |
| PHYSCIHY | Vanzura, M D | 98 | 99 | 92 | 97 | 99 | | | | | | | 1 | | |

## EXPLANATION OF MARKS

ACADEMIC LEGEND
100-93 - A
92-85 - B
84-77 - C
76-70 - D
69-63 - E with Credit
62-0 - F without Credit

Parthasarathy
RE: Srivatsan Sudarshan
201 Hudders Field Dr
Simpsonville, SC 29681

Spring Break April 2 - 6 and April 9.
HSAP April 24, 25, and 26.

ENROLLED:136
PRESENT: 135

{rev. 2004}

# EXHIBIT 3

N. SRINIVASAN

4/91, VIGNESH NAGAR
KATTUR, TRICHY (TN) INDIA
620 019

Dt 21st Apr 07

I am a retired Indian Army Officer with 22 years
of Active Service in the Army. In Public Service, I am
a ROTARIAN & a member of ROTARY CLUB OF TRICHY FORT.
I am PRESIDENT-ELECT FOR 2007-08 & a PAUL HARRIS
FELLOW, the recognition given by ROTARY INTERNATIONAL.

I know Mr PARTHASARATHY SUDHARSHAN for over 15 years
He is from a very good family of high reputation & is a
Gentleman very well known for his Moral Conduct and
Character and is very Popular amongst all fellow citizens
For his high ethical standard of behaviour & living. It has
always been his endeavour to help the Poor & needy & he has
made tremendous Contributions to the Society by making lot
of financial assistance. Above all, he is a God fearing
and honest Person. He is hard working, sincere and
honest in nature and is a great asset to the society
as such.

(N. SRINIVASAN)
21.4.07

"The Respected "HIS HONOURABLE JUDGE"

I am KUMUDAVALLI PARTHASARATHI, mother of PARTHASARATHY SUDHAARSHAN" conveying some of my humble plea to you.

My age is now 73 and my husband age is 84 since childhood SUDHAARSHAN is a very good and has very very helping tendency to others since childhood days he helped me so much and did household work with pleasure. He pleased to do help to others always He have done so many helps, like donating for charities of educational institute for poor children He got merit sholenship in his school days for higher studies He got loan scholarship also and helped financialy to family We have come from a humble, middle class family and my son Sudharshan is a very good person with in my all children He never expected anything from others for doing help He is doing help without any propaganda.

I a mother, 73 years old sick lady suffering by illness of "SPINAL CORD DISK PROLOPSES". My surgeon advised me to undergo surgery for DISK PROLAPSES" since Twenty days I have no news from my son, and daughter in-law. I knew only one week before from my daughter-in-law that my son was interogated in U.S.A. So he cannot talk with me. This news gave me and my husband a big shock. I do not know what are happening there From heard the sheck news my illness became more serious

surgeon advised me to go surgery very
early. I want to see my son before I go for
surgery. now my health condition, I cannot
avoid surgery. If surgery done, there is no
hope of my life.

I strongly hope my son never does
any mistake knowingly. If he done any mistake
un knowingly, please pardon him, and release him
please show your mercy to him and release
him. and allow him to his old, sick
mother. I promise you, she never do any
mistake in future. "O Lord" this plea come
from the heart of a old, sick lady. please
consider my plea, I will always thankfully to you
I have no way any where, only way
I surrender your feet and put my request
This is a very old lady. sick mother's plea
"O LORD"

I beg pardon to me and my son.
please show your mercy to my son.

                    your faithfully
                    P. Kumudavalli
                    do: Srirangam
                    India

## To whomsoever it may concern

I, Capt.Thirunarayanan Sriram, working as Master Mariner, with Shell Ship Management,U.K., hereby place my statement regarding Mr.Parthasarathy Sudarshan for your perusal/records.

I am residing at plot no 34/35, Vignesh Nagar, Kattur, Trichy – 620019 with my wife, 10-year-old daughter and 4-year-old son. We stay together with my parents. My father is 76-year-old retired govt employee and my 66-year-old mother is a housewife.

Mr.Parthasarathy Sudarshan is my brother-in-law. And had been knowing/ related to him from October 22nd 1987. From that day till today we have a very cordial and very good relationship and he has been more of a friend to me than a relation.

