**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051 (RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN, and** | : | |
| **MYTHILI GOPAL,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT**
**SUDARSHAN'S MOTION FOR REVOCATION**
**OR AMENDMENT OF DETENTION ORDER**

**Introduction**

Defendant Parthasarathy Sudarshan has filed a motion to revoke the order of detention that Magistrate Judge Robinson entered on April 5, 2007. At the April 5 detention hearing, the government more than met its burden of showing by a preponderance of the evidence that Sudarshan is a risk of flight. He proffers nothing in his new pleadings that alters that conclusion. Instead, Sudarshan grossly downplays the seriousness of the crimes that he has committed, glosses over the exhaustive proffer of evidence of guilt that the government presented to Magistrate Judge Robinson, and is silent on the fact that he has ample means to flee and has a safe haven in Singapore, a place from which the government would be unable to extradite him. Sudarshan also fails to understand his and his family's current immigration status.

In support of Sudarshan's continued detention, the government again directs the Court to its Memorandum in Support of Detention (Docket Entry No. 8) ("Detention Memorandum") and

the voluminous supporting exhibits.[1]  Since the detention hearing, the government has obtained

additional evidence that further bolsters its showing by a preponderance of the evidence that

Sudarshan should be detained pending trial as a flight risk.  Among other things, the government

has learned that Sudarshan has access to large sums of money to finance any flight and, in

particular, that, as of April 5, 2007, one of the Cirrus Electronics ("Cirrus") accounts at

Wachovia Bank in South Carolina contained $620,689.44.  In addition, the prosecution now has

available to it the complete report of Sudarshan's statements to FBI agents on March 23, 2007.

The report sets forth a stunning confession in which Sudarshan admitted many of the key

allegations against him in the indictment.  Then, after realizing what he had done, Sudarshan

attempted a clumsy recantation, only further demonstrating his consciousness of guilt.

In sum, the case against Sudarshan is exceptionally strong, and the factors supporting

detention are equally compelling.  The Court should uphold Magistrate Judge Robinson's

detention order and deny Sudarshan's motion.

## Argument

### I.    Sudarshan's Offenses Are Very Serious

Sudarshan relies on Chief Judge Hogan's statement in United States v. Karni, 298 F.

Supp.2d 129, 131 (D. D.C. 2004), that, for purposes of applying § 3142(g)(1) of the Bail Reform

Act, export offenses are not crimes of violence or crimes involving narcotics.  See Memorandum

---

[1]  Sudarshan filed his motion on Friday afternoon, April 27, 2007.  Under the local rules, the government has 11 days to respond.  See LCrR 47(b).  Because Sudarshan is detained, the government is forgoing its allotted time and will be ready to address the defendant's motion at the status hearing on May 1, 2007.  However, if the Court is unable fully to review the detailed proffer and large amount evidence that the government previously presented (and is now supplementing) in support of Sudarshan's detention, the government would request that the Court continue the hearing on Sudarshan's motion to a later date.

in Support of Defendant's Motion for Revocation or Amendment of Detention Order ("Revocation Mem.") at 4. As a statement of fact, that is true. However, the government believes that, in <u>Karni</u>, Chief Judge Hogan erroneously read § 3142(g)(1)'s mandate to consider "the nature and circumstances of the offense charged" too narrowly. In particular, the <u>Karni</u> opinion ignores the language of § 3142(g) that an analysis of the seriousness of an offense is to "[include] whether the offense is a crime of violence . . . or involves a narcotic drug." Through its use of the phrase "<u>including</u> whether the offense is a crime of violence . . . or involves a narcotic drug", Congress clearly meant those types of crimes to be important factors in evaluating an offense, but not the only factors.

In the hierarchy of crimes, engaging in conduct that aids in the proliferation of ballistic missiles and in the proliferation of high-tech conventional armaments such as an advanced fighter jet certainly ranks high in terms of seriousness. Magistrate Judge Robinson was correct in concluding that giving Sudarshan the ability to continue in these activities unabated if on release posed a danger not just to the security of this nation, but also to the world community at large. <u>See</u> Memorandum of Findings of Fact and Statement of Reasons in Support of Order of Detention at 4. Although Sudarshan does not pose the same immediate threat to the community that a violent offender, terrorist, or drug dealer does, his proliferation crimes gradually erode regional stability, especially in South Asia.

Although Sudarshan cites the <u>Karni</u> decision in his memorandum, he makes no mention of the other decision from this district that the government relied on at the detention hearing – Judge Lamberth's decision in <u>United States v. Khalid Mahmood</u>, Cr. No. 04-365 (RCL) (D. D.C. October 19, 2004). <u>See</u> Exhibit 33 to the government's Detention Memorandum. In <u>Mahmood</u>,

Judge Lamberth took a different view of the seriousness of export offenses and used that factor, in part, to support Mahmood's detention pending trial.[2] Judge Lamberth quoted from the Ninth Circuit's decision in United States v. Townsend, 897 F.2d 989 (9th Cir. 1990), an export prosecution similar to the one here:

> Although neither violence nor the distribution of drugs are charged, the accusations are of sophisticated criminal conduct, whose successful completion required the ability to travel internationally, to adapt easily to foreign countries, and to move assets and individuals quickly from one country to another.

897 F.2d at 994 (emphasis added).

The underscored language in Townsend is particularly apt here in light of new information that the government has obtained about Sudarshan's and Cirrus' finances. After learning of Sudarshan's indictment and arrest, Wachovia Bank – South Carolina, a bank at which Sudarshan and Cirrus maintain accounts, filed a Suspicious Activity Report ("SAR"). See Exhibit 1 to this memorandum.[3] According to the SAR, between April 2006 and April 2007, one of the Cirrus accounts received $1,774,895 over the course of seven wire transfers from Cirrus Singapore.[4] See Exhibit 1 at p. 5. In addition, as of April 5, 2007, another Cirrus account (account 2000033075259) had $620,689.44 in funds. The information that Wachovia Bank has provided demonstrates that Sudarshan has access to large sums of money to fund any flight and

---

[2] Mahmood had been charged with using his company in the United Arab Emirates to transship heavy equipment forklift parts from the United States to Iran in violation of the U.S. embargo against Iran.

[3] The version of the SAR that Wachovia Bank provided to the FBI is a draft; however, the FBI has confirmed with Wachovia Bank that it filed this SAR with the Department of the Treasury.

[4] Exhibit 2 to this memorandum consists of copies of the seven wire transfers.

-4-

to live comfortably as a fugitive.  The information also shows the ease and speed with which

Sudarshan would be able to move significant amounts of money to Singapore or to anywhere else

in the world.  The financial data that Wachovia Bank disclosed underscore Sudarhsan's flight

risk.

      Sudarshan suggests that the charges against him are not serious because the commodities

that he was acquiring for restricted entities in India and for the Indian defense industry are

available on the open market.  See Revocation Mem. at 4-5.[5]  In making this argument,

Sudarshan demonstrates his ignorance of the purpose of the export control regimes that he

violated.  Export controls exist precisely because there are goods that are commercially available

in the United States that have both civilian and military applications.  In the wrong hands, or if

used for the wrong purposes, those items can prove inimical to the national security and foreign

policy interests of the United States.[6]

      The Karni prosecution, which this Court handled after the government charged Karni by

information and he pled guilty (see United States v. Asher Karni, Cr. No. 04-396 (RMU)), is an

excellent case in point.  The triggered spark gaps that Karni was acquiring for his Pakistani

---

[5]  Sudarshan also contends that the commercial availability of the products that he was illegally sending to India somehow demonstrates that the government's case against him is not strong.  See Revocation Mem. at 4-5.  As noted above, such a contention misses the point about the importance of export control laws.

[6]  In issuing Executive Order 13222, which kept the Export Administration Regulations ("EAR") in force upon the lapse of the Export Administration Act ("EAA") in August 2001, the president wrote: "I . . . find that the unrestricted access of foreign parties to U.S. goods and technology . . . in light of the expiration of the Export Administration Act of 1979, as amended (50 U.S.C. App. 2401 et seq.), constitute[s] an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States and hereby declare a national emergency with respect to that threat."

customer, Humayun Khan, also were commercially available in the United States from their manufacturer Perkin Elmer Optoelectronics. <u>See</u> http://optoelectronics.perkinelmer.com/content/RelatedLinks/Brochures/BRO_switchb.pdf. The spark gaps had a civilian use in a medical device known as a lithotripter, which destroyed kidney stones through the emission of high intensity sound waves. But they also had an application as a detonator for nuclear explosive devices. It is lawful to buy triggered spark gaps in the United States, and it was lawful for Karni to export them to South Africa without a license. However, it was not lawful to export the spark gaps to Pakistan because Pakistan, like India here, has not placed its nuclear weapons program under international supervision. For the very same reason, in this case, it was illegal for Sudarshan to export commercially available electrical components to two state entities in India – Vikram Sarabhai Space Centre ("VSSC") and Bharat Dynamics Ltd. ("BDL") – that are part of that nation's nuclear weapons and ballistic missile delivery systems programs.[7] For similar reasons, it was unlawful for Sudarshan to send commercially available products that also are on the Munitions List in the International Traffic in Arms Regulations ("ITAR") to the Aeronautical Development Establishment ("ADE") for the Tejas Light Combat Aircraft.

If there is any question about why Sudarshan was acquiring electrical components in the United States for Cirrus' Indian customers – whether it was for civilian purposes or whether it was to support the production of ballistic missiles and an advanced fighter jet – one need look no further than Cirrus' website, <u>www.cirruselectronics.com.</u> The website prominently features

_____

[7] Karni also was charged with supplying restricted entities in India with U.S.-origin commodities. As in this case, one of those entities was VSSC.

photographs of fighter jets and missiles in mid-launch.  See Exhibit 3 to this memorandum.  It

also includes the statement that "Cirrus not only specializes in sourcing MIL [military]

components that are marked discontinued by the original manufacturer but also acts as one stop

distributors for all generic and military grade electronic and electro mechanical components from

world wide sources."  The reference to discontinued commodities is significant.  As a result of

the U.S. sanctions, India has faced lengthy delays in the production of its conventional and

nuclear weapons systems such that many of the components in the original designs of these

systems have become obsolete and are no longer produced by their manufacturers.  Cirrus'

touting of its skill in obtaining discontinued items is also an advertisement of its ability to

acquire and export from the United States restricted technology for Indian government entities

for use in weapons programs.

Sudarshan also has admitted that he was aware of the weapons applications of the goods

that he was acquiring for the Government of India.  After Sudarhsan's arrest on March 23, 2007,

FBI agents took him to the local FBI office in Greenville, South Carolina.  Upon his arrival, the

agents gave Sudarshan his *Miranda* warnings in both English and Tamil.  Sudarshan agreed to

waive his rights and signed the English and Tamil waiver forms.  See Exhibit 4 to this

memorandum, the FBI 302 of the March 23, 2007, interview with Sudarshan and its attachments.

According to the 302, when the agents asked Sudarshan about Cirrus' exports to BDL, he

responded as follows:

> SUDARSHAN stated that CIRRUS had supplied electronic components to BDL which
> they should not have received.  SUDARSHAN admitted knowing that BDL was not
> allowed to receive items without a license because they were on the Department of
> Commerce Entity List.  SUDARSHAN admitted that he knew BDL was on the Entity List
> because BDL engaged in research and development of missile technology for the

-7-

Government of India.

Id. at p. 2.  The agents also showed Sudarshan a chart titled "Bharat Dynamics Limited," which described the relationship between Cirrus and BDL.  Id. at p. 5.  Sudarshan acknowledged that the chart was correct and dated and initialed it.  Id., attachment at p. 6.  Among the statements on the chart that Sudarshan agreed was accurate was the following: "Items [that Cirrus acquired] can be used for research, testing, and development for missile guidance and firing systems."  Id.

With respect to the i960 microprocessors, Sudarshan's memorandum suggests that he believed that they might be used in slot machines.  See Revocation Mem. at 5, n.2.  He told the agents something completely different.

> SUDARSHAN knew that the i960 was critical to the operation of the Government of India's Light Combat Aircraft ("LCA").  SUDARSHAN was familiar with the electrical engineering requirements for the LCA because he was previously employed by [Hindustan Aeronautics Ltd.] and worked on combat aircraft.  SUDARSHAN knew that the i960 was needed to enable the navigation and weapons systems of the aircraft and as such, would require an export licence.

Exhibit 4, FBI 302 at p. 4.  Sudarshan also reviewed a chart titled "Aeronautical Development Establishment," which set out Cirrus' role in acquiring the i960 microprocessor for ADE.  As with the BDL chart, Sudarshan stated that the ADE chart was accurate, and he dated and initialed it.  Id. at p. 5.  Sudarshan expressly endorsed the language set forth below:

> Items [that Cirrus acquired for ADE were] specifically designed for use in the LCA radar, navigation, and missile guidance systems.  These features of the aircraft will not function without properly tested i960 microprocessors.

Id., attachment at p. 5.

## II.    The Weight of the Evidence against Sudarshan Is Exceptionally Strong

Sudarshan's memorandum pretends that the government's only evidence that he willfully

violated the International Emergency Economic Powers Act ("IEEPA") and the Arms Export

Control Act ("AECA") is the notebook with information on export controls that FBI agents

found among Sudarshan's belongings when he returned to the United States in May 2006. See

Revocation Mem. at 5. That fact, of course, is but a stone in the mountain evidence that the

government has compiled that Sudarshan knew that his conduct was illegal.[8]

At pages 11 through 27 of its Detention Memorandum, and in the accompanying exhibits,

the government set out at length the evidence demonstrating that Sudarshan willfully violated

IEEPA, the EAR, AECA, and the ITAR. Because the Court will be reviewing the memorandum

and supporting exhibits on its own, the government will not repeat the lengthy proof here. It will

merely note some of the highlights:

- Numerous vendors warned Sudarshan and his co-defendants that the products that Cirrus was acquiring had military applications and were subject to control either by the Department of Commerce or by the State Department. Despite these warnings, Cirrus never once applied for a license for any of its exports to India.

- Four of the IEEPA counts (counts 2, 3, 7, and 9) and several of the overt acts in the first conspiracy count (count 1) involve Sudarshan and his co-defendants acquiring Static Random Access Memory ("SRAM") chips for VSSC. Cirrus first acquired the SRAMs from White Electronics Design Corporation ("White"), a company in Phoenix, Arizona. The Department of Commerce controls the models

---

[8] Sudarshan maintains that his possession of the export control notebook is evidence of innocence because it showed that he was trying to educate himself about the law governing his conduct. See Revocation Mem. at 5. He makes a similar claim about his recent attendance at an export law seminar in January 2007. Id. Such assertions beg the questions of why Cirrus never sought an export license for any of its shipments, why it routinely transshipped the goods it acquired through Singapore instead of sending them directly from the U.S. to India, why it lied to vendors about the true destination of products it was purchasing, and why it supplied false end-user statements. Moreover, Sudarshan's efforts to educate himself about U.S. export controls are susceptible to a less benign interpretation than the one that Sudarshan gives. They are also the actions of someone who needs to know when he has to be careful in his dealings with U.S. vendors so as not to alert them that the products that he is buying are destined for restricted end-users in India.

of SRAMs that Cirrus was seeking because they were designed to withstand the extreme changes to temperature to which a missile is subjected. White's sales representative, Cory Jaimes, expressly told Sudarshan, "I cannot accept an order for product that is being shipped to [VSSC] without a valid export license . . . ." See Exhibit 6 to Detention Memorandum at p. 3. Cirrus nevertheless placed orders for SRAMs for VSSC and provided White with end-user certificates that falsely claimed that goods were going the Naval Physical & Oceanographic Laboratory ("NPOL"). When Jaimes learned that the NPOL end-user statements were forgeries, he confronted Cirrus and threatened to alert the Department of Commerce. Sudarshan told his underlings, "[D]o not get panic . . . It is veil threat of [White to go to the Department of Commerce]; There are 1000 such companies and 100,000 complaints." See Exhibit 14 to Detention Memorandum. Sudarshan and his co-conspirators then convinced VSSC to accept a substitute, but equivalent, SRAM. Sudarshan acquired the substitute SRAMs from a company called All Tech, but concealed from All Tech that Cirrus would be exporting the products.[9]

- Every time Cirrus disclosed to a vendor that it was acquiring components for VSSC, the vendor would apply for a license. In every instance, the Department of Commerce denied the licenses.

