## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. 07-051-01 (RMU)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **PARTHASARATHY SUDARSHAN,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
## RULE 404(b) EVIDENCE

The United States of America, through its undersigned attorneys, moves to admit evidence that the defendant, Parthasarathy Sudarshan, using his company, Cirrus Electronics ("Cirrus"), procured U.S. origin commodities for Bharat Electronics, Ltd. ("BEL"), when BEL was on the Department of Commerce Entity List and exports from the United States to BEL required a license from the Department of Commerce. These transactions occurred before the dates of the conspiracy charged in Count One of the Indictment.

In particular, the government seeks to offer in evidence an intercepted phone call that occurred on February 10, 2006, between Sudarshan and a representative of BEL in the United States. During the call, Sudarshan, who is trying to solicit new business from BEL, boasts about how, when BEL was subject to U.S. government sanctions, Sudarshan and Cirrus "supported [BEL] very heavily and orders . . . it was flowing like water." See Exhibit 1 to this motion, Transcript ("Tr.") of 2/10/06 call at p. 8. The government also intends to introduce documentary evidence corroborating Sudarshan's claims and demonstrating unlawful exports by Cirrus to BEL during the time when BEL was on the Entity List. It goes without saying that Cirrus never

obtained a license from the Department of Commerce for any of its exports to BEL during this period.

The proposed proof is admissible under Rule 404(b), Fed. R. Evid.  It is evidence of Sudarshan's knowledge of U.S. government sanctions against restricted Indian government entities.  It is also evidence of his intent to evade U.S. export laws with respect to such entities. In effecting the unlawful exports to BEL, Sudarshan, as he did here, transshipped the goods to India through Cirrus' Singapore operations.  The proposed evidence is thus proof of a common plan or scheme, and it demonstrates that Sudarshan's violations of U.S. export laws as charged in the indictment are not the product of an accident or mistake.

Finally, the evidence that the government is seeking to offer satisfies the Rule 403, Fed. R. Evid., balancing test.  It is prejudicial only in the sense that it incriminates Sudarshan.  It will not cause confusion or waste time.  In short, the proposed evidence will not lead the jury to decide the case on an improper basis.

In support of this motion, the government is relying on the points and authorities set forth below.  The government also intends for this motion and the facts set forth herein to satisfy Rule 404(b)'s notice requirement.

## Background

In May 1998, after India detonated a nuclear device, President Clinton directed the Department of Commerce to impose sanctions against that nation.  Around the same time, Pakistan also detonated a nuclear device, and the president further directed that similar sanctions be imposed against Pakistan.  The Department of Commerce implemented President Clinton's policy through a revision to the Export Administration Regulations ("EAR"), 15 C.F.R. Parts

730-774, that expanded the Entity List.[1]  In announcing the change to the regulations, the

Department of Commerce stated:

> To supplement the sanctions . . . this rule adds certain Indian and Pakistani government,
> parastatal, and private entities determined to be involved in nuclear or missile activities to
> the Entity List in Supplement 4 to part 744.

64 Fed. Reg. 64322 (November 19, 1998).  The Federal Register announcement also explained

that "[i]tems controlled on the Commerce Control List for nuclear and missile technology

reasons have been subject to this sanction policy because of their significance for nuclear

explosive purposes and for delivery of nuclear devices."  Id.

BEL was one of the state-sponsored Indian institutions that the Department of Commerce

placed on the Entity List in 1998.  Two other such organizations were the Vikram Sarabhai Space

Centre ("VSSC") and Bharat Dynamics Ltd. ("BDL").  Counts One through Nine of the

Indictment focus on the defendants' illegal exports of U.S. goods to VSSC and BDL.

BEL was especially aggressive in seeking to evade the restrictions that the United States

had placed on it.  In fact, it established an operation in Singapore to serve as a front to receive

exports from the United States that were actually intended for India.  In similar fashion,

Sudarshan used Cirrus' Singapore office as a conduit to supply BEL, VSSC, BDL, and other

restricted entities in India with U.S. origin goods.

On October 1, 2001, the Department of Commerce removed BEL from the Entity List.[2]

---

[1]  The Entity List designates state-run institutions in several nations that are part of those
nations' nuclear weapons programs.  See 15 C.F.R. Part 744, Supplement 4.  The EAR restrict
exports of U.S. origin commodities to the Entity List organizations.  The Entity List consists of
institutions in Russia, China, Syria, and Israel, in addition to those in India and Pakistan.