He is a very polite, sincere, straightforward and honest person who shares his views and thoughts. He is a God fearing person and listens to spiritual discourses always. He is a voracious reader of Tamil poet Bharathiyar and fortnightly magazine Tuglaq. He is also very fond of reading all the other magazines. He is a very sensible person who listens carefully and gives good suggestions. He is very enthusiastic and takes pride in doing lot of charity works. He has donated a lot for old age homes and eye camps.

He is a very understanding husband and a very affectionate, friendly and responsible father. He clears and explains any doubt or questions raised in a manner, which will be understood very clearly. He is a very affectionate son to his parents and takes care of them.

As I had seen him closely, I can confidently state that he is a person who has a lot of potential, patience and always thinks for the welfare of others.


With best regards

Capt.Thirunarayanan Sriram

I am Parthasarathy Srinivasan, 3rd brother of Parthasarathy Sudarshan. I am 37 years old and I run a software company called Metasys Solutions, at Chennai, India. I hold a B.E. degree in Computer Science from Regional Engineering College (REC), Trichy, India.

My brother Sudarshan has been a very excellent human being, with tremendous affection, love and care for his relatives and friends. He is a very warm person at heart and always makes others comfortable with his warmth.

He has helped me greatly in my life right from my childhood days till today. As a kid, he was my inspiration and example to follow.

I can quote a few specific instances of his timely help to me: When I was in junior college level and struggling hard to secure very high marks in Maths and Physics for gaining entry into an Engineering College, he took leave from his organization for a weeks' time and taught me the nuances of Maths and Physics, with the result that I got 100% in Maths and 99% in Physics. I am an engineer today only because of Sudarshan.

In 2001, when I was without a job for some time, he helped me secure a job at Singapore, permitted me to live in his house for quite a duration and enabled me to settle at Singapore comfortably with my family for the entire duration of my tenure there.

Even now he has helped me greatly - financially, morally and physically.

Sudarshan has helped not only me, but also every member in my family and extended family too. My mother always keeps saying that "Sudarshan is the Pillar of our house". Even now Sudarshan is providing for and supporting our aged parents (82 and 73 years old) by providing them with all needs such as money, religious books and CDs and a house at the religious centre of Srirangam in India.

Parthasarathy Srinivasan
Chennai
India
Dated: 3 April 2007

3rd April 07

I am Mrs. Aravindavalli eldest sister of Sudarshan. We are 7 children - 4 boys and 3 girls from an ordinary family from India. All are well educated and settled in life. He is 7yrs younger to me. I know him from childhood. I am proud to say that he is really a jem of a man. He stood by my parents in bringing up and educating the siblings. He is very intelligent , stood first throughout his studies. He helped my parents from his school scholarships to pay the fees for other siblings. He is very pious, God fearing, always walking in the righteous path. He can not see tears in others. He is very much attached to us. He does lot of charity works, helps poor students in their schoolings. He helped in temple renovations

He personally helped me physically, morally when I performed my daughter's marriage among lot of tension. He did and does the same to all my brothers and sisters. He helped each one of us to settle in our life. He is the person to be remembered first at the time of our crisis. He is kind hearted to help his brothers and sisters and in-laws.

We are really shocked to see in the newspaper the allegations against him. He does not have any intention to do any harm to anybody / any state. I pray to Lord Jesus to protect him and us also from the trauma we are undergoing since the publish of the news.

with regards to Jesus
Aravindavalli

Mobile : +65 9666 4504

Date: 2/4/07

I am Dr.Mahalakshmi Ashokkumar. I am the second sister of Parthasarathy Sudarshan. I am a Gynaecologist and Surgeon working with the Government Hospital at Trichy, India.

Sudarshan is a very helpful, sympathetic and caring person. He is very unique among my brothers. He always puts others needs before his own needs and does not mind sacrificing his desires for the sake of others happiness.