### A.    Sudarshan's Confession

Sudarshan's statement to the FBI further bolsters the strength of the government's case. As described above, Sudarshan made significant admissions concerning his knowledge of the illegality of his activities with respect to supplying missile components to BDL and the illegality of his providing the i960 microprocessors to ADE for use in the navigation and weapons guidance systems of the Tejas fighter jet. He made other, equally incriminating admissions to the agents.

With respect to the exports of SRAMs to VSSC, Sudarshan told the interviewing agents that all of the NPOL end-user certificates that Cirrus had provided White were false. See FBI 302, Exhibit 4 to this memorandum, at p. 3. According to the 302:

---

[9]  Sudarshan's memorandum is silent about the SRAM transactions.

> SUDARSHAN admitted that he knew that these false end-user certifications were being created and sent to WHITE. SUDARSHAN stated, "I take responsibility, sir. I did that. That was a grave mistake."

Id. Sudarshan also told the agents that, after White refused to do any further business with Cirrus, he sought an alternative source of SRAMs for VSSC.. He found such a source in All Tech Electronics in Elmsford, New York. According to Sudarshan:

> ALL-TECH sent the SRAMs to CIRRUS in South Carolina, and was not aware that they would ultimately be sent to VSSC by CIRRUS. SUDARSHAN admitted that he knew he was not supposed to do this and he admitted to deceiving ALL-TECH because he thought they would not supply him with the parts if they knew where the parts were actually going.

Id.

Sudarshan made further incriminating statements about his knowledge of the illegality of supplying components to BDL. During the interview, the agents showed Sudarshan a "Statement of Assurance" that he had signed and given to a U.S. vendor called Avnet, Inc. In the "Statement," Sudarshan asserted:

> We hereby certify that all sale, transfer, consignment, loan or donation of products and/or technology acquired from Avnet, Inc., made directly or indirectly outside the United States are made in full compliance with all applicable export control laws and regulations.

See Exhibit 21 to Detention Memorandum. However, Sudarshan told the interviewing agents that his certification to Avnet was a lie.[10] See Exhibit 4 to this memorandum at p. 2. According to the 302:

> SUDARSHAN stated that he created and signed the false statement of assurance and that he knew it was inaccurate and misleading when he created/signed it. SUDARSHAN stated that he knowingly attempted to conceal the fact that BDL was also receiving the items.

---

[10] Within two weeks of Sudarshan's signing the form, Cirrus sent a shipment of Avnet's components to BDL through Singapore.

Id.[11]

### B.     Consciousness of Guilt Evidence – Sudarshan's Recantation

At the conclusion of his interview with the FBI, Sudarshan, through his actions, further demonstrated his guilt. After Sudarshan made all of his admissions, one of the interviewing agents, Special Agent Charles Price, reviewed with Sudarshan everything that he had said. Id. at pp. 5-6. Sudarshan agreed that SA Price had correctly understood what he had told him. Id. SA Price then memorialized Sudarshan's admissions in a written statement. Id. at 6. After he was finished, SA Price read the statement to Sudarshan and told Sudarshan that he was free to make any changes. Id. Sudarshan made a couple of corrections and added a sentence at the end. Id. Sudarshan then read through the written statement again and indicated to SA Price that it was accurate. Id. at p. 8. SA Price gave Sudarshan a pen to sign the statement. This is what occurred next:

> After taking the pen from SA PRICE, SUDARSHAN paused and asked SA PRICE what the significance was of signing the statement. SA PRICE told SUDARSHAN that the practical effect of signing the statement was that he could not later say he had not made the admissions and that he could not later change his story. After listening to this explanation, SUDARSHAN stared at the statement for several minutes. SUDARSHAN then began to rock back and forth and fidget in his chair. SUDARSHAN began to mumble to himself. Several more minutes passed and SUDARSHAN told SA PRICE that he wanted to make some "minor" changes to the statement.

Id. Sudarshan then took the pen and, at every place in the statement where he had admitted to

---

[11]  Sudarshan attempts to brush off his admission to the agents that he acted as an agent of the Government of India by pointing to his claim to the agents that he had not received any compensation from the Indian intelligence community. See Revocation Mem. At 5-6. However, whether or not the Indian intelligence community paid Sudarshan has no bearing on whether he violated 18 U.S.C. § 951(a). The government's evidence shows that Sudarshan closely coordinated his export activities with Indian government officials, including the former Defence Counsellor at the Indian Embassy, and that he took direction from them. He has offered nothing to rebut that evidence.

having knowingly violated the law, he changed the wording to read that he had acted "unknowingly." Id. at 9-10.

After having confirmed to SA Price three times that the agent had correctly understood and memorialized his admissions, Sudarshan's sudden recantation is subject to only one interpretation – that he realized that he had made a mistake in speaking so truthfully to the agents and he tried, however inartfully, to cover his tracks.

**III.     Sudarshan's History and Characteristics Support Detention in this Matter**

      **A.     Sudarshan Misapprehends His and His Family's Current Immigration Status**

Sudarshan claims that a statement at the end of the March 30, 2007, Citizen and Immigration Services decision denying Cirrus' petition to extend his L-1 visa implies that he and his family can remain in the United States while pursuing additional administrative remedies. See Revocation Mem. at 7. He cites no authority for his interpretation.

Government counsel has consulted with representatives from Immigration and Customs Enforcement ("ICE"). They have informed counsel that the effect of the administrative denial of Cirrus' appeal is that Sudarshan has been out of status and subject to deportation since March 30, 2007, notwithstanding whatever administrative avenues remain to him. His wife and son are in the same position.[12] ICE officials in South Carolina have begun preparing for the deportation of the wife and child.

Even if the March 30, 2007, administrative decision did not serve to strip Sudarshan and

---

[12]  As dependents of an L-1 visa holder, Sudarshan's wife and son have L-2 visas. Their immigration status is derivative of his. Once his visa is no longer valid, their visas lose their validity, too.

his family of their lawful immigration status, they still would lose that status upon expiration of their visas on July 15, 2007. The regulations provide that "[t]he beneficiary of an individual petition shall not be admitted past the validity period of the petition."[13] See 8 C.F.R. § 214.2 (l)(11). There is no authority – and Sudarshan certainly cites none – for any person staying beyond expiration of a visa.

Ms. Sudarshan's future intention to apply for an H-1B visa will not permit her and her son to remain in the United States while such an application is pending. According to the ICE representatives, only persons who are lawfully in the United States when they file their petitions for an H-1B petition can remain in the United States while the application is pending. As noted above, Ms. Sudarshan is no longer lawfully in this country. In any event, it is highly unlikely that Sudarshan's wife would receive an H-1B visa. One requirement is that the proposed employer of the applicant submit a certification from the U.S. Department of Labor that there is a shortage of persons in the United States who can perform the same job. See 8 C.F.R. § 214.2(h)(4)(i)(B). Sudarshan has not proffered that any prospective employer has obtained, or is even willing to seek, a Department of Labor certification for his wife. Second, the petitioner for an H-1B visa must also hold an unrestricted State license authorizing her to practice in her specialty field. The government is aware from its investigation that Sudarshan's wife is not licensed to practice medicine in the State of South Carolina.

### B.    Sudarshan's Reliance on *United States v. Xulam* Is Misplaced

Sudarshan contends that United States v. Xulam, 84 F.3d 441 (D.C. Cir. 1996), supports

---

[13] Sudarshan is in the United States pursuant to an L-1 visa issued under an individual petition.

revocation of the detention order here because, according to Sudarshan, the fact that a defendant may be subject to deportation does not justify detention.  However, the government is not relying on Sudarshan's susceptibility to deportation to argue that he should be held.[14]  Rather, the government is relying on the imminent deportations of his wife and son to show his weakening ties to the United States and the incentive he has to join them in Singapore.

There are many other distinctions between this case and Xulam.  First, the D.C. Circuit observed that, "[i]f convicted, [Xulam] likely faces a maximum sentence of six months under the federal sentencing guidelines."  84 F.3d at 441.  Here, by contrast, Sudarshan faces an advisory guidelines range of 97-121 months.[15]  Xulam faced a single count of passport fraud.  Sudarshan, on the other hand, faces 14 counts of engaging in proliferation activities that affect the national security and one count of being an illegal agent of a foreign power.

There is nothing in Xulam that indicates that there was a country to which he could flee and from which he would be safe from extradition.  Here, as the government demonstrated in its Detention Memorandum, Sudarshan can go to Singapore and be immune from extradition to the United States on these charges.[16]  In addition, Sudarshan owns property in Singapore and has at

---

[14]  Government counsel is familiar with how to keep a deportable alien in the United States for purposes of prosecution.

[15]  The export offenses all have a base offense level of 26 (see §§ 2M5.1(a)(1) and 2M5.2(a)(1)).  Sudarshan also likely would receive a 4-level leadership enhancement under § 3B1.1.  An offense level of 30, with a criminal history category of I, yields a recommended guideline range of 97-121 months.

[16]  The existence of safe haven for Sudarshan in Singapore is another factor that differentiates this case from the situation that the government faced in Karni.  In Karni, where the defendant was an Israeli national, it appeared that Israel's extradition treaty with the United States did not cover export offenses.  However, the United States had never sought extradition on such charges.  Here, by contrast, the United States, within the last year, has sought extradition of

least four bank accounts there.  Within the last year, Sudarshan used these accounts to shift $1.7 million in funds to his accounts in the United States.  <u>See</u> Exhibit 1 to this memorandum.  He easily could shift a substantial amount of funds back there.  No similar facts appear in <u>Xulam</u>.

Sudarshan points to the fact that, like the defendant in <u>Xulam</u>, he now has submitted letters attesting to his good character.  <u>See</u> Revocation Mem. at 10.  But there is a fundamental difference between the community support that Xulam had proffered and the letters that Sudarshan has filed.  Xulam had several prominent members of the international human rights community vouching for him.  All of the letters that Sudarshan has submitted come from family members, with the exception of one letter from a retired military officer in India.  One can understand the compassion that the family members feel for Sudarshan in his present circumstances.  But they are family, and it is only natural that they would say nice things about him.  What is striking is that there is not a single person from the community at large in the United States who has come forward to vouch for Sudarshan.  Nor has any prominent person stepped forward in support of Sudarshan either from here, or from India, or from Singapore.[17]  Moreover, notwithstanding his family's testimonials about Sudarshan's honesty, they are inconsistent with the deceitful behavior he demonstrated in carrying out the schemes charged

---

a defendant from Singapore on export charges, and the Singapore Attorney General's Chambers informed the U.S. Department of Justice that the crimes were not extraditable under the treaty between Singapore and the United States.  Karni also was a resident of South Africa, and South Africa could have extradited him to the United States if he had fled there.

[17]  The quantity and quality of letters that Karni submitted in support of his bid to be released are another factor that differentiate the circumstances underlying Chief Judge Hogan's decision and the circumstances here.  Karni submitted over forty letters, many of which were from prominent civic and religious leaders in the United States, Israel, and South Africa.

here.[18]

## **Conclusion**

All of the 18 U.S.C. § 3142(g) factors favor detention.  Sudarshan's crimes are extremely

serious and they do pose a threat to world safety and stability.  With his family's imminent

departure, Sudarshan's ties to the United States are evaporating.  He has a safe haven in

Singapore, he has substantial amounts of money to finance his flight, and he has property and

bank accounts in Singapore to resume life anew.  Sudarshan has a strong incentive to flee and the

absence of a passport will not prevent him from slipping across the border to a neighboring

country and getting a new passport at a Singapore consulate.  Magistrate Judge Robinson

properly found that the government had established by a preponderance of the evidence that

Sudarshan was a risk of flight.  The Court should deny his motion to revoke or modify the order

of detention.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610

By:       _____/s/_____

Jay I. Bratt
Assistant United States Attorney

---

[18]  It is troubling that Sudarshan believes that he can continue to run Cirrus if he is released, notwithstanding the logistical impediments to actually doing so.  See Revocation Mem. at 9-10.  The institution through which he committed his crimes is the last place he should be. Moreover, the government is unaware of any domestic business in which Cirrus engaged.  In any event, with Sudarshan now being out of status, he can no longer lawfully work in the United States.  In addition, the Department of Commerce is in the process of entering an order that would bar Sudarshan, Cirrus, and his co-defendants from engaging in any export activities. Sudarshan would not be gainfully employed if he were released.

Illinois Bar No. 6187361
National Security Section
Room 11-437
555 Fourth Street, NW
Washington, D.C.  20530
(202) 353-3602
Jay.Bratt@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051 (RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN, and** | : | |
| **MYTHILI GOPAL,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

Before the Court is defendant Parthasarathy Sudarshan's motion to revoke or amend the detention Order that Magistrate Judge Robinson entered on April 5, 2007.  The Court having considered the motion and the submissions and arguments of the parties, it **DENIES** the motion. Defendant Sudarshan shall continue to be detained pending trial.

**DONE AND ORDERED** this _____ day of May, 2007.

_____
Honorable Ricardo M. Urbina
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-051 (RMU) |
| | : | |
| v. | : | |
| | : | |
| PARTHASARATHY SUDARSHAN, and | : | |
| MYTHILI GOPAL, | : | |
| | : | |
| Defendants. | : | |

# EXHIBITS TO GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT SUDARSHAN'S MOTION FOR REVOCATION OR AMENDMENT OF DETENTION ORDER

# EXHIBIT 1



# DRAFT

| Suspicious Activity Report | | | |
|---|---|---|---|
| **FRB:** | FR 2230 | **OMB No.** | 7100-0212 |
| **FDIC:** | 6710/06 | **OMB No.** | 3064-0077 |
| **OCC:** | 8010-9,8010-1 | **OMB No.** | 1557-0180 |
| **OTS:** | 1601 | **OMB No.** | 1550-0003 |
| **NCUA:** | 2362 | **OMB No.** | 3133-0094 |
| **TREASURY:** | TD F 90-22.47 | **OMB No.** | 1506-0001 |

**Suspicious Activity Report**

July 2003

Previous editions will not be accepted after December 31, 2003

ALWAYS COMPLETE ENTIRE REPORT
(see instructions)

1 Check box below only if correcting a prior report.
☐ Corrects Prior Report (see Instruction #3 under "How to Make a Report")

## Part I   Reporting Financial Institution Information

2 Name of Financial Institution
Wachovia Bank – South Carolina

3 EIN
22-1147033

4 Address of Financial Institution
1525 West W.T. Harris Blvd. NC5468

5 Primary Federal Regulator
a ☐ Federal Reserve   d ☒ OCC
b ☐ FDIC   e ☐ OTS
c ☐ NCUA

6 City
Charlotte

7 State
N C

8 Zip Code
2 8 2 6 2 — 5 4 6 8

9 Address of Branch Office(s) where activity occurred   ☐ Multiple Branches (include information in narrative, Part V)
1720 Woodruff Rd

10 City
Greenville

11 State
S C

12 Zip Code
2 9 6 0 7 — 0 0 0 0

13 If institution closed, date closed
MM / DD / YYYY

14 Account number(s) affected, if any   Closed?
a  2000033075259   ☐ Yes ☒ No
b  2000742364756   ☐ Yes ☒ No

c  _____   Closed? ☐ Yes ☐ No
d  _____   Closed? ☐ Yes ☐ No

## Part II   Suspect  No. 1 Information   ☐ Suspect Information Unavailable

15 Last Name or Name of Entity
SUDARSHAN

16 First Name
PARTHASARATHY

17 Middle

18 Address
201 HUDDERSFIELD DR

19 SSN, EIN or TIN
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

20 City
SIMPSONVILLE

21 State
S C

22 Zip Code
2 9 6 8 1 — 0 0 0 0

23 Country
US

24 Phone Number - Residence  (include area code)
(864) 286-3030

25 Phone Number - Work  (include area code)
(864) 593-5940

26 Occupation/Type of Business
CIRRUS ELECTRONICS

27 Date of Birth
06 / 01 / 1960
MM / DD / YYYY

28 Admission/Confession?
a ☐ Yes   b ☒ No

29 Forms of Identification for Suspect:
a ☒ Driver's License/State ID   b ☐ Passport   c ☐ Alien Registration   d ☐ Other _____
Number  100874552   Issuing Authority  SC