[2]  Two additional organizations that the Department of Commerce placed on the Entity
List in 1998, but removed in 2001, were Hindustan Aeronautics Ltd. ("HAL") and the

See 66 Fed. Reg. 50090 (October 1, 2001).  VSSC and BDL, however, remained on the List.[3]

After BEL was removed from the Entity List, it opened an office in Garden City, New York to coordinate the procurement of components in the United States.  On February 10, 2006, Sudarshan called BEL's New York office from Cirrus' South Carolina office.  He spoke with a Mr. Ramarao at BEL.  Sudarshan advised Mr. Ramarao that he was calling on behalf of Cirrus in Simpsonville, South Carolina.  See Exhibit 1, Tr. at 2.  He further informed Mr. Ramarao that Cirrus had "been doing business with Bharat Electronics, Bangalore, as well as Bharat Electronics, Singapore . . . for the last six, seven years."  Id. at 3.  Sudarshan requested an opportunity to meet with Mr. Ramarao in New York, and the latter consented.  Id. at 3-5.

As part of his effort to secure future business from BEL in New York, Sudarshan touted the past business that Cirrus had done with BEL's Singapore affiliate.  In particular, Sudarshan expressly referenced the period of time that Cirrus was procuring items for BEL when BEL was

_____

Aeronautical Defense Establishiment ("ADE").  HAL and ADE were also significant customers of Cirrus both before and after October 2001.  The government does not presently intend to introduce in its case-in-chief, pursuant to Rule 404(b), evidence of Cirrus' exports to HAL and ADE in violation of the Entity List restrictions.  The government, however, may seek to offer such proof in rebuttal if the defense contends that the transactions charged in the indictment were isolated instances of export law violations.  In addition, if Sudarshan were to testify, the government likely would confront him with the fact that Cirrus made numerous exports to HAL and ADE while those institutions were on the Entity List between 1998 and 2001.

[3]  In September 2004, the Department of Commerce eased the sanctions as to VSSC and permitted the export of non-restricted goods – which are known under the regulations as EAR 99 commodities – and a small category of controlled commodities to VSSC without a license, so long as the items would not be used in a restricted end-use such as in a missile or nuclear weapon.  See 69 Fed. Reg. 56693 (September 22, 2004).  The Indictment alleges that Cirrus unlawfully exported Static Random Access Memory ("SRAM") computer chips to VSSC.  See Counts One, Two, Three, Seven, and Nine.  The SRAMs at issue in the indictment required a license from the Department of Commerce for export to VSSC both before and after the September 2004 change in the regulations.

subject to U.S. government sanctions.  As Sudarshan explained to Mr. Ramarao:

> So, during . . . Mr. Prakash – when he was working . . . in Siro office . . . during that time, we supported Bharat Electronics or Bharat Electronics supported us in a very - very strong way.  Because that time, you know, Nyro office was . . . not . . . I mean, because of the embargo and other issues, we are able to get most of the orders for Si . . . from Singapore office.

Id. at 5.  Sudarshan also had the following exchange with Mr. Ramarao concerning the time

when exports of U.S. goods to BEL were restricted:[4]

> PS:     Because, as I told you, sir, from Bharat Electronics, we – at one point of time, in a year, we crossed more than 1.5 million dollars.
>
> RR:     Mm-mm-mm-mm.
>
> PS:     [Simultaneous conversation] [Sighs]
>
> RR:     May be . . . that would have been the sanction time.
>
> PS:     Yes.  During that time, we supported very heavily and orders, like, flew like, you know, like, as though . . .  it was flowing like water.

Id. at 8.

On February 14, 2006, co-defendant AKN Prasad, the head of Cirrus' Bangalore, India,

operations, sent a follow-up e-mail to Mr. Ramarao.  Prasad introduced himself to Mr. Ramarao

and noted that he had begun his professional career at BEL.  See Exhibit 2 to this memorandum

at p. 1.  Like Sudarshan, Prasad emphasized Cirrus' history of servicing BEL, noting the firm's

"long association with BEL SIRO office as also BEL Bangalore and Chennai."  Id.  Around the

same time, Sudarshan also sent a fax to Mr. Ramarao.  See Exhibit 3 to this memorandum.  He

again stressed that Cirrus had "been supplying components to your SIRO office past 6-7 years

and we had executed a single order of value [Singapore Dollar] 1 Million . . . ."  Id. at p. 1.  Of

---

[4]  The attached transcript identifies Sudarshan as "PS" and Mr. Ramarao as "RR."

course, six or seven years earlier was when BEL was on the Entity List.[5]

## Argument

### A.    Legal Standards

Rule 404(b) permits the government to offer proof of a defendant's other crimes, wrongs,

or acts so long as "the evidence is probative of a material issue other than character."