When I applied for Medicine, Sudarshan was the sole support person for me. Despite opposition from parents, he gave enormous moral support and financial support to me to pursue medical degree. When I was rejected for Medicine (M.B.B.S degree in India) for the first time, I almost got dejected and left my desire to be a doctor. But Sudarshan encouraged me greatly, prodded me to pursue it the next academic year, gave me all kinds of support until I got into medical school. It was Sudarshan who made me a doctor. I am a successful and highly respected Gynaecologist today at Srirangam, India – a large part of which is owed to my brother Sudarshan.

It was again Sudarshan who helped me in my wedding. In India, wedding of girls is a tremendous strain on the physical, mental and financial resource of the girls' parents. But Sudarshan took on the parent role for me and got me wedded to my husband against all odds. His help was not only financial but more importantly on the physical and mental side. But for him, I would not be enjoying the life I am having today with my husband and children.

Sudarshan is more a father figure to me than a brother. His care and sympathy exceed a typical brother's affection and almost reaches the parental level of love, affection and self-sacrifice.

Dr.Mahalakshmi Ashokkumar
Gynaecologist and Surgeon
Government Hospital
Trichy, India

3-April- 2004

We are 7 children to our parents. Parthasarathy Sudarshan is the 4th child. I Nirubama Manikantan am the 6th child in the family and 3rd sister to Sudarshan.

From his childhood age PS is very soft in nature, very kind and compassionate towards all people, my mother used to say. But we ourselves realized these characteristics in him while we grew with him. He cannot bear people suffering. At one time he fainted seeing an elderly women relative hospitalized for bleeding from an accident. He is always sympathetic not only towards our family members but also the people he comes across during his life.

Our family is a middle class family. Our father is just an officer working in Railways department. We only could live a moderate life. We are three sisters to Parthasarathy Sudarshan. With my father's earning it is very hard to get the female child get married in an Indian society. So for every three sisters he was the one who stood by our parents and helped financially, physically and morally. We sisters cannot forget this help of Sudarshan throughout our life.

In early 90s he migrated to Singapore on employment with a Singaporean company. Even after his migration, he still continued to help his siblings. In 1994 he helped my husband to get a job in Singapore. After that I also migrated to Singapore.

Now at this moment I am running a business on my own in Singapore. For that also, he helped me a lot to set up the business.

For any help we only seek Sudarshan's help. We siblings used to say that whenever we seek the help of GOD only Sudarshan comes for rescue in the form of GOD.

My final words is that but for him, I would have got a better life that I am living now.


Nirubama Manikantan
3rd Sister of Parthasarathy Sudarshan
Singaporean
Blk 796, #03-3370 Yishun Ring Road
Singapore 760796

Mobile : +65 9666 4504

3rd April 07

     As an immediate elder brother of Parthasarathy Sudarshan, I Parthasarathy Murali, give below the brief narration about his Character from his childhood: From his birth, he is God-fearing person as he was brought-up by our grand-father who lived a saint-like life.

     Being 4th child of a middle-class family of 7members, he used to give his portion of share of any item like chocolates, crackers etc to other family members so that family harmony is maintained. When he started his earnings, he brought-up his next sister(5th sibling) to complete her Doctor ship and finally he only spent a large sum of money for her marriage. At the same time, he spent his time and money to give best Engineering education to our 7th sibling. When he moved to Singapore, he immediately started planning to bring our family 6th sibling to Singapore and now they have settled down in Singapore with his benevolent attitude. Thus, he acted as the head of the family. Even for his elders like me, he spent nights without sleep, dreaming how he could help his elders in our family and thus, when he started his own business, he offered me the Manager post and settled down my life also.

     Not only for our family members his helping hand extended, but to the society also. He used to offer his helping hand to any person who needs money for education, constructing house etc. When he appointed one maid to lookafter his households, he purchased a land in her name in her own place even before she completed 6 months.

     Though he acquired citizenship of Singapore, he is equally patriotic to India where he was born and he used to listen to patriotic songs of India, even while working in office, through his computer. He is a strong beliver of Indian philosophy "Karma Theory" which says that God is watching our deeds and we should do good deeds now to reap good things/ good life in future.

God bless him with good health and bright future.

Parthasarathy Murali
Singapore

Parthasarathy Sudarshan is an extraordinary man. He is a filial son, lovable father, a wonderful husband, and lovely brother, true, honest, sincere and hardworking businessman.