30 Relationship to Financial Institution:
a ☐ Accountant   d ☐ Attorney   g ☒ Customer   j ☐ Officer
b ☐ Agent   e ☐ Borrower   h ☐ Director   k ☐ Shareholder
c ☐ Appraiser   f ☐ Broker   i ☐ Employee   l ☐ Other _____

31 Is the relationship an insider relationship   a ☐ Yes   b ☒ No
If Yes specify:  c ☐ Still employed at financial institution   e ☐ Terminated
d ☐ Suspended   f ☐ Resigned

32 Date of Suspension, Termination, Resignation
MM / DD / YYYY

# DRAFT

## Suspect Information Continuation                                                      2

### Part III Suspect No. 2 Information

| 15 Last Name or Name of Entity | 16 First Name | 17 Middle |
|---|---|---|
| SUDARSHAN | ALAMELU | |

| 18 Address | 19 SSN, EIN or TIN |
|---|---|
| 201 HUDDERSFIELD DR | 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 |

| 20 City | 21 State | 22 Zip Code | 23 Country |
|---|---|---|---|
| SIMPSONVILLE | S C | 2 9 6 8 1 — 0 0 0 0 | US |

| 24 Phone Number - Residence (include area code) | 25 Phone Number - Work (include area code) |
|---|---|
| (864)286-3030 | |

| 26 Occupation/Type of Business | 27 Date of Birth | 28 Admission/Confession? |
|---|---|---|
| UNKNOWN | 06 / 01 / 1962 | a [ ] Yes   b [X] No |
| | MM   DD   YYYY | |

29 Forms of Identification for Suspect:

a [X] Driver's License/State ID   b [ ] Passport   c [ ] Alien Registration   d [ ] Other

Number  100764132              Issuing Authority  SC

30 Relationship to Financial Institution:

| a [ ] Accountant | d [ ] Attorney | g [X] Customer | j [ ] Officer |
|---|---|---|---|
| b [ ] Agent | e [ ] Borrower | h [ ] Director | k [ ] Shareholder |
| c [ ] Appraiser | f [ ] Broker | i [ ] Employee | l [ ] Other |

31 Is the relationship an insider relationship   a [ ] Yes   b [X] No

If Yes specify:  c [ ] Still employed at financial institution   e [ ] Terminated

d [ ] Suspended   f [ ] Resigned

32 Date of Suspension, Termination, Resignation

___ / ___ / ___
MM   DD   YYYY

### Part II Suspect No. 3 Information

| 15 Last Name or Name of Entity | 16 First Name | 17 Middle |
|---|---|---|
| GOPAL | MYTHILI | |

| 18 Address | 19 SSN, EIN or TIN |
|---|---|
| 22 RED GLOBE CT | 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 |

| 20 City | 21 State | 22 Zip Code | 23 Country |
|---|---|---|---|
| SIMPSONVILLE | S C | 2 9 6 8 1 — 0 0 0 0 | US |

| 24 Phone Number - Residence (include area code) | 25 Phone Number - Work (include area code) |
|---|---|
| (864)213-9322 | |

| 26 Occupation/Type of Business | 27 Date of Birth | 28 Admission/Confession? |
|---|---|---|
| CIRRUS ELECTRONICS | 06 / 15 / 1970 | a [ ] Yes   b [X] No |
| | MM   DD   YYYY | |

29 Forms of Identification for Suspect:

a [X] Driver's License/State ID   b [ ] Passport   c [ ] Alien Registration   d [ ] Other

Number  225731564              Issuing Authority  VA

30 Relationship to Financial Institution:

| a [ ] Accountant | d [ ] Attorney | g [X] Customer | j [ ] Officer |
|---|---|---|---|
| b [ ] Agent | e [ ] Borrower | h [ ] Director | k [ ] Shareholder |
| c [ ] Appraiser | f [ ] Broker | i [ ] Employee | l [ ] Other |

31 Is the relationship an insider relationship   a [ ] Yes   b [X] No

If Yes specify:  c [ ] Still employed at financial institution   e [ ] Terminated

d [ ] Suspended   f [ ] Resigned

32 Date of Suspension, Termination, Resignation

___ / ___ / ___
MM   DD   YYYY

ATPROV050    Wachovia Bank NA/2007003264

**DRAFT**

## Suspect Information Continuation

### Part II  Suspect No. 4 Information

| 15 Last Name or Name of Entity | 16 First Name | 17 Middle |
|---|---|---|
| GOPAL | SANTHANAM | |

| 18 Address | 19 SSN, EIN or TIN |
|---|---|
| 22 REDGLOBE CT | 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 |

| 20 City | 21 State | 22 Zip Code | 23 Country |
|---|---|---|---|
| SIMSONVILLE | S C | 2 9 6 8 1 — 0 0 0 0 | US |

| 24 Phone Number - Residence (include area code) | 25 Phone Number - Work (include area code) |
|---|---|
| (864)213-9322 | (864)576-7359 |

| 26 Occupation/Type of Business | 27 Date of Birth | 28 Admission/Confession? |
|---|---|---|
| CIRRUS ELECTRONICS | 07 / 30 / 1985  MM / DD / YYYY | a ☐ Yes   b ☒ No |

29 Forms of Identification for Suspect:

a ☒ Driver's License/State ID   b ☐ Passport   c ☐ Alien Registration   d ☐ Other

Number  481927124D     Issuing Authority  OH

30 Relationship to Financial Institution:

| a ☐ Accountant | d ☐ Attorney | g ☒ Customer | j ☐ Officer |
|---|---|---|---|
| b ☐ Agent | e ☐ Borrower | h ☐ Director | k ☐ Shareholder |
| c ☐ Appraiser | f ☐ Broker | i ☐ Employee | l ☐ Other |

31 Is the relationship an insider relationship   a ☐ Yes   b ☒ No

If Yes specify:  c ☐ Still employed at financial institution   e ☐ Terminated
                 d ☐ Suspended   f ☐ Resigned

32 Date of Suspension, Termination, Resignation  __ / __ / __  MM / DD / YYYY

### Part II  Suspect No. 5 Information

| 15 Last Name or Name of Entity | 16 First Name | 17 Middle |
|---|---|---|
| CIRRUS ELECTRONICS LLC | | |

| 18 Address | 19 SSN, EIN or TIN |
|---|---|
| 22 REDGLOBE CT | 84-1630834 |

| 20 City | 21 State | 22 Zip Code | 23 Country |
|---|---|---|---|
| SIMPSONVILLE | S C | 2 9 6 8 1 — 0 0 0 0 | US |

| 24 Phone Number - Residence (include area code) | 25 Phone Number - Work (include area code) |
|---|---|
| | (864)286-3030 |

| 26 Occupation/Type of Business | 27 Date of Birth | 28 Admission/Confession? |
|---|---|---|
| ELECTRONIC MFG | __ / __ / __  MM / DD / YYYY | a ☐ Yes   b ☒ No |

29 Forms of Identification for Suspect:

a ☐ Driver's License/State ID   b ☐ Passport   c ☐ Alien Registration   d ☐ Other

Number     Issuing Authority

30 Relationship to Financial Institution:

| a ☐ Accountant | d ☐ Attorney | g ☒ Customer | j ☐ Officer |
|---|---|---|---|
| b ☐ Agent | e ☐ Borrower | h ☐ Director | k ☐ Shareholder |
| c ☐ Appraiser | f ☐ Broker | i ☐ Employee | l ☐ Other |

31 Is the relationship an insider relationship   a ☐ Yes   b ☒ No

If Yes specify:  c ☐ Still employed at financial institution   e ☐ Terminated
                 d ☐ Suspended   f ☐ Resigned

32 Date of Suspension, Termination, Resignation  __ / __ / __  MM / DD / YYYY

ATPROV050    *Wachovia Bank NA/2007003264*

## Part III    Suspicious Activity Information

**33** Date or date range of suspicious activity
From 04 / 01 / 2006    To 04 / 05 / 2007
MM / DD / YYYY    MM / DD / YYYY

**34** Total dollar amount involved in known or suspicious activity
$ 1 7 5 0 0 0 . 00

**35** Summary characterization of suspicious activity:

| | |
|---|---|
| a [X] Bank Secrecy Act / Structuring/ Money Laundering | f ☐ Computer Intrusion |
| | g ☐ Consumer Loan Fraud |
| b ☐ Bribery/Gratuity | h ☐ Counterfeit Check |
| c ☐ Check Fraud | i ☐ Counterfeit Credit/Debit Card |
| d ☐ Check Kiting | j ☐ Counterfeit Instrument(other) |
| e ☐ Commercial Loan Fraud | k ☐ Credit Card Fraud |

l ☐ Debit Card Fraud
m ☐ Defalcation/Embezzlement
n ☐ False Statement
o ☐ Misuse of Position or Self Dealing
p ☐ Mortgage Loan Fraud
q ☐ Mysterious Disappearance
r ☐ Wire Transfer Fraud
t ☐ Terrorist Financing
u ☐ Identity Theft

s [X] Other  TRANSFER OF RESTRICTED TECHNOLOGY
(type of activity)

**36** Amount of loss prior to recovery (if applicable)
$ 0 . 00

**37** Dollar amount of recovery (if applicable)
$ 0 . 00

**38** Has the suspicious activity had a material impact on, or otherwise affected, the financial soundness of the institution?
a ☐ Yes    b [X] No

**39** Has the institution's bonding company been notified?
a ☐ Yes    b [X] No

**40** Has any law enforcement agency already been advised by telephone, written communication, or otherwise?

| | | | | |
|---|---|---|---|---|
| a ☐ DEA | d ☐ Postal Inspection | g ☐ Other Federal |
| b [X] FBI | e ☐ Secret Service | h ☐ State |
| c ☐ IRS | f ☐ U.S. Customs | i ☐ Local |

J ☐ Agency Name (for g,h or i)

**41** Name of person(s) contacted at Law Enforcement Agency
RUSS NIMMO

**42** Phone Number (include area code)
(202) 278-4780

**43** Name of person(s) contacted at Law Enforcement Agency

**44** Phone Number (include area code)

## Part IV    Contact for assistance

**45** Last Name
Doule

**46** First Name
Bob

**47** Middle

**48** Title/Occupation
AML Investigator

**49** Phone Number (include area code)
(704) 427-8420

**50** Date Prepared
04 / 09 / 2007
MM / DD / YYYY

**51** Agency (if not filed by financial institution)



DRAFT

ATPROV050    Wachovia Bank NA/2007003264

## Part V  Suspicious Activity Information Explanation/Description

Explanation/description of known or suspected violation of law or suspicious activity.

This section of the report is critical. The care with which it is written may make the difference in whether or not the described conduct and its possible criminal nature are clearly understood. Provide below a chronological and complete account of the possible violation of law, including what is unusual, irregular or suspicious about the transaction, using the following checklist as you prepare your account. If necessary, continue the narrative on a duplicate of this page.

a   Describe supporting documentation and retain for 5 years.
b   Explain who benefited, financially or otherwise, from the transaction, how much, and how.
c   Retain any confession, admission, or explanation of the transaction provided by the suspect and indicate to whom and when it was given.
d   Retain any confession, admission, or explanation of the transaction provided by any other person and indicate to whom and when it was given.
e   Retain any evidence of cover-up or evidence of an attempt to deceive federal or state examiners or others.

f   Indicate where the possible violation took place (e.g., main office, branch, other).
g   Indicate whether the possible violation is an isolated incident or relates to other transactions.
h   Indicate whether there is any related litigation; if so, specify.
i   Recommend any further investigation that might assist law enforcement authorities.
j   Indicate whether any information has been excluded from this report; if so, why?
k   If you are correcting a previously filed report, describe the changes that are being made.

For Bank Secrecy Act/Structuring/Money Laundering reports, include the following additional information:

l   Indicate whether currency and/or monetary instruments were involved. If so, provide the amount and/or description of the instrument (for example, bank draft, letter of credit, domestic or international money order, stocks, bonds, traveler's checks, wire transfers sent or received, cash, etc.).
m   Indicate any account number that may be involved or affected.

Tips on SAR Form Preparation and filing are available in the SAR Activity Review at www.fincen.gov/pub_reports.html

Case 2007003264 opened after a media article reported that PARTHASARATHY SUDARSHAN and MYTHILI GOPAL were arrested as the result of a Federal indictment charging them with "export violations, international arms trafficking, being agents of a foreign government, and conspiracy". The two "bought heat resistant memory chips, microprocessors, capacitors, and semi-conductors from US Manufacturers using falsified documents regarding their destination. The parts were allegedly shipped through CIRRUS offices in SC to three Indian government agencies....to which the US Commerce Department restricts exports." The customers are not of prior record with AML-IS. The accounts were reviewed from 4/1/06 through 4/5/07.

CIRRUS ELECTRONICS LLC                    TIN:  841630834
22 REDGLOBE CT
SIMPSONVILLE, SC  29681
Work :  ( 864) 286 -3030
DDA  2000033075259        OPENED      12012006        $ 620,689.44
DDA  2007242364756        OPENED      12172003        $ 0.95
DDA  2000027787252        CLOSED      12292006          0.00
The account signors are Parthasarathy Sudarshan and Mythili Gopal.

Account #2000742364756 has been funded with checks, wires and transfers from other Cirrus accounts. Checks over $500 deposited to the account include: $30,000 on 4/10/06 from the BofA account of Parthasarathy and Alamelu Sudarshan #000782553383; $5,280.50 from the State Bank of India account # 2111001800634 held by MLATHI MAREPPAVANAR; $5,000 transfer from account #7752 on 8/11/06 and $30,000 from account #5259 on 12/19/06 and again on 1/8/07.

The account was primarily funded by 7 wires totaling $1,774,895 received from Cirrus Electronics PTE, 2 Ang Mo Ko Street 64, Singapore. There have also been transfers to this account from #5259.

Paperwork Reduction Act Notice: The purpose of this form is to provide an effective and consistent means for financial institutions to notify appropriate law enforcement agencies of known or suspected criminal conduct or suspicious activities that take place at or were perpetrated against financial institutions. This report is required by law, pursuant to authority contained in the following statutes. Board of Governors of the Federal Reserve System: 12 U.S.C. 324, 334, 611a, 1844(b) and (c), 3105(c)(2) and 3109(a). Federal Deposit Insurance Corporation: 12 U.S.C. 93a, 1818, 1881-84, 3401-22. Office of the Comptroller of the Currency: 12 U.S.C. 93a, 1818, 1881-84, 3401-22. Office of Thrift Supervision: 12 U.S.C. 1463 and 1464. National Credit Union Administration: 12 U.S.C. 1766(a), 1786(q). Financial Crimes Enforcement Network: 31 U.S.C. 5318(g). Information collected on this report is confidential (5 U.S.C. 552(b)(7) and 552a(k)(2), and 31 U.S.C. 5318(g)). The Federal financial institutions regulatory agencies and the U.S. Departments of Justice and Treasury may use and share this information. Public reporting and recordkeeping burden for this information collection is estimated to average 30 minutes per response, and includes time to gather and maintain data in the required report, review the instructions, and complete the information collection. Send comments regarding this burden estimate, including suggestions for reducing the burden, to the Office of Management and Budget, Paperwork Reduction Project, Washington, DC 20503 and, depending on your primary Federal regulatory agency, to Secretary, Board of Governors of the Federal Reserve System, Washington, DC 20551; or Assistant Executive Secretary, Federal Deposit Insurance Corporation, Washington, DC 20429; or Legislative and Regulatory Analysis Division, Office of the Comptroller of the Currency, Washington, DC 20219; or Office of Thrift Supervision, Enforcement Office, Washington, DC 20552; or National Credit Union Administration, 1775 Duke Street, Alexandria, VA 22314; or Office of the Director, Financial Crimes Enforcement Network, Department of the Treasury, 2070 Chain Bridge Road, Vienna, VA 22182. The agencies may not conduct or sponsor, and an organization (or a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

DRAFT

| Part V | Suspicious Activity Information Explanation/Description- Continuation | 6 |

Debits to the account have been by check, online payment, and wires. The following wires were sent from the account:
a) - 5/1/06 - $20,385 to Stock Point, Chatsworth, CA
b) - 8/11/06 - $292,020 to Arrow Electronics International -to acct # 323119743 at JP Morgan Chase
c) - 12/1/06 - $10,000 to Ramenahalli P Ramalingam at Wells Fargo acct #1864292444
d) - 1/2/07 - $100 to Sudarshan's BofA account #000782553383

There have been online payments to the following businesses: Future Electronics; Tri-Star Electronics; and Avnet Electronics. The largest payment was $4,995.