Huddleston v. United States, 485 U.S. 681, 686 (1988).  See also United States v. Miller, 895

F.2d 1431, 1435 (D.C. Cir.), cert. denied, 498 U.S. 825 (1990).  Thus, "although the first

sentence of Rule 404(b) is 'framed restrictively,' the rule itself is 'quite permissive,' prohibiting

the admission of other crimes evidence 'in but one circumstance' – for the purpose of proving

that a person's actions conformed to his character."  United States v. Crowder, 141 F.3d 1202,

1206 (D.C. Cir. 1998) (en banc), cert. denied, 525 U.S. 1149 (1999).  The rule lists several

categories of appropriate uses of other crimes evidence – e.g., to prove motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident; however, this

list is not exhaustive.[6]  Miller, 895 F.2d at 1435.

---

[5]  The government believes that Exhibits 2 and 3 are admissible independently of Rule 404(b).  In Exhibit 2, Prasad states that "Cirrus is staffed by professional engineers with long standing exposure to Indian defense activities and it is our commitment to help Indian defense and aerospace industry reach world standards and make the country self-reliant."  The foregoing co-conspirator statement is relevant to the allegation in Count 15 of the Indictment that Sudarshan was acting as an illegal agent of the Indian government.  Moreover, Prasad's boasts about the technical expertise of the Cirrus personnel is relevant to showing that Sudarshan and his co-conspirators were not naive business persons, but rather that they had a strong appreciation of the uses and capabilities of the products that they were supplying to the Indian government entities.  Exhibit 3 is likewise relevant to Count 15, and it contains an admission from Sudarshan that Cirrus had been supplying VSSC and BDL.

[6]  The Rule 404(b) analysis does not apply to uncharged overt acts in furtherance of a charged conspiracy.  United States v. Badru, 97 F.3d 1471, 1475 (D.C. Cir. 1996) ("In cases where the incident offered is part of the conspiracy alleged in the indictment, the evidence is

Once the government has demonstrated that it is offering other crimes evidence for a legitimate purpose, such proof must still pass muster under the balancing test of Rule 403, Fed. R. Evid. United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir. 1994). "[I]t is a sound rule that the balance should generally be struck in favor of admission when the [other crimes evidence] indicates a close relationship to the offense charged." United States v. Harrison, 679 F.2d 942, 948 (D.C. Cir. 1982), quoting United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978). Moreover, the type of prejudice that disqualifies evidence under Rule 403 is "unfair prejudice," not the prejudice a defendant suffers merely because evidence is inculpatory. United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998). For evidence to be unfairly prejudicial within the meaning of the Rule, it must have "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Old Chief v. United States, 519 U.S. 172, 180 (1997), quoting Advisory Committee Notes on Fed. Rule Evid. 403.

### B. The Government Is Offering Its Proposed Proof of Cirrus' Unlawful Exports to BDL for Proper Purposes under Rule 404(b)

Sudarshan's acknowledgment in the February 10, 2006, intercepted phone call that Cirrus was supplying BEL with U.S. commodities while BEL was subject to Department of Commerce sanctions is highly probative of Sudarshan's knowledge of U.S. export restrictions on various Indian government entities. Moreover, the fact that Cirrus was transshipping the goods to BEL

---

admissible under Rule 404(b) because it is not an 'other' crime") (quoting 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239, at 450 (1978)). See also United States v. Mejia, 448 F.3d 436, 447-48 (D.C. Cir. 2006), cert. denied, 127 S. Ct. 989 (2007). Sudarshan's violations of the export controls as to VSSC and BDL were pervasive. The government expects to introduce evidence of Cirrus' widespread unlawful transactions with VSSC and BDL during the period of the conspiracy in addition to the discrete proof underlying the specific counts in the Indictment.

in India through Singapore – in the same manner that Cirrus was supplying the restricted entities

described in the Indictment – demonstrates a common scheme and plan on the part of Sudarshan

and his co-conspirators to violate U.S. export control laws.  The evidence that Sudarshan and his

co-conspirators were illicitly sending U.S. goods to BEL during the period between May 1998

and October 2001 is also probative of their intent to evade U.S. export restrictions as described in

the Indictment.  Moreover, such proof demonstrates that the violations that are set forth in the

Indictment were not the product of accident or mistake.  Indeed, in pitching Mr. Ramarao for

more business, Sudarshan uses Cirrus' support for BEL during the sanctions period as almost a

badge of honor that should qualify Cirrus for future business.

All of the foregoing purposes for which the government is seeking to introduce the

evidence of Cirrus' unlawful transactions with BEL are appropriate under Rule 404(b).

### C.    The Government's Proposed Rule 404(b) Evidence Is Not Subject to Exclusion under Rule 403

As set forth above, the evidence that the government has proffered for admission under

Rule 404(b) is relevant to issues that Rule 404(b) permits the government to present to the jury.

It also implicates none of the dangers against which Rule 403 guards.  There is no prejudice to

Sudarshan apart from the prejudice to which any inculpatory evidence exposes a defendant.