**Childhood**: Sudarshan was born in a small town in India. His father was a clerk and his mother was a housewife with seven children. He is fourth in the family of four boys and three girls. Sudarshan grew up in poverty. He could not withstand any of his siblings having illness and was usually the person to break misunderstandings between siblings. He was a flexible child and also worked very hard . For example, he got the best student award in ninth grade and thus got scholarship for his education. He was well liked by his parents and siblings all the time.

**As an adult**: Even when Sudarshan started to earn, he supported his parents all the time. He helped his parents with his siblings' marriage with money. He got his parents a beautiful house in is parent's birthplace. He wanted his parents to have the best in the world and even today he provides a good amount every month to take good care of them. He has helped his brothers and sisters to come up in life by going an extra-mile. Everybody in his family has learnt about computers, education, and foreign countries mostly because of him. He sacrificed a lot for others. He brought his brothers and sisters to Singapore and to stabilize themselves. Though he had many personal problems, he helped others. He always quotes what Baba (Hindu prophet) says," Remember two things and forget two things. Forget the bad things which others did to you  and the good things you did to others. Remember the good things others did to you and the bad things you did to others." He is a very special son to his parents. He is also very religious and listens to religious discourses all the time. He does not have any bad habits.

When he lost his elder brother three years ago, he visited the US with his sister and attended the funeral and videotaped everything to show to his parents. He sponsored for all the expenses for his brother's funeral rites in India. He was always supportive of his parents and took steps to divert their mind in religious manner over the loss of their eldest son.

He also taught his mother on how to use hi-tech gadgets like mp3 devices, DVD player and computer.

He also contributes to the society by donating to temples, schools, children and people in need.

**Son-in-law**: He is a well adored son-in-law in a family of three girls and a boy. He was called "karna", a character in Hindu scriptures known for his generosity. He always motivated his in-laws to have high ambitions and brought them to Singapore and showed them what the world was. He always supported his in-laws in their decision.

Wonderful Husband: He always taught me to be generous and to forgive the mistakes of others. He always tells me to be positive all the time and to divert my mind to god. He always got me the best in life by sacrificing himself. He is a hard worker and the day

before his bad day, he told me that he will work hard to make his company to the next level. He sleeps 3-4 hours every day.

**Best father**: Sudarshan is a loveable, caring father. Though he could not devote much time to take care of his kids, he instilled positive values in them. He always showed them showed example of great men and told them to be honest, loveable, generous and respectable. Last year, he spent his time concentrating on his first son's 12th grade exams. His efforts paid off when his son scored As in 4 core subjects and passed with flying colors.

**Business man**: He is well liked by his customers and suppliers. He has a good name in his business circle and a good reputation. He always strives to understand  whatever he touched thoroughly. He always shared his knowledge with others. He has worked hard all these years to bring his business to this level. He started the business with zero cash and concentrated on obsolete parts. He always challenges himself and works hard to achieve his goals.

**Life in USA**:  During his short stay of two years, he has made many good friends  and there are now many family who have come forward to stand by him. This shows his friendly and honest nature.

**Conclusion**: No words can express his greatness. He is an extra ordinary man who goes extra mile to help others

My father, Parthasarathy Sudarshan, is a good father, son, and most importantly a good man.

**A good father**: My father is good to my brother and I. He brought us up with love and spent a lot of time with us. He always did things that was in our best interest and was no way detrimental to my growth. He always told us that honesty was the best policy and taught us morals. He also taught us work ethics and etiquettes. In fact, my success in high school is attributed to him. He told us news around the world so that we could know what was going around the world. My father also read moral stories to us. In order for us to increase our understanding of the world, he took us to places like Thailand, China and Malaysia. He told us the importance of a good education and in addition, told us to be devoted and focused. He used to meditate with us and took us to parks. He allowed us to use his things (like mp3 player) even when he was using it.  He always tells us . He best exemplifies a man who serves the society selflessly.