Multiple checks have been written to the following businesses that range from a few hundred to over $46,000:
a) - All Tech Electronics, Elmsford, NY
b) - Tri-Star Electronics, Ronkonkoma, NY
c) - Avnet Electronics Marketing, Richardson, TX
d) - First Source, Inc - Post Falls, SD
e) - Yamaichi Electronics USA - San Francisco, CA
f) - Air Technics, Inc - Wichita, KS
g) - Now Electronics - Huntington, NY
h) - Future Electronics - Chicago, IL
i) - Sherburne Electronics, Happauge, NY
j) - Gemini Electronic Components, Inc
k) - Q Tech Corp.
l) - Falcon Solutions
m) - Micro Stock - West Point, GA
n) - TTI - Fort Worth, TX
o) - ACI Electronic - Denver, CO
p) - Air Electron
r) - BTC Electronic Components
s) - Data Delay Devices - Clifton, NJ

Account #2000033075259 has been entirely funded during the period of review by transfers from account # 4756 totaling $1,007,000. Debits have been transfers back to #4756 totaling appx $389,300.

Account #2000027787252 was opened from 2/15/06 through 12/29/06. Since 4/1/06 it had been funded with 3 transfers totaling $24,000 from account #4756. Debits have been a $5,000 withdrawal on 8/11/06 transferred to #4756; a $35,000 transfer to #4756 on 11/15/06; and a $205,251.81 transfer to #4756 on 12/1/06 to close the account. It appears #7252 was closed and #4756 opened to take advantage of a higher interest rate.

PARTHASARATHY SUDARSHAN           TIN:  654207778
201 HUDDERSFIELD DRIVE
SIMPSONVILLE SC 29681              DOB : 06011960
Cust ID  : SC        DL    100874552
Employer/DT : CIRRUS ELECTRONICS LLC
DDA   1010168741669      OPENED   02222007      5000.29
This account is held jointly with ALAMELU SUDARSHAN, TIN: 999726468, DOB: 06011962, SC    DL 100764132. This account was opened with a $5,000 check from account #4756 on 2/22/07. There has been no other activity in the account.

**Part V  Suspicious Activity Information Explanation/Description- Continuation**

| | | | | | |
|---|---|---|---|---|---|
| MYTHILI GOPAL | | TIN: 225731564 | | | |
| 22 RED GLOBE CT | | | | | |
| SIMPSONVILLE SC 29681 | | DOB : 06151970 | | | |
| Cust ID  :  VA  DL | 225731564 | | | | |
| SAV | 3000750739042 | OPENED | 08222003 | 390.96 | |
| SAV | 3000750739152 | OPENED | 08222003 | 352.21 | |
| CDA | 410042300223290 10062007 | 230 | OPENED | 10062005 | 1595.56 |
| CDA | 414112300223297 10062007 | 230 | OPENED | 10062005 | 1196.67 |
| RVC | 4386540410482989 | PEL | OPENED | 12272005 | 62200.00 |

SAR filed due to $1.75 million in wires from the companites offiice in Sinapore and unusual wire and check activity between Cirrus Electronics and numerous domestic computer/electronics companies that correlates with the activity described in the media articles regarding the purchase of restricted technology that was transferred to India.

Robert Doule - 704/427/8420 - 4/9/07

**DRAFT**

# EXHIBIT 2

Wire Detail

  **NEWTON**

# Wire Detail Page

Home |Wire Summary Inquiry |Wire Detail Inquiry |Bank to Bank Search |Orp to Bnp Search | Help
Credit Pay to Party Search |Orp and Bnp Search |Restricted Country Search |Admin Menu |Archive Menu |Report

Originator\Beneficiary Information          Credit Pay to Party Information          Sender\Intermediary Information
Debit\Credit Information                    Originator\Beneficiary Bank              Additional Information

**Go Back**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Date:** | 04/11/2006 | **Amount:** | $149,985.00 | **Reference Number:** | 007505 | |
| **Wire Exchange Rate:** | 1 | **Wire Currency:** | 149985.00 | **Wire Currency Code:** | USD | |
| **Base Exchange Rate:** | 1 | **Base Currency:** | 149985.00 | **Base Currency Code:** | USD | |
| **Client Source:** | IX | **Value Date:** | 04/11/2006 | **Entered By:** | | |
| **Msg Type Cd:** | FWI1000 | | | | | |

## Originator Information:

**Name:** CIRRUS ELECTRONICS PTE LTD

**Address:** 2 ANG MO KIO STREET 64
HEX 03-00 ECON BLDG,AMK IND PK 3
SINGAPORE 569084

**Country:** SG          CB-CIBG COUNTRY LIST

**Account:**

**Acct Type:** G

**Bank:** 004

**Bank ID:** 021000018

**Type:** A

## Beneficiary Information:

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 22, REDGLOBE COURT,
SIMPSONVILLE, SC 29681
USA

**Country:** US

**Account:** 2000-74-236-4756

**Acct Type:** D

**Bank:** 004

**Bank ID:** 053207766

**Type:** A

## Debit Information:

**Type ID:** G

**ID:** 01091010003211

**Name:**

**Address:**

## Credit Information:

**Type ID:** D

**ID:** DD0042000742364756

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 22, REDGLOBE COURT,
SIMPSONVILLE, SC 29681
USA

## Credit Pay to Party Information:

**CPP ID Type:**

**CPP ID:**

1A_01567

CPP Name:

CPP Addr:

**Originator Bank:**

| | |
|---|---|
| OB ID Type: | A |
| OB ID: | 021000018 |
| OB Name: | THE BANK OF NEW YORK |
| OB Address: | THE BANK OF NEW YORK 48 WALL ST NEW YORK CITY,NY 10286 10286 |
| OB Country: | US |

**Beneficiary Bank:**

| | |
|---|---|
| BB ID Type: | A |
| BB ID: | 053207766 |
| BB Name: | WACHOVIA BANK, NATIONAL ASSOCIATION |
| BB Address: | WACHOVIA BANK, NATIONAL ASSOCIATION 177 MEETING ST CHARLESTON,SC 29401 |
| BB Country: | US |
| Reference Number: | |

**Sending Bank Information:**

| | |
|---|---|
| SB ID Type: | |
| SB ID: | |
| SB Name: | |
| SB Address: | |
| Senders Ref: | |

**Intermediary Bank Information:**

| | |
|---|---|
| IB ID Type: | |
| IB ID: | |
| IB Name: | |
| IB Address: | |

**Additional Information:**

| | |
|---|---|
| OBI Pay Info: | TOWARDS THE BILLS* |
| Bank to Bank Information: | |

Go Back

1A_01568

Wire Detail

 

# Wire Detail Page

Originator\Beneficiary Information      Credit Pay to Party Information      Sender\Intermediary Information
Debit\Credit Information                Originator\Beneficiary Bank          Additional Information

**Go Back**

| | | | | | |
|---|---|---|---|---|---|
| Date: | 06/14/2006 | Amount: | $199,985.00 | Reference Number: | 008073 |
| Wire Exchange Rate: | 1 | Wire Currency: | 199985.00 | Wire Currency Code: | USD |
| Base Exchange Rate: | 1 | Base Currency: | 199985.00 | Base Currency Code: | USD |
| Client Source: | IX | Value Date: | 06/14/2006 | Entered By: | |
| Msg Type Cd: | FWI1000 | | | | |

## Originator Information:

Name: CIRRUS ELECTRONICS PTE LTD

Address: 2 ANG MO KIO STREET 64
HEX 03-00 ECON BLDG,AMK IND PK 3
SINGAPORE 569084

Country: SG    **CB-CIBG COUNTRY LIST**

Account:

Acct Type: G

Bank: 004

Bank ID: 021000018

Type: A

## Beneficiary Information:

Name: CIRRUS ELECTRONICS LLC

Address: 201 HUDDERSFIELD DRIVE,
SIMPSONVILLE SC 29681
USA

Country: US

Account: 2000-74-236-4756

Acct Type: D

Bank: 004

Bank ID: 053207766

Type: A

## Debit Information:

Type ID: G

ID: 01091010003211

Name:

Address:

## Credit Information:

Type ID: D

ID: DD0042000742364756

Name: CIRRUS ELECTRONICS LLC

Address: 201 HUDDERSFIELD DRIVE,
SIMPSONVILLE SC 29681
USA

## Credit Pay to Party Information:

CPP ID Type:

CPP ID:

1A_01569

CPP Name:

CPP Addr:

**Originator Bank:**

OB ID Type: A

OB ID: 021000018

OB Name: THE BANK OF NEW YORK

OB Address: THE BANK OF NEW YORK
48 WALL ST
NEW YORK CITY,NY 10286
10286

OB Country: US

**Beneficiary Bank:**

BB ID Type: A

BB ID: 053207766

BB Name: WACHOVIA BANK, NATIONAL ASSOCIATION

BB Address: WACHOVIA BANK, NATIONAL
ASSOCIATION
177 MEETING ST
CHARLESTON,SC 29401

BB Country: US

Reference Number:

**Sending Bank Information:**

SB ID Type:

SB ID:

SB Name:

SB Address:

Senders Ref:

**Intermediary Bank Information:**

IB ID Type:

IB ID:

IB Name:

IB Address:

**Additional Information:**

OBI Pay Info: AS AN ADVANCE TOWARDS CIRRUS US*OPERATIONS.*

Bank to Bank Information:

Go Back

IA_01570

Wire Detail

Page 1 of 2

  **NEWTON**

# Wire Detail Page

Home |Wire Summary Inquiry |Wire Detail Inquiry |Bank to Bank Search |Orp to Bnp Search | Help
Credit Pay to Party Search |Orp and Bnp Search |Restricted Country Search |Admin Menu |Archive Menu |Report

Originator\Beneficiary Information       Credit Pay to Party Information       Sender\Intermediary Information
Debit\Credit Information                 Originator\Beneficiary Bank           Additional Information

| Go Back |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Date:** | 08/10/2006 | **Amount:** | $249.985.00 | **Reference Number:** | 008795 | |
| **Wire Exchange Rate:** | 1 | **Wire Currency:** | 249985.00 | **Wire Currency Code:** | USD | |
| **Base Exchange Rate:** | 1 | **Base Currency:** | 249985.00 | **Base Currency Code:** | USD | |
| **Client Source:** | IX | **Value Date:** | 08/10/2006 | **Entered By:** | | |
| **Msg Type Cd:** | FWI1000 | | | | | |

## Originator Information:

**Name:** CIRRUS ELECTRONICS PTE LTD

**Address:** 2 ANG MO KIO STREET 64
HEX 03-00 ECON BLDG,AMK IND PK 3
SINGAPORE 569084

**Country:** SG        CB-CIBG COUNTRY LIST

**Account:**

**Acct Type:** G

**Bank:** 004

**Bank ID:** 021000018

**Type:** A

## Beneficiary Information:

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 22, REDGLOBE COURT,
SIMPSONVILLE, SC 29681
USA

**Country:** US

**Account:** 2000-74-236-4756

**Acct Type:** D

**Bank:** 004

**Bank ID:** 053207766

**Type:** A

## Debit Information:

**Type ID:** G

**ID:** 01091010003211

**Name:**

**Address:**

## Credit Information:

**Type ID:** D

**ID:** DD0042000742364756

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 22, REDGLOBE COURT,
SIMPSONVILLE, SC 29681
USA

## Credit Pay to Party Information:

**CPP ID Type:**

**CPP ID:**

*1A_01571*

CPP Name:

CPP Addr:

**Originator Bank:**

OB ID Type: A

OB ID: 021000018

OB Name: THE BANK OF NEW YORK

OB Address: THE BANK OF NEW YORK
48 WALL ST
NEW YORK CITY,NY 10286
10286

OB Country: US

**Beneficiary Bank:**

BB ID Type: A

BB ID: 053207766

BB Name: WACHOVIA BANK, NATIONAL ASSOCIATION

BB Address: WACHOVIA BANK, NATIONAL
ASSOCIATION
177 MEETING ST
CHARLESTON,SC 29401

BB Country: US

Reference Number:

**Sending Bank Information:**

SB ID Type:

SB ID:

SB Name:

SB Address:

Senders Ref:

**Intermediary Bank Information:**

IB ID Type:

IB ID:

IB Name:

IB Address:

**Additional Information:**

OBI Pay Info: AS AN ADVANCE TOWARDS CIRRUS US OPE*RATIONS.*

Bank to Bank Information:

Go Back

1A_01572

Wire Detail

Page 1 of 2

  **NEWTON**

# Wire Detail Page

Home | Wire Summary Inquiry | Wire Detail Inquiry | Bank to Bank Search | Orp to Bnp Search | Help
Credit Pay to Party Search | Orp and Bnp Search | Restricted Country Search | Admin Menu | Archive Menu | Report

Originator\Beneficiary Information        Credit Pay to Party Information        Sender\Intermediary Information
Debit\Credit Information                          Originator\Beneficiary Bank            Additional Information

**Go Back**

| | | |
|---|---|---|
| **Date:** 08/24/2006 | **Amount:** $124,985.00 | **Reference Number:** 008003 |
| **Wire Exchange Rate:** 1 | **Wire Currency:** 124985.00 | **Wire Currency Code:** USD |
| **Base Exchange Rate:** 1 | **Base Currency:** 124985.00 | **Base Currency Code:** USD |
| **Client Source:** IX | **Value Date:** 08/24/2006 | **Entered By:** |
| **Msg Type Cd:** FWI1000 | | |

## Originator Information:

**Name:** CIRRUS ELECTRONICS PTE LTD

**Address:** 2 ANG MO KIO STREET 64
HEX 03-00 ECON BLDG,AMK IND PK 3
SINGAPORE 569084

**Country:** SG        CB-CIBG COUNTRY LIST

**Account:**

**Acct Type:** G

**Bank:** 004

**Bank ID:** 021000018

**Type:** A

## Beneficiary Information:

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 22, REDGLOBE COURT,
SIMPSONVILLE, SC 29681
USA

**Country:** US

**Account:** 2000-74-236-4756

**Acct Type:** D

**Bank:** 004

**Bank ID:** 053207766

**Type:** A

## Debit Information:

**Type ID:** G

**ID:** 01091010003211

**Name:**

**Address:**

## Credit Information:

**Type ID:** D

**ID:** DD0042000742364756

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 22, REDGLOBE COURT,
SIMPSONVILLE, SC 29681
USA

## Credit Pay to Party Information:

**CPP ID Type:**

**CPP ID:**

1A_01573

CPP Name:

CPP Addr:

**Originator Bank:**

OB ID Type: A

OB ID: 021000018

OB Name: THE BANK OF NEW YORK

OB Address: THE BANK OF NEW YORK
48 WALL ST
NEW YORK CITY, NY 10286
10286

OB Country: US

**Beneficiary Bank:**

BB ID Type: A

BB ID: 053207766

BB Name: WACHOVIA BANK, NATIONAL ASSOCIATION

BB Address: WACHOVIA BANK, NATIONAL
ASSOCIATION
177 MEETING ST
CHARLESTON, SC 29401

BB Country: US

Reference Number:

**Sending Bank Information:**

SB ID Type:

SB ID:

SB Name:

SB Address:

Senders Ref:

**Intermediary Bank Information:**

IB ID Type:

IB ID:

IB Name:

IB Address:

**Additional Information:**

OBI Pay Info: AS AN ADVANCE TOWARDS CIRRUS US*OPERATIONS.*

Bank to Bank Information:

Go Back

1A_01574

  **NEWTON**

# Wire Detail Page

Home |Wire Summary Inquiry |Wire Detail Inquiry |Bank to Bank Search |Orp to Bnp Search | Help
Credit Pay to Party Search |Orp and Bnp Search |Restricted Country Search |Admin Menu |Archive Menu |Report

Originator\Beneficiary Information        Credit Pay to Party Information        Sender\Intermediary Information
Debit\Credit Information        Originator\Beneficiary Bank        Additional Information

| Go Back |
|---|

| | | | | | |
|---|---|---|---|---|---|
| Date: | 11/17/2006 | Amount: | $299,985.00 | Reference Number: | 009339 |
| Wire Exchange Rate: | 1 | Wire Currency: | 299985.00 | Wire Currency Code: | USD |
| Base Exchange Rate: | 1 | Base Currency: | 299985.00 | Base Currency Code: | USD |
| Client Source: | IX | Value Date: | 11/17/2006 | Entered By: | |
| Msg Type Cd: | FWI1000 | | | | |

**Originator Information:**

| | |
|---|---|
| Name: | CIRRUS ELECTRONICS PTE LTD |
| Address: | 2 ANG MO KIO STREET 64 HEX 03-00 ECON BLDG,AMK IND PK 3 SINGAPORE 569084 |
| Country: | SG        CB-CIBG COUNTRY LIST |
| Account: | |
| Acct Type: | G |
| Bank: | 004 |
| Bank ID: | 021000018 |
| Type: | A |

**Beneficiary Information:**

| | |
|---|---|
| Name: | CIRRUS ELECTRONICS LLC |
| Address: | 201 HUDDERSFIELD DRIVE, SIMPSONVILLE, SC 29681 USA |
| Country: | US |
| Account: | 2000-74-236-4756 |
| Acct Type: | D |
| Bank: | 004 |
| Bank ID: | 053207766 |
| Type: | A |

**Debit Information:**

| | |
|---|---|
| Type ID: | G |
| ID: | 01091010003211 |
| Name: | |
| Address: | |

**Credit Information:**

| | |
|---|---|
| Type ID: | D |
| ID: | DD0042000742364756 |
| Name: | CIRRUS ELECTRONICS LLC |
| Address: | 201 HUDDERSFIELD DRIVE, SIMPSONVILLE, SC 29681 USA |

**Credit Pay to Party Information:**

| | |
|---|---|
| CPP ID Type: | |
| CPP ID: | |

1A_01575

CPP Name: 

CPP Addr: 

**Originator Bank:**

OB ID Type: A

OB ID: 021000018

OB Name: THE BANK OF NEW YORK

OB Address: THE BANK OF NEW YORK
48 WALL ST
NEW YORK CITY, NY 10286
10286

OB Country: US

**Beneficiary Bank:**

BB ID Type: A

BB ID: 053207766

BB Name: WACHOVIA BANK, NATIONAL ASSOCIATION

BB Address: WACHOVIA BANK, NATIONAL
ASSOCIATION
177 MEETING ST
CHARLESTON, SC 29401

BB Country: US

Reference Number: 

**Sending Bank Information:**

SB ID Type: 

SB ID: 

SB Name: 

SB Address: 

Senders Ref: 

**Intermediary Bank Information:**

IB ID Type: 

IB ID: 

IB Name: 

IB Address: 

**Additional Information:**

OBI Pay Info: TOWARDS BILLS SETTLEMENTS*

Bank to Bank Information: 

Go Back

1A_01576

  **NEWTON**

# Wire Detail Page

Home |Wire Summary Inquiry |Wire Detail Inquiry |Bank to Bank Search |Orp to Bnp Search | Help
Credit Pay to Party Search |Orp and Bnp Search |Restricted Country Search |Admin Menu |Archive Menu |Report

Originator\Beneficiary Information        Credit Pay to Party Information        Sender\Intermediary Information
Debit\Credit Information                  Originator\Beneficiary Bank           Additional Information

| Go Back |
| --- |

| Date: | 03/07/2007 | Amount: | $499,985.00 | Reference Number: | 010662 |
| --- | --- | --- | --- | --- | --- |
| Wire Exchange Rate: | 1 | Wire Currency: | 499985.00 | Wire Currency Code: | USD |
| Base Exchange Rate: | 1 | Base Currency: | 499985.00 | Base Currency Code: | USD |
| Client Source: | IX | Value Date: | 03/07/2007 | Entered By: | |
| Msg Type Cd: | FWI1000 | | | | |

## Originator Information:

| Name: | CIRRUS ELECTRONICS PTE LTD |
| --- | --- |
| Address: | 2 ANG MO KIO STREET 64 SINGAPORE 569084 |
| Country: | SG    CB-CIBG COUNTRY LIST |
| Account: | 9939318034 |
| Acct Type: | G |
| Bank: | 004 |
| Bank ID: | 021000018 |
| Type: | A |

## Beneficiary Information:

| Name: | CIRRUS ELECTRONICS LLC |
| --- | --- |
| Address: | 201 HUDDERSFIELD DRIVE, SIMPSONVILLE, SC 29681 USA |
| Country: | US |
| Account: | 2000-74-236-4756 |
| Acct Type: | D |
| Bank: | 004 |
| Bank ID: | 053207766 |
| Type: | A |

## Debit Information:

| Type ID: | G |
| --- | --- |
| ID: | 01091010003211 |
| Name: | |
| Address: | |

## Credit Information:

| Type ID: | D |
| --- | --- |
| ID: | DD0042000742364756 |
| Name: | CIRRUS ELECTRONICS LLC |
| Address: | 201 HUDDERSFIELD DRIVE, SIMPSONVILLE, SC 29681 USA |

## Credit Pay to Party Information:

| CPP ID Type: | |
| --- | --- |
| CPP ID: | |

1A_01577

**CPP Name:**

**CPP Addr:**

## Originator Bank:

**OB ID Type:** A

**OB ID:** 021000018

**OB Name:** THE BANK OF NEW YORK

**OB Address:** THE BANK OF NEW YORK
48 WALL ST
NEW YORK CITY,NY 10286
10286

**OB Country:** US

## Beneficiary Bank:

**BB ID Type:** A

**BB ID:** 053207766

**BB Name:** WACHOVIA BANK, NATIONAL ASSOCIATION

**BB Address:** WACHOVIA BANK, NATIONAL
ASSOCIATION
177 MEETING ST
CHARLESTON,SC 29401

**BB Country:** US

**Reference Number:**

## Sending Bank Information:

**SB ID Type:**

**SB ID:**

**SB Name:**

**SB Address:**

**Senders Ref:**

## Intermediary Bank Information:

**IB ID Type:**

**IB ID:**

**IB Name:**

**IB Address:**

## Additional Information:

**OBI Pay Info:** TOWARDS BILLS SETTLEMENTS*

**Bank to Bank Information:**

Go Back

1A_01578

 

# Wire Detail Page

Home |Wire Summary Inquiry |Wire Detail Inquiry |Bank to Bank Search |Orp to Bnp Search | Help
Credit Pay to Party Search |Orp and Bnp Search |Restricted Country Search |Admin Menu |Archive Menu |Report

Originator\Beneficiary Information          Credit Pay to Party Information          Sender\Intermediary Information
Debit\Credit Information          Originator\Beneficiary Bank          Additional Information

Go Back

| | | | | | | |
|---|---|---|---|---|---|---|
| **Date:** | 03/22/2007 | **Amount:** | $249,985.00 | **Reference Number:** | 011352 | |
| **Wire Exchange Rate:** | 1 | **Wire Currency:** | 249985.00 | **Wire Currency Code:** | USD | |
| **Base Exchange Rate:** | 1 | **Base Currency:** | 249985.00 | **Base Currency Code:** | USD | |
| **Client Source:** | IX | **Value Date:** | 03/22/2007 | **Entered By:** | | |
| **Msg Type Cd:** | FWI1000 | | | | | |

## Originator Information:

**Name:** CIRRUS ELECTRONICS PTE LTD

**Address:** 2 ANG MO KIO STREET 64
SINGAPORE 569084

**Country:** SG          CB-CIBG COUNTRY LIST

**Account:** 9939318034

**Acct Type:** G

**Bank:** 004

**Bank ID:** 021000018

**Type:** A

## Beneficiary Information:

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 201 HUDDERSFIELD DRIVE,
SIMPSONVILLE, SC 29681
USA

**Country:** US

**Account:** 2000-74-236-4756

**Acct Type:** D

**Bank:** 004

**Bank ID:** 053207766

**Type:** A

## Debit Information:

**Type ID:** G

**ID:** 01091010003211

**Name:**

**Address:**

## Credit Information:

**Type ID:** D

**ID:** DD0042000742364756

**Name:** CIRRUS ELECTRONICS LLC

**Address:** 201 HUDDERSFIELD DRIVE,
SIMPSONVILLE, SC 29681
USA

## Credit Pay to Party Information:

**CPP ID Type:**

**CPP ID:**

1A_01579

**CPP Name:**

**CPP Addr:**

**Originator Bank:**

| | **Beneficiary Bank:** |

**OB ID Type:** A

**BB ID Type:** A

**OB ID:** 021000018

**BB ID:** 053207766

**OB Name:** THE BANK OF NEW YORK

**BB Name:** WACHOVIA BANK, NATIONAL ASSOCIATION

**OB Address:** THE BANK OF NEW YORK
48 WALL ST
NEW YORK CITY, NY 10286
10286

**BB Address:** WACHOVIA BANK, NATIONAL ASSOCIATION
177 MEETING ST
CHARLESTON, SC 29401

**OB Country:** US

**BB Country:** US

**Reference Number:**

**Sending Bank Information:**

**Intermediary Bank Information:**

**SB ID Type:**

**IB ID Type:**

**SB ID:**

**IB ID:**

**SB Name:**

**IB Name:**

**SB Address:**

**IB Address:**

**Senders Ref:**

**Additional Information:**

**OBI Pay Info:** TOWARDS BILLS SETTLEMENTS*

**Bank to Bank Information:**

Go Back

1A_01580

# EXHIBIT 3

**Cirrus**

CIRRUS ELECTRONICS, LLC - USA

CIRRUS ELECTRONICS PTE LTD - SINGAPORE

CIRRUS ELECTRONICS MARKETING (P) LTD - BANGALORE, INDIA

| Home | About Us | Products & Services | People | Suppliers | Contact Us | Sales Enquiry Form |

We strive to provide the highest level of customer satisfaction

➤➤ **People**

### Team Profile

**1. Mr. P. Sudarshan - President & Group head**

Mr. Sudarshan founded the Cirrus group in 1997 in Singapore and has been its driving force in its growth and expansion.

He has over 23 years of professional experience having been part of several organizations. He has extensive experience covering design and manufacturing, marketing and International business management.

Prior to his founding the Cirrus group, he spent couple of years with the BBS group in Singapore where he honed his skills in International business.

Before moving to Singapore, Sudarshan worked as a senior executive in India, at Malhar Corporation, a Marketing organization involved in business promotion of products and services from USA and APAC region to Indian market. During his days at Malhar, he was responsible for promoting leading brands like IDT, Dallas Semi conductors, Hitachi semiconductors, Xylinx and other similar companies products in the Indian market.

Before joining Malhar, Sudarshan was with Hindustan Aeronautics Ltd, one of India's premier defense industries, developing and manufacturing communication equipments and systems.

Mr. Sudarshan holds a bachelor's degree in Electronics & Communications Engineering from Regional Engineering College, Trichy, India and a Post graduate diploma in Management from SIM (Singapore Institute of management).

**2. Mr. AKN Prasad - CEO India Operations**



Mr. Prasad joined the Cirrus Group in 2004 as its CEO for the Indian Operations and established the Cirrus India office in Bangalore to consolidate and provide a one stop customer interface to all Cirrus customers in India.

Mr. Prasad brings to Cirrus over 30 years professional experience in Design, Manufacturing and Marketing.

Prior to joining Cirrus, Mr. Prasad has held senior management positions as General Manager(Operations) at Optimus Ltd, Head of Resource & Operations at Intertec Communications, CEO of Ind Micro systems and chief Engineer (Designs) Communication Systems at Hindustan Aeronautics Ltd.

Mr. Prasad has been credited with designing and bringing into production and use several Avionics equipments for the Indian Air force.

He has traveled extensively all over the world and has interacted with leading business groups in USA during his varied professional career.

At Cirrus he is now responsible to steer the company into its next phase of growth by providing value added services to customers and expand its base of operations.



Mr. Prasad holds a degree in Electronics & Communications Engineering from Indian Institute of Science, Bangalore, India and a degree in Electrical Engineering from Bangalore University, India.

3.  **Mr. Shankar B. Kulkarni - Director (Marketing)**



Shankar has been involved with Cirrus more or less from inception. He was initially responsible for handling sales and marketing functions for the southern region in an individual capacity. With the creation of a full fledged India operations of Cirrus under Mr. AKN Prasad, Shankar comes on board as Full time Director in charge of Sales and marketing functions. Shankar has over all 16 Yrs of experience, all in the areas of Sales and marketing.

Prior to becoming part of Cirrus he was with AARJAY electronics handling their major US distribution lines for the Indian Market.

Shankar has also spent his initial 5 yrs with Malhar corporation and promoting leading US companies like IDT, Xylinx, Dallas semiconductors, EG&G Rotron etc amongst Indian defense industries.

Shankar has a diploma in Electronics and Communication Engineering.

4.  **Mr. S.Sundar - Director (Operations)**



Sundar has been with Cirrus for the last 5 years and has been responsible for handling all back office operations covering processing of enquiries to executing Purchase orders. He was initially working out of Cirrus Singapore office and has, since March 2006, moved to Cirrus Bangalore Office. He has wide experience in working with leading USA and APAC distributors of electronic and electromechanical components and supplying them to Indian customers. Sundar has established close relationships with leading Indian customers through handling their requirements from enquiry to shipments and responding to post shipment issues.

Prior to joining Cirrus, Sundar was with Chemplast Sanmar Pvt Ltd and has gained overall experience in industrial management.

Mr. Sundar has a bachelors degree in Science from Madras University, India.

CI_00290

CIRRUS ELECTRONICS, LLC – USA

CIRRUS ELECTRONICS PTE LTD – SINGAPORE

CIRRUS ELECTRONICS MARKETING (P) LTD – BANGALORE, INDIA

| Home | About Us | Products & Services | People | Suppliers | Contact Us | Sales Enquiry Form |

We strive to provide the highest level of customer satisfaction

➤ Contact Us

**Cirrus Electronics LLC**
201 Huddersfield Drive,
Simpsonville South Carolina 29681
TEL: (864) 286 3030
FAX: (864) 286 1144
Email: usa@cirruselectronics.com
Contact: Ms. Mythili Gopal

**Cirrus Electronics Pte Ltd**
Level 3, ECON Building ,
No 2, Ang Mo Kio Street 64,
Ang Mo Kio Industrial Park 3,
Singapore. 569-084.
TEL: (65) 6481-2444
FAX: (65) 6481-3444 / 6234-0671
Email: cirrus@cirruselectronics.com
Contact: Mr. Murali

**Cirrus Electronics Marketing (P) Ltd**
# 303, Suraj ganga Arcade, 332/7,
15th Cross 2nd Block, jayanagar,
Bangalore - 560011,
INDIA
TEL: 91 80 4131 2100
FAX: 91 80 4131 2111
Email: sales@cirruselectronics.com
Contact:
Mr. Shankar Kulkarni - Director Marketing
Mr. S.Sundar - Director Operations
Mr. AKN Prasad - CEO India operations.