There will be no confusion of issues, especially in light of the standard instruction that the Court

will give the jury concerning the limitations on its use of the Rule 404(b) evidence.  Moreover, it

will take little time for the government to introduce the proposed evidence.  The intercepted

phone call is all of nine minutes long.  The government intends to offer no more than a handful

of e-mails concerning the pre-October 2001 exports to BEL.  The government's other evidence

of the volume of transactions between Cirrus and BEL will be in the form of a Rule 1006

summary chart.  The Rule 403 balancing test comes out squarely in favor of admission of the

evidence that the government seeks to present.

### Conclusion

For the foregoing reasons, the Court should grant the government's motion *in limine*.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____/s/_____
Jay I. Bratt
Assistant United States Attorney
Illinois Bar No. 6187361
National Security Section
Room 11-437
555 4th Street, NW
Washington, D.C.  20530
(202) 353-3602
jay.bratt@usdoj.gov

_____/s/_____
Anthony Asuncion
Assistant United States Attorney
National Security Section
D.C. Bar No. 420822
555 4th Street, NW
Room 11-844
Washington, D.C.  20530
(202) 514-6950
anthony.asuncion@usdoj.gov

_____/s/_____
Clifford I. Rones
Senior Trial Attorney

-9-

Counterespionage Section
U.S. Department of Justice
Md. Bar No. 8506010284
1400 New York Avenue, NW
Washington, D.C. 20530
(202) 514-1124
clifford.rones@usdoj.gov

**<u>Certificate of Service</u>**

I, Jay I. Bratt, certify that I served a copy of the foregoing Government's Motion *in limine* to Admit Rule 404(b) Evidence by ECF on all counsel of record.

_____/s/_____

Jay I. Bratt

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-051-01 (RMU)** |
| | : | |
| **v.** | : | |
| | : | |
| **PARTHASARATHY SUDARSHAN,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

Before the Court is the government's motion *in limine* to admit evidence pursuant to Rule 404(b), Fed. R. Evid.  The Court having considered the government's motion and the pleadings and arguments of the parties, it **GRANTS** the government's request.

**DONE AND ORDERED** this _____ day of _____, 2008.


_____
Honorable Ricardo M. Urbina
United States District Judge


Copies to:

AUSA Jay I. Bratt
AUSA Anthony Asuncion
William T. Hassler, Esq.
Reid H. Weingarten, Esq.

# EXHIBIT 1

# UNITED STATES DEPARTMENT OF JUSTICE
# FEDERAL BUREAU OF INVESTIGATION



601 Fourth Street, N.W.
Washington, D.C. 20535

| | |
|---|---|
| File Number: | 310Q-WF-229966 |
| Task Number: | 12350 |
| Line ID: | 864-286-3030 |
| Date of recording: | 02/10/2006 |
| Time of recording: | 14:45:45 GMT |
| SID #: | 7462550 |
| Language: | English and Tamil |
| Linguist: | Vasanthi Chellappa |

## Participants

| | |
|---|---|
| Parthasarathy Sudarshan | PS |
| Unknown Female | UF |
| Ramarao LNU | RR |

## Abbreviations

| | |
|---|---|
| Standard font | English |
| *Italics* | Tamil |
| | |
| IA | Inaudible |
| UI | Unintelligible |
| PH | Phonetic |
| [ ] | Noise notations or Translator's notes |
| SC | Simultaneous Conversation |
| OV | Overlapping Voices |
| [RC] | Recorded Message |

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

[Dial tone]

[Background noise]

[Dial numbers]

[Phone rings]

[Background noise continues]

UF:     Good Morning. Bharat [PH] Electronics.

PS:     Yes.  Can I speak to Mr. Ramarao please?

UF:     Ah, yes.  Can you hold just a moment?

PS:     Yes, please.

UF:     Thank you.

        [Noise]

        [Phone rings]

        [Background noise continues]

RR:     Hello.

PS:     Am I speaking with Mr. Ramarao please?

        [Background noise continues]

RR:     Ah.  Speaking.

PS:     [Sighs] Sir, Good morning to you.  My name is Sudarshan. [Noise] I am calling you from the company called Cirrus Electronics LLC from United States, from Greenville or Simpsonville, Sir.  [Sighs]

RR:     From?

PS:     Uh, from Greenville.  That is, from South Carolina.

RR:     South Carolina?

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

PS:          Yes, please.

RR:          Okay.

PS:          And, uh, we have been doing business with Bharat Electronics, Bangalore as well as Bharat Electronics, Singapore [Sighs] –

RR:          M-hum.

PS:          -- for the last six, seven years.

RR:          M-hum.