**A good son:** My father is a very filial son to his parents. My grandmother told me stories about my father in his childhood days. I have learnt to serve my parents today because of him. In the current day, when the love of money has been the priority of many, my father faithfully serves his parents. He also gave them the mp3 player and portable DVD player. A couple of years ago, he bought them a house in their hometown. I have decided to serve my parents when they become old. When I went to India last summer, my grandparents spoke proudly about their son and I could see the happiness in their eyes. In order to make his parents happy, he also helped his siblings. For example, in his childhood days, he gave his share of firecrackers to his sister so that she could have more enjoyment. He was also very instrumental in his brothers and sisters moving to S'pore. When he went to India, he selflessly gave many devotional movies to his parents so that they could watch it during their free time.

**A good friend:** My father is a good friend. He has a sustaining relationship with many of his friends. He helped his friends when they were in need and is well liked by his friends. Many of his friends used to stay at our house.

**My father's work ethics:** My father has good work ethics. He used to tell us that it was vital for one to work not only for personal gain, but also to serve the society ffor the welfare of others. He donated many things and money to poor children and temples and has agreed to donate his organs once he passes away. He is also a workaholic and used to miss sleep to talk to his colleagues in India. He used to even speak to them when he was exercising. He told us how to deal with relations and how to speak to them.

If I am to write about the good characteristics of my dad, the list would be endless. *I really miss my dad and hope he could come back home soon*

**<u>Certificate of Service</u>**

I, Joseph W. Clark, certify that I served a copy of the foregoing Exhibits to Memorandum in Support of Motion for Revocation or Amendment of Detention Order on Jay I. Bratt, counsel for the United States of America, by email to jay.bratt@usdoj.gov and via ECF on this 30th day of April, 2007.

_____/s/_____

Joseph W. Clark

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. 07-051(RMU)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **PARTHASARATHY SUDARSHAN,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION FOR REVOCATION OR
AMENDMENT OF DETENTION ORDER.**

On this day was considered defendant Pathasarathy Sudarshan's motion for revocation or amendment of the detention order issued in this matter on April 13, 2007.  The Court, after considering that motion and for good cause appearing, hereby GRANTS defendant's motion.

It is ordered that the detention order previously entered in this matter is set aside.

It is further ordered that the defendant be granted an unsecured appearance bond in the amount of $25,000.

Signed this _____ day of _____, 2007.

_____
The Honorable Ricardo M. Urbina
United States District Judge

# SERVICE LIST

**Defendant Parthasarathy Sudarshan**

**Joseph William Clark**
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3697
Email: jwclark@jonesday.com

**Beattie B. Ashmore**
PRICE, PASCHAL & ASHMORE, P.A.
644 East Washington Street
Greensville, SC 29601
(864) 467-1001
Fax: (864) 242-6560
Email: dlm@sctriallawyers.com

**Defendant Mythili Gopal**

**Anjali Chaturvedi**
NIXON PEABODY, LLP
401 9th Street, NW
Suite 900
Washington, DC 20004-2128
(202) 585-8000
Fax: (202) 585-8080
Email: achaturvedi@nixonpeabody.com

**Kelly B. Kramer**
NIXON PEABODY LLP
401 Ninth Street, NW
Suite 900
Washington, DC 20004
(202) 626-3900
Fax: (202) 626-3961
Email: kkramer@nixonpeabody.com

**John M. Read**
THE READ LAW FIRM
800 East Washington
Suite M
Greenville, SC 29601
(864) 241-9828
Fax: (864) 241-9818
Email: jack@readlawfirm.com

**Defendant Akn Prasad**                    Address Unknown

**Defendant Sampath Sundar**                Address Unknown

**United States of America**                **Jay I. Bratt**
                                            U.S. ATTORNEY'S OFFICE
                                            555 Fourth Street, NW
                                            Washington, DC 20530
                                            (202) 353-3602
                                            Fax: (202) 307-6059
                                            Email: jay.bratt@usdoj.gov

**<u>Certificate of Service</u>**

I, Joseph W. Clark, certify that I served a copy of the foregoing Proposed Order Granting Defendant's Motion for Revocation or Amendment of Detention Order on Jay I. Bratt, counsel for the United States of America, by email to jay.bratt@usdoj.gov and via ECF on this 30th day of April, 2007.



Joseph W. Clark