TOP

| Branch Name | Select Branch ▾ |
| Name | |
| Address | |
| Telephone Number | |
| Fax No | |
| E-Mail | |

CI_00291



Description



Submit    Reset

TOP

CI_00292



**Cirrus**

| Home | About Us | Products & Services | People | Suppliers | Contact Us | Sales Enquiry Form |

We strive to provide the highest level of customer satisfaction

➤➤ *Suppliers*

**Electronic Components:**

| | | | |
|---|---|---|---|
| AGILENT TECHNOLOGIES | ALLEGRO | ALTERA | AMD, ANALOG DEVICES |
| ATMEL | AVX | BURR-BROWN | CYPRESS |
| DALLAS | EVERLIGHT | FAIRCHILD | IDT |
| INFINEON | INTERSIL | I.R | INTEL |
| KEMET | KINGBRIGHT | LATTICE | LITTLEFUSE |
| MAXIM | MICROCHIP | MITSUBHISHI | MOTOROLA |
| MURATA | NATIONAL SEMICONDUCTOR | NEC | OKI |
| ON SEMICONDUCTOR | PHILIPS | ST MICRO | TEXAS INSTRUMENTS |
| TOSHIBA | TYCO | VISHAY | WINBOND |
| XILINX | ZARLINK | ZILOG | INTERPOINT |
| PRECISION DEVICES INC. | Q-TECH | AUSIN SEMICONDUCTOR | |

**RF & MICROWAVE Components:**

Global supplier of flexible-twistable waveguide assemblies to communications, avionics, medical and defence industries

RF, Microwave and Millimeter Wave Engineering Solutions.

Home | About Us | Product & Services | People | Suppliers | Contact Us | Sales Enquiry Form

CI_00293



© 2006 Cirrus Electronics Marketing Privated Ltd All rights reserved.                    Designed by Webindia

CI_00294

**Cirrus**

CIRRUS ELECTRONICS, LLC – USA

CIRRUS ELECTRONICS PTE LTD – SINGAPORE

CIRRUS ELECTRONICS MARKETING (P) LTD – BANGALORE, INDIA

Home    About Us    Products & Services    People    Suppliers    Contact Us    Sales Enquiry Form

We strive to provide the highest level of customer satisfaction

➤➤ *Products*





| INTEGRATED DEVICES | DISCRETE DEVICES |
| --- | --- |
| AC-DC & DC-AC Converters | Diodes / zener |
| Bus Isolators | Bridge rectifiers |
| Communications & Remote ICs | Power Regulators |
| Micro Controllers. Micro Processors & support ICs | RF MOSFETS |
| Special Ics | Crystal Oscillators |
| Power Amplifiers | Thyristors, Modules etc. |
| Drives, Memory | |
| Opto Electronics Products etc. | |

**PASSIVE DEVICES**

Capacitors

**CONNECTORS**

| | Filters |
| --- | --- |
| PCB Connectors | Varistors |
| Din Connectors & Flat Cable Connectors | Inductors |
| Circular & Heavy duty Connectors | EMC |
| Ic Sockets, PLCC & PGA Sockets RF Connectors | Thermistors |
| RF Connectors | Resistors |
| Fiber Optic Connectors | |
| Power Connectors | |
| Automobile connectors | |

Others

Cables

Cable Connector Assemblies

Test & Measuring Equipments

Relays

Flexible Twistable Waveguide Assemblies from WR-284 to WR-22

CI_00295

Cirrus Electronics Pte Ltd

**Cirrus**

CIRRUS ELECTRONICS, LLC – USA
CIRRUS ELECTRONICS PTE LTD – SINGAPORE
CIRRUS ELECTRONICS MARKETING (P) LTD – BANGALORE, INDIA

| Home | About Us | Products & Services | People | Suppliers | Contact Us | Sales Enquiry Form |

We strive to provide the highest level of customer satisfaction

➤➤ *About Us*

Cirrus Electronics Pte Ltd was established in 1997 as an Independent distributor for hard to find electronic components.

When there was a growing need for reliable source of semiconductors being discontinued, Cirrus started off its business with a focus on sourcing obsolete and military level components. Cirrus works closely with customers in getting these obsolete devices re tested if necessary or up screen them to higher levels of certification as needed.

Today, Cirrus not only specializes in sourcing MIL components that are marked discontinued by the original manufacturer but also acts as one stop distributors for all generic and military grade electronic and electro mechanical components from world wide sources.

Cirrus also works closely with customers to develop alternate solutions for obsolete devices, converting obsolete designs into new compact modules and upgrading obsolete designs to current standards maintaining pin to pin compatibility.

Cirrus works towards providing highest level of customer satisfaction by identifying their problems and providing solutions.

---

**Our Mission**
To be a leading distributor of generic and mission critical components to leading manufacturers providing timely support to their needs and ensuring highest level of customer satisfaction.

**Our Expertise**
- Shipping offices in USA and Singapore
- Back office operations and marketing support through bangalore, India Office
- Long standing relationship with leading vendors from USA and APAC regions
- Trained personnel with hands on industry experience in defense and industrial products

**Our Services**
We strive to provide the highest level of customer satisfaction at every point of contact both before and after sales.

**Our Customer Service**
We strive to provide the highest level of customer satisfaction at every point of contact both before and after sales.

**Cirrus Customers**
We strive to build long term relationships with our customer. It is a Customer Oriented Company.

CI_00296

# EXHIBIT 4

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    03/25/2007

On March 23, 2007, PARTHASARATHY SUDARSHAN ("SUDARSHAN"), date of birth 06/01/1960, social security account number          , was arrested without incident pursuant to a Federal Arrest Warrant issued in the District of Columbia. SUDARSHAN was arrested in his home at 201 Huddersfield Drive, Simpsonville, South Carolina. After the arrest, SUDARSHAN was transported by Special Agents Russ Nimmo, Charles Price and Robert Scott to the Greenville office of the FBI. Sudarshan was not questioned while he was being transported to the FBI's office and he was instructed not to make, and did not make, any statements while being transported.

Upon arrival at the FBI office, SUDARSHAN was advised of his rights via a verbatim reading of FBI form FD-395. This form was also provided to SUDARSHAN in Tamil. After being advised of his rights, SUDARSHAN stated that he wanted to waive his rights and make a statement. SUDARSHAN signed waiver of rights forms in both English and Tamil. After waiving his rights, SUDARSHAN provided the following information to the interviewing agents:

The primary clients for SUDARSHAN'S business, CIRRUS ELECTRONICS ("CIRRUS"), were HAL (Hindustan Aeronautics Limited) and ADE (Aeronautical Development Establishment).

SUDARSHAN recently attended an export conference in Washington DC in January 2007, and was in the process of establishing an export compliance program for CIRRUS. SUDARSHAN had not received export guidance materials before the January 2007 conference.

CONFRONTATION REGARDING HONESTY AND SUDARSHAN'S REVISED AND ENHANCED VERBAL STATEMENTS

SURDARSHAN was advised that the interviewing Agents knew that he was not being candid and he was advised of the importance of providing honest and accurate information, without purposely omitting details. SUDARSHAN was challenged about the fact that he had not received guidance on export compliance and asked if he was familiar with the conference held in Bangalore, India, during the summer of 2005. SUDARSHAN admitted that he

---

Investigation on    03/23/2007    at   Greenville, South Carolina

File #  310Q-WF-229966-302                          Date dictated   03/25/2007

SA Charles E. Price, II
by   SA R. Russell Nimmo

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ___PARTHASARATHY SUDARSHAN_____ , On _03/23/2007___ , Page ___2___

had not been candid and stated that he was familiar with this
conference and that he had in fact received guidance materials
on how to export US products in compliance with appropriate laws
and regulations.

SUDARSHAN was also challenged about providing an
accurate account of who CIRRUS' clients were, at which point
SUDARSHAN again admitted that he had not been candid.
Thereafter, SUDARSHAN indicated that CIRRUS had also exported
items to BDL (Bharat Dynamics Limited), VSSC (Vikram Sarabhai
Space Center) and to ADE for use in the Light Combat Aircraft
(LCA).

CIRRUS' EXPORTS TO BDL

SUDARSHAN stated that CIRRUS had supplied electronic
components to BDL which they should not have received.
SUDARSHAN admitted knowing that BDL was not allowed to receive
items without a licence because they were on the Department of
Commerce Entity List.  SUDARSHAN admitted that he knew BDL was
on the Entity List because BDL engaged in the research and
development of missile technology for the Government of India.

CREATION OF FALSE STATEMENT OF ASSURANCE

SUDARSHAN was shown a copy of a "Statement of
Assurance", dated 09-16-2005 that CIRRUS had submitted to AVNET,
a US vendor from which CIRRUS had purchased the items.
SUDARSHAN acknowledged that the "Statement of Assurance" was not
accurate because it did not indicate items purchased from AVNET
were also sent to BDL.  SUDARSHAN stated that he created and
signed the false statement of assurance and that he knew it was
inaccurate and misleading when he created/signed it.  SUDARSHAN
stated that he knowingly attempted to conceal the fact that BDL
was also receiving the items.  The statement is inaccurate
because it indicates that the items went to HAL when, in fact,
the items also went to BDL.  SUDARSHAN indicated that while he
had supplied components to BDL, he recently discontinued that
business relationship because it was not profitable.

SUBMISSIONS OF FALSE END-USER STATEMENTS TO FACILITATE EXPORTS
TO VSSC

CIRRUS purchased SRAMs (Static Random Access Memory
chips) from WHITE ELECTRONICS ("WHITE") on behalf of VSSC.

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ____PARTHASARATHY SUDARSHAN____, On _03/23/2007_, Page ___3___

SUDARSHAN admitted that false end-user statements were provided
to WHITE in order to conceal the fact that WHITE's SRAMs were
sent to VSSC. The false end-user statements indicated that NPOL
(Naval Physical & Oceanographic Laboratory) was the recipient of
these SRAMs. These false end-user statements were purportedly
signed by Mr. SREEPRAKASH at NPOL. However, SREEPRAKASH did not
actually sign the forms and he was not aware that his name was
used to misrepresent the true end-user for these SRAMs. None of
the NPOL end-user statements provided by CIRRUS to WHITE were
authentic. SUDARSHAN admitted that he knew that these false end
-user certifications were being created and sent to WHITE.
SUDARSHAN stated "I take responsibility, sir. I did that. That
was a grave mistake."

     When CORY JAIMES, a sales representative at WHITE
assigned to the CIRRUS account, discovered that SUDARSHAN was
responsible for submitting false end-user statements, he severed
the business relationship between WHITE and CIRRUS.

     SUDARSHAN admitted that since VSSC still had a need for
the SRAMs, he needed to find an alternative source to supply the
components, even through he knew that they were still restricted
for export to VSSC. The alternative source that SUDARSHAN found
to supply the restricted SRAMs was a distributor in New York
called ALL-TECH ELECTRONICS ("ALL-TECH"). ALL-TECH procured
SRAMs that were functionally equivalent to the WHITE SRAMs from
a manufacturer called AUSTIN SEMICONDUCTOR. ALL-TECH sent the
SRAMs to CIRRUS in South Carolina, and was not aware that they
would ultimately be sent to VSSC by CIRRUS. SUDARSHAN admitted
that he knew he was not supposed to do this and he admitted to
deceiving ALL-TECH because he thought they would not supply him
with the parts if they knew where the parts were actually going.

PROCUREMENT OF i960 MICROPROCESSORS FOR THE LIGHT COMBAT
AIRCRAFT (LCA)

     SUDARSHAN initially indicated that CIRRUS procured the
i960 microprocessors (i960) for a project with LOCKHEED MARTIN.
SUDARSHAN was advised that the interviewing Agents knew that he
was not being candid. SUDARSHAN acknowledged that he had not
been candid and then admitted that he was directed to procure
the i960 by ADE in 2003. SUDARSHAN knew that the i960 was
critical to the operation of the Government of India's Light
Combat Aircraft (LCA). SUDARSHAN was familiar with the
electrical engineering requirements for the LCA because he was

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ____PARTHASARATHY SUDARSHAN____ , On 03/23/2007 , Page ___4___

previously employed by HAL and worked on combat aircraft.
Specifically, SUDARSHAN knew that the i960 was needed to enable
the navigation and weapons systems of the aircraft and as such,
would require an export licence. SUDARSHAN procured the i960
from a US vendor called ROCHESTER ELECTRONICS ("ROCHESTER").

       In order to facilitate the delivery of the i960 and
ensure that it was tested properly, SUDARSHAN "coordinated" the
transaction with MANIK MUKHERJEE ("MUKHERJEE"), who he knew to
be the defense attache at the Indian Embassy in Washington DC.
SUDARSHAN indicated to MUKHERJEE that the order could be sent to
Singapore first and then to India, in order to avoid US export
controls.

ACTING AS AN AGENT OF THE GOVERNMENT OF INDIA

       SUDARSHAN admitted that he acted as an "agent" of the
Government of India and assisted India's military and defense
communities in acquiring restricted technology from US
companies. However, SUDARSHAN insisted that he did so as a
businessman and not as a professional intelligence officer.
SUDARSHAN claimed that his underlying motivation was to
personally profit financially from his efforts. SUDARSHAN has
never been in the formal employ of an Indian intelligence agency
and he has never received any money or gifts from the Indian
intelligence community.

SUDARSHAN'S LEADERSHIP ROLE AT CIRRUS AND HIS 9/30/04 EMAIL

       SUDARSHAN admitted that he supervised and directed
CIRRUS' US based employees. SUDARSHAN specifically stated that
AKN PRASAD and MYTHILI GOPAL and others assisted him in avoid US
export laws. Both PRASAD and GOPAL knew what they were doing
was wrong but did what they did at SUDARSHAN'S direction and
request. SUDARSHAN repeatedly stated that he took
responsibility for their actions and expressed remorse for
getting them in trouble.

       SUDARSHAN was shown a 9/30/04 email, timestamped
8:07:35am which begins "Dear Prasad and Mythili, 1) On reading
the emails from Jaimes,,," (see attachment 7 to SUDARSHAN'S
signed statement). SUDARSHAN admitted that he wrote this email
to calm his employees down after COREY JAIMES from WHITE caught
them filing false end-user certificates. SUDARSHAN admitted
that he knew that what they were doing was wrong and that he was

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ___PARTHASARATHY SUDARSHAN___ , On 03/23/2007 , Page ___5___

        attempting to calm his employees down so that they would continue to assist him in obtaining restricted technology for the Government of India.

        SUDARSHAN also admitted that at the same time he was attempting to convince his employees to continue with their illegal activity, he was sending another email to the company falsely claiming that the actions which were discovered were those of a rogue employee and not, in any way, sanctioned by the company.

        SUDARSHAN admitted that his actions were essentially damage control, attempting to keep the US vendor from alerting US authorities and simultaneously downplaying the incident to his employees to ensure that they would continue to assist him in his efforts to acquire restricted technology.

REVIEW OF CHARTS RELATING TO ADE AND BDL

        SUDARSHAN was shown a chart which shows ADE's acquisition of 500 i960 processors (attached as page 5 of signed statement) and a chart which shows BDL's acquisition of multiple items restricted for export to BDL (attached as page 6 of the signed statement). After reviewing these charts SUDARSHAN stated that they accurately reflected activities which he directed and facilitated through CIRRUS. SUDARSHAN reviewed and signed each chart.

SUDARSHAN'S VERBAL CONFIRMATION OF POINTS TO BE INCLUDED IN HIS WRITTEN STATEMENT

        Prior to preparing a draft written statement for SUDARSHAN'S review and adoption, SA PRICE informed SUDARSHAN that he intended to incorporate the following points from SUDARSHAN'S oral statement into a formal written statement. SA PRICE went over each of the following points with SUDARSHAN and SUDARSHAN stated that SA PRICE's description of the points was accurate:

        * CIRRUS ELECTRONICS was used to willfully assist the Government of India to procure military technology that was restricted for export, based on US regulations;

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ____PARTHASARATHY SUDARSHAN_____ , On 03/23/2007 , Page ___6___

      * In order to facilitate these exports, SUDARSHAN made false representations and filed false end-user statements;

      * MYHTILI GOPAL and AKN PRASAD avoided US laws and regulations at SUDARSHAN'S request;

      * SUDARSHAN arranged for the export of items to BDL, knowing that BDL was a restricted entity;

      * SUDARSHAN arranged for the export of i960 microprocessors, in coordination with MANIK MUKHERJEE at the Indian Embassy, knowing that they would be used for the Light Combat Aircraft (LCA);

      * The Statement of Assurance provide to AVNET was a false representation;

      * SUDARSHAN knew what he was doing was wrong and takes responsibility for his actions.