PS:          And, uh, we thought, we-we, uh, we should able to talk to you and then, uh, seek [PH] if-whether you could help us in getting the enquiries and, uh [noise], we should able to serve with Bharat Electronics in a most professional way, Sir [sighs] -- as one of your vendors.

RR:          You are very far away from New York, huh [PH]?

PS:          Yes, Sir.

RR:          Hmm.

PS:          Um, uh, because we opened up this, uh, U.S. branch to cater to some of our Indian customers--especially with Washington, D.C. -- with our AD [PH] kind of a defense office-defense counselor office [sighs] and uh, mainly we are concentrating mostly on the Indian, uh, business only--Indian customers. [Sighs]

RR:          [SC] Hm.

PS:          And, uh-uh, m-more like a c-customers like ADE [PH] or DARE and, uh-uh, Bharat Electronics, BHEL -- this type of Government customers, we are handling, Sir.

RR:          [SC] Hm.

PS:          [Sighs] So, we wanted to make an introduction to you or seek your appointment in case you could uh-uh, give us some --

RR:          [SC] Hm.

PS:          -- appointment so that we could come to New York and [SC] meet you.

RR:          We are in, uh . . . We are in New York.

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

PS:        Yes, Sir.

RR:        Uhh . . .

PS:        *You . . . whenever you get the* time . . .

RR:        [Interrupts] You are, uh . . . You have a line card?

PS:        Yeah. I-I . . . We don't have a--any kind of a strong representation. But we are a general traders. And we did . . .

RR:        Oh. Actually, what we do is . . . You are general [SC] [UI] --

PS:        [SC] Okay.

RR:        -- but generally, what we do is, you know . . .

PS:        Okay.

RR:        We generally go to the franchisers.

PS:        Okay--okay.

RR:        So, we get most of the item from the--franchised distributor --

PS:        Yes, sir.

RR:        -- uhh, who get the -- totally, the new items basically --

PS:        M-hum.

RR:        -- from the original--uh, supplier.

PS:        [SC] Okay.

RR:        [UI] supplier.

PS:        M-hum.

           [Background noise continues]

RR:        So, only for some obsolete items and things like that only we go to other people.

PS:        Yes, sir. We are quite strong because eve-even with DARE, we have developed a new product which is again being used with Bharat Electronics as well as HAL.

4

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

|     | [Sighs] And uh-uh-uh, this is a small company of course. It's . . . We are doing something around 3 million dollars as our [PH] turnover -- |
|-----|---|
| RR: | Hm. |
| PS: | -- as a group turnover. And our main focus is looking at the hard to find part, obsolete part and, uh, very tough parts. [Noise] In case the parts are no longer available, in case we-we are able to get the dye, you know, we remanufacture the item. [Sighs] Even the DARE has approved us as a . . . Cirrus Electronics as one of the designers cum manufacturers for, uh, DP RAM -- Dual Port RAM model. That's going into the . . . one of the R-R-RC computers and other items. |
| RR: | Hm. |
| PS: | [Sighs] And, even we, uh, doing almost like every day we get one order from Bharat Electronics, Siro [PH] offi-uh, from Singapore office. [SC] [Sighs] |
| RR: | Singapore office? |
| PS: | Yes. Almost daily we see one order or other. It could be value . . . It could be value of 30 dollars. Sometimes, it goes even up to 300,000 dollars orders also. |
| RR: | Hm. |
| PS: | [Sighs] So, during . . . Mr. Prakash - when he was working uh-uh, in Siro [PH] office . . . during that time, we supported Bharat Electronics or Bharat Electronics supported us in a very-very strong way. [Sighs] Because that time, you know, Nyro [PH] office was, uh, not . . . I mean, because of the embargo and other issues, we are able to get most of the orders from Si-uh--from, uh, Singapore office. |
| RR: | Hm. |
| PS: | [Sighs] [Noise] And m-many of the recommendations that we should start an [PH] office to cater to the Nyro [PH] office because we are unable to penetrate Nyro [PH] office from Singapore end. [Sighs] So, *let me know if you get some* time. So . . . we like to come and meet you and present ourselves and . . . |
| RR: | *Come; come any time.* -- |
| PS: | [SC] [Sighs] |
| RR: | -- You are welcome. |
| PS: | Uh-huh. |

File #: 310Q-WF-229966
Job #:  12350
SID #: 7462550

RR:        [SC] Come [PH].

PS:        Sir, Can I take down your email, sir?  So, I will send you a formal introduction of
           our . . .

RR:        [Interrupts] Uh . . . my email . . .

PS:        Yes, sir.

RR:        Uh . . . ramaraosr . . .

PS:        Rama-rao--sr.

RR:        R-a-m-a-r-a-o.

PS:        R-a-m-a-r-a-o.