      After SUDARSHAN acknowledged these points to be true, SA PRICE hand wrote a statement for SUDARSHAN to review, modify and adopt. SA PRICE informed SUDARSHAN that he was free to make whatever changes to the statement that he wanted and that he had to be completely comfortable with the statement. SA PRICE then read the statement to SUDARSHAN, word by word. The statement is transcribed below, as SUDARSHAN'S INITIAL STATEMENT. As SUDARSHAN and SA PRICE went through the statement, SUDARSHAN made one substantive change to the last sentence in the statement and made one substantive addition to the statement (at the very end which he made in his own handwriting). These changes are shown below, represented in bold and strike through text.

      (In addition to the substantive changes above, SUDARSHAN initialed four clerical changes which SA PRICE made to the statement: 1) page 1, third line from bottom, delete "have", 2) page 2, second line from top, delete "they", 3) page 2, fifth line from top, insert "end user", 4) page 2, eighth line from top, insert "and others". The clerical changes are not shown in the statement below.)

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of     PARTHASARATHY SUDARSHAN _____ , On 03/23/2007 __ , Page ___ 7 ___

SUDARSHAN'S INITIAL STATEMENT

        I, PARTHASARATHY SUDARSHAN, AM MAKING THIS STATEMENT TO
FBI SPECIAL AGENTS CHARLES PRICE AND RUSS NIMMO IN CONNECTION
WITH A CRIMINAL INVESTIGATION WHICH THEY ARE CONDUCING.  I AM
MAKING THIS STATEMENT FREELY AND VOLUNTARILY.  NO PROMISES HAVE
BEEN MADE TO ME, AND NO THREATS HAVE BEEN MADE AGAINST ME, IN
ORDER TO GET ME TO GIVE THIS STATEMENT.  I AM GIVING THIS
STATEMENT BECAUSE IT IS TRUE.

        I HAVE KNOWINGLY AND DELIBERATELY USED MY COMPANY
(CIRRUS ELECTRONICS) TO ASSIST THE GOVERNMENT OF INDIA'S
MILITARY AND DEFENSE COMMUNITY IN ACQUIRING TECHNOLOGY AND ITEMS
WHICH THEY ARE PROHIBITED FROM OBTAINING BASED ON US LAWS AND
REGULATIONS.  SPECIFICALLY, I KNOWINGLY ARRANGED FOR THE
TRANSFER OF RESTRICTED ITEMS TO RESTRICTED ENTITIES (FOR EXAMPLE
BDL).  IN ORDER TO ACCOMPLISH THESE UNAUTHORIZED TRANSFERS I
MADE FALSE REPRESENTATIONS (FOR EXAMPLE THE 9-16-05 STATEMENT OF
ASSURANCE, ATTACHED) AND I FILED FALSE END USER CERTIFICATES
(FOR EXAMPLE NPOL END USER CERTIFICATES FOR TRANSFERS FROM WHITE
ELECTRONICS TO VSSC).  MEMBERS OF MY COMPANY, SPECIFICALLY AKN
PRASAD AND MYTHILI GOPAL AND OTHERS ASSISTED ME IN AVOIDING US
LAWS AND REGULATIONS BUT THEY DID SO AT MY REQUEST AND
DIRECTION.  I BEAR RESPONSIBILITY FOR THEIR INVOLVEMENT.

        I ARRANGED THE TRANSFER OF RESTRICTED ITEMS
(CAPACITORS, SEMICONDUCTORS, RECTIFIERS AND RESISTORS) SHOWN ON
THE ATTACHED SHEET FROM US VENDORS TO BDL AND I DID SO KNOWING
THAT BDL WAS A RESTRICTED ENTITY WHICH COULD NOT LAWFULLY
RECEIVE THEM.

        I ALSO ARRANGED FOR THE TRANSFER OF i960
MICROPROCESSORS TO ADE KNOWING THAT THEY WOULD BE USED IN THE
COMPUTERS ON INDIA'S LIGHT COMBAT AIRCRAFT.  I COORDINATED THIS
TRANSFER THROUGH MANIK MUKHERJEE, WHO I KNEW TO BE A DEFENSE
ATTACHE ASSIGNED TO THE INDIAN EMBASSY.

        THE 9-16-05 "STATEMENT OF ASSURANCE" FROM CIRRUS
ELECTRONICS IS NOT ACCURATE BECAUSE THE TRANSFERS REFERRED TO
WERE NOT MADE IN COMPLIANCE WITH US EXPORT LAWS AND REGULATIONS.
THE PURPOSE OF THIS LETTER IS TO CREATE THE FALSE IMPRESSION
THAT THEY WERE.

        WHILE I HAVE DONE THINGS THAT I WISH I WOULD NOT HAVE,
I HAVE DONE THEN AS A BUSINESS MAN SEEKING TO MAKE A PROFIT AND

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ___PARTHASARATHY SUDARSHAN___ , On 03/23/2007 , Page ___8___

NOT AS A PROFESSIONAL INTELLIGENCE OFFICER.  WHILE I HAVE,
THROUGH MY ACTIONS ASSISTED AND ACTED AS AN AGENT OF THE
GOVERNMENT OF INDIA, I HAVE NEVER BEEN IN THE EMPLOYMENT OF ANY
INDIAN INTELLIGENCE AGENCY, NOR HAVE I RECEIVED ANY MONEY OR
GIFTS FROM THE INDIAN INTELLIGENCE COMMUNITY.

        I INTEND TO FULLY COOPERATE WITH THE FBI'S
INVESTIGATION AND WILL NOT MAKE THE SAME ERRORS IN JUDGEMENT
AGAIN.  I ACCEPT FULL RESPONSIBILITY FOR MY ACTIONS.  I KNEW
WHAT I ~~WAS DOING WAS WRONG~~ **MAY NOT BE DOING A RIGHT THING**, AND I
WILL NOT DO IT AGAIN.

        **TO UNDERSTAND US LAWS ON EXPORT, I PERSONALLY ATTENDED
THE CIS CONFERENCE ON 12/JAN/2007 & WELL EDUCATED; WE PLAN TO
APPOINT 3RD PARTY CONSULTANT TO IMPLEMENT COMPLIANCE PROGRAMS.**

        After reviewing the statement above, SUDARSHAN stated
that he was satisfied that the statement accurately reflected
what he wanted to say.  SA PRICE then gave SUDARSHAN a pen and
asked him to sign the statement.

FIRST RECANTATION OF ADMISSIONS

        After taking the pen from SA PRICE, SUDARSHAN paused
and asked SA PRICE what the significance was of signing the
statement.  SA PRICE told SUDARSHAN that the practical effect of
signing the statement was that he could not later say he had not
made the admissions and that he could not later change his
story.  After listening to this explanation, SUDARSHAN stared at
the statement for several minutes.  SUDARSHAN then began to rock
back and forth and fidget in his chair.  SUDARSHAN began to
mumble to himself.  Several more minutes passed and SUDARSHAN
told SA PRICE that he wanted to make some "minor" changes to the
statement.  SUDARSHAN then made the following changes to the
statement.  These changes are shown below, represented in bold
and strike through text.

        I, PARTHASARATHY SUDARSHAN, AM MAKING THIS STATEMENT TO
FBI SPECIAL AGENTS CHARLES PRICE AND RUSS NIMMO IN CONNECTION
WITH A CRIMINAL INVESTIGATION WHICH THEY ARE CONDUCING.  I AM
MAKING THIS STATEMENT FREELY AND VOLUNTARILY.  NO PROMISES HAVE
BEEN MADE TO ME, AND NO THREATS HAVE BEEN MADE AGAINST ME, IN
ORDER TO GET ME TO GIVE THIS STATEMENT.  I AM GIVING THIS
STATEMENT BECAUSE IT IS TRUE.

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ____PARTHASARATHY SUDARSHAN_____ , On 03/23/2007 __ , Page ___9____

      I HAVE **UN**KNOWINGLY ~~AND DELIBERATELY~~ USED MY COMPANY
(CIRRUS ELECTRONICS) TO ASSIST THE GOVERNMENT OF INDIA'S
MILITARY AND DEFENSE COMMUNITY IN ACQUIRING TECHNOLOGY AND ITEMS
WHICH THEY ARE PROHIBITED FROM OBTAINING BASED ON US LAWS AND
REGULATIONS.  SPECIFICALLY, I **UN**KNOWINGLY ARRANGED FOR THE
TRANSFER OF RESTRICTED ITEMS TO RESTRICTED ENTITIES (FOR EXAMPLE
BDL).  IN ORDER TO ACCOMPLISH THESE UNAUTHORIZED TRANSFERS I
MADE FALSE REPRESENTATIONS (FOR EXAMPLE THE 9-16-05 STATEMENT OF
ASSURANCE, ATTACHED) AND I FILED FALSE END USER CERTIFICATES
(FOR EXAMPLE NPOL END USER CERTIFICATES FOR TRANSFERS FROM WHITE
ELECTRONICS TO VSSC).  MEMBERS OF MY COMPANY, SPECIFICALLY AKN
PRASAD AND MYTHILI GOPAL AND OTHERS ~~ASSISTED ME IN AVOIDING~~ **THEY
DID NOT KNOW** US LAWS AND REGULATIONS BUT **WHATEVER** THEY DID SO
**WAS** AT MY REQUEST AND DIRECTION.  I BEAR RESPONSIBILITY FOR
THEIR INVOLVEMENT.

      I ARRANGED THE TRANSFER OF RESTRICTED ITEMS
(CAPACITORS, SEMICONDUCTORS, RECTIFIERS AND RESISTORS) SHOWN ON
THE ATTACHED SHEET FROM US VENDORS TO BDL AND I DID SO **UN**KNOWING
THAT BDL WAS A RESTRICTED ENTITY WHICH COULD NOT LAWFULLY
RECEIVE THEM.

      I ALSO ARRANGED FOR THE TRANSFER OF i960
MICROPROCESSORS TO ADE KNOWING THAT THEY WOULD BE USED IN THE
COMPUTERS ON INDIA'S LIGHT COMBAT AIRCRAFT.  I COORDINATED THIS
TRANSFER THROUGH MANIK MUKHERJEE, WHO I KNEW TO BE A DEFENSE
ATTACHE ASSIGNED TO THE INDIAN EMBASSY.

      THE 9-16-05 "STATEMENT OF ASSURANCE" FROM CIRRUS
ELECTRONICS IS NOT ACCURATE BECAUSE THE TRANSFERS REFERRED TO
WERE NOT MADE IN COMPLIANCE WITH US EXPORT LAWS AND REGULATIONS.
THE PURPOSE OF THIS LETTER IS TO CREATE THE FALSE IMPRESSION
THAT THEY WERE.

      WHILE I HAVE DONE THINGS THAT I WISH I WOULD NOT HAVE,
I HAVE DONE THEN AS A BUSINESS MAN SEEKING TO MAKE A PROFIT AND
NOT AS A PROFESSIONAL INTELLIGENCE OFFICER.  WHILE I HAVE,
THROUGH MY ACTIONS ASSISTED AND ACTED AS AN AGENT OF THE
GOVERNMENT OF INDIA, I HAVE NEVER BEEN IN THE EMPLOYMENT OF ANY
INDIAN INTELLIGENCE AGENCY, NOR HAVE I RECEIVED ANY MONEY OR
GIFTS FROM THE INDIAN INTELLIGENCE COMMUNITY.

      I INTEND TO FULLY COOPERATE WITH THE FBI'S
INVESTIGATION AND WILL NOT MAKE THE SAME ERRORS IN JUDGEMENT
AGAIN.  I ACCEPT FULL RESPONSIBILITY FOR MY ACTIONS.  I KNEW

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ____PARTHASARATHY SUDARSHAN____ , On 03/23/2007 , Page __10__

WHAT I MAY NOT BE DOING A RIGHT THING, AND I WILL NOT DO IT AGAIN.

TO UNDERSTAND US LAWS ON EXPORT, I PERSONALLY ATTENDED THE CIS CONFERENCE ON 12/JAN/2007 & WELL EDUCATED; WE PLAN TO APPOINT 3RD PARTY CONSULTANT TO IMPLEMENT COMPLIANCE PROGRAMS.

After making the changes indicated above, SUDARSHAN stated that he was satisfied with the statement. SUDARSHAN initialed and signed the statement.

SECOND RECANTATION OF ADMISSIONS

SUDARSHAN never appeared to have any difficulty understanding the interviewing Agents and he was able to converse with the Agents without hesitation or difficulty. SUDARSHAN was able to make nuanced comments and never expressed any desire to have an interpreter.

After SUDARSHAN'S first recantation, SA PRICE requested that FBI linguists verbally translate SUDARSHAN'S written statement from English to Tamil. FBI linguists Vasanthaleela Chellappa and Venkatramen Mahadevan jointly translated the statement for SUDARSHAN, who then requested to make additional changes.

I, PARTHASARATHY SUDARSHAN, AM MAKING THIS STATEMENT TO FBI SPECIAL AGENTS CHARLES PRICE AND RUSS NIMMO IN CONNECTION WITH A CRIMINAL INVESTIGATION WHICH THEY ARE CONDUCING. I AM MAKING THIS STATEMENT FREELY AND VOLUNTARILY. NO PROMISES HAVE BEEN MADE TO ME, AND NO THREATS HAVE BEEN MADE AGAINST ME, IN ORDER TO GET ME TO GIVE THIS STATEMENT. I AM GIVING THIS STATEMENT BECAUSE IT IS TRUE.

I HAVE KNOWINGLY AND DELIBERATELY USED MY COMPANY (CIRRUS ELECTRONICS) TO ASSIST THE GOVERNMENT OF INDIA'S MILITARY AND DEFENSE COMMUNITY IN ACQUIRING TECHNOLOGY AND ITEMS WHICH THEY ARE PROHIBITED FROM OBTAINING BASED ON US LAWS AND REGULATIONS. SPECIFICALLY, I KNOWINGLY ARRANGED FOR THE TRANSFER OF RESTRICTED ITEMS TO RESTRICTED ENTITIES (FOR EXAMPLE BDL). IN ORDER TO ACCOMPLISH THESE UNAUTHORIZED TRANSFERS I MADE FALSE REPRESENTATIONS **UNKNOWINGLY** (FOR EXAMPLE THE 9-16-05 STATEMENT OF ASSURANCE, ATTACHED) AND I FILED FALSE END USER CERTIFICATES (FOR EXAMPLE NPOL END USER CERTIFICATES FOR TRANSFERS FROM WHITE ELECTRONICS TO VSSC). MEMBERS OF MY

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ___PARTHASARATHY SUDARSHAN_____ , On _03/23/2007__ , Page __11___

      COMPANY, SPECIFICALLY AKN PRASAD AND MYTHILI GOPAL AND OTHERS
ASSISTED ME IN AVOIDING US LAWS AND REGULATIONS BUT THEY DID SO
AT MY REQUEST AND DIRECTION.  I BEAR RESPONSIBILITY FOR THEIR
INVOLVEMENT.

      I ARRANGED THE TRANSFER OF RESTRICTED ITEMS
(CAPACITORS, SEMICONDUCTORS, RECTIFIERS AND RESISTORS) SHOWN ON
THE ATTACHED SHEET FROM US VENDORS TO BDL AND I DID SO KNOWING
THAT BDL WAS A RESTRICTED ENTITY WHICH COULD NOT LAWFULLY
RECEIVE THEM.