RR:        [SC] R-a-o-s-r.

PS:        s-r.  Okay.

RR:        s-r@yahoo.com

PS:        @Yahoo.com.  Yes, sir. [Sighs] [SC] So . . .

RR:        So [PH] . . . But [PH], uh, *send it in.*

PS:        Hmm.

RR:        We will see where . . . which are the lines [PH] strong and everything --

PS:        [SC] Mm-Hm-Mm.

RR:        -- and . . .

PS:        [Interrupts] [Sighs] Look.  I can send you a couple of orders we have received
           even as I told you, Sir.  *We -- a* . . . Even, uh, from Bangalore, some, uh . . .
           Bharat Electronics, Bangalore unit, uh, [UI] last week or fortnight ago even [PH]
           we got orders from Bharat Electronics, Hyderabad unit [Sighs] and with
           Singapore, as I told you, almost like . . .

RR:        [Interrupts] Okay.  Whatever orders you are getting *from* BEL, Bangalore, you . . .
           but, not Bangalore . . .

PS:        Okay.

6

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

RR:     If BEL units in India, you know . . .

PS:     Okay.

RR:     Uh--uh-uh, if you are getting some orders, uh, this one, just--uh, fax the--copies of that, for [PH] those things alone.

PS:     Okay.

RR:     Huh?

PS:     Okay.

RR:     *Send it.*

PS:     *I will send it,* Sir.

RR:     *Then* [PH]*, we will see.*

PS:     *Yes* sir.  Uh-uh, *we are* . . .

RR:     [Interrupts] Line card or your, m-m-uh, your, uh, this one-- business . . .  where [PH], which way it goes - *see all that* [UI] *and send it.*

PS:     Definite*ly*, sir.

RR:     And, uh . . . Okay, you send it.  Then we will see.

PS:     [Sighs] And, probably you-you might've heard our company, sir.  Because, uh--uh, *from* Bangalore, *you* . . .  Girish Shastri and A.K.N. Prasad . . . actually A.K.N. Prasad who is heading the CEO [PH], he was one [PH] ex-BEL only. [Sighs]

RR:     A.K.N. Prasad?

PS:     Yes, sir.

RR:     *Which* . . . A.K.N.Prasad?

PS:     ·He is A.K.N.Prasad . . . now he is working as a CEO for, uh, Cirrus Electronics, uh, India unit.  [Sighs] Yeah [PH], we are located in Jayanagar in Bangalore.

RR:     *Say it.  Your's* . . . s-y . . . s-i . . .

PS:     Uh-uh, c-i-double r -

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

RR:          S [PH]-C-I-

PS:          Uh, C for cat, I for India

RR:          Huh.

PS:          R for Robert, one more time R for Robert.

RR:          Huh.

PS:          U for United, S for . . .

RR:          [Interrupts] Oh.  Cirrus?

PS:          Yes, sir.

RR:          S [PH]-i-r-r-u-s.

PS:          [SC] Yes, sir.

RR:          I've [PH] heard of it.

PS:          Oh [PH]. [Sighs]

RR:          M-hum.  Okay.  Right.  *You send it.*

PS:          Huh [PH].

RR:          You send the--this one . . . uh --*your* line card and some purchase orders, what . . .

PS:          [Interrupts] Uh, definite*ly*, sir.  Definite*ly*, sir.

RR:          [SC] [UI]

PS:          Because, as I told you sir, *from* Bharat Electronics, *we*--at one point of time, in a year, we crossed more than 1.5 million dollars.

RR:          Mm-mm-mm-mm.

PS:          [SC] [Sighs]

RR:          May be . . . *that would have been the* sanction time.

PS:          Yes. *During that* time, we supported very heavily and orders, like, flew [PH] like, you know, like, as though . . . *it was flowing like* water. [Sighs]

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

RR:     [SC] Hm.  Okay.

PS:     So, right now, of course, we have to understand that, you know, uh--this, uh, you can go directly to the manufacturers or [PH] the authorized distributors.

RR:     [SC] Hm.

PS:     Sometimes, uh, some of the authorized distributors--they are able to give us some special prices. [Sighs]

RR:     Hm.

PS:     And, *because of that,* we, in case give [PH] an opportunity, we should be able to gi-uh, give a competitive prices.

RR:     [SC] Hm.

PS:     [Sighs] And, more than anything else, our specific domain is . . . we are quite strong in getting obsolete items, sir.

RR:     Okay.

PS:     [Sighs] And, w-we can give you the t-traceabilities [PH] and other issues. Because, recently we won, even from HAL, something like half million dollars orders --

RR:     Hm.

PS:     -- [sighs] for an obsolete item for which we have given them 18 months banker's [PH] guarantees.