      I ALSO ARRANGED FOR THE TRANSFER OF i960
MICROPROCESSORS TO ADE KNOWING THAT THEY WOULD BE USED IN THE
COMPUTERS ON INDIA'S LIGHT COMBAT AIRCRAFT.  ~~I COORDINATED THIS
TRANSFER THROUGH~~ **MR.** MANIK MUKHERJEE, WHO I KNEW TO BE A DEFENSE
ATTACHE ASSIGNED TO THE INDIAN EMBASSY. **CAME TO MANUFACTURER &
WITNESSED THE TEST PROGRAM FOR 5 DAYS.**

      THE 9-16-05 "STATEMENT OF ASSURANCE" FROM CIRRUS
ELECTRONICS IS NOT ACCURATE BECAUSE THE TRANSFERS REFERRED TO
<u>WERE NOT</u> MADE IN COMPLIANCE WITH US EXPORT LAWS AND REGULATIONS.
~~THE PURPOSE OF THIS LETTER IS TO CREATE THE FALSE IMPRESSION
THAT THEY WERE.~~

      WHILE I HAVE DONE THINGS THAT I WISH I WOULD NOT HAVE,
I HAVE DONE THEN AS A BUSINESS MAN SEEKING TO MAKE A PROFIT AND
NOT AS A PROFESSIONAL INTELLIGENCE OFFICER.  WHILE I HAVE,
THROUGH MY ACTIONS ASSISTED AND ACTED AS AN AGENT OF THE
GOVERNMENT OF INDIA, I HAVE NEVER BEEN IN THE EMPLOYMENT OF ANY
INDIAN INTELLIGENCE AGENCY, NOR HAVE I RECEIVED ANY MONEY OR
GIFTS FROM THE INDIAN INTELLIGENCE COMMUNITY.

      I INTEND TO FULLY COOPERATE WITH THE FBI'S
INVESTIGATION AND WILL NOT MAKE THE SAME ERRORS IN JUDGEMENT
AGAIN.  I ACCEPT FULL RESPONSIBILITY FOR MY ACTIONS.  I KNEW
WHAT I WAS DOING WAS WRONG, AND I WILL NOT DO IT AGAIN.

      After making the changes indicated above, SUDARSHAN
initialed the new changes and signed each of the attachments to
the hand written statement (i.e., pages 5-8).

FD-302a (Rev. 10-6-95)

310Q-WF-229966-302

Continuation of FD-302 of ___PARTHASARATHY SUDARSHAN_____, On _03/23/2007___, Page __12___

## VARIOUS UNSOLICITED COMMENTS MADE BY SUDARSHAN

During the course of the interview, there were several instances where SUDARSHAN made relevant comments that were not elicited by direct questions from the interviewing agents.

The first instance involved a phone call SUDARSHAN was allowed to make to his wife and son, during the interview. It was clear during the phone call that SUDARSHAN'S son was trying to understand why he was arrested and their house was being search. The explanation that SUDARSHAN provided was: "This is risk in my business."

The second instance occurred when SA NIMMO left the room to get some water for SUDARSHAN. SUDARSHAN asked SA PRICE if it was possible to only "get a warning" for what he had done, to which SA PRICE responded that the tape he had played for SUDARSHAN at the beginning of the interview (i.e., of a wire tapped conversation between SURDARSHAN and a US vendor occurring about a year ago) contained a very explicit warning when the US vendor who told SUDARSHAN that he could go to jail for illegally exporting military components. SUDARSHAN thought for a moment and then told SA PRICE: "you're right".

The third instance occurred when SA PRICE had left the room to confer with the Tamil linguists, assisting with the interview. SUDARSHAN shook his head, looked at the floor, and remarked: "I should not have done this".

## ADMINISTRATIVE

SUDARSHAN is described as follows:

```
Name:           SUDARSHAN, PARTHASARATHY (last/first)
Sex:            Male
Race:           Asian
DOB:            06/01/1960
INS Status:     L1 Visa
SSAN:           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
Residence:      201 Huddersfield Drive
                Simpsonville, South Carolina
Wife:           SUDARSHAN, ALAMELU (last/first)
```

CD 3/23/07

3/23/07

i
8

I PARTHASARATHY SUDARSHAN, AM MAKING THIS

STATEMENT TO FBI SPECIAL AGENTS CHARLES PRICE AND

RUSS NIAMO IN CONNECTION WITH A CRIMINAL INVESTIGATION

WHICH THEY ARE CONDUCTING. I AM MAKING THIS STATEMENT

FREELY AND VOLUNTARILY. NO PROMISES HAVE BEEN MADE

TO ME, AND NO THREATS HAVE BEEN MADE AGAINST ME, IN

ORDER TO GET ME TO MAKE THIS STATEMENT. I AM

MAKING THIS STATEMENT BECAUSE IT IS TRUE.

I HAVE KNOWINGLY AND DELIBERATELY USED MY COMPANY

(CIRRUS ELECTRONICS) TO ASSIST THE GOVERNMENT OF INDIA'S

MILITARY AND DEFENSE COMMUNITY IN ACQUIRING TECHNOLOGY

AND ITEMS WHICH HAVE THEY ARE PROHIBITED FROM

OBTAINING BASED ON US LAWS AND REGULATIONS. SPECIFICALLY,

I KNOWINGLY ARRANGED FOR THE TRANSFER OF RESTRICTED ITEMS

GP 3/23/07
RDL 3/23/07

2/8

TO RESTRICTED ENTITIES (FOR EXAMPLE BDL). IN ORDER

TO ACCOMPLISH THEY THESE UNAUTHORIZED TRANSFERS, I

MADE FALSE REPRESENTATIONS (FOR EXAMPLE THE 9-16-05 *unknowingly*

STATEMENT OF ASSURANCE, ATTACHED) AND I FILED FALSE

END USER CERTIFICATES (FOR EXAMPLE NPL ~~CERTIFICATES~~ END USER

CERTIFICATES FOR TRANSFERS FROM WHITE ELECTRONICS TO VSSC).

MEMBERS OF MY COMPANY, SREEKUTTY AND PRASAD AND

AND OTHER, THEY DID NOT KNOW

MYTHILI GOPAL, ASSISTED ME IN AVOIDING US LAWS AND

*Whatever*

REGULATIONS BUT THEY DID SO AT MY REQUEST AND
WAS

DIRECTION. I BEAR RESPONSIBILITY FOR THEIR INVOLVEMENT.

I ARRANGED THE TRANSFER OF RESTRICTED ITEMS (CAPACITORS,

SEMICONDUCTORS, RECTIFIERS + RESISTORS)

SHOWN ON THE ATTACHED SHEET FROM US VENDORS TO BDL

AND I DID SO KNOWING THAT BDL WAS A RESTRICTED ENTITY

WHICH COULD NOT LAWFULLY RECEIVE THEM.

4-3/23/07
RM 3/23/07

3/8

I ALSO ARRANGED FOR THE TRANSFER OF i960 MICROPROCESSORS

TO ADE KNOWING THAT THEY WOULD BE USED IN

THE COMPUTERS ON INDIA'S LIGHT COMBAT AIRCRAFT.

~~I COORDINATED THIS TRANSFER THROUGH~~ Mr. MALIK MUKHERJEE,

WHO I KNEW TO BE A DEFENSE ATTACHÉ ASSIGNED TO

THE INDIAN EMBASSY. came to manufacturer & witnessed the test program for 5 days.

THE 9-18-05 "STATEMENT OF ASSURANCE" FROM

GERUS ELECTRONICS IS NOT ACCURATE BECAUSE ~~THEY~~ THE

TRANSFERS REFERED TO WERE NOT MADE IN COMPLIANCE WITH

US EXPORT LAWS AND REGULATIONS. ~~THE PURPOSE OF THIS LETTER~~

~~IS TO CREATE THE FALSE IMPRESSION THAT THEY WERE.~~

WHILE I HAVE DONE THINGS THAT I WISH I WOULD NOT

HAVE, I HAVE DONE THEM AS A BUSINESS MAN SEEKING

TO MAKE A PROFIT AND NOT AS A PROFESSIONAL INTELLIGENCE

CJ 3/23/07

RU 3/23/07

4/8

OFFICER. WHILE I HAVE, THROUGH MY ACTIONS ASSISTED AND ACTED AS AN AGENT OF THE GOVERNMENT OF INDIA, I HAVE NEVER BEEN IN THE EMPLOY OF ANY INDIAN INTELLIGENCE AGENCY, NOR HAVE I RECEIVED ANY MONEY OR GIFT FROM THE INDIAN INTELLIGENCE COMMUNITY.

I INTEND TO FULLY COOPERATE WITH THE FBI'S INVESTIGATION AND WILL NOT MAKE THE SAME ERROR IN JUDGEMENT AGAIN

I ACCEPT FULL RESPONSIBILITY FOR MY ACTIONS, I KNEW WHAT may not be doing a right thing I WAS ~~DOING WAS WRONG~~. AND I WILL NOT DO IT AGAIN.

To understand US Law on export, I personally attended the CIS conference on 12/Jan/2007 & well educated; we plan to appoint 3rd party consultant to implement compliance programs.

3/23/07

SA Charles _____ 3/23/07

SA Russ _____ 3/23/07

# Aeronautical Development Establishment

The Aeronautical Development Establishment (ADE) is responsible for developing the Government of India's Light Combat Aircraft (LCA), also known as "Tejas". This will be the Government of India's most advanced, indigenously produced, combat aircraft.



*DEFENSE ATTACHE*

|  | | | |  |
|---|---|---|---|---|
| **United States Vendor**<br><br>**Rochester Electronics, Inc.**<br>500 i960 Intel Microprocessors (5962-9094603MYA), tested for military use. USML item<br><br> | **Cirrus USA**<br><br>Coordinated with Manik Mukherjee, for the first testing and shipment of 377 of the microprocessors<br><br>Arranged for Sadalgi, an engineer for the LCA project, to travel to REI for the second testing and shipment of 123 microprocessors | **Cirrus Singapore**<br><br>Cirrus Singapore receives the items and prepares them to be shipped by DAN AIRFRIEGHT. | **DAN AIRFREIGHT**<br><br>Forwards the items to ADE. | **ADE**<br><br>Items specifically designed for use in the LCA radar, navigation, and missile guidance systems. These features of the aircraft will not function without the properly tested i960 microprocessors.<br><br>**LCA**<br><br> |

**US Export License Required From the <u>Department of State</u> – NOT OBTAINED**

# Bharat Dynamics Limited

Bharat Dynamics Limited (BDL) is the Government of India's prime production agency for missile weaponry systems, such as the medium range PRITHVI, capable of carrying nuclear weapons.

  

### United States Vendors

**TTI, Inc**
110 Capacitors
(T119C475K100AS)



**Avent**
90 Semiconductors
(CD4043BF3A)

200 Rectifiers
(JAN1N3611)



**Tri-Start**
110 Resistors
(M8340109K6801GC)

### Cirrus USA

Items are sent to Cirrus Electronics in Simpsonville, SC from US Vendors.

Items are re-packaged and sent via Fed Ex and DHL to Cirrus Singapore from Cirrus USA, 201 Huddersfield Drive.

### Cirrus Singapore

Cirrus Singapore receives the items and prepares them to be shipped by DAN AIRFRIEGHT.

### DAN AIRFREIGHT

Forwards the items to BDL.

### BDL

Items can be used for research, testing and development for missile guidance and firing systems.

**PRITHVI**



## US Export License Required From the Department of Commerce – NOT OBTAINED

4 3/23/07
Qu 3/23/07

7/
5

| | Message0443 |
|---|---|
| Subject: | On WEDC.. Do Not worry... |
| From: | Cirrus Electronics Pte Ltd |
| Date: | 9/30/2004 8:07:35 AM |
| To: | 'AKN Prasad' |
| CC: | us@cirruselectronics.com |

### Message Body

Dear Prasad and Mythili,

1) On reading the emails from Jaimes, do not get panic: At the end of the game, it is I.... who need to face any music:

MG: You are not the owner of Cirrus LLC: Members will not be affected... Besides, I am moving over to USA to take control on such crisis.. Hence, do not fear about anything.. It is all business Games and come what may be the results.,. Detach ourselves from the results.. We concentrate on actions only.

2) TO AKN :

New Head ache for New CEO.... Do not worry, if we apply our thoughts in professional way..

The actions are as follows:

a) Please call Shankar: You and SK may go to VSSC and explain them that our intention is not to make profit on this order but to service VSSC..

b) Ascertain if VSSC has got some clout over NPOL....We need not indulge full details to them..

c) You may see white electronics website and find out: WEDC has got office at Bangalore also.. You may meet them on a friendly note.. Let them be anybody..

d) We meet NPOL also and explain them so that we do not dent our business with them also....

Since we have requested 15 days time, hope the time could be good enough to solve the problem.

It is veil threat of WEDC on BIS: There are 1000 such companies and 100,000 such complaints..

As mentioned to you earlier, BIS came to Simal to many other distributors in Singapore and just cautioned them only. In our case, it is not that..

# Cirrus Electronics Pte Ltd

Level 3, ECON Building, No 2, Ang Mo Kio Street 64,

Ang Mo Kio Industrial Park 3,

Singapore. 569-084.

TEL: (65) 6481-2444 FAX: (65) 6481-3444 / 6234-0671

Email: cirrus@cirruselectronics.com

### STATEMENT OF ASSURANCE

We acknowledge that products (or technical data) to be purchased from *Avnet Inc,* include or may include products which are subject to export control laws and regulations of the United States.

We hereby certify that all sale, transfer, consignment, loan or donation of products and /or technology acquired from Avnet, Inc made directly or indirectly outside the United States are made in full compliance with all applicable export control laws and regulations.

This statement  will be valid for 2 years starting with the date of issue.

**PURCHASER**

Name:       *Cirrus Electronics Pte Ltd*
Address     level 3, ECON Building 2, Ang Mo Kio Street 64
            Singapore - 569-084

**FOREIGN CONSIGNEE** (If not the same as Purchaser)

Name:       Hindustan Aeronautics Ltd
Address     HAL PO
            Hyderabad – 500042, INDIA

**PURCHASER**

Signature of Authorized Company representative
Name: *P. Sudarshan* Title: *Managing Director*

Issue Date: *September 16. 2005*

FD-395 (Rev. 11-5-02)

# ADVICE OF RIGHTS

Place _Florence, SC_
Date _03-23-07_
Time _0830_

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed _[signature]_

Witness: _SA Ch___ ___ FBI WF___

Witness: _SA Russell Nimmo FBI WFO_

Time: _0832_

FD-395
Revised 11-05-2002
Tamil

# FEDERAL BUREAU OF INVESTIGATION
சமஷ்டி புலனாய்வு துறை

## ADVICE OF RIGHTS
உரிமைகளின் அறிவுரை

## LOCATION

| Place/இடம்: | Date/தேதி: | Time/நேரம்: |
|---|---|---|
| | | |

## YOUR RIGHTS/உமது உரிமைகள்

- நாங்கள் உங்களிடம் கேள்விகள் கேட்பதற்கு முன்னால் நீங்கள் உங்களுக்கான உரிமைகளை புரிந்து கொள்ளுதல் அவசியம்.

- உங்களுக்கு மௌனமாக இருக்கும் உரிமையுள்ளது.

- நீங்கள் சொல்வது எதுவும் உங்களுக்கு எதிராக நீதிமன்றத்தில் உபயோகிக்கப் படலாம்.

- உங்களிடம் கேள்விகள் கேட்பதற்கு முன் உங்களுக்கு ஒரு வழக்கறிஞரிடம் ஆலோசனை பெறுவதற்கு உரிமையுள்ளது.

- கேள்விகள் கேட்கும் பொழுது உங்களுடன் ஒரு வழக்கறிஞரை வைத்துக்கொள்வதற்கு உங்களுக்கு உரிமையுள்ளது.

- உங்களுக்கு ஒரு வழக்கறிஞரை நியமிக்க வசதியில்லையெனில் நீங்கள் விரும்பினால் கேள்விகள் கேட்பதற்கு முன் ஒரு வழக்கறிஞரை நியமனம் செய்யப் படும்.

## CONSENT/சம்மதம்

நான் எனது உரிமைகள் பற்றிய இவ்வறிக்கையை வாசித்து எனது உரிமைகள் என்னவென்று புரிந்து கொண்டேன். இப்பொழுது வழக்கறிஞர் இல்லாமல் கேள்விகளுக்கு பதிலளிக்க நான் ஒத்துக் கொள்கிறேன்.

கையொப்பம்/Signed

## WITNESS/ சாட்சியாளர்

சாட்சியாளர்/Witness: _SA Christin  FBI, SSA, WFO_

சாட்சியாளர்/Witness: _SA Rosell  Nunno, FBI, WFO_

நேரம்/Time: _8:32_

FD-395(Revised 11-05-2002)          Page 1 of 1          FEDERAL BUREAU OF INVESTIGATION