RR:     Hmm.

PS:     And, uh-uh, no rejection, nothing and it went smoothly and we are able to get a repeat order also.  [Sighs]  So, we are able to establish a such a kind of a relationship because we have been in business for last eight years and I, self-myself is a, uh, designer in HAL; Ex-HAL, sir.

RR:     Oh!  You are HAL?

PS:     *Yes.*  Because I was working for the Jaguar and Kiran and these kind of a, uh, military aircrafts --

RR:     [SC] Hmm.

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

PS:    -- [Sighs] as one of the Communications Engineers in HAL. And later on, after the design experience, uh, and then I thought let us just . . . I went out and then went to Singapore to start my own company. [Sighs]

RR:    [SC] Hm.

PS:    From there I started establishing the company to, say, USA also. This is my own company with, uh, some of our partners also, sir. [SC] [Sighs]

RR:    Okay-okay.

PS:    So, we should able to definitely, uh, you know, serve Bharat Electronics in a most-more [PH] professional way because I myself being a professional engineer . . . [Sighs] And, A.K.N.Prasad with 35 years of industry experience from ex, uh, Bharat Electronics only. [SC] [Sighs]

RR:    [SC] Hm.

PS:    So, he has also told that we should be able to contact Bharat Electronics, Singapore and, uh, New York unit to develop our business, sir.

RR:    Okay.

PS:    *I will send that to you, sir.*

RR:    *You send this.*

PS:    [SC] Huh.

RR:    Y-you know our fax number?

PS:    Ah, fax number *is* . . . I do have it as 741-5894.

RR:    Ah. 516. Area code [SC] *is* 516.

PS:    Ah, 516. After that, 8-triple 7-7907.

RR:    Both are true.

PS:    [SC] Ah.

RR:    Both are there.

PS:    Okay, sir. [Sighs] Sir, can I know your direct number or . . .

10

File #: 310Q-WF-229966
Job #: 12350
SID #: 7462550

RR:            [Interrupts] *Send it to* 741. That is my--uh, room fax number.

PS:            [SC] Okay. Fine, Sir.

RR:            [UI] series -

PS:            [SC] Okay.

RR:            - [UI].

PS:            Sir, is there any other direct number you have, sir for the phone or is that number, sir . . . ?

RR:            Phone is, uh, common only. But, you can, uh, [stammers] . . . whenever you give a ring ask, uh, my name, they will [SC] connect [PH].

PS:            [Interrupts] Uh-huh. Sir, any extension you have, sir or . . . ?

RR:            No. Er . . . no-no. This is a, uh, combined one only.

PS:            Combined one. Okay.

RR:            But, anytime you give a ring, they will, uh . . . just tell my name, they will connect.

PS:            [SC] Fine, sir.

RR:            Whoever it is.

PS:            Definitely, sir.

RR:            No problem.

PS:            Yes, sir.

RR:            Right [PH].

PS:            Thank you so much sir for the time you have given to me --

RR:            [SC] All right [PH].

PS:            -- to discuss with you, sir.

RR:            [SC] All right [PH].

File #: 310Q-WF-229966
Job #:  12350
SID #: 7462550


PS:             Thank you, sir.  Bye.

                [Sound of receiver being placed down]

                [End of Conversation]

# EXHIBIT 2

| **Message1843** | |
|---|---|
| **Subject:** | Introduction of Cirrus |
| **From:** | akn |
| **Date:** | 2/14/2006 1:07:10 AM |
| **To:** | ramaraosr@yahoo.com |
| **CC:** | 'Cirrus Electronics LLC'; 'Cirrus Electronics Pte Ltd' |
| **Message Body** | |

Dear Mr. Rama Rao
Greetings to you and your family.
This is an informal email as a follow up on the conversation Mr.
Sudarshan of Cirrus Electronics had with you the other day.
I have taken the liberty to address this email by virtue of the fact I
started my professional career at BEL!
Let me introduce myself.
I am AKN Prasad currently heading Cirrus India operations out of our
Bangalore office.
After graduating from IISc way back in 1967, I was appointed as Asst
Engr R&D at BEL and served the organization till 1972. I worked in R&D I
and Engg III departments. I moved to HAL in 1972, eventually occupying
the position of Chief Engineer (Designs - Communication Systems) at HAL
Hyderabad. I resigned from HAL in 1987 and moved to Bangalore to seek
career growth in private sector.

We will send a formal communication to BEL NYRO office through Cirrus
LLC, USA providing following information.
a) Our current customer profile with approved registered vendor status.
b) Some of the major orders that we have executed
c) Our development support to Indian Defense and aerospace industry
d) Our long association with BEL SIRO Office as also BEL Bangalore and
Chennai

We request you to give us an opportunity to serve BEL through its NYRO
office.
Cirrus is staffed by professional engineers with long standing exposure
to Indian defense activities and it is our commitment to help Indian
defense and aerospace industry reach world standards and make the
country self reliant.

Sincerely
AKN Prasad,
CEO,
Cirrus Electronics Marketing (P) Ltd
Tel: (91)-80-4131-2100
Fax: (91)-80-4131-2111
Email: akn@cirruselectronics.com
Web: www.cirruselectronics.com <http://www.cirruselectronics.com/>

CI_00607

---------------------------------------------------------------

-----------------
This e-mail is strictly confidential and intended solely for the
addressee. It may contain privileged and confidential information
belonging to Cirrus Electronics Marketing (P) Ltd. It must not be read,
copied, disclosed, distributed or used by any person other than the
addressee. Unauthorised use, disclosure or copying is strictly
prohibited and may be unlawful. If you have received this message in
error, you should destroy this message and kindly notify the sender by
e-mail.

-----------------------------------------------------
-----------------

| Outlook Header Information |
|---|

Conversation Topic: Introduction of Cirrus
Sender Name: akn
Received By: Cirrus Electronics LLC
Delivery Time: 2/14/2006 1:07:10 AM
Creation Time: 2/14/2006 7:28:07 AM
Modification Time: 2/14/2006 7:29:41 AM
Submit Time: 2/14/2006 1:07:01 AM
Flags: 1 = Read
Size: 14348

| Standard Header Information |
|---|

Received: from ceo ([59.144.59.53]) by cirruselectronics.com ; Tue, 14 Feb 2006 14:07:10 +0800
SGT
From: "akn" <akn@cirruselectronics.com>
To: <ramaraosr@yahoo.com>
Cc: "'Cirrus Electronics LLC'" <usa@cirruselectronics.com>,
  "'Cirrus Electronics Pte Ltd'" <cirrus@cirruselectronics.com>
Subject: Introduction of Cirrus
Date: Tue, 14 Feb 2006 11:37:01 +0530
MIME-Version: 1.0
Content-Type: multipart/alternative;
  boundary="----=_NextPart_000_00B8_01C6315A.FB056410"
X-Mailer: Microsoft Office Outlook, Build 11.0.5510
X-MimeOLE: Produced By Microsoft MimeOLE V6.00.2900.2180
Thread-Index: AcYxLNzgS3bpn/AVTQaD8ubYWcNT9Q==
Message-ID: <113989723301@juno.webvis.net>
Return-Path: <akn@cirruselectronics.com>
X-Rcpt-To: <usa@cirruselectronics.com>
X-DPOP: Version number supressed
X-UIDL: 1139920075.126784
Status: U

CI_00608

# EXHIBIT 3

# Cirrus Electronics LLC.,

201 Huddersfield Drive,
Simpsonville SC  29681-3703
USA
TEL: +1 (864) 286 3030  FAX: +1 (864) 286 1144
E-mail: usa@cirruselectronics.com

Bharat Electronics Limited
53-55, Hilton Avenue
Garden City,
New York – 11530

Kind Attn: Mr. Rama Rao
            AGM-Sourcing

Dear Sir,
Sub: Introduction of Cirrus & Request for Vendor Registration

May we take this opportunity to introduce ourselves as one of the leading
distributors of Electronic and Electro-mechanical components and supplying
MIL- Grade, Space Qualified components to Indian Defence, Space and
Aerospace sectors?

Cirrus Electronics is one of the approved vendors to the below organizations:-

Bharat Electronics Ltd., Bangalore            Vendor Code  C01488
Aeronautical Development Establishment (ADE)  Vendor Code  833
**Bharat Dynamics Limited**                   Vendor Code  C 5039
Vikram Sarabhai Space Centre (VSSC)           Vendor Code  C00005
Bharat Heavy Electricals Ltd.                 Vendor Code  F658445
National Aerospace Laboratory                 Vendor Code  1835.

We have been supplying components to your SIRO office past 6-7 years and we
had executed a single order of value SGD 1 Million and also getting regular
orders from HF Divn, MR Divn, and Naval Systems of BEL Bangalore and BEL,
Chennai.

CI_00609

# Cirrus Electronics LLC.,

201 Huddersfield Drive,
Simpsonville SC  29681-3703

USA

TEL: +1 (864) 286 3030   FAX: +1 (864) 286 1144
E-mail: usa@cirruselectronics.com

For your quick reference, we are pleased to enclose here with some of the orders which we have executed with Indian customers.

In view of the above, we request you to please register our company name in your existing vender list and kindly arrange to send us all of your future enquiries to us in order to submit our competitive prices.

Thanking you,

With Our Best Regards,

P. Sudarshan

CI_00610